Chad S. Pehrson (12622)
Alexis Nelson (9566)
**KUNZLER BEAN & ADAMSON, PC**
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646
cpehrson@kba.law
anelson@kba.law

*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MEYERS,<br><br>Plaintiffs,<br><br>v.<br><br>HER TACTICAL, LLC; E & R LLC d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON; and BLAKE CHEAL,<br><br>Defendants. | Case No. 1:22-cv-00121-DAK-DBP<br><br>**MOTION TO DISMISS** |

Defendants Her Tactical, LLC ("Her Tactical"), E & R LLC ("E&R"), Vicky Arlene Johnston ("Johnston") and Blake Cheal ("Cheal") (collectively "Defendants") hereby submit the following Motion to Dismiss, requesting that the Court dismiss the Complaint. Plaintiffs fail to properly allege facts to support claims for trade secret "infringement," trade dress infringement, unfair competition, and patent infringement. In particular, Plaintiffs allege infringement of four patents while simultaneously asserting that their pre-filing investigation concluded only that Defendants infringe "at least one of" the four patents.  In view of applicable law governing

pleading in patent and IP cases, each of Plaintiffs' claims must be dismissed.

## INTRODUCTION

Plaintiffs evidently seek a monopoly on the sale of gun holsters. Indeed, while the Complaint effectively communicates extreme frustration with business competition, it fails to sufficiently allege any intellectual property violations in connection with Defendants' business activities.

Generally, the Complaint seeks to allege claims for patent infringement and "trade secret infringement/unfair competition" against four defendants, including two individuals (one of whom has no connection whatsoever to the business operations of the entity Defendants). Plaintiffs make allegations regarding one utility patent entitled "gun holster system and method of use," four design patents each entitled "gun holster," and two trade dress *applications* (each of which has been rejected by the PTO on grounds of functionality). [Compl. ¶¶ 11-12; 38-59.] Paradoxically, Plaintiffs further allege that their pre-filing investigation concluded only that Defendants "infringe **at least one** of JM4's registered patents and trade dress."  [Compl. ¶ 33.]

Furthermore, Plaintiffs specifically claim that the individual defendants (Johnston and Cheal) are: (1) literally infringing the asserted patents [Compl. ¶¶44-47]; (2) "indirectly" infringing the asserted patents [Compl. ¶¶ 48-52]; and (3) that Johnston and Cheal acted willfully or alternatively, "on information and belief" and knew that there was a "high probability" of infringement and "took deliberate steps to avoid learning about the infringement." [Compl. ¶¶ 51.]

Despite its evident vitriol, the Complaint simply fails to provide facts or relevant allegations as to each of the miscellaneous intellectual property-related claims asserted. Specifically, the Complaint: (1) fails to properly allege trade secret "infringement"; (2) fails to

properly plead inducing infringement against the Individual Defendants; (3) fails to state a claim for trade dress infringement; (4) fails to state a claim for unfair competition; and (5) fails to properly plead which of its four patents has actually been infringed (alleging, rather, that "at least one" of the patents was infringed. As such, the Complaint should be dismissed in its entirety.

## LEGAL STANDARD

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Tenth Circuit has noted that this pleading requirement "serves two purposes: 'to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense,' and 'to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim.'" *Kansas Penn Gaming*, 656 F.3d at 1215 (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Whether a complaint states a plausible claim for relief will be a context-specific undertaking, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## ARGUMENT

**I.     The Complaint Fails to Plead a Claim for Trade Secret Infringement.**

Count II of the Complaint is labeled "Trade Secret Infringement/Unfair Competition [15 U.S.C. § 1125(a)]." [Compl. p. 13; ¶¶ 60-65]  "Trade Secret Infringement" is presumably intended to refer to "trade secret misappropriation," which is a cause of action that may be brought in appropriate circumstances under either federal or state law. The Complaint does not set forth the applicable law.

Under federal law, for a plaintiff to state a claim for misappropriation of a trade secret under the DTSA a Plaintiff must prove "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020); 18 U.S.C § 1839(5).

