Chad S. Pehrson (12622)
Alexis Nelson (9566)
**KUNZLER BEAN & ADAMSON, PC**
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646
cpehrson@kba.law
anelson@kba.law

*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MEYERS,<br><br>Plaintiffs,<br><br>v.<br><br>HER TACTICAL, LLC; E & R LLC d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON; and BLAKE CHEAL,<br><br>Defendants. | Case No. 1:22-cv-00121-DAK-DBP<br><br>**EXHIBIT A**<br>**TO**<br>**MOTION TO DISMISS** |

Defendants Her Tactical, LLC ("Her Tactical"), E & R LLC ("E&R"), Vicky Arlene Johnston ("Johnston") and Blake Cheal ("Cheal") (collectively "Defendants") hereby submits the attached Exhibit A to Defendants' Motion to Dismiss (Dkt. 15) that is filed with this Court.

RESPECTFULLY SUBMITTED this 21st day of October 2022.

**KUNZLER BEAN & ADAMSON, PC**

*/s/ Chad S. Pehrson*
Chad S. Pehrson

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 21st day of October, 2022,  filed a true and correct copy of the

foregoing **MOTION TO DISMISS** ad served it via the Court's electronic filing system on the

following:

Brandon James Leavitt
Levitt Eldredge Law Firm
4204 SW Green Oaks Blvd., Suite 140
brandon@uslawpros.com

Jason K. Smith
MK Smith, APC
9891 Irvine Center Dr., Ste. 200
Irvine, CA 92618

*/s/ Chad S. Pehrson*

# EXHIBIT A

## Motion to Dismiss

| | |
|---|---|
| **To:** | Beth Felix(beth@uslawpros.com) |
| **Subject:** | U.S. Trademark Application Serial No. 90518181 - - 3168CM-7TBF |
| **Sent:** | April 08, 2022 02:42:18 PM EDT |
| **Sent As:** | tmng.notices@uspto.gov |

**Attachments**

screencapture-exm-tmng-uspto-gov-tmng-internal-flex-html-16487493435621
magnetic holster 5-1.jpg
magnetic holster 5.jpg
magnetic holster 4.jpg
magnetic holster 3.jpg
magnetic holster 2.jpg
magnetic holster 1.jpg

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90518181

**Mark:**

**Correspondence Address:**
Beth Felix
LEAVITT & ELDREDGE LAW FIRM
4204 SW GREEN OAKS BLVD
STE 140
ARLINGTON TX 76017 UNITED STATES

**Applicant:** JM4 tactical

**Reference/Docket No.** 3168CM-7TBF

**Correspondence Email Address:** beth@uslawpros.com

# NONFINAL OFFICE ACTION

**The USPTO must receive applicant's response to this letter within <u>six months</u> of the issue date below or the application will be <u>abandoned.</u>** Respond using the Trademark Electronic Application System (TEAS). A link to the appropriate TEAS response form appears at the end of this Office

action.

**Issue date:**  April 08, 2022

This Office action is in response to applicant's communication filed on 3/14/22. The examining attorney acknowledges the applicant's responses to the information request.  Applicant contends the applied-for mark is at best *de facto* functional and not *de jure* functional. The examining attorney must respectfully disagree with applicant's conclusions. Furthermore, in the response, the applicant contends the applied-for mark has acquired distinctiveness sufficient to overcome any non-distinctive configuration refusals. The claim of acquired distinctiveness raises a new issue. After review of the submitted evidence, the claim of acquired distinctiveness is found to be insufficient to establish the proposed mark has acquired insensitiveness in the minds of the purchasing public.  Therefore, the refusal pursuant to Sections 1, 2, and 45 of the Trademark Act is repeated and continued.


SECTION 2(e)(5) FUNCTIONAL REFUSAL

Registration was refused because the applied-for mark, which consists of a three-dimensional configuration of the goods, appears to be a functional design for such goods.  Trademark Act Section 2(e)(5), 15 U.S.C. §1052(e)(5); *see* TMEP §1202.02(a)-(a)(ii).  A feature is functional if it is "'essential to the use or purpose of the [product]'" or "'it affects the cost or quality of the [product].'"  *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33, 58 USPQ2d 1001, 1006 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 34 USPQ2d 1161, 1163-64 (1995)); *Inwood Labs., Inc., v. Ives Labs., Inc*., 456 U.S. 844, 850 n.10, 214 USPQ 1, 4 n.10 (1982); TMEP §1202.02(a)(iii)(A).

