Brandon James Leavitt, Tx Bar No. 24078841, *pro hac vice*
LEAVITT ELDREDGE LAW FIRM
4204 SW Green Oaks Blvd., Suite 140
Arlington, TX 76107
(214) 727-2055
brandon@uslawpros.com

Jason K. Smith, 14323
MK SMITH, APC
9891 Irvine Center Dr., Ste. 200
Irvine, CA 92618
801-916-8723
jsmith@mks-law.com

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| **JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**HER TACTICAL, LLC; E & R LLC** *dba* **HER TACTICAL; VICKY ARLENE JOHNSTON; and BLAKE CHEAL**<br><br>**Defendants.** | PLAINTIFFS' ANSWER IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br>Case No. 1:22-cv-01121-DAK-DBP<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Dustin B. Pead<br><br>**Jury Demand** |

Plaintiffs, **JM4 Tactical, Inc.** and **James Chadwick Myers** hereby answer in opposition to the motion to dismiss filed by Defendants **Her Tactical LLC**, **E & R LLC**, **Vicky Arlene Johnston**, and **Blake Cheal**, and state as follows:

TABLE OF CONTENTS

I. BACKGROUND AND SUMMARY .................................................................................................. 1

II. ISSUES BEFORE THE COURT ..................................................................................................... 2

    A. Should the Court disregard those portions of the Defendants' arguments that violate the Utah Standards of Professionalism and Civility, such as: .................................................. 2

        i. Attributing without proper basis improper motives to the Plaintiffs? ......................... 2

        ii. Casual threats of sanctions arising from unjustifiable inferences? ............................. 2

        iii. False record inferences attributing incorrect positions to Plaintiffs, such as: ............ 2

    B. Do the specific pleadings unaddressed in Defendants' argument, viewed in the light most favorable to Plaintiffs, plausibly support a conclusion that: .............................................. 2

        i. Plaintiffs' trade-dress-in-suit are distinctive and nonfunctional? ................................ 2

        ii. Defendants' actions are likely to confuse relevant consumers? .................................. 2

        iii. Defendants Johnson and Cheal had knowledge of and specific intent to induce infringement of the patents-in-suit? ........................................................................... 2

    C. By alleging the Defendants violated "one or more of" a portfolio of patents-in-suit do the Plaintiffs' meet the broad pleading standards contemplated by local rules? ...................... 2

III. LEGAL STANDARD .................................................................................................................. 2

IV. PROFESSIONAL STANDARD ..................................................................................................... 3

V. ARGUMENT AND AUTHORITIES ................................................................................................ 4

    A. Much of Defendants' brief violates professional standards and should be ignored ........... 4

        i. Without basis, Defendants attribute improper motives to the Plaintiffs ....................... 4

        ii. Defendants casually threaten sanctions from an unjustifiable inference ..................... 4

        iii. Defendants infer a false record attributing incorrect positions and claims that Plaintiffs do not seek ................................................................................................... 5

    B. Defendants ignore or lightly dismiss relevant supportive allegations ................................ 8

        i. Defendants overlook factual allegations that plausibly support the distinctiveness and nonfunctionality elements of trade dress infringement ................................................ 8

        ii. Defendants overlook factual allegations that plausibly support a finding of likelihood of confusion ................................................................................................................ 10

        iii. Defendants overlook factual allegations that plausibly support the knowledge and specific intent elements of indirect infringement ...................................................... 13

    C. Plaintiffs have provided adequate notice of their patent infringement claims ................. 15

VI. CONCLUSION ........................................................................................................................ 16

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 1, 2, 3, 16

*Avago Technologies General IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.*, No. 15-cv-04525-EMC, 2016 WL 1623920 (N.D. Cal. Apr. 25, 2016) ....................................................... 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 1, 2, 3, 16

*Bramhall v. Cyprus Credit Union, Inc.,* 2:19-cv-00477-RJS-DAO (D. Utah Sep 30, 2021) (J. Shelby) (MJ. Oberg) ................................................................................................................... 3

*Elevate Fed. Credit Union v. Elevations Credit Union*, 1:20-CV-00028-DAK-JCB (D. Utah Mar 16, 2022) (J. Kimball) ................................................................................................................ 10

