IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JM4 TACTICAL, LLC, and JAMES CHADWICK MEYERS,<br><br>**Plaintiffs,**<br><br>vs.<br><br>**HER TACTICAL, LLC; E & R LLC dba HER TACTICAL; VICKY ARLENE JOHNSTON; and BLAKE CHEAL,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:22-CV-121-DAK-DBP<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Dustin B. Pead |

This matter is before the court on Defendants Her Tactical, LLC, E& R LLC, Vicky Arlene Johnston, and Blake Cheal's Motion to Dismiss [ECF No. 15] and Motion For Rule 11 Sanctions [ECF No. 21]. On December 20, 2022, the court held a hearing on the motion to dismiss via Zoom videoconferencing due to the Covid-19 pandemic. At the hearing, Brandon James Leavitt represented Plaintiffs James Chadwick Meyers and JM4 Tactical, LLC, and Chad S. Pehrson and Alexis Nelson represented Defendants. The court took the motion to dismiss under advisement. Defendants' Rule 11 motion was not fully briefed at the time of the hearing. The Rule 11 motion is now fully briefed and the court will rule on it based on the parties' written submissions. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

The parties compete in the gun holster business. Plaintiff JM4 Tactical is based in Abilene, Texas, and Plaintiff James Chadwick Myers is an individual residing in Texas.

1

Defendants Her Tactical and E&R Tactical have their registered place of business in Kaysville, Utah, and Defendants Vicky Arlene Johnston and Blake Cheal are individuals residing in Utah.

Plaintiffs Complaint alleges claims for patent infringement, trade dress infringement, and unfair competition. Plaintiffs acknowledge that the reference to trade "secret" infringement in their Complaint is a typographical error and they confirm that they are not making a claim for trade secret misappropriation.

In approximately 2016, JM4 invented an inside the waistband ("IWB") magnetic retention holster.  JM4 owns five patents and two trade dress registrations relating to the gun holster system.  JM4 alleges that since 2016 it has engaged in extensive branding efforts for the IWB magnetic retention holster and those efforts coupled with the product's commercial success, has made their holsters readily identifiable in the gun holster industry.

From July 2021 through August 2021, JM4 collaborated with Chamber Media LLC to create commercials for its magnetic retention holsters.  Chamber Media provided JM4 with three talent agent options that it sourced from Talent Management Group, Inc ("TMG").  TMG is known to source talent agents from Vicky Johnston Casting, which is owned and operated exclusively by Defendant Vicky Johnston.  The creative lead at Chamber Media and one of the talent agents provided by TMG are Facebook friends with Johnston.  On August 20, 2021, Johnston created a Facebook page for Defendant Her Tactical, which was not yet a registered entity. On January 6, 2022, Johnston registered Her Tactical on behalf of Defendant E&R, which also uses the name Her Tactical as a "dba."

JM4 had provided Chamber Media with approximately ten of its holsters for the commercial shoot.  But, between August 22, 2021, and December 9, 2021, approximately seven of those holsters went missing without any explanation.

On September 24, 2021, Her Tactical posted its first video showing an IWB magnetic retention holster that it stated it planned to launch in October 2021.  On November 10, 2021, in further collaboration with Chamber Media, JM4 suggested several ways its IWB magnetic retention holsters could be secured, including to the front center of a bra.

As of January 18, 2022, Defendants have advertised IWB magnetic retention holsters online, including how they might be secured to the front center of a bra.  As of June 2022, Defendants have advertised their IWB magnetic retention holsters as "brand new," "revolutionary," and "patent-pending."

On August 19, 2022, JM4 sent Defendants an infringement notice stating that Her Tactical's sales of IWB magnetic retention holsters infringed JM4's utility patent.  On August 22, 2022, Johnston acknowledged that two of the Defendants were aware of JM4's utility patent registration but declined to stop selling IWB magnetic retention products.  JM4 has found Her Tactical products for sale on Her Tactical's website, Etsy, Amazon, Ebay, Facebook, Instagram, Tik Tok, Pinterest, Ace Hardware in West Jordan, Utah, and Alibaba.com.

