Chad S. Pehrson (12622)
**KUNZLER BEAN & ADAMSON, PC**
50 West Broadway Ste 1000
Salt Lake City, UT 84101
Telephone: (801) 994-4646
cpehrson@kba.law

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS, <br><br> Plaintiffs, <br><br> v. <br><br> HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual; <br><br> Defendants. | **MOTION FOR SANCTIONS DUE TO LITIGATION MISCONDUCT, FOR EVIDENTIARY HEARING REGARDING SANCTIONS, AND TO STAY LITIGATION AND DISCOVERY PENDING RULING ON SANCTIONS MOTION** <br><br> Case No. 1:22-cv-00121-DAK <br><br> Judge Dale A. Kimball <br><br> Magistrate Judge Dustin B. Pead |

Defendants E & R LLC, d/b/a HER TACTICAL; Vicky Arlene Johnson, and Blake Cheal (collectively, "Moving Defendants") hereby submit this Motion for Sanctions against Attorney Brandon Leavitt and Plaintiffs.

**<u>Separate Succinct Statement of Relief Sought and Grounds.</u>**

On October 4, 2023, Plaintiffs' counsel wrote the following to Defendant Grant Cavalli:

> But our main concern is Her Tactical, so my clients are willing to settle with you if you can provide useful information they are looking for—such as confirmation that Her Tactical encouraged you to misrepresent the products and/or lie about them. If I had this confirmation from you in a notarized affidavit my client would be willing to drop you completely from the lawsuit and not seek any liability or damages . . . .

1

> . . . . please note that your deadline to answer the lawsuit is tomorrow and you will be held in default if you do not either answer or settle before then.

[Text Message Sent by B.Leavitt to G.Cavalli, 10/4/2023, attached hereto as Exhibit A.] Mr. Cavalli is 77-years old and lives entirely on social security benefits. Mr. Leavitt's communication to him, particularly in view of the frivolous claims brought in federal court against Mr. Cavalli, appears to constitute improper witness pressure and undue influence. Case law dictates that similar conduct justifies various sanctions, including terminal sanctions. The hearing will allow the Court and the parties to examine Mr. Leavitt and Mr. Cavalli to understand the full context of the above written communication. Her Tactical further requests that the case be stayed pending adjudication of this Motion.

## Relevant Facts[1]

**A. Background of Mr. Cavalli.**

1. Mr. Cavalli is 77-years-old and presently living off of his monthly social security benefit.

2. Mr. Cavalli was hired by Ms. Johnston's side business, Her Tactical, to conduct self defense workshops for women. He also volunteered to help this small business by conducting some informal testing and social media advertising video work relating to Her Tactical's magnetic holsters for women. The following image of Mr. Cavalli and Ms. Johnston is taken from the Her Tactical website at https://hertactical.com/workshop/:

---

[1] These facts are within the personal knowledge of Her Tactical's principal, and are offered here in proffer format with testimony anticipated at an evidentiary hearing.



3. Mr. Cavalli was served with the Amended Complaint on or about September 14, 2023.

4. The Amended Complaint appears to bring all of the claims described in it against Mr. Cavalli, including infringement of five separate patents, trade dress infringement, and unfair competition. The Amended Complaint's sole factual allegations referencing Mr. Cavalli are as follows:

   a. "Defendant Grant Cavalli ("Cavalli") is an individual who, on information and belief, resides at 2411 N 725 E Ogden, Utah 84414, and may be served at that address via process server." [Am. Compl. ¶ 6.]

   b. "One or more Defendants have also posted videos featuring Defendant Grant Cavalli vouching for the safety of the Her Tactical holsters." [Am. Compl. ¶ 39.]

   c. "With respect to Grant Cavalli, one or more of the Defendants have advertised that he is an NRA Firearms Instructor, a Shotgun and Law Enforcement Trainer, served in the military for 35 years, trained special ops units, and retired as a lt. colonel." [Am. Compl. ¶ 40.]

   d. "However, Cavalli's service records show that he did not serve in the military for more than approximately 12 years, never reached the rank of Lt. Colonel, and very likely did not train special ops units." [Am. Compl. ¶ 41.]

e. "Likewise, on information and belief, Cavalli has never been NRA certified as a Shotgun and Enforcement Trainer and has not been NRA certified for any other weapon for approximately 10 years."

