**Brandon James Leavitt**
TX Bar No. 24078841, *pro hac vice*
Eldredge Leavitt Law Firm
4204 SW Green Oaks Blvd., Suite 140
Arlington, TX 76107
(214) 727-2055
brandon@uslawpros.com

**Jason K. Smith** (Utah Bar No. 14323)
MK SMITH, APC
9891 Irvine Center Dr., Ste. 200
Irvine, CA 92618
801-916-8723
jsmith@mks-law.com

**Attorneys for Plaintiffs**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| **JM4 TACTICAL, LLC**; and **JAMES CHADWICK MYERS,** <br><br> Plaintiffs, <br><br> *versus* <br><br> **E & R LLC** *dba* **HER TACTICAL**; <br> *et. al.* <br> Defendants. | PLAINTIFFS' CLAIM CONSTRUCTION BRIEF <br><br> LPR 4.3 <br><br> Case No. 1:22-cv-01121-AMA-DBP <br><br> Judge Ann Marie McIff Allen <br> Magistrate Judge Dustin B. Pead <br><br> **Jury Demanded** |

Pursuant to Local Patent Rule 4.3, Plaintiffs JM4 Tactical, LLC and James Chadwick Myers ("Plaintiffs" or "JM4") respectfully submit this opening claim construction brief addressing the ten disputed claim terms identified in the parties' Joint Submission of Claim Terms for Construction filed August 8, 2025. ECF No. 132.

TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. TECHNOLOGY OVERVIEW ...................................................................................... 1

III. LEGAL STANDARD ..................................................................................................... 2

IV. PROPOSED LEVEL OF ORDINARY SKILL IN THE ART ..................................... 2

V. CLAIM CONSTRUCTION ARGUMENTS ................................................................. 3

    A. Terms Selected by Plaintiffs for Construction ...................................................... 3

        i. "fastener protrusion" (Claims 1 of both patents) ....................................... 3
        ii. "fastener housing" (Claims 1 of both patents) ........................................... 4
        iii. "disposed within a thickness" (Claims 1 of both patents) ......................... 5
        iv. "two magnets" ('109 Patent, Claim 1; '530 Patent, Claim 1) ................... 6
        v. "integrally secured" (Claims 1 of both patents) ........................................ 7

    B. Additional Terms from Plaintiffs' Original Proposal that Require Clarification ............................................................................................................ 8

        i. "strong enough to retain the gun within the body" (Claims 1 of both patents) ........................................................................................................ 8
        ii. "elongated strap" (Claims 1 of both patents) ........................................... 8
        iii. "back side of the body" (Claims 1 of both patents) .................................. 8
        iv. "magnetic retention" (Claims 1 of both patents) ...................................... 9
        v. "body having a front side and a back side" (Claims 1 of both patents) .... 9

    C. Extrinsic Evidence Supports Plaintiffs' Constructions ....................................... 9

VI. CONCLUSION ............................................................................................................. 10

CERTIFICATE OF COMPLIANCE ....................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996) .................................................... 2

O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351 (Fed. Cir. 2008) ................ 2

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................................... 2

Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362 (Fed. Cir. 2012) ............................ 2

**RULES**

Local Patent Rule 4.3 ............................................................................................................. 4, 10

**EVIDENCE**

Dep. of Vicky Johnston (Nov. 2, 2023) ............................................................................ 6, 9, 10

ECF No. 132, Joint Submission of Claim terms (Aug. 8, 2025). ......................................... passim

ECF No. 74, Plaintiffs Supplemental Pleadings (Oct. 19, 2023) .......................................... passim

Fasten, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/fasten 3

Housing, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/housing .... 4

Integral, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/integral ...................................................................................... 7

Protrusion, Cambridge Dictionary,
 https://dictionary.cambridge.org/us/dictionary/english/protrusion .................................... 4

Thickness, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/thickness .................................................................................. 5

**I.      Introduction**

1.      This case involves magnetic gun holster technology protected by Plaintiffs' U.S. Patent Nos. 11,747,109 ("the '109 Patent") and 9,784,530 ("the '530 Patent"). Following the procedures set forth in Local Patent Rule 4.2, Plaintiffs timely proposed ten claim terms requiring construction. Joint Submission at 2, ECF No. 132.

2.      Defendants declined to propose any terms or constructions, maintaining that all terms should be given their plain and ordinary meaning. *Id.* at 3. When the parties could not agree on terms for construction pursuant to LPR 4.2(b), the Local Rules allocated five terms to each party. Defendants, however, maintained their position that no construction is necessary for any terms. *Id.* Plaintiffs now submit all ten originally proposed terms to ensure the Court has guidance on disputed claim language central to the infringement analysis. *See* D. Utah LPR 4.2(b) (10-term cap with 5/5 split if no agreement); LPR 4.3(a) (25-page cross- and response-brief limits); LPR 4.3(b)(1) (identify any term whose construction may be dispositive).