And under Utah state law, "To establish a claim for misappropriation of a trade secret, the proponent of the trade secret must show (1) the existence of a trade secret, (2) communication of the trade secret to [the defendant] under an express or implied agreement limiting disclosure of the secret, and (3) [defendant]'s use of the secret that injures [the proponent]." *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 15, 274 P.3d 317. (quotation omitted) (alterations in original).

Plaintiff's "Trade Secret Infringement" Count is supported by allegations in Paragraphs 60-65 of the Complaint. [Compl. ¶¶ 60-65.] In brief, Paragraph 61 makes an allegation about Plaintiff's "*trade dress*." Paragraph 62 alleges that Defendants' public assertions about their products are misleading. Paragraph 63 alleges confusion on grounds of confusing similarity. And

Paragraph 64 alleges that Defendants misrepresent the nature of their products. And Paragraph 65

presents one sentence contending that Defendants committed unfair competition and infringement

of "trade dress." None of these allegations address, much less allege, elements of a trade secret

misappropriation claim. As such, the claim should be dismissed.

## II.    The Complaint Fails to Plead a Claim Against the Individual Defendants for Inducing Infringement.

The Complaint makes the following allegations regarding inducing infringement:

> 48.   Defendant Johnston, and on information and belief, Defendant Cheal, each took action that was intended to cause and led to the literal or direct infringement of Plaintiffs' patents by Defendants Her Tactical and/or E&R.
> 49. Defendants Her Tactical and/or E&R carried out the actions induced upon them by Johnston and Cheal.
> 50. Johnston, and on information and belief Cheal, were aware of at least one of the Plaintiffs' patents and knew that the acts by Her Tactical and/or E&R, if taken, would constitute infringement of that patent.
> 51. Alternatively, Johnston, and on information and belief Cheal, knew that there was a high probability that the acts by Her Tactical and/or E&R would infringe a patent held by the Plaintiffs' patents and took deliberate steps to avoid learning of the infringement.
> 52. Defendants have therefore infringed Plaintiffs' registered patents.

[Compl. ¶¶ 48-52.]

These allegations fail to meet the requisite standards namely by failing to plausibly allege

that each of Johnston and Cheal (i) as to a particular patent of the four alleged patents, had

knowledge of that particular patent; (ii) knowingly induced a third party to infringe the patents;

and (iii) had specific intent to induce a third-party to infringe the patent. *See DSU Med. Corp. v.

JMS Co. Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc).

First, the Complaint does not sufficiently allege that either Defendant had knowledge of

a particular patent within the four patents alleged in the case (as to which, only "at least one" is

actually infringed, [Compl. ¶ 27; 50.], and only "at least one" is alleged to have been known by

Defendants, or had knowledge that the induced acts constitute infringement. To "adequately plead a claim of induced infringement, a plaintiff must demonstrate that the defendant knew of the patent and that the induced acts constitute infringement." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV- 00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (internal quotation omitted)); *see also Commil USA, LLC v. Cisco Sys., Inc*., 135 S. Ct. 1920, 1926 (2015) ("[L]iability for inducing infringement attaches only if the defendant knew of the patent and the induced acts constitute patent infringement."). Nor does the Complaint plausibly allege that either individual defendant knew that any induced acts would constitute infringement. *See USC IP P'ship, L.P. v. Facebook, Inc*., 6:20-CV-00555-ADA, 2021 WL 3134260, at *1 (W.D. Tex. July 23, 2021) (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.). The Complaint therefore fails to sufficiently allege the knowledge elements necessary to plead a claim for induced infringement.