As stated previously, a mark that consists of a three-dimensional configuration of a product or its packaging is functional, and thus unregistrable, when the evidence shows that the design provides identifiable utilitarian advantages to the user; i.e., the product or container "has a particular shape because it works better in [that] shape."  *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274, 61 USPQ2d 1422, 1425 (Fed. Cir. 2002) (internal punctuation and citation omitted); *see* TMEP §1202.02(a)(iii)(A).

The evidence need not establish that the configuration at issue is the very best design for the particular product or product packaging.  A configuration can be held functional when the evidence shows that it provides a specific utilitarian advantage that makes it one of a few superior designs available.  *See In re Bose Corp.*, 772 F.2d 866, 227 USPQ 1 (Fed. Cir. 1985) (holding shape of a loudspeaker system enclosure functional because it conforms to the shape of the sound matrix and is thereby an efficient and superior design); *In re Dietrich*, 91 USPQ2d 1622 (TTAB 2009) (holding particular spoke arrangement of a bicycle wheel functional because it is more stable and provides better performance than wheels with other spoke arrangements featuring the same or greater number of spokes); *In re Am. Nat'l Can Co.*, 41 USPQ2d 1841 (TTAB 1997) (holding metal beverage containers with vertical fluting functional because vertical fluting is one of a limited number of ways to strengthen can sidewalls and it allows for an easier way to grip and hold the can); TMEP §1202.02(a)(v), (a)(v)(C).

On the other hand, where the evidence shows that the specific product or container configuration at issue provides no real utilitarian advantages to the user, but is one of many equally feasible, efficient and competitive designs, then it may be registrable.  *See In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 213 USPQ 9 (C.C.P.A. 1982).  However, a product configuration cannot be registered on the

Principal Register without a showing of acquired distinctiveness. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 54 USPQ2d 1065 (2000); TMEP §1202.02(b)-(b)(i).

For marks consisting of a three-dimensional configuration of the goods, the drawing must show the mark itself using solid lines. *See* 37 C.F.R. §§2.52(c), 2.54(e); TMEP §§807.05(c), 807.06(a). Applicant must depict the mark in the drawing to include broken or dotted lines to show the position of the mark on the goods. 37 C.F.R. §2.52(b)(4); TMEP §§807.08, 1202.02(c)(i).

In addition to these drawing requirements, applicant must also submit a clear and concise description of the mark that does the following:

> (1)    Indicates the mark is a three-dimensional configuration of the goods or packaging or of a specific design feature of the goods or packaging.

> (2)    Specifies all the elements in the drawing that constitute the mark and are claimed as part of the mark.

> (3)    Specifies any elements that are not part of the mark and indicates that the matter shown in broken or dotted lines is not part of the mark and serves only to show the position or placement of the mark.

*See* 37 C.F.R. §§2.37, 2.52(b)(2), (b)(4); *In re Famous Foods, Inc.*, 217 USPQ 177, 177 (TTAB 1983); TMEP §§807.08, 807.10, 1202.02(c)(ii).

In the present case, the applicant depicts the strap and the securement devices in solid lines, and describes the mark as "a product configuration of a holster, wherein the holster comprises a strap attached to a holster body, the strap *having a securement device at an end of the strap*, the body having a *second securement device* extending from the body, the dashed lines of the body represent positioning of the strap and securement devices and are not claimed as part of the mark." [Emphasis added.] On page 6 of the applicant's written response dated 3/14/22, the applicant "acknowledges that the 'securement device' on the holster comprises 3 magnets integrated within the products strap assembly". Thus, the description of the applied-for mark as well as the drawing of the applied-for mark references the magnet securement device as being a specific and claimed feature of the goods.

The use of the magnets depicted on the holster configuration creates a utilitarian advantage regarding the applied-for product. A utility patent claiming the design features at issue is strong evidence that those features are functional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30, 58 USPQ2d 1001, 1005 (2001); *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1375, 102 USPQ2d 1372, 1377 (Fed. Cir. 2012); *see* TMEP §1202.02(a)(iv), (a)(v)(A). However, a patent need not claim the exact configuration for which trademark protection is sought to prove functionality. *See In re Becton, Dickinson & Co.*, 675 F.3d at 1375, 102 USPQ2d at 1377 (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. at 32-33, 34-35, 58 USPQ2d at 1005). "[S]tatements in a patent's specification illuminating the purpose served by a design may constitute equally strong evidence of functionality." *In re Loggerhead Tools, LLC*, 119 USPQ2d 1429, 1432 (TTAB 2016) (quoting *In re Becton, Dickinson & Co.*, 675 F.3d at 1375, 102 USPQ2d at 1377).