*Golden v. Apple Inc.*, 2020-1508 (Fed. Cir. Sep. 03, 2020) (nonprecedential) .................... 2, 3, 15

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323 (Fed. Cir. 2012) 3

*Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, 192 P.3d 858 ....................................... 7

*Vitamins Online, Inc. v. HeartWise, Inc.,* Case No.: 2:13-cv-00982-DAK (D. Utah Nov 10, 2020) (J. Kimball) ............................................................................................................................ 7, 10

**STATUTES**

15 U.S.C. § 1125 ................................................................................................................... 5, 7, 10

35 U.S.C. § 271 ............................................................................................................................. 5

**RULES**

DUCivR 83-1.1(d) ......................................................................................................................... 3

Fed. R. Civ. P. 11 ................................................................................................................ 4, 5, 15

Fed. R. Civ. P. 26 ........................................................................................................................ 16

Utah Standards of Professionalism & Civility 1 ...................................................................... 3, 4

Utah Standards of Professionalism & Civility 3 ...................................................................... 3, 4

Utah Standards of Professionalism & Civility 4 ................................................................... 3, 4, 5

Utah Standards of Professionalism & Civility 5 ........................................................................... 4

### I.    BACKGROUND AND SUMMARY

1. Plaintiffs filed their Original Complaint on September 19, 2022 and on October 21, 2022 the Defendants moved to dismiss. *See* Dkt No. 1, Plaintiffs' Original Complaint (Sept. 19, 2022); *see* Dkt. No. 15, Defendants' Motion to Dismiss (Oct. 21, 2022).

2. Specifically, Defendants seek dismissal of all claims, and argue in support that Plaintiffs have failed to meet the standards of *Iqbal* and *Twombly* with respect to: (1) establishing distinctive and nonfunctional trade dress; (2) likelihood of consumer confusion; (3) knowledge and intent to induce patent infringement; and (4) broadly alleged facts to establish direct patent infringement. Plaintiffs respond herein with corrective or supplemental authorities and by identifying relevant evidence omitted or lightly treated within the Defendants' brief.

3. But in an array of *ad hominem* attacks, false attributions of motive, unjustifiable inferences of poor diligence, and a casual threat to file sanctions—Defendants manufacture and then brief responses to three issues not before this Court: (1) a non-existent trade secret misappropriation claim; (2) a non-existent "passing off" theory for unfair competition; and (3) a contrived and irrelevant ambiguity as to the registration status of the trade-dress-in-suit. Plaintiffs respond herein by citing the Utah Standards of Professionalism and Civility and request that this Court entirely disregard any of the Defendants' statements found to be in violation thereof.

4. Plaintiffs accordingly submit that, upon review of the relevant matter properly before this Court, all matters meet the pleadings standards of *Iqbal*, *Twombly*, and/or the Federal Rules of Civil Procedure as interpreted by the local rules of this Court.

## II. ISSUES BEFORE THE COURT

A. **Should the Court disregard those portions of the Defendants' arguments that violate the Utah Standards of Professionalism and Civility, such as:**

    i. Attributing without proper basis improper motives to the Plaintiffs?

    ii. Casual threats of sanctions arising from unjustifiable inferences?

    iii. False record inferences attributing incorrect positions to Plaintiffs, such as:

        (a) *A manufactured trade secret misappropriation claim?*

        (b) *A false inquiry into the registration status of Plaintiffs trade dress?*

        (c) *A misrepresentation of the Plaintiffs' unfair competition theory?*

B. **Do the specific pleadings unaddressed in Defendants' argument, viewed in the light most favorable to Plaintiffs, plausibly support a conclusion that:**

    i. Plaintiffs' trade-dress-in-suit are distinctive and nonfunctional?

    ii. Defendants' actions are likely to confuse relevant consumers?

    iii. Defendants Johnson and Cheal had knowledge of and specific intent to induce infringement of the patents-in-suit?

C. **By alleging the Defendants violated "one or more of" a portfolio of patents-in-suit do the Plaintiffs' meet the broad pleading standards contemplated by local rules?**

## III. LEGAL STANDARD

5. Defendants correctly acknowledge that allegations of patent infringement "are subject to the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ." *Golden v. Apple Inc.*, 2020-1508 at *3 (Fed. Cir. Sep. 03, 2020) (nonprecedential). *Compare* Dkt. No. 15, pg. 3.