JM4 purchased some of Her Tactical's products to compare the similarities.  Upon review of the products, JM4 contends that Defendants' products infringe at least one of JM4's registered patents and trade dress.  JM4 also claims that Defendants' products are confusingly similar to their product, yet poorly crafted, unsafe, and not fit for use within their advertised purpose.  JM4 claims that as a result of Defendants' actions, Plaintiffs have incurred lost profits, reasonable royalties, loss of goodwill, and the need to conduct corrective advertising.

## DISCUSSION

### Defendants' Motion to Dismiss

Defendants move to dismiss Plaintiffs' Complaint, arguing that Plaintiffs have not stated a

claim for trade secret infringement, inducing infringement, trade dress infringement, or unfair competition. Plaintiffs acknowledge that the Complaint does not allege a claim for trade secret infringement.

### 1. Inducing Infringement Claim Against Individual Defendants

Defendants argue that the Complaint fails to plead a claim against the individual defendants for inducing infringement. Defendants contend that Plaintiffs failed to allege that the individual defendants (1) had knowledge of any specific patent of the four alleged infringed patents, (2) knowingly induced a third party to infringe the patents, and (3) had the specific intent to induce a third-party to infringe the patent. *DSU Med. Corp. v. JMS Co Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ("[L]iability for inducing infringement attaches only if the defendant knew of the patent and the induced acts constitute patent infringement.").

However, Plaintiffs Complaint contains allegations that plausibly support the knowledge and specific intent elements of indirect infringement. The allegations are not as vague as Defendants suggest. The Complaint lays out a narrative of how Plaintiffs believe Johnston learned of Plaintiffs' patented products. The narrative provides the connections between JM4, its marketing efforts, the connections between Johnston and the entities and individuals helping JM4 with its marketing, and the closeness in time these marketing efforts had with Johnston's production, marketing, and selling of similar holsters. Plaintiffs allege that in response to JM4's cease-and-desist letter, Johnston specifically acknowledged that she knew of Plaintiffs' patent and product but declined to cease and desist her infringement. Therefore, Plaintiffs allege that Johnston, and on information and belief Cheal, were aware of at least one of Plaintiffs' patents and knew that

4

their acts, through Her Tactical and E&R, would infringe that patent or that Johnston knew she was infringing the patent and took deliberate steps to avoid learning of the infringement.   Defendants take issue with Plaintiffs' use of the "at least one" language, but plaintiffs are allowed to plead in the alternative and the universe of one of Plaintiff's five patents is not large.   The language does not fail to give Defendants notice of Plaintiffs claims and is not unduly burdensome.

With respect to whether Johnston and Cheal induced another party to infringe the patents, the Complaint alleges that Johnston directed all the activities of Her Tactical and E&R and, alternatively, that Johnston and Cheal manage the entities together and jointly direct the entities' activities.   Plaintiffs claim that Defendants have formed a joint enterprise, and "[a]s evidenced by entity filing paperwork showing common addresses, dbas, and ownership, and as acknowledged in entity marketing that the companies are a 'family business' by marital partners Johnson and Cheal, the Defendants have an express or implied agreement to share a common purpose in which they share a financial interest and have an equal right of control."   The Complaint further alleges that Johnson and Cheal intended to receive a benefit from Her Tactical and E&R as a result of their infringement, and that each took action that was intended to cause and led to Her Tactical's and E&R's literal or direct infringement of Plaintiffs' patents.