5. Mr. Cavalli is an individual who appears to lack an understanding of legal proceedings, and further lacks funds to retain counsel.

> His Answer was due on October 5, 2023. In advance of that deadline, Mr. Leavitt counsel for Plaintiff communicated the following: "But our main concern is Her Tactical, so my clients are willing to settle with you if you can provide useful information they are looking for—such as confirmation that Her Tactical encouraged you to misrepresent the products and/or lie about them. If I had this confirmation from you in a notarized affidavit my client would be willing to drop you completely from the lawsuit and not seek any liability or damages . . . .
>
> . . . . please note that your deadline to answer the lawsuit is tomorrow and you will be held in default if you do not either answer or settle before then.

**B. Plaintiffs Also Recently Added Another Improper Defendant, an Unknown Trust, to this Case on Grounds That the Trust Owned a Vehicle that Transported Infringing Goods; This Defendant Has Not Been Served But Mr. Leavitt Expressly Communicated in Writing: "If the involvement of their living trust . . . has rendered the dispute too costly for them I am prepared to convey to my client any offers you provide"**

6. In the Amended Complaint, Plaintiffs also added an unknown putative entity known as "The Blake and Tanya Cheal Family Trust."

7. The only allegations in the Amended Complaint regarding the Trust are as follows:

   a. "On at least one occasion Cheal received payment via Johnston's personal account for a holster sold on behalf of E&R and caused delivery to occur via a vehicle owned by The Blake and Tanya Cheal Family Living Trust." [Am. Compl. ¶ 73.]

   b. "On at least two occasions, one or more of the Defendants transported holsters on behalf of E&R by using a vehicle owned by The Blake and Tanya Cheal Family Living Trust." [Am. Compl. ¶ 74.]

c. "Accordingly, Defendants Johnston, Cheal, in his personal capacity and as settlor and trustee of The Blake and Tanya Cheal Family Living Trust, and E&R LLC dba Her Tactical are alter egos for purposes of liability in this suit." [Am. Compl. ¶ 75.]

8. According to the Court's docket, the Trust has yet to be served with the Amended Complaint.

9. On September 7, 2023, Mr. Leavitt communicated to counsel for Her Tactical as follows: "I still do not have any settlement offers for your clients to consider, but if the involvement of their living trust and the loss of their prosecutory estoppel claims has rendered the dispute too costly for them I am prepared to convey to my client any offers you provide." [Exhibit B.]

10. Mr. Leavitt was sponsored for pro hac vice admission in this Court by Attorney Jason K. Smith. To date in this litigation, to the knowledge of Defendants, Mr. Smith has not responded in any way to correspondence directed at him.

## **Discussion**

Settlement of many commercial disputes involves a counsel's skillful assessment of the merits of the case, and application of appropriate negotiating tactics (including leverage) to advance his client's interests. However, per relevant case law, Mr. Leavitt's communications in this case cross the line into improper witness intimidation and affect the integrity of these proceedings.[2] Defendants request that the Court schedule an evidentiary hearing[3] to address this

---

[2] This is particularly so given the absence of any actual commerce associated with this particular case, which means in practice that the named defendants, including Mr. Cavelli, have no funds to retain counsel to defend themselves.

[3] In *Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494 (7th Cir. 2008), the Seventh Circuit ordered the trial court to hold an evidentiary hearing in connection with Plaintiff's attempt to influence witness by utilizing a personal relationship and firmly asking him not to testify. The Court explained: "Trying improperly to influence a witness is fraud on the court and on the opposing party …." Id. at 498.

matter and consider appropriate sanctions, and further stay this litigation pending adjudication of the Motion.

I. **Plaintiffs Disclosed Mr. Cavalli as Witness in March 2023, and Recently Added Him as a Defendant.**

Plaintiffs have always contended that Mr. Cavalli is a witness in this case. Plaintiffs' initial disclosures, served on March 8, 2023, disclosed Mr. Cavalli as one of more than 30 witnesses supposedly having relevant information about this case. And recently, Plaintiffs added Mr. Cavalli as a party and served him with an Amended Complaint on or about September 14, 2023. On October 5, the Cour t granted Mr. Cavalli an extension until October 19 to respond to the Amended Complaint.