**II.     Technology Overview**

3.      The patented technology addresses longstanding problems in concealed carry holster design by disclosing magnetic retention systems that secure firearms inside-the-waistband while maintaining quick access. The core innovation involves strategically positioned magnets serving dual purposes: securing the holster to the user's clothing and maintaining the holster in a closed configuration, while also retaining the firearm within the holster body.

4.      The '109 Patent claims a two-magnet configuration. *See* ECF No. 74 (reproducing '109 Patent claim 1). Claim 1 of the '530 Patent confirms that multiple magnets cooperate—it recites two magnets in the protrusion and a third in the housing and specifies that their

"combined magnetic retention strength" is "strong enough to retain the gun within the body." *Id.* (reproducing '530 Patent claim 1). Claim 1 expressly requires a "combined magnetic retention strength" generated by two magnets in the protrusion and a third magnet in the housing that is "strong enough to retain the gun." *Id.* Understanding how multiple magnets function together to create combined magnetic force is critical to proper claim construction.

### III. Legal Standard

5. Claim construction is a matter of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (specification is "the single best guide to the meaning of a disputed term"). The specification remains "the single best guide to the meaning of a disputed term," and usually is dispositive. *Id.* at 1315.

6. Where the parties squarely dispute scope, courts must resolve that dispute rather than send it to the jury under a "plain meaning" label. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Absent lexicography or clear disavowal, courts do not import limitations from the specification. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

### IV. Proposed Level of Ordinary Skill in the Art

7. Plaintiffs propose that a person of ordinary skill in the art would have a bachelor's degree in mechanical engineering or equivalent experience in product design, with at least two years of experience in fastener design, magnetic applications, or holster manufacturing. Such a

person would be familiar with permanent magnet materials (e.g., NdFeB), magnetic circuit basics, and consumer soft-goods assembly techniques.

V.     **Claim Construction Arguments**

8.     Because Defendants contend that these terms need no construction yet urge a narrower scope in application, a dispute exists that the Court must resolve now under *O2 Micro*.

A.     **Terms Selected by Plaintiffs for Construction**

i.     *"fastener protrusion" (Claims 1 of both patents)*

9.     <u>Plaintiffs' Proposed Construction:</u> "A component that secures one object to another and extends beyond a surface"

10.    <u>Why Plain Meaning Is Insufficient:</u> The parties fundamentally dispute what constitutes a "fastener" and whether Defendants' fabric-embedded magnets can "protrude." Joint Submission at 2-3, ECF No. 132. Without construction, this dispute will conflate infringement determination with claim construction, requiring the Court's guidance under *O2 Micro*.

11.    <u>Why This Construction Should Be Adopted:</u> Claim 1 describes "a fastener protrusion extending from a back surface of the elongated strap" that is "configured to engage with the fastener housing." ECF No. 74. The claim language itself reveals two essential characteristics: the element must fasten (secure objects together) and must protrude (extend from a surface). The specification consistently describes this element as extending outward to engage with its counterpart housing. This intrinsic evidence alone supports Plaintiffs' construction. While not necessary given the strong intrinsic evidence, general dictionaries confirm this understanding. *See Fasten*, Merriam-Webster.com Dictionary https://www.merriam-webster.com/dictionary/fasten (defining "fasten" as "to attach especially by pinning, tying, or nailing"); *Protrusion*, Cambridge Dictionary,

https://dictionary.cambridge.org/us/dictionary/english/protrusion (defining "protrusion" as "something that sticks out from a surface").").

12. <u>Dispositive Impact:</u> As required by Local Patent Rule 4.3(b)(1), this construction would be dispositive of element [B] of Claim 1 for literal infringement as to Defendants' accused products, which include magnetic components extending from their strap assembly.

*ii.     "fastener housing" (Claims 1 of both patents)*

13. <u>Plaintiffs' Proposed Construction:</u> "A structure that contains or surrounds a fastening mechanism"

14. <u>Why Plain Meaning Is Insufficient:</u> Defendants dispute whether their fabric structures containing magnets constitute a "housing." Joint Submission at 2-3, ECF No. 132. This fundamental dispute requires judicial resolution to prevent jury confusion.