Furthermore, the Complaint fails to allege any facts plausibly showing how either individual Defendant induced others' infringement or specifically intended to induce infringement. An inducement claim must include factual allegations showing how inducement occurs. *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. 13–365, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014) ("The complaint generally alleges that Toyota induced its customers to purchase its vehicles, but fails to allege how Toyota induced its customers to use the vehicles in a manner that would violate the Asserted Patents."). Additionally, a "claim of induced infringement 'must contain facts plausibly showing that [the defendants] specifically intended

their customers to infringe the [asserted] patent and knew that the customer's acts constituted infringement.'" *Affinity Labs*, 2014 WL 2892285, at *3 (quoting *In re Bill of Lading Transmission & Processing Syst. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).  This specific intent element is "demanding" and requires more than unsubstantiated and generalized allegations that the accused infringer induced infringement via "marketing and sales tactics."  *Id.* at *7 ("[G]eneralized allegations that Toyota induced others to infringe . . . through its marketing and sales tactics are likewise insufficient.").  The Complaint's failure to include these allegations is fatal to its attempt to plead induced infringement.

Third, the Complaint's conclusory assertions are nothing more than vague and general assertions of indirect infringement.  [Compl. ¶¶ 48-52.].  The Complaint's information and belief allegations include no factual statements explaining how either Individual Defendant "encouraged and instructed" and thereby induced others to infringe or that, if true, show that the Individual Defendants acted with specific intent.  *See id*.  In the absence of supporting well-pleaded facts, the Complaint's allegations are simply not enough to plead a claim for induced infringement.

**III.    The Complaint Fails to State a Claim for Trade Dress Infringement.**

Here, the Complaint's only allegations regarding Plaintiffs' asserted putative trade dress are contained in Paragraph 61:

> The overall visual impression created in the consumer's mind when viewing the non-functional aspects of the Plaintiff's IWB magnetic retention gun holsters, and not from the utilitarian or useful aspects of the products, when considered together, is the Plaintiffs' trade dress.

[Compl. ¶ 61.]

On trade dress, Plaintiff alleges in some paragraphs that its trade dress is "unregistered" [e.g. Compl. ¶¶ 10 (referencing "unregistered" trade dress); 12 (referencing "applications")]; in other paragraphs, it is left ambiguous whether the trade dress is "registered." [Compl. ¶ 33 (referencing "registered patents and trade dress").]  In any event, while irrelevant to this Motion, PTO records show that each application number referenced in Paragraph 12 (90/518,181; 90/520,663) was rejected on grounds of functionality. *See* Office Actions attached hereto as Exhibit A (while not essential for adjudication of the Motion to Dismiss, the Office Actions are official government decisions in a trademark proceeding expressly referenced in the Complaint, and thus could be considered on a Motion to Dismiss). Complaint ¶ 12 does include allegations regarding the product design described in these rejected applications, but it is unclear whether the Complaint is attempting to actually assert these rejected applications and their rejected descriptions, or something else. Left with no other logical choice, this Motion assumes counter to Paragraph 12, that Plaintiff intended to plead infringement of unregistered trade dress.

To obtain relief for trade dress infringement, a plaintiff must show "(1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1147 (10th Cir. 2016). But even before a plaintiff asserting an unregistered trade dress can allege these requirements, it must specifically articulate the elements that comprise its trade dress. *Forney Indus., Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238, 1252 (10th Cir. 2016).

8

1.  **The Complaint Fails to Allege Facts to support a Plausible claim that Plaintiff's Trade Dress is either Inherently Distinctive or Has Acquired Secondary Meaning.**

When a purported trade dress is one of product design, as opposed to product packaging, "secondary meaning is the only avenue available for proving distinctiveness … because a product's design … is not inherently distinctive." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000) ("[T]o the extent there are close cases, ... courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning."); *Forney Indus., Inc., 835 F.3d at 1247; Craft Smith, LLC v. EC Design, LLC*, 388 F. Supp. 3d 1385, 1407 (D. Utah 2019) aff'd 969 F.3d 1092 (10th Cir. 2020). "It is particularly difficult to prove that a product design has acquired secondary meaning." *Craft Smith, LLC*, 388 F. Supp. 3d at 1407.

Regarding this difficulty in product design cases, the District of Utah has observed that courts should "exercise[] particular 'caution' when extending protection to product designs" as opposed to its packaging, because the "potential for misuse of trade dress law is of particular concern in product design cases, as 'product design almost invariably serves purposes other than source identification.'" Hammerton, Inc. v. Heisterman, Case 2:20-cv-00851-BSJ, 2008 WL 2004327, at *6 (D. Utah May 9, 2008) (quoting *Wal–Mart Stores*, 529 U.S. at 213).