As seen from the applicant's utility patent No. 9784530, the utility patent claims "two magnets

disposed within the thickness of the fastener protrusion; and a third magnet disposed within the thickness of housing; wherein the twomagnetsare configures to engage with the third magnet" and "wherein a combines magnetic retention strength generated by the twomagnetsand the third magnet is strong enough to retain the gun within the body". In this case, the utility patent claims the design features at issue, specifically the magnet securement that are stated both on the drawing and in the description of the mark.

Furthermore,competitors' advertising and promotional materials that extol specific utilitarian advantages of the applied-for product design or product packaging are strong evidence that the matter sought to be registered is functional. TMEP §1202.02(a)(v)(B); *see, e.g.*, *In re Heatcon, Inc.*, 116 USPQ2d 1366, 1374-75 (TTAB 2015); *In re Van Valkenburgh*, 97 USPQ2d 1757, 1763 (TTAB 2011). As seen from the attached sampling of third-party websites and articles, the use of magnets on holsters serves a utilitarian advantage.

For the above reasons, the applied-for product design is functional and the refusal to register pursuant to Section 2(e)(5) of the Trademark Act must be continued.

As previously stated, a determination that an applied-for configuration mark is functional constitutes an absolute bar to registration on the Principal or Supplemental Registers, regardless of any evidence of acquired distinctiveness. Trademark Act Sections 2(e)(5) and 23, 15 U.S.C. §§1052(e)(5), 1091; *see TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 58 USPQ2d 1001, 1006 (2001); *In re Controls Corp. of Am.*, 46 USPQ2d 1308, 1311 (TTAB 1998); TMEP §1202.02(a)(iii)(A).

### SECTIONS 1, 2, AND 45 NON-DISTINCTIVE CONFIGURATION REFUSAL

Registration was also refused because the applied-for mark consists of a nondistinctive product design or nondistinctive features of a product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness. Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§1051-1052, 1127; *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 213-14, 54 USPQ2d 1065, 1068-69 (2000); *In re Slokevage*, 441 F.3d 957, 961, 78 USPQ2d 1395, 1398 (Fed. Cir. 2006); *see* TMEP §1202.02(b)(i).

In the response, the applicant claims "that the applied for mark has acquired distinctiveness sufficient to overcome any non-distinctive configuration refusals. For example, the Applicant has submitted a verified statement and evidence establishing (1) association of the configuration with the Applicant by various high-profile gun enthusiasts; (2) at least five years of continuous and exclusive use"; (3) high volume sales; and (4) unsolicited media coverage." [Applicant's 3/14/22 written response on page 7 of 8.]

The examining attorney reviewed the 128 pages of response submitted, but it appears the only statement submitted is the unverified statement of James Chadwick Myers identified as the owner of JM4 Tactical. [See attached copy.] Mr Myers statement "[w]hen people see the strap they automatically know that it is our holster" is merely a conclusory statement that does not evidence gun enthusiasts associate the applied-for configuration as a source indicator.  His statement makes not reference to the applied-for mark acquiring distinctiveness; nor does it contain any evidence to support the "high volume sales" claim, i.e there is no information as to the amount of sales and number of customers regarding the applied-for mark.

As previously stated, applicant may respond by providing evidence of acquired distinctiveness, such as verified statements of long term use, advertising and sales expenditures, examples of advertising, affidavits and declarations of consumers, customer surveys.  *See* 37 C.F.R. §2.41(a)(3); TMEP §§1212.02(g), 1212.06 *et seq*.  When determining whether the evidence shows the mark has acquired distinctiveness, the trademark examining attorney will consider the following six factors:  (1) association of the mark with a particular source by actual purchasers (typically measured by customer surveys linking the name to the source); (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage.  *See Converse, Inc. v. ITC*, 909 F.3d 1110, 1120, 128 USPQ2d 1538, 1546 (Fed. Cir. 2018) ("the *Converse* factors").  "[N]o single factor is determinative." *In re Steelbuilding.com*, 415 F.3d 1293, 1300, 75 USPQ2d 1420, 1424 (Fed. Cir. 2005); *see* TMEP §§1212.06 *et seq*.  Rather, all factors are weighed together in light of all the circumstances to determine whether the mark has acquired distinctiveness.  *In re Steelbuilding.com*, 415 F.3d at 1300, 75 USPQ2d at 1424.  This evidence must demonstrate that the relevant public understands the primary significance of the mark as identifying the *source* of applicant's service.  *Id.* at 1297, 75 USPQ2d at 1422.  However, "[t]he evidence must relate to the promotion and recognition of the specific configuration embodied in the applied-for mark and not to the goods in general."  *In re Change Wind Corp.*, 123 USPQ2d 1453, 1467 (TTAB 2017) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11, 214 USPQ 1, 4 n.11 (1982)). Also note, evidence of five years' use considered alone is generally not sufficient to show acquired distinctiveness for nondistinctive product design marks.  *E.g., In re R.M. Smith, Inc.*, 734 F.2d 1482, 1485, 222 USPQ 1, 3 (Fed. Cir. 1984); *In re Change Wind Corp.*, 123 USPQ2d 1453, 1467 (TTAB 2017).