6. "Under this standard, a court must dismiss a complaint if it fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Apple*, 2020-1508 at *3 (*quoting Twombly*, 550 U.S. at 570). "This 'facial plausibility' standard requires 'more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting Twombly*, 550 U.S. at 555). "Rather, it requires the plaintiff to allege facts that add up to 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (*quoting Iqbal*, 556 U.S. at 678) *and Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

7. "Although **courts do not require heightened fact pleading of specifics**, a plaintiff must allege enough facts to raise a reasonable expectation that discovery will reveal that the defendant is liable for the misconduct alleged." *Id.* (cleaned up) (emphasis added) (*quoting In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) *and Twombly*, 550 U.S. at 556).

### IV. PROFESSIONAL STANDARD

8. "This court requires litigants to 'comply with . . . Utah Rules of Professional Conduct, and Utah Standards of Professionalism and Civility.'" *Bramhall v. Cyprus Credit Union, Inc.*, 2:19-cv-00477-RJS-DAO at *29 (D. Utah Sep 30, 2021) (J. Shelby) (MJ. Oberg) (*quoting* DUCivR 83-1.1(d)).

9. Utah Standard of Professionalism and Civility 3 provides a "lawyer shall not, without an adequate factual basis, attribute to the court improper motives, purpose, or conduct. Moreover, Standard 1 provides lawyers shall treat all other counsel, parties, judges, witnesses, and other participants in all proceedings in a courteous and dignified manner". *Bramhall* at *30 (cleaned up) (*quoting* Utah Standards of Professionalism & Civility 1, 3).

10. Utah Standard of Professionalism and Civility 4 provides a "[l]awyer[] shall never knowingly attribute to other counsel a position or claim that counsel has not taken or seek to

create such an unjustified inference or otherwise seek to create a 'record' that has not occurred. [Utah Standards of Professionalism & Civility 4](#) (last accessed Oct. 25, 2022) .

11.  Utah Standard of Professionalism and Civility 5 provides a "[l]awyer[] shall not lightly seek sanctions and will never seek sanctions against . . . another lawyer for any improper purpose." Utah Standards of Professionalism & Civility 5.

### V.  ARGUMENT AND AUTHORITIES

**A.  Much of Defendants' brief violates professional standards and should be ignored**

**i.  Without basis, Defendants attribute improper motives to the Plaintiffs**

12.  In their brief on the present motion Defendants state that, "[b]ased on their odd Complaint, Plaintiffs appear frustrated" and that "the Complaint effectively communicates extreme frustration" and "evident vitriol". Dkt. No. 15 pp. 2, 13. *But see* Utah Standards of Professionalism & Civility 1, 3.

13.  Accordingly, Plaintiffs respectfully submit that Defendants' use of such attributions has no adequate factual basis and falls short of their obligation to proceed in a courteous and dignified manner. The Court should thus disregard any such statements in deciding the Defendants' motion.

**ii.  Defendants casually threaten sanctions from an unjustifiable inference**

14.  Likewise, Defendants imply that Plaintiffs may have failed to conduct a pre-filing investigation and invoke the specter of mandatory Rule 11 sanctions—without formally moving for sanctions or having previously requested proof of Plaintiffs' pre-filing conduct. Dkt. No. 15 p. 13. *But see* Utah Standards of Professionalism & Civility 4-5.

15. Should Defendants choose to file an authentic motion and brief for Rule 11 sanctions the Plaintiffs are prepared to respond—but until then Defendants' statements herein fall short of their obligation not to treat sanctions lightly and further have no relevance to this motion to dismiss. This Court should thus disregard them.

### iii. Defendants infer a false record attributing incorrect positions and claims that Plaintiffs do not seek

#### (a) Plaintiffs do **not** seek a claim for trade secret misappropriation

16. In their principal brief Defendants misconstrue a typographical error to manufacture and attribute to Plaintiffs a claim for trade secret misappropriation. *See generally* Dkt. No. 15 Argument Part I. *But see* Utah Standards of Professionalism & Civility 4.