For purposes of determining Defendants Motion to Dismiss, the court must accept these allegations in the light most favorable to Plaintiffs. While Defendants claim the factual allegations are insufficient, the court finds that the factual allegations state a plausible claim that the individual Defendants induced the alleged infringement by the entity Defendants.   The allegations are not conclusory.   They explain how the individuals

5

would have learned of Plaintiffs patents and products, what actions they took as a result of that knowledge, and their intent to continue such actions in order to obtain a benefit from such alleged infringement. The court, therefore, finds that Plaintiffs' allegations sufficiently state a claim for indirect/induced infringement. Accordingly, the court denies Defendants' motion to dismiss this claim.

### 2. Trade Dress Infringement Claim

Defendants assert that the court should dismiss Plaintiffs trade dress infringement claim because Plaintiffs have not articulated the elements that comprise its trade dress and have failed to allege that the trade dress is inherently distinctive or nonfunctional. *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1147 (10th Cir. 2016) (trade dress infringement requires, *inter alia*, that the plaintiff to show that the trade dress is inherently distinctive and that the trade dress is nonfunctional); *Forney Indus., Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238, 1252 (10th Cir. 2016) (before asserting a claim for an unregistered trade dress, a plaintiff must articulate the elements that comprise its trade dress).

As an initial matter, Defendants argue that it is unclear from the Complaint whether Plaintiff's trade dress is registered or unregistered because, although the Complaint repeatedly refers to the trade dress as unregistered, one paragraph references "registered patents and trade dress." But Plaintiffs responded that such language only refers to registered patents, they never made any claim that their trade dress is registered, reading the Complaint makes this clear, and they are within their rights to bring a claim for unregistered trade dress.

Defendants' challenges to this claim ignore or dismiss many relevant and supportive allegations in the Complaint. The Complaint alleges that because JM4 has engaged in extensive branding efforts and the IWB magnetic retention holster has had wide commercial success and

maintains a strong reputation, the holsters are readily identifiable within the industry by its overall look, aesthetics, shape, and configuration. The Complaint also alleges that the overall visual impression when viewing the nonfunctional aspects of the holsters is the trade dress—which consists of "a product configuration of a holster, wherein the holster comprises a strap attached to a holster body, the strap having a securement device at an end of the strap, the body having a second securement device extending from the body."

These allegations are factual in nature and the court must accept them and view them in the light most favorable to Plaintiffs. As such, the court finds that these facts sufficiently support the elements of acquired distinctiveness and nonfunctionality. Therefore, the court denies Defendants' motion to dismiss Plaintiffs' claim for trade dress infringement.

### 3. Unfair Competition Claim

Defendants further argue that the court should dismiss Plaintiffs unfair competition claim as insufficiently pled under both the Lanham Act and state common law. More specifically, Defendants contend that the court should dismiss the unfair competition claim under either the Lanham Act or common law because the Complaint does not allege sufficient facts to show: (1) that Defendants are passing off products originating with Plaintiff as their own; and (2) that there is any likelihood that the public will be confused between Plaintiffs' and Defendants' products.

In their memorandum in opposition, Plaintiffs clarified that they are not asserting a passing off/palming off theory of unfair competition. Rather, Plaintiffs' unfair competition claim is based on false advertising. This court has previously recognized that "while [Defendant] attempts to limit the definition of unfair competition, the Utah Supreme Court explicitly stated that unfair competition is not limited to passing off/palming off and misappropriation." *Vitamins Online, Inc. v. HeartWise, Inc.*, Case No. 2:13-CV-982-DAK, at *53 (D. Utah Nov. 10, 2020). To

7

establish a Lanham Act claim for false advertising, Plaintiffs needed only to plausibly plead allegations of "falsity," "commerce," deception," and "Injury." *Id.* at n.3.   False advertising supports an unfair competition claim.

Defendants' arguments regarding Plaintiffs' unfair competition claim again overlook factual allegations in the Complaint that can plausibly support a finding of likelihood of confusion.   Several paragraphs from the Complaint plausibly allege the confusing similarity of the parties' marks and products, Defendants' connection to and knowledge of Plaintiffs' products and marketing efforts, Defendants' piggy-back marketing and sales of similar holsters for the front center of the bra that are confusingly similar but poorly crafted and unsafe, Defendants' public assertions that their holsters are "brand new," "revolutionary," and "patent pending," despite Defendants' knowledge of Plaintiffs' products and patents for such products, and the fact Plaintiffs' products are of inferior quality.