II. **Mr. Leavitt's October 4 Communication Expressly Required *Favorable* Testimony In Exchange for Dismissal of the Litigation and All Claims for Damages; the Communication Further Pressed a Putative Emergency Time Frame, Wherein .**

Here, Mr. Leavitt's October 4 communication expressly linked obtaining testimony favorable to his clients' case with dismissing all claims and damages against Mr. Cavalli. Specifically, Mr. Leavitt wrote requesting: *"confirmation that Her Tactical encouraged you to misrepresent the products and/or lie about them. If I had this confirmation from you in a notarized affidavit my client would be willing to drop you completely from the lawsuit and not seek any liability or damages . . . ."* [Exhibit A.]

While Mr. Leavitt's communication does provide a suggestion that Mr. Cavalli to obtain counsel, it also conveys a time crunch, stating that Mr. Cavalli would be "held in default" if he did not settle the ; as part of his effort to leverage Mr. Cavalli. *Id.* (". . . please note that your deadline to answer the lawsuit is tomorrow and you will be held in default if you do not either answer or settle before then.")

III. **Numerous Sources of Relevant Law Prohibits Attorneys and Parties from Improperly Influencing Witnesses.**

Sources of laws on this topic are of course legion, and include state law, federal law, the federal rules of procedure, this Court's local rules, and the Court's inherent authority. All of these laws derive from the same ethical framework, namely that a lawyer should not deal with the witnesses in such a manner as will coerce or unduly influence a witness' recall of events.

For instance, Rule 3.4 of the Utah Rule of Professional Conduct bars attorneys from assisting false testimony. Utah courts apply Rule 3.4 as substantive law. *Bohman Aggregates LLC v. Gilbert*, 2021 UT App 35, 486 P.3d 77.

Similarly, federal law also punishes linking a benefit with specific substantive testimony. 18 U.S.C. § 1512 ("Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to … influence, delay, or prevent the testimony of any person in an official proceeding … shall be fined under this title or imprisoned not more than 20 years, or both.").[4]

IV. **In Assessing Possible Sanctions, the Court may Consider Numerous Cases That Assessed Similar Conduct and Ordered Terminating and Other Serious Sanctions.**

Following an evidentiary hearing on this matter, Her Tactical requests that the Court enter sanctions. Of course, the Cout has significant power to issue varying degrees of sanctions, from termination of the case to monetary to revocation of pro hac vice admission. While of course terminating sanctions may be a high bar, that bar appears to be more than exceeded in this situation. This is because witness tampering is a serious abuse of the judicial process. The following sections provide brief summaries of analogous situations from courts around the

---

[4] *See also* https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or

country.

### A. 7th Circuit Affirmed Terminating Sanctions Where Plaintiff Offers Money in Exchange for Favorable Testimony.

In *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016), a Plaintiff's offering of money in exchange for favorable testimony is grounds for dismissal with prejudice as a discovery sanction. A lawyer doing this would presumably be viewed as worse given the lawyer's status as officer of the court and holds a duty of candor. The Court explained: "But witness tampering is among the most grave abuses of the judicial process, and as such it warrants a substantial sanction. … Dismissing the case with prejudice is an entirely reasonable response to such a deliberate attempt to deceive the court. *Id.* at 782 (emphasis added).

### B. Central District of California Ordered Terminating Sanctions Where Plaintiff Threatened to Retaliate Unless Witness Provided Prescribed Favorable Testimony.

Furthermore, in *Torres v. Wells Fargo Bank*, No. 17-9305, 2019 WL 8012686 (C.D. Cal. Dec. 17, 2019), the plaintiff asked witnesses to sign pre-prepared affidavits with favorable non-genuine, similar to the circumstance here. The witness refused and plaintiff subsequently sent text messages threatening witness's job. The Court explained:

> While the Ninth Circuit does not appear to have expressly considered whether and how to sanction a civil litigant when that litigant has tampered with a witness, it has indicated that such conduct can warrant serious sanctions. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental*, Inc., 944 F.2d 597, 602 (9th Cir. 1991) (affirming a district court's decision not to impose sanctions in a civil case for witness tampering when district court made factual finding that the conduct at issue was not meant to intimidate the witness); *Erickson v. Newmar Corp.*, 87 F.3d 298, 304 (9th Cir. 1996) (ordering a new trial based on defendant's counsel's witness tampering). **Other circuits have been more explicit that such conduct warrants the dismissal of a plaintiff's claims.** *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 782 (7th Cir. 2016) (affirming district court's dismissal with prejudice of a plaintiff's case when he offered to pay a witness in exchange for favorable testimony); *Ty Inc. v. Softbelly's*, Inc., 517 F.3d 494, 498 (7th Cir. 2008) ("Trying improperly to influence a

8

witness is fraud on the court and on the opposing party"); *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 67 (D.D.C. 2003) (finding that dismissal was appropriate for "tr[ying] to influence the testimony of another witness"); *Helios Software GMBH v. Root Int'l Distribution Sys., Inc.*, 1996 WL 162962, at *2 (N.D. Cal. Apr. 5, 1996) (stating that the Court "would not hesitate to sanction Defendants appropriately and seriously" if sufficient evidence of witness tampering came to light)."

*Id.* at *3.

### C. District of Nevada Issued Terminating Sanctions for Offering Perquisites to Witnesses.

Also relevantly, in *Hernandez v. Franco Am. Baking Co.*, No. 20-628, 2021 WL 6498256 (D. Nev. Sept. 3, 2021), the plaintiffs sought favorable declarations by offering money to witnesses. In addressing that conduct, Court dismissed claims with prejudice after finding tampering beyond a preponderance of the evidence. The Court explained: "A federal district court has inherent authority to sanction conduct abusive of the judicial process." *Id.* at *2.

### D. Eastern District of California Issued Sanctions where Lawyer Coerced and Unduly Influenced a Witness.

As a final relevant example, in *Stanley v. Wong*, No. CIV S-95-1500 FCDGGH, 2006 WL 1523128 (E.D. Cal. May 31, 2006), a government attorney interviewing the jurors for potential juror misconduct conducted the interview "in such a way as to intimidate or unduly influence them so that previously obtained declarations … made under penalty of perjury, would be changed" by making "comments which would make the ordinary person feel guilty, or foolish, or fearful, or all three about what they had stated previously." *Id.* at *1, 9. The Court explained:

> Any lawyer in a civil proceeding may commission investigations and query the critical witnesses in the case. But, as pointed out by petitioner at hearing, the lawyer should not deal with the witnesses in such a manner as will coerce or unduly influence a witness' recall of events.

9

*Id.* at *6.   Furthermore, the Eastern District also helpful explained:

> A lawyer commits misconduct in interviewing a witness ('fault' in the civil context) when that lawyer knows, or should know, that the lawyer is encouraging a witness to place his or her own interests, problems, concerns, fears, biases, and the like ahead of telling the truth. This is the essence of 'improper influence' or 'undue influence' given the facts and circumstances of this case.

*Id.* at *8 (emphasis added).

V.    **Given the Concerning Nature of this Conduct, and the Need for an Evidentiary Hearing, the Case—Including Further Discovery—Should be Stayed Pending Resolution of this Motion.**

Of course, the orderly proceeding of litigation is subject to the Court's active management. Here, we have an exigency associated with a witness-party, and Plaintiff's counsel. That conduct will influence further discovery in the case. As such, Defendants believe it most efficient to pause discovery in this case temporarily to allow for resolution of this issue.

## Conclusion

In view of the above facts and law, Defendants request sanctions against Mr. Leavitt and his clients. Defendants request an evidentiary hearing to completely ascertain and establish evidence relevant to the sanction request. Defendants respectfully request that the Court consider the undisputed context of this case,[5] and the significance of litigation expenses needlessly inflicted upon a small business, an owner of that startup side-business, her husband, and a nice community individual who volunteered to help her small business. An attempt to bribe, threaten, and unduly influence a party and a witness in this case is grounds for serious sanctions. Furthermore, the case including discovery events should be stayed pending resolution of this Motion.

---

[5] Her Tactical has never made a profit on its sales of the accused products. And the $25K in the *revenues* associated with those products mean only one thing: no damages and this case is hardly worth the trouble of this Federal Court.

10

DATED this 11th Day of October 2023

                                            Respectfully submitted,

                                            **KUNZLER BEAN & ADAMSON**

                                            **/s Chad S. Pehrson**
                                            Chad S. Pehrson
                                            *Attorneys for Defendants*