15. <u>Why This Construction Should Be Adopted:</u> The patent specification provides the best evidence of this term's meaning. The '530'530 Patent claim 1 describes "a fastener housing extending from an outer surface of the back side of the body, the fastener housing being configured to engage with the fastener protrusion." ECF No. 74. The specification makes clear that the housing's essential function is to contain the fastening mechanism and engage with its counterpart. Nothing in the claims or specification requires a rigid material—the patent speaks purely in functional terms about containment and engagement. The specification's description of the housing as a structure that contains magnetic elements and facilitates their engagement demonstrates that various physical implementations can satisfy this limitation. Consistent with this intrinsic evidence, general technical usage confirms that a housing is "a case or covering that surrounds a machine or part of a machine." *Housing*, Cambridge Dictionary.

**Plaintiffs' Claim Construction Brief**                                                                     **Page 4 of 10**

16. <u>Dispositive Impact:</u> This construction would be dispositive of element [B] of Claim 1 because it clarifies that fabric structures containing magnetic fastening mechanisms constitute housings under the claims.

### iii. *"disposed within a thickness"* (Claims 1 of both patents)

17. <u>Plaintiffs' Proposed Construction:</u> "Positioned inside the depth dimension of a material or structure"

18. <u>Why Plain Meaning Is Insufficient:</u> The phrase "disposed within a thickness" is not a term of art with established meaning. The parties dispute whether sewn-in magnets are "disposed within" the material thickness or merely attached to it. Joint Submission at 2-3, ECF No. 132.

19. <u>Why This Construction Should Be Adopted:</u> The patent specification itself provides the most authoritative definition of this phrase. The '530 Patent claim 1 literally recites "two magnets disposed within a thickness of the fastener protrusion" and "a third magnet disposed within a thickness of the housing." ECF No. 74. The specification's repeated use of this exact phrase to describe magnets positioned inside the depth dimension of these structures demonstrates that various manufacturing methods—including sewn-in or embedded magnets—satisfy this limitation. The patent's focus on the magnets being contained within the material's depth, rather than on any particular method of placement, supports a construction that encompasses different implementation techniques. The ordinary meaning of "thickness" as "the smallest of three dimensions" (*Thickness*, Merriam-Webster.com Dictionary https://www.merriam-webster.com/dictionary/thickness) combined with the specification's usage confirms that this term refers to positioning within the depth dimension of the structure.

20. <u>Dispositive Impact:</u> This construction would be dispositive of elements [D] and [E] of Claim 1, ensuring that various manufacturing methods satisfy the claim limitation.

**Plaintiffs' Claim Construction Brief**                                                                                    Page 5 of 10

> iv.  *"two magnets" ('109 Patent, Claim 1; '530 Patent, Claim 1)*

21. <u>Plaintiffs' Proposed Construction:</u> "Two magnetic elements that work together to create a combined magnetic force"

22. <u>Why Plain Meaning Is Insufficient:</u> The parties fundamentally dispute whether "two magnets" must remain physically and functionally separate or whether they can work together as a unified magnetic source. Defendants' representative admitted complete technical ignorance on this issue: "I don't really know how to answer that because I don't have any technical backing for that . . . I don't know." Dep. of Vicky Johnston 78:5-9.

23. <u>Why This Construction Should Be Adopted:</u> The patent specification provides definitive guidance on this term's meaning. The '530 Patent claim 1 explicitly addresses how multiple magnets function together, requiring "two magnets disposed within a thickness of the fastener protrusion" and "a third magnet disposed within a thickness of the housing" and then specifying "a combined magnetic retention strength generated by the two magnets and third magnet." ECF No. 74. This claim language demonstrates that the patentee contemplated magnets working cooperatively to produce a unified magnetic force. The specification's emphasis on "combined magnetic retention strength" confirms that the magnets need not function independently but rather contribute to an overall magnetic effect. This understanding aligns with basic magnetic principles recognized in the field, where multiple magnets in proximity combine their fields. *See* Johnston Dep., Ex. 26 at JM4HT 6701 (TotalElement confirming: "The stacked magnets will work as one bigger magnet and will exert greater magnetic performance.").

24. <u>Dispositive Impact:</u> This construction is critical for establishing literal infringement of element [D] of the '109 Patent and supporting functional equivalency arguments for the '530 Patent.

> v.     *"integrally secured" (Claims 1 of both patents)*

25.     Plaintiffs' Proposed Construction: "Permanently attached to form a unified whole"

26.     Why Plain Meaning Is Insufficient: The parties dispute whether "integrally secured" requires a specific type of permanent attachment or encompasses various methods of creating a unified structure. Joint Submission at 2-3, ECF No. 132.

27.     Why This Construction Should Be Adopted: The patent specification demonstrates that "integrally secured" refers to components that are permanently joined to function as a unified structure. The '530 Patent claim 1 recites "a strap assembly integrally secured to the back side body." ECF No. 74. The specification describes this attachment in functional terms—creating a unified holster assembly—without limiting the attachment to any particular technique. This aligns with *Phillips/Thorner* principles against narrowing claims to specific embodiments absent clear disclaimer. The term "integral" in its technical usage means "essential to completeness : constituent" (*Integral*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/integral), indicating that the secured components form an essential, unified whole. The specification's broad description of the strap assembly as part of the complete holster structure, without limitation to specific attachment methods, supports this construction.

28.     Dispositive Impact: This construction would be dispositive of element [B] of Claim 1, preventing arguments that particular attachment methods avoid infringement.

> B.  **Additional Terms from Plaintiffs' Original Proposal that Require Clarification**

29. Although Defendants declined to select any terms or propose constructions, Plaintiffs submit that the following five additional terms from Plaintiffs' original proposal require the Court's guidance given their centrality to the parties' disputes.

> i.  *"strong enough to retain the gun within the body" (Claims 1 of both patents)*

30. The '530 Patent claim 1 recites "wherein a combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body." ECF No. 74. The specification demonstrates that this limitation requires magnetic force sufficient to secure a firearm during normal concealed carry use, without specifying a numeric threshold. The claim language focuses on functional capability—whether the magnetic force can retain the firearm—rather than any specific force measurement. Clarification that this requires magnetic force adequate for practical firearm retention during typical concealed carry activities would resolve potential jury confusion about this functional limitation.

> ii.  *"elongated strap" (Claims 1 of both patents)*

31. The '530 Patent claim 1 recites "an elongated strap extending from and integrally secured to the back side of the body." ECF No. 74. The specification consistently describes the strap as a strip of material that extends from the holster body and is notably longer than it is wide. This structural characteristic enables the strap to wrap around and secure to the user's belt or waistband. The term requires no complex construction beyond its ordinary meaning of a strip that is elongated in one dimension.

> iii.  *"back side of the body" (Claims 1 of both patents)*

32. The '530 Patent claim 1 recites "a body having a front side and a back side" and specifies components attached to "the back side of the body." ECF No. 74. The specification

**Plaintiffs' Claim Construction Brief**                                                                                                Page 8 of 10

clearly distinguishes between the front side (facing away from the user) and the back side (facing toward the user) of the holster body. This rear-facing surface serves as the attachment point for the strap assembly. The term requires only recognition that the holster body has distinguishable front and rear surfaces.

### iv. *"magnetic retention" (Claims 1 of both patents)*

33. The '530 Patent claim 1 speaks of "combined magnetic retention strength," confirming that retention occurs through magnetic force. ECF No. 74. The specification consistently describes using magnetic attraction to hold components in place. While the claims do not exclude additional retention features, the magnetic retention must be sufficient to perform the claimed function. The term simply means holding or securing through magnetic force.

### v. *"body having a front side and a back side" (Claims 1 of both patents)*

34. The '530 Patent claim 1 recites "a body having a front side and a back side forming an upper opening disposed therebetween." ECF No. 74. The specification describes a holster body with distinguishable front and rear surfaces that together form the cavity for holding the firearm. Peripheral edges or seams connecting these surfaces do not create additional "sides" beyond the front and back surfaces that define the firearm-receiving cavity.

### C. Extrinsic Evidence Supports Plaintiffs' Constructions

35. While the intrinsic record provides sufficient support for Plaintiffs' constructions, technical literature confirms the understanding of magnetic behavior relevant to these claims. Industry sources universally recognize that multiple magnets in close proximity combine their magnetic fields to function as a unified magnetic source. TotalElement confirms: "The stacked magnets will work as one bigger magnet and will exert greater magnetic performance." Johnston Dep., Ex. 26 at JM4HT 6701. *See also Id.* at JM4HT-6710 (US Magnetix explaining: "The stacked magnets will work as one to exert a greater magnetic force.").

36.     Additionally, Calvert Gamwell, a neodymium magnet distributor, confirmed that combining two thinner magnets to function as one thicker magnet is standard industry practice for cost-effectiveness and safety. *Id.* at JM4HT-12360.

## VI.     CONCLUSION

37.     The Court should adopt Plaintiffs' proposed constructions, which properly reflect the meaning of the disputed terms as used in the patent specifications while providing necessary guidance to resolve the parties' fundamental disputes about claim scope. These constructions are grounded primarily in the intrinsic evidence of the claims and specification, with extrinsic evidence providing only confirmatory support where appropriate.

Respectfully Submitted,

  /Brandon J. Leavitt/
**Brandon James Leavitt**
Counsel for Plaintiffs

### CERTIFICATE OF COMPLIANCE

By my signature above I hereby certify that this brief complies with the 25-page limitation set forth in Local Patent Rule 4.3. This brief contains 10 substantive pages, excluding the caption and signature blocks.