The Complaint fails to allege facts to plausibly support any conclusion that Plaintiffs' trade dress is inherently distinctive. Perhaps the only thing clear from the Complaint regarding Plaintiffs' putative trade dress is that it is one for "product design" as opposed to "product packaging" [*see* Compl. ¶ 12]; as such, the claimed trade dress cannot be inherently distinctive as a matter of law. *Wal-Mart Stores, Inc.*, 529 U.S. at 215.

Furthermore, the Complaint further not only fails to allege facts to plausibly show that its purported trade dress has acquired secondary meaning, but it fails to make even a conclusory allegation regarding secondary meaning. [Compl. ¶¶ 1-65 (containing no reference to secondary meaning).]

2. **The Complaint Fails to Allege Facts to Support a Plausible Claim that Its Trade Dress is Non-Functional.**

The Complaint references the term "functional" only once, in the aforementioned circular and conclusory Paragraph 61:

> The overall visual impression created in the consumer's mind when viewing the non-functional aspects of the Plaintiff's IWB magnetic retention gun holsters, and not from the utilitarian or useful aspects of the products, when considered together, is the Plaintiffs' trade dress.

[Compl. ¶ 61.] This allegation is inherently conclusory and circular, and provides no factual detail. Therefore, any trade dress claim sought to be articulated in the Complaint must be dismissed. "A product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 (1982). Whether a feature of trade dress is functional turns on whether "protection of the configuration would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." *Gen. Motors Co. v. Urban Gorilla, LLC*, No. 2:06-cv-00133-BSJ, 2010 WL 5395065, at *13 (D. Utah Dec. 27, 2010).

In this setting, the law dictates that the Complaint alleges plausible facts that its asserted trade dress is non-functional, and that the trade dress has acquired secondary meaning. The Complaint fails to even make such an attempt. This reality is consistent with the fact that Plaintiff's trade dress "applications" did not proceed to registration and were rejected by the PTO

as being functional. [*See* Exhibit 1.] Of course, Plaintiffs cannot lawfully hinder competition by claiming a generic monopoly over all gun holster features through trade dress. *See Gen. Motors Co. v. Urban Gorilla, LLC*, No. 2:06-cv-00133 BSJ, 2010 WL 5395065, at *13 (D. Utah Dec. 27, 2010). Accordingly, the Complaint lacks factual allegations sufficient to plausibly state that its purported trade dress has acquired secondary meaning or is non-functional. For these reasons, the Court should dismiss the Plaintiff's trade dress claims

## IV.   Count Two Claim for Unfair Competition Should be Dismissed for Insufficient Allegations.

To the extent that Count Two, labeled "Trade Secret Infringement/Unfair Competition [15 U.S.C. § 1125(a)]" can be interpreted as a claim for unfair competition under either the Lanham Act, or the common law, the claim is insufficiently pleaded. Plaintiff's claims for either federal unfair competition or common law unfair competition fail as the Complaint does not allege sufficient facts to show: (1) that Defendants are passing off products originating with Plaintiff as their own; and (2) that there is any likelihood that the public will be confused between the products of Plaintiff and those of Defendants. In Utah, a party commits a tort of unfair competition by palming off or misappropriating goodwill. *Allen Prods. v. Glover*, 414 P. 2d 93, 95 (Utah 1966); *Dodart v. Young Again Prods., Inc.*, 2006 U.S. Dist. LEXIS 72122 at *88-89 (D. Utah 2006).

Both involve situations where a company attempts to profit from the reputation of its competitor by selling one of its own products as that of its competitor ("passing off"), selling one of competitor's products as its own 26 ("reverse passing off"), and/or otherwise misappropriating a trademark belonging to its competitor. *See Dodart*, 2006 U.S. Dist. LEXIS at 88–89. Under Section 43(a) of the Lanham Act ("false designation of origin") a plaintiff cannot state a claim

for "reverse passing off" when it merely alleges that the defendant, the actual producer of the tangible product at issue, fails to attribute the ownership of plaintiff in certain non-trademark rights embodied in that work. *See Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32–33 (2003) (defining "origin of goods" under Section 43(a) as the "producer of the tangible product sold in the marketplace").

The same likelihood of confusion test applicable to claims under the Lanham Act is applicable to the common law unfair competition claim under Utah law. *See Dodart*, 2006 U.S. Dist. LEXIS at 88–89. The ultimate question in the 10th Circuit analysis of a Lanham Act claim (and Utah state law claims for unfair competition) is whether the competitor's appropriation of holder's property leads "consumers viewing the mark [to] make an improper mental association or be confused about origin or sponsorship" in violation of the "right of the public to be free of confusion and the synonymous right of a trademark owner to control his product['s] reputation." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F. Supp. 2d 1151, 1171 (D. Utah 2010) (emphasis added); see also Novell, Inc. v. Network Trade Ctr., 25 F. Supp. 2d 1218, 1227 (D. Utah 1997) ("a claim of unfair competition may be asserted if . . . the defendants' actions cause a likelihood of confusion among consumers in the marketplace." *Novell, Inc. v. Network Trade Ctr.*, 25 F. Supp. 2d 1218, 1227 (D. Utah 1997) (emphasis added).

Here, the Complaint fails to allege sufficient facts for unfair competition under both Utah state law and the Lanham Act, including for the above-described failure to articulate the protectability of any putative trade dress rights. In fact, the Complaint does nothing more than state a conclusion of "confusing similarity" [Compl. ¶ 63.] Thus, because the Complaint fails to allege actual facts regarding the existence of protectable trademark rights, as well as the

likelihood of consumer confusion as to the origin thereof, the Complaint fails to state a claim under both state and federal law of unfair competition.

**V.      The Complaint Fails to Provide Adequate Notice of Patent Infringement Generally, Given the Assertion by Plaintiff that Plaintiff's Pre-Filing Diligence Concluded Only that "At Least One" of Its Patents Were Infringed.**

Plaintiffs expressly allege that their pre-filing investigation concluded only that Defendants "infringe **at least one of JM4's registered patents and trade dress.**"  [Compl. ¶ 33.] And yet, Plaintiffs have asserted all of JM4's patents. On this point, the Complaint either (1) fails in its most basic purpose to provide Defendants fair notice of the claims against them; or (2) acknowledges a failure to conduct a pre-filing investigation[1] with appropriate evidence and legal rigor and concluding that infringement could be shown as to each asserted patent (not, "at least one of" the four asserted patents). Fed. R. Civ. P. 8, 11(b)(1) and (2); *Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805 (Fed. Cir. 1990).

## CONCLUSION

Based upon their odd Complaint, Plaintiffs appear frustrated that they have been selling gun holsters since 2016, and that Defendants are now making an effort to also sell gun holsters. And yet for those who desire a monopoly, competition is the nature of our society and economy.

---

[1] In *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) the Federal Circuit explained the necessity of sanctions pursuant to Rule 11 in patent cases as follows:
A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs -- precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important. In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement. Failure to do so should ordinarily result in the trial court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.
*Id.*

Regardless, the Complaint fails to appropriately plead any actual IP violation, whether in "trade secret infringement," trade dress infringement, unfair competition, or patent law; thus, the Court should dismiss all claims asserted in the Complaint.

RESPECTFULLY SUBMITTED this 21st day of October 2022.

**KUNZLER BEAN & ADAMSON, PC**

*/s/ Chad S. Pehrson*
Chad S. Pehrson

*Attorneys for Cross Defendant Brigham Young University*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on the 21st day of October, 2022,  filed a true and correct copy of the

foregoing **MOTION TO DISMISS** ad served it via the Court's electronic filing system on the

following:

Brandon James Leavitt
Levitt Eldredge Law Firm
4204 SW Green Oaks Blvd., Suite 140
brandon@uslawpros.com

Jason K. Smith
MK Smith, APC
9891 Irvine Center Dr., Ste. 200
Irvine, CA 92618


*/s/ Chad S. Pehrson*