The record currently does not sufficient evidence the product configuration has acquired distinctiveness in the minds of the purchasing public.  For the above reasons, the refusal pursuant to Sections 1, 2, and 45 of the Trademark Act is also repeated and continued.

As an alternative to claiming acquired distinctiveness, applicant may amend the application to the Supplemental Register.  15 U.S.C. §1091; *see* 37 C.F.R. §§2.47, 2.75(a); TMEP §§816, 1202.02(b)(i).

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

## ASSISTANCE

Please call or email the assigned trademark examining attorney with questions about this Office action.

**How to respond.  Click to file a response to this nonfinal Office action.**

/Karen K. Bush/
Trademark Examining Attorney
Law Office 108
(571) 272-9136
karen.bush@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.** The response must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon**. If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.



When making a JM4 Tactical holster we went with this design because there is no one else that uses this design strap. It does cost more than the standard design because of the amount of leather and labor hours it take to make, but we wanted a unique look to our holsters. It has no functionality but the look is what we wanted. When people see the strap they automatically know that it is our holster. There are a lot of other ways to make holsters with belt clips and straps that belts feed though, but none like ours. Our holsters have had many articles written about them on Concealed carry.com, outdoor hub, recoil web, ammo land, Gunnerden.com, all outdoors.com, Usconcealedcarry.com, shooting illustrated.com, concealed nation.com, cheaper then dirt.com, guns.com. Everyone of these gun industry website love our unique design.

Signed James Chadwick Myers owner of JM4 Tactical.

X _____   Date: 03-14-2022

The Allen Company Swipe™ Switch Gun Holster provides a configurable solution, with durable construction, to help you find the comfort you demand whether you are a first-time gun owner or an experienced user. Our solid, magnetic retention system & high security, Fidlock® Magnetic Thumb Break Closure offer you unparalleled security while in use.



**MOST POPULAR HANDGUN MODELS – SIZE REFERENCE CHART**

*Don't see your gun model? Look for a similar style for size reference.

| Handgun - Make/Model | Swipe Switch Holster Size | Handgun - Make/Model | Swipe Switch Holster Size | Handgun - Make/Model | Swipe Switch Holster Size | Handgun - Make/Model | Swipe Switch Holster Size |
|---|---|---|---|---|---|---|---|
| **Ruger** | | **Glock** | | **Beretta** | | **Sig Sauer** | |
| Security-9 | 06 | G17, 22, 31 | 03 | 92X Fullsize | 01 | P365 | 02 |
| Security-9 Compact | 03 | G19, 23, 32, 25, 38, 40 | 06 | Px4 Storm | 03 | P365 XL | 02 |
| **Smith & Wesson** | | G20, 21 | 03 | APX | 06 | P320 Compact | 06 |
| M&P 45 Compact | 03 | G26, 27, 39, 28, 33 | 06 | 92 FS | 01 | P220, P226 | 03 |
| M&P 2.0 | 03 | G29, 30, 30s, 36 | 06 | **Springfield** | | P320 Full Size | 03 |
| M&P Shield | 02 | G43, 43X | 05 | Hellcat 3 | 02 | **Taurus** | |
| **Revolvers** | | **1911** | | XD | 06 | G2c | 02 |
| 2-3in barrel | 02 | Standard 1911 | 03 | XD-S | 06 | G3 | 02 |

Contact us at consumerservice@allencompany.net for questions.

---

**Details** | More Information | Reviews

The Allen Company Swipe™ Switch Gun Holster provides a configurable solution, with durable construction, to help you find the comfort you demand whether you are a first-time gun owner or an experienced user. Our solid, magnetic retention system & high security, Fidlock® Magnetic Thumb Break Closure offer you unparalleled security while in use. The switchable two-piece belt clip, for easier install, allows you to wear your holster across the outside of your belt or inside-the-waistband (IWB). Holsters have smooth, snag-proof, interior lining, helping you with faster draw speeds and are ambidextrous, designed for right & left-handed shooters. With removable and adjustable straps, stay comfortable and configure to either have an inside or outside facing thumb break. Available in a variety of sizes, fitting popular makes and models, find your fit and stay protected.

**Product Features**

- Configurable design & reinforced construction provides increased durability, helping you find your comfort level no matter if you are a first-time gun owner or an experienced user looking for a new solution
- Our solid, magnetic retention system & high security, Fidlock® Magnetic Thumb Break Closure offers unparalleled security with smooth interior lining helps you with easier gun removal to keep you ready as ever
- Giving you the control & comfort, you desire, configure your holster with removable or adjustable straps & have either an inside or outside facing thumb break











### United States Patent and Trademark Office (USPTO)

# USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on April 08, 2022 for
### U.S. Trademark Application Serial No.  90518181

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action in order to avoid your application abandoning.  Follow the steps below.

**(1)  Read the Office action**. This email is NOT the Office action.

**(2)  Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS). Your response must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response period. Otherwise, your application will be abandoned. See the Office action itself regarding how to respond.

**(3)  Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE

- **Check the status of your application periodically** in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

- **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

- **Beware of trademark-related scams**. Protect yourself from people and companies that may try to take financial advantage of you. Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you. We will never request your credit card number or social security number over the phone. And all official USPTO correspondence will only be emailed from the domain "@uspto.gov." Verify the correspondence originated from us by using your Serial Number in our database, TSDR, to confirm that it appears under the "Documents" tab, or contact the Trademark Assistance Center.

- **<u>Hiring a U.S.-licensed attorney</u>.** If you do not have an attorney and are not required to have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process. The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.

| **To:** | JM4 tactical (beth@uslawpros.com) |
|---|---|
| **Subject:** | U.S. Trademark Application Serial No. 90520663 - 3168CM-8TBF |
| **Sent:** | September 13, 2021 04:12:58 PM |
| **Sent As:** | ecom108@uspto.gov |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application
Serial No.**
90520663

**Mark:**

**Correspondence
Address:**
BETH FELIX
LEAVITT &
ELDREDGE LAW
FIRM
4204 SW GREEN
OAKS BLVD
STE 140
ARLINGTON, TX
76017
**Applicant:** JM4
tactical

**Reference/Docket
No.** 3168CM-8TBF

**Correspondence
Email Address:**

beth@uslawpros.com

## NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be **abandoned**. Respond using the Trademark Electronic Application System (TEAS).  A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date:** September 13, 2021

 The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issue(s) below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

DATABASE SEARCH

The trademark examining attorney searched the USPTO database of registered and pending marks and found no conflicting marks that would bar

registration under Trademark Act Section 2(d).  15 U.S.C. §1052(d); TMEP §704.02.

## SECTION 2(e)(5) FUNCTIONAL REFUSAL

Registration is refused because the applied-for mark, which consists of a three-dimensional configuration of the goods, appears to be a functional design for such goods.  Trademark Act Section 2(e)(5), 15 U.S.C. §1052(e)(5); *see* TMEP §1202.02(a)-(a)(ii).  A feature is functional if it is "'essential to the use or purpose of the [product]'" or "'it affects the cost or quality of the [product].'"  *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33, 58 USPQ2d 1001, 1006 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 34 USPQ2d 1161, 1163-64 (1995)); *Inwood Labs., Inc., v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10, 214 USPQ 1, 4 n.10 (1982); TMEP §1202.02(a)(iii)(A).

A mark that consists of a three-dimensional configuration of a product or its packaging is functional, and thus unregistrable, when the evidence shows that the design provides identifiable utilitarian advantages to the user; i.e., the product or container "has a particular shape because it works better in [that] shape."  *Valu Eng'g, Inc. v. Rexnord Corp.* , 278 F.3d 1268, 1274, 61 USPQ2d 1422, 1425 (Fed. Cir. 2002) (internal punctuation and citation omitted); *see* TMEP §1202.02(a)(iii)(A).

The evidence need not establish that the configuration at issue is the very best design for the particular product or product packaging.  A configuration can be held functional when the evidence shows that it provides a specific utilitarian advantage that makes it one of a few superior designs available.  *See In re Bose Corp.*, 772 F.2d 866, 227 USPQ 1 (Fed. Cir. 1985) (holding shape of a loudspeaker system enclosure functional because it conforms to the shape of the sound matrix and is thereby an efficient and superior design); *In re Dietrich*, 91 USPQ2d 1622 (TTAB 2009) (holding particular spoke arrangement of a bicycle wheel functional because it is more stable and provides better performance than wheels with other spoke arrangements featuring the same or greater number of spokes); *In re Am. Nat'l Can Co.* , 41 USPQ2d 1841 (TTAB 1997) (holding metal beverage containers with vertical fluting functional because vertical fluting is one of a limited number of ways to strengthen can sidewalls and it allows for an easier way to grip and hold the can); TMEP §1202.02(a)(v), (a)(v)(C).

On the other hand, where the evidence shows that the specific product or container configuration at issue provides no real utilitarian advantages to the user, but is one of many equally feasible, efficient and competitive designs, then it may be registrable.  *See In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 213 USPQ 9 (C.C.P.A. 1982).  However, a product configuration cannot be registered on the Principal Register without a showing of acquired distinctiveness.  *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 54 USPQ2d 1065 (2000); TMEP §1202.02(b)-(b)(i).

A third-party utility patent is relevant evidence of functionality when the patent discloses the utilitarian advantages of the applied-for product or product packaging configuration sought to be registered.  *See, e.g.*, *Kistner Concrete Prods. Inc. v. Contech Arch Techs., Inc.*, 97 USPQ2d 1912, 1921 n.7 (TTAB 2011); *In re Dietrich*, 91 USPQ2d 1622, 1627 (TTAB 2009); TMEP §1202.02(a)(v)(A).  The owner of a utility patent is not relevant to determining functionality.  *In re Heatcon, Inc.*, 116 USPQ2d 1366, 1371 (TTAB 2015) (citing *In re Pohl-Boskamp GmbH & Co.*, 106 USPQ2d 1042, 1046 n.22 (TTAB 2013); *In re Mars Inc.*, 105 USPQ2d 1859, 1861 (TTAB 2013); *In re Virshup*, 42 USPQ2d 1403, 1405 (TTAB 1997)).

As seen from the attached patent, the use of a magnet embedded on/in the holster lends to the improved method of securing the firearm or other holstered weapon.  The use of magnets on the present holster also creates a utilitarian advantage regarding the applied-for product.  Therefore the applied-for product design is functional and registration must be refused pursuant to Section 2(e)(5) of the Trademark Act.

A determination that an applied-for configuration mark is functional constitutes an absolute bar to registration on the Principal or Supplemental Registers, regardless of any evidence of acquired distinctiveness.  Trademark Act Sections 2(e)(5) and 23, 15 U.S.C. §§1052(e)(5), 1091; *see TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 58 USPQ2d 1001, 1006 (2001); *In re Controls Corp. of Am.*, 46 USPQ2d 1308, 1311 (TTAB 1998); TMEP §1202.02(a)(iii)(A).

## INFORMATION REQUEST

Applicant must provide the following information and documentation regarding the applied-for three-dimensional configuration mark:

(1)     A written statement as to whether the applied-for mark, or any feature(s) thereof, is or has been the subject of a design or utility patent or patent application, including expired patents and abandoned patent applications.  Applicant must also provide copies of the patent and/or patent application documentation.

(2)     Advertising, promotional, and/or explanatory materials concerning the applied-for configuration mark, particularly materials specifically related to the design feature(s) embodied in the applied-for mark.

(3)     A written explanation and any evidence as to whether there are alternative designs available for the feature(s) embodied in the applied-for mark, and whether such alternative designs are equally efficient and/or competitive.  Applicant must also provide a written explanation and any documentation concerning similar designs used by competitors.

(4)     A written statement as to whether the product design or packaging design at issue results from a comparatively simple or inexpensive method of manufacture in relation to alternative designs for the product/container.  Applicant must also provide information regarding the method and/or cost of manufacture relating to applicant's goods.

(5)     Any other evidence that applicant considers relevant to the registrability of the applied-for configuration mark.

(6)     Respond to the following questions:
     1.   What consists of the "securement device" on the holster?
     2.   Does the securement device at an end of the strap consist of a magnet or magnets?
     3.   Does the securement device extending from the body of the holster consist of a magnet or magnets?


*See* 37 C.F.R. §2.61(b); *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41, 213 USPQ 9, 15-16 (C.C.P.A. 1982); TMEP §§1202.02(a)(v) *et seq.*

Any document filed with the USPTO becomes part of the official public application record and will not be returned or removed.  TMEP §§404, 814.  If any of the information requested above is confidential or applicant does not want such information to become part of the public record for a valid reason, applicant should submit an explanation of those circumstances or redact confidential portions prior to submission.  *See* TMEP §814.  Applicants are not required to submit confidential information into the record; a written explanation or summary of that information may suffice.  *Id.*

Regarding the requirement for this information, the Trademark Trial and Appeal Board and its appeals court have recognized that the necessary technical information for ex parte determinations as to functionality is usually more readily available to an applicant, and thus an applicant is normally the source of most of the evidence in these cases.  *In re Teledyne Indus. Inc.*, 696 F.2d 968, 971, 217 USPQ 9, 11 (Fed. Cir. 1982); *see In re Babies Beat Inc.*, 13 USPQ2d 1729, 1731 (TTAB 1990) (holding registration was properly refused where applicant failed to comply with trademark examining attorney's request for copies of patent applications and other patent information); TMEP §1202.02(a)(v).

Failure to comply with a request for information can be grounds for refusing registration.  *In re AOP LLC*, 107 USPQ2d 1644, 1651 (TTAB 2013); *In re DTI P'ship LLP* , 67 USPQ2d 1699, 1701-02 (TTAB 2003); TMEP §814.


Applicant should note the following additional ground for refusal.


SECTIONS 1, 2, AND 45 NON-DISTINCTIVE CONFIGURATION REFUSAL

Registration is also refused because the applied-for mark consists of a nondistinctive product design or nondistinctive features of a product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness.  Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§1051-1052, 1127; *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 213-14, 54 USPQ2d 1065, 1068-69 (2000); *In re Slokevage*, 441 F.3d 957, 961, 78 USPQ2d 1395, 1398 (Fed. Cir. 2006); *see* TMEP §1202.02(b)(i).

A product design can never be inherently distinctive as a matter of law; consumers are aware that such designs are intended to render the goods more useful or appealing rather than identify their source.  *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. at 212-13, 54 USPQ2d at 1068-69; *In re Slokevage*, 441 F.3d at 962, 78 USPQ2d at 1399.  Thus, consumer predisposition to equate a product design with its source does not exist.  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. at 213, 54 USPQ2d at 1069.

Applicant may respond by providing evidence of acquired distinctiveness, such as verified statements of long term use, advertising and sales expenditures, examples of advertising, affidavits and declarations of consumers, customer surveys.  *See* 37 C.F.R. §2.41(a)(3); TMEP §§1212.02(g), 1212.06 *et seq.*  When determining whether the evidence shows the mark has acquired distinctiveness, the trademark examining attorney will consider the following six factors:  (1) association of the mark with a particular source by actual purchasers (typically measured by customer surveys linking the name to the source); (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage.  *See Converse, Inc. v. ITC*, 909 F.3d 1110, 1120, 128 USPQ2d 1538, 1546 (Fed. Cir. 2018) ("the *Converse* factors").   "[N]o single factor is determinative."  *In re Steelbuilding.com*, 415 F.3d 1293, 1300, 75 USPQ2d 1420, 1424 (Fed. Cir. 2005); *see* TMEP §§1212.06 *et seq.*  Rather, all factors are weighed together in light of all the circumstances to determine whether the mark has acquired distinctiveness.  *In re Steelbuilding.com*, 415 F.3d at 1300, 75 USPQ2d at 1424.  This

evidence must demonstrate that the relevant public understands the primary significance of the mark as identifying the *source* of applicant's service. *Id.* at 1297, 75 USPQ2d at 1422. However, "[t]he evidence must relate to the promotion and recognition of the specific configuration embodied in the applied-for mark and not to the goods in general." *In re Change Wind Corp.*, 123 USPQ2d 1453, 1467 (TTAB 2017) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11, 214 USPQ 1, 4 n.11 (1982)).

To establish acquired distinctiveness, an applicant may rely only on use in commerce that may be regulated by the U.S. Congress. *See* 15 U.S.C. §§1052(f), 1127. Use solely in a foreign country or between two foreign countries is not evidence of acquired distinctiveness in the United States. TMEP §§1010, 1212.08; *see In re Rogers*, 53 USPQ2d 1741, 1746-47 (TTAB 1999).

Also note, evidence of five years' use considered alone is generally not sufficient to show acquired distinctiveness for nondistinctive product design marks. *E.g.*, *In re R.M. Smith, Inc.*, 734 F.2d 1482, 1485, 222 USPQ 1, 3 (Fed. Cir. 1984); *In re Change Wind Corp.*, 123 USPQ2d 1453, 1467 (TTAB 2017).

As an alternative to claiming acquired distinctiveness, applicant may amend the application to the Supplemental Register. 15 U.S.C. §1091; *see* 37 C.F.R. §§2.47, 2.75(a); TMEP §§816, 1202.02(b)(i).

## DUPLICATE APPLICATION

Registration is refused because this application and U.S. Application Serial No. 90518181 appear to be duplicate applications. 37 C.F.R. §2.48; TMEP §703. The USPTO will not issue duplicate registrations. 37 C.F.R. §2.48; TMEP §703. Applicant may respond to this refusal by abandoning one of them.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

## ASSISTANCE

Please call or email the assigned trademark examining attorney with questions about this Office action.

**How to respond.  Click to file a response to this nonfinal Office action.**

/Karen K. Bush/
Trademark Examining Attorney
Law Office 108
571-272-9136
Karen.Bush@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.** A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.









CUCB.jpeg
11.5.5.52565
2.03.31 PM 9/13/2021
Windows 10 Enterprise N 2016 LTSB 64-bit Build 14393
http://pdfpiw.uspto.gov/.piw?PageNum=0&docid=11000113&IDKey=27BEF71CPA0A%0D%0A&homeUrl=http%3A%2F%2Fpatft.uspto.gov%2Fnetacgi%2Fnph-Parser%3FSect1%3DPTO1%2526Sect2%3DHITOFF%2526d%3DPALL%2526p%3D1%2526u%3D%252Fnetahtml%252FPTO%252Fsrchnum.htm%2526r%3D1%2526f%3DG%2526l%3D50%2526s1%3D11000113.PN.%2526OS%3DPN%2FP%2F11000113%2526RS%3DPN%2FP11000113



CUCS.jws
11.5.5.52565
2:04:49 PM 9/13/2021
Windows 10 Enterprise N 2016 LTSB 64-bit Build 14393
http://pdfpiw.uspto.gov/.piw?PageNum=0&docid=11000113&IDKey=27BEF71CPA0A%0D%0A&HomeUrl=http%3A%2F%2Fpdfpiw.uspto.gov%2Fnetacgi%2Fnph-Parser%3FSect1%3DPTO1%2526Sect2%3DHITOFF%2526d%3DPALL%2526p%3D1%2526u%3D%25252Fnetahtml%25252FPTO%25252Fsrchnum.htm%2526r%3D0%2526f%3DG%2526l%3D50%2526s1%3D11000113.PN.%2526OS%3DPN%2F11000113%2526RS%3DPN%2F11000113

| To: | JM4 tactical (beth@uslawpros.com) |
|---|---|
| **Subject:** | U.S. Trademark Application Serial No. 90520663 - 3168CM-8TBF |
| **Sent:** | September 13, 2021 04:13:00 PM |
| **Sent As:** | ecom108@uspto.gov |
| **Attachments:** | |

### United States Patent and Trademark Office (USPTO)

### USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **September 13, 2021** for
### U.S. Trademark Application Serial No. 90520663

Your trademark application has been reviewed by a trademark examining attorney. As part of that review, the assigned attorney has issued an official letter that you must respond to by the specified deadline or your application will be abandoned. Please follow the steps below.

**(1) Read the official letter.**

**(2) Direct questions** about the contents of the Office action to the assigned attorney below.

/Karen K. Bush/
Trademark Examining Attorney
Law Office 108
571-272-9136
Karen.Bush@uspto.gov

Direct questions about navigating USPTO electronic forms, the USPTO website, the application process, the status of your application, and/or whether there are outstanding deadlines or documents related to your file to the Trademark Assistance Center (TAC).

**(3) Respond within 6 months** (or earlier, if required in the Office action) from **September 13, 2021**, using the Trademark Electronic Application System (TEAS). The response must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. See the Office action for more information about how to respond

## GENERAL GUIDANCE

· **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

· **Update your correspondence email address**, if needed, to ensure you receive important USPTO notices about your application.

· **Beware of misleading notices sent by private companies about your application.** Private companies not associated with the USPTO use public information available in trademark registrations to mail and email trademark-related offers and notices – most of which require fees. All **official USPTO correspondence** will only be **emailed from the domain "@uspto.gov."**