17. Specifically, within the heading of Part IV.B of the Complaint, Plaintiffs inserted a typographical error stating "trade *secret*" rather than "trade *dress*". *See Id.* at Part IV.B, Heading. *But see* Dkt. No. 2 ¶ 7 ("[t]his is an action for patent infringement pursuant to 35 U.S.C. § 271 and both trade dress infringement and unfair competition pursuant to 15 U.S.C. § 1125(a) and common law.") *and Id.* at ¶¶ 7, 10, 12, 33, 35, 61, 63, and 65 (defining or describing the Plaintiffs' trade dress").

18. And although Plaintiffs regret the typographical error, a good faith observer can easily ascertain that the *gravitas* of the Part IV.B pleadings addresses unfair competition and common law trade dress infringement while entirely lacking a single allegation that would support a misappropriation claim.

19. Significantly, Defendants even acknowledge that "trade secret *infringement*", if properly invoked, would be properly styled "trade secret *misappropriation*" and require citation to statutory authority not present in the Plaintiffs' filings. *See* Dkt. No. 15, Part I.

20. Reference to Defendants' own typographical errors provides an illustrative point herein. In their submission signature, Defendants assert that they represent "Brigham Young University", a non-Party. *See* Dkt. No. 15, Signature. Nevertheless, Plaintiffs reasonably understand from the context of the submission that Defendants' reference to "Brigham Young University" is unintentional and has no relevance to issues—but Defendants have not afforded Plaintiffs the same courtesy.

21. Accordingly, Plaintiffs respectfully submit that Defendants have fallen short of their professional obligations not to create a false record and the Court should disregard any such inferences in deciding the Defendants' motion.

### (b) *Plaintiffs do **not** plead that their trade dress are registered*

22. In their principal brief Defendants seek clarity as to the allegedly "ambiguous" registration status of Plaintiffs' trade dress by introducing and discussing "irrelevant" evidence "not essential" for judication of the present motion. Dkt. No. 15, Part III. *But see* Dkt. No. 2 ¶¶ 7, 10, 12 (wherein Plaintiffs clearly establish that "[t]his is an action for trade dress infringement . . . . pursuant to . . . common law", the trade dress is "unregistered", and subject to USPTO "applications").

23. Yet despite their periphrastic analysis, Defendants ultimately conclude the Plaintiffs' actual position—that the trade-dress-in-suit is unregistered. Dkt. No. 15, Part III.

24. But if the analysis ultimately concluded the Plaintiffs position and was nevertheless irrelevant and non-essential to the present motion anyway, Plaintiffs accordingly submit that there is no legitimate basis for the Court to consider the registration status of their trade dress when ruling on this motion.

### *(c)* *Plaintiffs plead unfair competition by* **false advertising**—*not* **passing off**

25. In their principal brief Defendants attempt to limit the definition of unfair competition to "passing off" and then claim that, by not pleading facts to support this theory the Complaint is deficient with respect to the Plaintiffs' unfair competition claim. *See generally* Dkt. No. 15, Part IV.

26. However, this Court has already concluded that unfair competition may not be so restricted. *See, e.g., Vitamins Online, Inc. v. HeartWise, Inc.,* Case No.: 2:13-cv-00982-DAK at *53 (D. Utah Nov 10, 2020) (J. Kimball)* ("[W]hile [Defendant] attempts to limit the definition of unfair competition, the Utah Supreme Court explicitly stated that unfair competition is **not limited to passing off/palming** off and misappropriation") (emphasis added). *Accord Id.* at *29-30 (summarizing 15 U.S.C. § 1125(a) and finding that "false advertising" it supports a "false advertising" theory for unfair competition).

27. Here, in challenging a "passing off" theory for unfair competition that the Plaintiffs clearly do not seek, Defendants neglected to challenge any of the Plaintiffs' pleadings to establish unfair competition by "false advertising". *Compare Id.* at n.3 (To establish a Lanham Act claim for false advertising Plaintiffs needed only to plausibly plead allegations of "falsity", "commerce", "deception", and "injury") *and Id.* at *52 (establishing that false advertising pursuant to Utah common need not require allegations of confusion or deception) (*citing Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 13, 192 P.3d 858, 862).

28. Accordingly, Plaintiffs respectfully submit that Defendants have fallen short of their professional obligations not to create a false record and the Court should disregard any such inferences in deciding the Defendants' motion. *But see infra* Part V.B.ii (establishing that

Plaintiffs plausibly pled likelihood of confusion, an element of trade dress infringement comprising factual assertions that overlap with the unfair competition elements of "falsity" and "deception".).

**B.   Defendants ignore or lightly dismiss relevant supportive allegations**

   **i.   Defendants overlook factual allegations that plausibly support the distinctiveness and nonfunctionality elements of trade dress infringement**

29.   In their principal brief Defendants argue "the Complaint lacks factual allegations sufficient to plausibly state that its purported trade dress has acquired secondary meaning or is non-functional." *See generally* Dkt. No. 15, Part III. *See generally Id*. (citing well-known platitudes of Supreme Court and interpretive case law to establish that trade dress infringement requires these elements).

30.   Yet even though Defendants incorporate ¶ 61 of the Complaint in their analysis, they entirely failed to consider the factual and judicial context added by the Plaintiffs' other relevant allegations such as can be found in ¶¶ 12-15. *See* Dkt. No. 1.

31.   Plaintiffs respectfully assert that the factual and judicial context gained by these omitted provisions establishes every one of the disputed elements of trade dress infringement (*see* Dkt. No. 1, *emphases added*):

| | **Relevant and Supportive Allegations** |
|---|---|
| **ACQUIRED DISTINCTIVENESS—** | ¶13. From 2016 to the present, the JM4 IWB magnetic retention holster **has benefited from wide commercial success and maintains a strong reputation** for safety, convenience, and quality of construction.<br><br>¶14. **As a result of JM4's commercial success, reputation, and extensive branding efforts, its magnetic retention holsters are readily identifiable** within the gun holster industry **by the overall look and aesthetics of the product's shape and configuration**.<br><br>¶15. From July 2021 through August 2021, JM4 **collaborated** with third party entity Chamber Media, LLC **to create commercials** for its magnetic retention holsters. |

| | **Relevant and Supportive Allegations** |
|---|---|
| **NONFUNCTIONAL MARK—** | ¶61. The **overall visual impression** created in the consumer's mind **when viewing the non-functional aspects** of the Plaintiff's IWB magnetic retention gun holsters, **and not from the utilitarian or useful aspects of the products**, when considered together, is the Plaintiffs' trade dress.<br><br>¶12a-b. "The mark consists of a **product configuration of a holster**, wherein the holster comprises a strap attached to a holster body, the strap having a securement device at an end of the strap, the body having a second securement device extending from the body, **the dashed lines** of the body represent positioning of the strap and securement devices and **are not claimed as part of the mark**."<br><br><br><br>USPTO Serial No. 90/518,181      USPTO Serial No. 90/520,663 |

32. The above allegations are not conclusory but factual in nature and this Court must accept in the light most favorable to the Plaintiffs the truth of each factual allegation. For these reasons, this Court should overrule the Defendants' motion to dismiss the Plaintiffs' claims for trade dress infringement as the facts asserted plausibly support the elements of acquired distinctiveness and nonfunctionally—which need not be specifically pled.

    ii.    **Defendants overlook factual allegations that plausibly support a finding of likelihood of confusion**

33.    In their principal brief Defendants argue that Plaintiffs "fail to allege actual facts regarding . . . likelihood of confusion as to the origin" of the Defendants' products. Dkt. No. 15, Part IV.

34.    But this Court takes a far more expansive approach to this element. With respect to unfair competition, Plaintiffs may show misrepresentation in lieu of confusion and confusion may apply to any of affiliation, connection, or association, origin, sponsorship, or approval. *See, e.g., Vitamins Online*, Case No.: 2:13-cv-00982-DAK at *29-30 (detailing and interpreting 15 U.S.C. § 1125(a)). And with respect to common law trade dress infringement, Plaintiffs need only plausibly establish that "a few" of the following factors: "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks." *Compare [Elevate Fed. Credit Union v. Elevations Credit Union*, 1:20-CV-00028-DAK-JCB at *32-33 (D. Utah Mar 16, 2022) (J. Kimball)](#) (establishing Lanham Act confusion factors) *and cf. Id.* at 45 (applying the confusion factors to common law trade dress).

35.    Accordingly, despite any assertions otherwise, the Complaint clearly establishes misrepresentations of fact that, when viewed in a light most favorable to the Plaintiffs, is likely to establish at least one the factors of confusion with respect to affiliation, connection, or association, origin, sponsorship, or approval. (*See* Dkt. No. 1, emphases added):

| | **Relevant and Supportive Allegations** |
|---|---|
| **SIMILARITY OF MARK AND PRODUCTS —** | ¶32. On or around August 2022, Plaintiffs purchased samples of the Defendants' IWB magnetic retention holsters and **documented the similarities between the Parties' products within the following representative photographs**:     <br>¶34. **Upon further review** of the Defendants' IWB magnetic retention holsters, **Plaintiffs have concluded that they are confusingly similar** yet poorly crafted, unsafe, and not fit for use within their advertised purpose.<br>¶63. Because Defendants' IWB magnetic retention holsters are **confusingly similar to the Plaintiffs' own holsters, and because Plaintiffs invented, patented, and developed a trade dress around that holster design**, the **Defendants misleading public assertions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Parties' respective goods, or as to the origin, sponsorship, or approval of the Parties' respective goods.** |

| | **Relevant and Supportive Allegations** |
|---|---|
| **INTENT AND MARKETING—** | ¶15. From July 2021 through August 2021, JM4 **collaborated with third party entity Chamber Media**, LLC to create commercials for its magnetic retention holsters.<br>¶16. At least one of the directors or employees at Chamber Media, creative lead Eric Woods, is listed as **a friend of Vicky Johnson** on her personal Facebook page.<br>¶17. On August 18, 2021, Chamber Media provided JM4 with three talent agent options that it sourced from third party entity Talent Management Group, Inc. ("TMG").<br>¶18. At least one of the three talent agents provided by TMG, **Dan Fowlks**, is listed as **a friend of Vicky Johnston** on her personal Facebook page.<br>¶19. Further, TMG is **known to source talent agents from Vicky Johnston** Casting, a third-party entity owned and operated exclusively by Defendant Vicky Johnston.<br>¶20. On August 20, 2021, Johnston created a Facebook page for Defendant Her Tactical, which was not yet a registered entity.<br>¶21. On August 22, 2021, JM4 conducted its commercial shoot with Chamber Media. JM4 had selected **Dan Fowlks** but was unable to retain him due to a scheduling conflict.<br>¶22. JM4 had **provided Chamber Media with approximately ten of its holsters** for the purpose of the commercial shoot **but**, between August 22, 2021 and December 9, 2021, **approximately seven of these holsters went missing without any explanation.** |

| | |
|---|---|
| | ¶23. On September 24, 2021, Her Tactical posted its first video showing an IWB magnetic retention holster that it **planned to launch in October of 2021**. |
| | ¶24. On November 10, 2021, in further **collaboration with Chamber Media**, JM4 suggested a plurality of versatile ways that its IWB magnetic retention holsters **could be secured, including to the front center of a bra.** |
| | ¶25. On January 6, 2022, Johnston registered Her Tactical on behalf of Defendant E&R, which also uses the name "Her Tactical" as a *dba*. |
| | ¶26. On information and belief, Johnston is the sole owner and employee of both Her Tactical and E&R and directs all activities of each. |
| | ¶27. Alternatively, Johnston and Cheal manage E&R and Her Tactical together and jointly direct all activities of each. |
| | ¶28. At least as of January 18, 2022, one or more of the Defendants have advertised IWB magnetic retention holsters online, **including how they might be secured to the front center of a bra**, and another of which purports to show the holster as safe and secure while in use. |
| | ¶ 35. **Plaintiffs have not given Defendants any permissions to use, sell, offer, or import** IWB magnetic retention **holsters that meet or resemble the claims of its patents or trade dress.** |
| | ¶36. Yet to date, Plaintiffs have discovered Defendants' holsters for sale at: (list excluded) |
| | ¶ 62. **Defendants' public assertions** that their gun holsters are new, "brand new", "revolutionary", and "patent pending" **comprise false or misleading descriptions of fact, or false or misleading representations of fact.** |
| | ¶ 64. **Because Defendants advertise their** IWB magnetic retention **holsters as well constructed, safe to use, and effective for the purpose in which they are advertised**—whereas the Plaintiffs in testing can demonstrate otherwise—**Defendants have misrepresented the nature, characteristics, or qualities of their gun holsters**. |

| | **Relevant and Supportive Allegations** |
|---|---|
| **STRENGTH—** | ¶13. From 2016 to the present, the JM4 IWB magnetic retention holster has **benefited from wide commercial success and maintains a strong reputation** for safety, convenience, and quality of construction. |
| | ¶14. **As a result of JM4's commercial success, reputation, and extensive branding efforts, its magnetic retention holsters are readily identifiable within the gun holster industry by the overall look and aesthetics of the product's shape and configuration**. |

The above allegations are not conclusory but factual in nature and this Court must accept in the light most favorable to the Plaintiffs the truth of each factual allegation. For these reasons, this Court should overrule the Defendants' motion to dismiss any claims pursuant to grounds that likelihood of confusion has not been plausibly pled.

### iii. Defendants overlook factual allegations that plausibly support the knowledge and specific intent elements of indirect infringement

36. In their principal brief Defendants argue the Plaintiffs pleadings "are nothing more than vague and general assertions . . . [lacking] factual statements" that fail to establish the requisite knowledge (or willfulness) and specific intent elements. Dkt. No. 15, Part II. *See generally Id.* (collecting multijurisdictional authorities to establish that indirect patent infringement requires these elements).

37. Yet even though Defendants incorporated ¶¶ 48-52 of the Complaint in their analysis, they entirely failed to consider the factual and judicial context added by the Plaintiffs' other relevant allegations such as can be found in ¶¶ 15-27, 30-31, and 44-46. *See* Dkt. No. 1.

38. Plaintiffs respectfully assert that the factual and judicial context gained by these provisions establishes every one of the disputed elements of indirect infringement (*see* Dkt. No. 1, *emphases added*):

| | **Relevant and Supportive Allegations** |
|---|---|
| **SPECIFIC INTENT—** | ¶26. On information and belief, Johnston is the sole owner and employee of both Her Tactical and E&R and **directs all activities of each**. |
| | ¶27. Alternatively, Johnston and Cheal manage E&R and Her Tactical together and **jointly direct all activities of each**. |
| | ¶45. **Specifically, the Defendants have formed a joint enterprise**. As evidenced by entity filing paperwork showing common addresses, dbas, and ownership, and as acknowledged in entity marketing that the companies are a "family business" by marital partners Johnston and Cheal, **the Defendants have an express or implied agreement to share a common purpose in which they share a financial interest and have an equal right of control**. |
| | ¶46. Alternatively, Johnston, and on information and belief Cheal, are the sole agents of Defendants Her Tactical and E&R, or **intended to receive a benefit from Her Tactical and E&R as a result of their infringements**. |
| | ¶48. Defendant Johnston, and on information and belief, Defendant Cheal, each **took action that was intended to cause** and led to the **literal or direct infringement of Plaintiffs' patents** by Defendants Her Tactical and/or E&R. |
| | ¶49. Defendants Her Tactical and/or E&R **carried out the actions induced upon them** by Johnston and Cheal. |

| | **Relevant and Supportive Allegations** |
|---|---|
| **KNOWLEDGE / WILLFUL BLINDNESS—** | ¶30. On August 19, 2022, JM4 provided an **infringement notice to Defendants stating that the Her Tactical sales of IWB magnetic retention infringed at least the Plaintiff's utility patent.** |
| | ¶31. On August 22, 2022, **Johnston revealed at least two of the Defendants were already aware of JM4's utility patent registration and then declined to cease and desist selling IWB magnetic retention products** even after Plaintiffs informed her that there were additional relevant patents. |
| | ¶ 50. Johnston, and on information and belief Cheal, **were aware of at least one of the Plaintiffs' patents and knew that the acts** by Her Tactical and/or E&R, **if taken, would constitute infringement of that patent.** |
| | ¶51. Alternatively, Johnston, and on information and belief Cheal, knew that there was a **high probability that the acts** by Her Tactical and/or E&R **would infringe a patent held by the Plaintiffs' patents and took deliberate steps to avoid learning of the infringement.** |
| | (Other supporting allegations include: ¶¶ 15-25, which collectively establish how Defendant Johnston plausibly learned of Plaintiffs' patented products). |

39.     The above allegations are not conclusory but factual in nature and this Court must accept in the light most favorable to the Plaintiffs the truth of each factual allegation. For these reasons, this Court should overrule the Defendants' motion to dismiss the Plaintiffs' claims of indirect infringement against Defendants Johnston and Cheal as the facts asserted plausibly support the elements of knowledge (or willfulness) and specific intent to infringe—which need not be specifically pled.

C.      **Plaintiffs have provided adequate notice of their patent infringement claims**

40.     Defendants object that they lack sufficient notice of the Plaintiffs' patent claims because the pleadings allege infringement of at "least one of" the patents-in-suit rather than specify exactly which facts apply to which patents. *See* Dkt. No. 15 pp. 1-3, 5, 13.

41.     However, Defendants do not provide any authorities that require more specific pleadings for patent infringement claims. Rather, "courts do not require heightened fact pleading of specifics, where the plaintiff alleges enough facts to raise a reasonable expectation that discovery will reveal that the defendant is liable for the misconduct alleged." *Apple*, 2020-1508 at *3 (internal citations omitted).

42.     Furthermore, this Court's patent local rules expressly anticipate the Defendants' concern and outline how the specific bases of patent claims should be fleshed out through the Court's supplemental federal discovery procedures:

> **Complaints and counterclaims in most patent cases are worded in a bare-bones fashion, necessitating discovery to flesh out the basis for each party's contentions.** The Rules require the parties to provide the particulars behind allegations of infringement, non-infringement, and invalidity at an early date. Because Federal Rule of Civil Procedure 11 requires a party to have factual and legal support for allegations in its pleadings, early disclosure of the basis for each party's allegations will impose no unfair hardship "likelihood of confusion" AND "common law" DAKand will benefit all parties by enabling a focus on the contested

issues at an early stage of the case. **The Rules' supplementation of the requirements of Rule 26(a)(1) and other Federal Rules is also appropriate due to** the various ways in which patent litigation differs from most other civil litigation, including its factual complexity . . . and **the variety of ways in which a patent may be infringed or invalid**. The initial disclosures required by the Rules are not intended to confine a party to the contentions it makes at the outset of the case. **It is not unusual for a party in a patent case to learn additional grounds for claims of infringement, non-infringement, and invalidity as the case progresses.** After a reasonable period for fact discovery, however, each party must provide a final statement of its contentions on relevant issues . . . .

LPR, Preamble (emphasis added). *Accord Avago Technologies General IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.*, No. 15-cv-04525-EMC, 2016 WL 1623920, at *4 (N.D. Cal. Apr. 25, 2016) (holding the pleading standard for patent infringement is more relaxed than *Iqbal and Twombly* because the local rules required this specificity in later-served infringement contentions).

43. And Defendants, by their own objections, implicitly acknowledge that discovery will likely produce the clarity they seek. *Cf.* Dkt. No. 15 Part V (associating Plaintiffs' pre-filing investigation results as relevant to their notice of pleadings).

44. This Court should accordingly rule that Defendants have sufficient notice of the Plaintiffs' claims at this time and any perceived ambiguities will be resolved early pursuant to local modifications and supplements to the Federal Rules of Civil Procedure.

### VI. CONCLUSION

45. Plaintiffs accordingly submit that, upon review of the relevant matter properly before this Court, all matters meet the pleadings standards of *Iqbal*, *Twombly*, and/or the Federal Rules of Civil Procedure as interpreted by the local rules of this Court.

Dated this 4th day of November 2022.

                                            Respectfully Submitted,

                                            /Brandon J. Leavitt/

                                          **Brandon James Leavitt**

### CERTIFICATE OF SERVICE

By my signature above I hereby certify that a true and correct copy of the above document has been forwarded to all counsel of record via the Court's electronic filing system.