Again, the court concludes that these allegations are not conclusory but factual in nature.   When viewed in the light most favorable to Plaintiffs, these allegations plausibly support Plaintiffs' unfair competition claims.   Therefore, the court denies Defendant's motion to dismiss the unfair competition claims.

### V.  Notice of Patent Infringement

Finally, Defendants assert that the Complaint fails to provide adequate notice of patent infringement because Plaintiffs state that their pre-filing diligence concluded that Defendants only infringed "at least one" of JM4's patents.   Nonetheless, Plaintiffs have asserted all of JM4's patents.   Defendants, therefore, believe that the Complaint fails to provide Defendants' fair notice of which patents it alleges Plaintiffs infringed and acknowledges Plaintiffs' failure to conduct

pre-filing investigation with appropriate evidence and legal rigor.

The Complaint states that Defendants have infringed "at least one" of Plaintiffs' five patents. But courts do not require heightened fact pleading for patent claims. Plaintiffs need only comply with the basic requirements in Rule 8 of the Federal Rules of Civil Procedure. As such, Plaintiffs need only allege enough facts to raise a reasonable expectation that discovery will reveal that Defendants are liable for the misconduct alleged. This court's local patent rules expressly anticipate Defendants' concern and outline how the specific bases of patent claims should be fleshed out through the court's supplemental discovery procedures. The local rules specifically state that "complaints and counterclaims in most patent cases are worded in a bare-bones fashion, necessitating discovery to flesh out the basis for each party's contentions." LPR Preamble.

Defendants cite to requirements for establishing an infringement claim at the summary judgment or trial stage of litigation, which are inapposite to the applicable standard at the pleading stage. Defendants also argue that Intel could not bring a patent infringement claim stating that the Defendant violated "at least one" of its hundreds of patents. But that situation is distinguishable from the facts before this court. All five of Plaintiffs' patents relate to the holster system it alleges Defendants infringed by producing and selling a confusingly similar, but inferior, holster. The parties know the scope of the claim and the limited universe at issue. Discovery will provide the necessary details regarding how the claim relates to the five patents.

Moreover, the use of the term "at least one" does not demonstrate that Plaintiffs' failed to conduct a pre-filing investigation. The Complaint demonstrates that Plaintiffs did in fact conduct such an investigation. Therefore, the court concludes that the

Complaint provides Defendants with sufficient notice of Plaintiffs' claims against them and any alleged ambiguities can be resolved through the District's local patent rule procedures.   Therefore, the court denies Defendants' Motion to Dismiss.

### Defendant's Motion for Rule 11 Sanctions

For the same reasons the court denied Defendants' Motion to Dismiss and found that Plaintiffs' Complaint plausibly alleges the asserted claims, the court finds Defendants' Motion for Rule 11 Sanctions to be without merit.   Plaintiffs' Complaint demonstrates a good-faith, informed comparison of their patents against the accused infringing products. The court's denial of Defendant's Motion to Dismiss essentially moots the Rule 11 motion. Moreover, even if Defendants' Motion to Dismiss had been successful, at most, the court would have required Plaintiffs to amend the Complaint.   Defendants only challenged the sufficiency of the allegations.   In such cases, the court regularly requires Plaintiffs to amend an original Complaint without the court or parties contemplating Rule 11 sanctions. Defendants' Motion for Rule 11 Sanctions is denied.

### CONCLUSION

Based on the above reasoning, Defendants' Motion to Dismiss [ECF No. 15] is DENIED and Motion For Rule 11 Sanctions [ECF No. 21] is DENIED.

DATED this 1st day of February, 2023.

BY THE COURT:

DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE