Chad S. Pehrson (12622)
**KB&A**
50 West Broadway Ste 1000
Salt Lake City, UT 84101
Telephone: (801) 994-4646
cpehrson@kba.law

*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

---

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' CLAIM CONSTRUCTION BRIEF** |
| Plaintiffs, | |
| v. | Case No. 1:22-cv-00121-AMA-DBP |
| HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual; | Judge Ann Marie McIff Allen |
| | Magistrate Judge Dustin B. Pead |
| Defendants. | |

---

In their claim construction brief (Dkt. 133), Plaintiffs propose convoluted definitions for several claim terms – definitions explicitly acknowledged by Plaintiffs as "dispositive"—meaning crafted to align the claims with Plaintiffs' infringement theories. Defendants, by contrast, have submitted that no special constructions are necessary. The disputed terms should be given their plain and ordinary meaning as understood by a person of ordinary skill in the art in light of the intrinsic evidence. Plaintiffs' attempt to deviate from the clear claim language is unsupported by the patents themselves and contradicts fundamental claim construction principles. It is well-

1

established that absent lexicography or unmistakable disclaimer in the intrinsic record, the plain meaning of claim terms controls.

Here, Plaintiffs identify no definition in the specification, no clear disavowal of claim scope, and no genuine ambiguity in the claim language that would justify their narrowing constructions. Rather, Plaintiffs openly acknowledge that these terms are "dispositive" of infringement – revealing that their true motive is adjust the claim scope for purposes of this case, not to clarify genuine confusion. The Court should reject this strategy. Claims are not to be construed in a way that biases the claim scope to either cover or avoid the accused product; instead, they must be interpreted objectively in view of the intrinsic evidence. Plaintiffs' proposals violate this tenet by importing unsupported limitations and gloss intended to read on Defendants' holsters.

In the sections below, we address each term asserted by Plaintiffs in turn. Plaintiffs' proffered constructions find no support in (and often contradict) the intrinsic record, and that accepting their definitions would improperly distort the claims. The Court should therefore adopt the plain and ordinary meaning of each term (with no further construction) and decline Plaintiffs' invitation to judicially rewrite the claims.

## LEGAL STANDARD

Claim construction is a matter of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). In interpreting claim terms, the Court's task is to determine the meaning that the terms would have to a person of ordinary skill in the art at the time of the invention, in light of the entire patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005). The intrinsic evidence—the claim language, specification, and prosecution history—is paramount in this analysis. Absent an explicit definition or a clear disclaimer in the intrinsic record,

*"claim terms are generally given their plain and ordinary meanings"* to a skilled artisan, read in the context of the patent. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). The Federal Circuit has underscored that there are only two *"exacting"* exceptions to this rule: "(1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of the term in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To constitute lexicography, the patentee must clearly express an intent to redefine the term, and to constitute disclaimer the patentee must make clear and unmistakable statements of limiting scope. *Id.* at 1366. In all other cases, the ordinary meaning controls.

Extrinsic evidence, such as dictionaries or expert testimony, is "less significant than the intrinsic record" and cannot override clear intrinsic evidence of meaning. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1317–19 (Fed. Cir. 2005). While dictionaries may be consulted to understand ordinary usage, the Court must ensure that any definition is consistent with the usage in the patent and does not abstract the term from its context. Phillips v. AWH Corp., 415 F.3d 1303, 1317–19 (Fed. Cir. 2005) In short, the goal is to arrive at the most natural reading of the term in the context of the patent, without injecting unsupported limitations or biases.

With these principles in mind, Defendants turn to the specific claim terms in dispute. In each instance, Plaintiffs' proposed construction is neither required nor justified by the intrinsic evidence. The terms are readily understandable and should be applied as written, in accordance with their plain meaning.

| Term | Plaintiffs' Proposed Construction | Defendants' Position |
|---|---|---|
| **"fastener protrusion"** | "A component that secures one object to another and extends beyond a surface" | Plain and ordinary meaning (no construction necessary) |
| **"fastener housing"** | "A structure that contains or surrounds a fastening mechanism" | Plain and ordinary meaning (no construction necessary) |
| **"disposed within a thickness of [the fastener protrusion / the housing]"** | "Positioned inside the depth dimension of a material or structure" | Plain and ordinary meaning (no construction necessary) |
| **"two magnets" (in protrusion) / "third magnet" (in housing)** | "Two magnetic elements that work together to create a combined magnetic force" | Plain and ordinary meaning (no construction necessary) |
| **"integrally secured [to the back side of the body]"** | "Permanently attached to form a unified whole" | Plain and ordinary meaning (no construction necessary) |
| **"combined magnetic retention strength [generated by the magnets] … strong enough to retain the gun"** | No construction proposed (functional language) | Plain and ordinary meaning (no construction necessary) |
| **"elongated strap"** | No construction proposed (ordinary meaning: strip longer than wide) | Plain and ordinary meaning (no construction necessary) |
| **"back side of the body"** | Distinguishable rear surface | Plain and ordinary meaning (no construction necessary) |
| **"magnetic retention"** | Holding or securing through magnetic force | Plain and ordinary meaning (no construction necessary) |
| **"body having a front side and a back side"** | Holster body with front and rear surfaces forming cavity | Plain and ordinary meaning (no construction necessary) |

**Argument – Disputed Terms of the '109 and '530 Patents**

**1. "fastener protrusion" ('109 patent; '530 patent)**

**Plaintiffs' Proposed Construction:** *"A component that secures one object to another and*

4

*extends beyond a surface"* (Pls. Br. p. 3.)

**Defendants' Position:** *Plain and ordinary meaning (no construction necessary).* The term "fastener protrusion" should be given its plain meaning – i.e., a protruding fastener element extending from the strap – consistent with the claim language and specification. Plaintiffs seek to redefine "protrusion" in an overly generic way that ignores the ordinary sense of the word "protrusion" (something that sticks out) and the contextual clues in the patent. Nothing in the intrinsic record indicates that "fastener protrusion" is a term of art requiring special definition, nor that the patentee intended it to encompass anything other than its normal meaning.

The claim itself introduces a *"fastener protrusion"* as a component of the strap assembly: *"a fastener protrusion extending from a back surface of the elongated strap."* The same claim provides that a *"fastener housing [extends] from an outer surface of the body, the fastener housing being configured to engage with the fastener protrusion."* Thus, by the claim's own terms, the fastener protrusion is an element on the strap that extends outward and is configured to engage (mate or connect) with a corresponding *housing* on the holster body. This description is clear and needs no further elaboration. Jurors can readily understand a "protrusion" as something that protrudes (sticks out) and a "housing" as something that houses or receives. Plaintiffs' proposed rewrite – "a structure on the strap assembly that engages a corresponding structure on the body to secure the holster" – merely paraphrases the functional language already in the claim (engaging a corresponding structure to secure the holster) while stripping away the descriptive word "protrusion." In effect, Plaintiffs redefine "protrusion" in generic terms that downplay the requirement of something that "sticks out"—contrary to the dictionary they cite. This is improper.

The patentee chose the word "protrusion" advisedly, and the Court should give effect to it rather than replace it with a vaguer phrase.

The specification confirms the straightforward meaning. In the '530 patent, for example, the strap assembly is described as having a protruding fastener part that mates with a housing on the body. Figures 2 and 3 depict this protrusion (item 219) extending from the strap and inserting into the body's fastener housing (item 223).  U.S. Patent No. 9,784,530 fig. 2, 3; *see also* U.S. Patent No. 11,747,109, claim 1; Pls.' Appendix, Tab 3, Cambridge Dictionary, "protrusion" (defining as 'something that sticks out from a surface'). The intrinsic record nowhere redefines "fastener protrusion" to mean anything other than an outwardly extending fastening element. Indeed, during prosecution the examiner used the same term in describing the invention's distinguishing features. This reinforces that "fastener protrusion" carried its ordinary meaning – a protruding part – and was understood as such. Plaintiffs cite no lexicography or disclaimer altering that meaning.

Plaintiffs' motivation for tinkering with this term appears to be their concern that Defendants' holsters do not have a literal peg or tongue identical to the patent's figures. But that is not a license to broaden the claim language. If the accused products secure the strap by magnets without a distinct protruding latch, that is a factual question for infringement – not a reason to judicially redefine "protrusion." *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) (claims are interpreted in view of the patent, not the accused product, and will not be given a special meaning just to capture an accused device). In short, Plaintiffs' proposed construction is unnecessary and improperly broad. It would read "protrusion" out of the claim by covering *any* generic "structure" on the strap that engages the body, even if it does not protrude in

any meaningful sense. The Court should reject this approach. "Fastener protrusion" simply means what it says: a protruding fastening element on the strap. No further definition is needed beyond the claim language itself.

### 2. "fastener housing"

**Plaintiffs' Proposed Construction:** *"A structure that contains or surrounds a fastening mechanism"* (Pls. Br. 4.)

**Defendants' Position:** *Plain and ordinary meaning (no construction necessary).* This term, too, is readily understood in context: a "fastener housing" is a housing on the holster body for the fastener (specifically, for receiving/engaging the fastener protrusion). The claim language already defines it functionally as noted above – it *"extend[s] from the outer surface of the back side of the body"* and is *"configured to engage with the fastener protrusion."* Nothing in the patent suggests a special or narrower meaning, and Plaintiffs' proposed construction merely restates the obvious (that it's a structure on the body to engage the protrusion). Such a construction is unnecessary and risks confusing the jury by implying some difference where none exists.

Notably, Plaintiffs' phrasing *"configured to receive or engage"* adds the word "receive," which is not in the claims. This appears aimed at emphasizing a receptacle aspect (as a "housing" often implies a receptacle or cavity). But the claim already conveys that by calling it a "housing" and stating it engages the protrusion. Adding "receive" does not clarify anything – if anything, it may suggest an even broader notion that the housing could merely align with or approximate the protrusion, which could dilute the requirement of an actual mating engagement. The Court should not introduce extraneous verbiage. As with "fastener protrusion," the term "fastener housing" is ordinary English and is used consistently in the patent specification to refer to the complementary

7

fastening element on the holster body. Figure 2, for example, labels the body's mating part as a housing (223) for the strap's protrusion. U.S. Patent No. 9,784,530 col. 3 l. 60 – col. 4 l. 5 & fig. 2 (Def.'s App'x 006).; *see also* '109 Patent, claim 1 (Def.'s App'x 026); Pls.' Appendix, Tab 3, Cambridge Dictionary, "housing" (defining as a case or covering that surrounds a part).. The prosecution history also used the same term in discussing how the invention differs from prior holsters. There is no hint that the patentees intended "fastener housing" to mean anything beyond its plain meaning (a housing for a fastener on the body).

Plaintiffs again have not identified any lexicographic definition or disavowal that would justify departing from the plain meaning. Their construction is effectively an abstracted description of what the claim already says. Courts routinely reject such redundant constructions. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (it is improper to "paraphrase the claim language in a way that adds nothing of substance"). Here, defining *fastener housing* as a *"structure on the body to engage the protrusion"* adds nothing – the jury will understand that directly from the claim words "housing" and the context that it engages the protrusion on the strap. Accordingly, the Court should decline to adopt Plaintiffs' unnecessary construction, and simply give "fastener housing" its ordinary meaning in context.

**3. "disposed within a thickness"**

**Plaintiffs' Proposed Construction:** *"Positioned inside the depth dimension of a material or structure"* (Pls. Br. 5.)

**Defendants' Position:** *Plain and ordinary meaning (no construction necessary).* The phrases *"two magnets disposed within a thickness of the fastener protrusion"* and *"a [first/third] magnet disposed within a thickness of the housing"* are clear on their face. They mean that the

magnets are embedded *inside* the material of the protrusion and housing, as opposed to being simply on the surface. This is another instance of an unnecessary construction that risks sowing confusion. Plaintiffs' "positioned inside the depth dimension" paraphrases without clarifying; it risks allowing surface-mounted magnets, contradicting spec. (e.g., 'disposed within the thickness' means embedded, per col. 3 l. 66).

The patents use this exact phrasing without special definition. A skilled artisan would understand *"within a thickness"* to mean within the interior of that component (the protrusion or housing). Indeed, the '530 specification describes an embodiment: *"2 magnets 217 [are] disposed within the thickness of the protrusion 219"* U.S. Patent No. 9,784,530 col. 3 l. 66 – col. 4 l. 5 (Def.'s App'x 007).; *see also* '109 patent, claim 1; Pls.' Appendix, Tab 3(Def.'s App'x 003)., Merriam-Webster Dictionary, "thickness" (defining as the smallest of three dimensions). There is no indication that "within" was meant to allow some magnets sticking out; it straightforwardly conveys that the magnets are embedded in the body of the material. Plaintiffs' rephrasing seems aimed at ensuring that even if a magnet is not 100% enclosed, it still meets the claim – again, a position driven by an infringement scenario (where perhaps a magnet might be visible or not fully buried in material). But absent any ambiguity, the claim should not be contorted. If an accused product's magnet is *not* actually within the thickness of the strap or body (for example, if it were mounted entirely on the surface), then it does not meet this element literally – that is a factual outcome, not a reason to twist the claim.

In any event, even Plaintiffs' own construction concedes the core of the plain meaning: that the magnet must be at least inside the thickness to some extent (as opposed to completely external). Because there appears to be no genuine dispute about what "disposed within a thickness"

means, and Plaintiffs point to no intrinsic evidence requiring clarification, the Court should treat this phrase as having its ordinary meaning. Juries are capable of understanding the concept of something being "within the thickness" of an object. If needed, the Court can simply emphasize that it means "inside the material (not just on the surface)," but a formal construction is unnecessary. In short, this limitation is clear. Plaintiffs' minor rewording does not change it, so adopting their language would only invite semantic confusion. The better course is to stick with the claim's own wording and not disturb the plain meaning.

### 4. "two magnets" (in fastener protrusion) / "third magnet" (in housing)

**Plaintiffs' Proposed Construction:** "*Two magnetic elements that work together to create a combined magnetic force*" (Pls. Br. 6.)

**Defendants' Position:** *Plain and ordinary meaning – "two magnets" means two distinct magnets, and "third magnet" means a third distinct magnet, no more and no less.* Plaintiffs seek to broaden 'two magnets' to 'elements' to encompass stacked configurations, but the claim specifies distinct 'magnets,' not elements or poles.  In fact, it is difficult to imagine a clearer term than "two magnets." The '530 patent claim requires *"two magnets disposed within a thickness of the fastener protrusion; and a third magnet disposed within a thickness of the housing."* By its plain terms, this means the strap's protrusion contains two magnets, and the body's housing contains one additional magnet (the "third"). Plaintiffs evidently identified this term as "disputed" in their brief, but notably, they do not appear to argue that "two" means anything other than two. The factual question of whether the accused products meet this limitation is an infringement issue to be determined after proper claim construction. The Court's task at Markman is solely to construe what 'two magnets' means, which is plainly exactly two distinct magnets.

The intrinsic evidence confirms this ordinary meaning and underscores its importance. During prosecution of the '530 patent, the applicant added the "two magnets … and a third magnet" limitations to overcome prior art and distinguish the invention. The Notice of Allowance for the '530 Patent explicitly cites the addition of the specific two-magnets/third-magnet configuration as the reason the claims were allowable over the prior art. Notice of Allowance, U.S. Patent Application No. 15/370,465, (Aug. 25, 2017) (Def.'s App'x 014–015) (stating prior art did not disclose "two magnets … and the third magnet" configuration). The patent's specification likewise consistently describes the preferred embodiment as having exactly two magnets in the strap protrusion and one in the body. U.S. Patent No. 9,784,530 col. 6 ll. 60–65 & figs. 2–4 (Def.'s App'x 006) ; *cf.* '109 patent, claim 1 (reciting one magnet in the protrusion and one in the housing); *see also* Pls.' Appendix, Tab 2 (TotalElement and US Magnetix articles on stacked magnets, Ex. 26 to Johnston Dep.)[1] Nowhere did the patentee suggest that "two" could mean "one" or some indeterminate plurality; nor did they use open-ended language like "at least two." To the contrary, the use of "two" and "third" (rather than "first" and "second") signals a fixed count of three magnets in total, which was clearly a critical aspect of the invention's novelty. The Federal Circuit has held that where the plain language and prosecution history make a numerical requirement clear, courts should not broaden it under the guise of construction. *See, e.g., K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364–65 (Fed. Cir. 1999) (refusing to construe "two" to mean "at least two" absent evidence of a special usage).

---

[1] Plaintiffs cite 2023 articles about stacked magnets - materials that post-date the 2017 patent by six years. Such evidence cannot inform what a POSITA understood at the time of invention. Moreover, even if considered, these articles discuss stacked magnets as creating a single stronger magnet unit, which contradicts the claims' requirement for distinct 'two magnets.

Plaintiffs have no legitimate argument to the contrary. If anything, Plaintiffs may contend that "two magnets" should be interpreted to encompass two magnets in any arrangement or of any shape – which is fine, as far as it goes. But Defendants have never suggested otherwise. We do not seek to add any limiting adjectives (such as "two separate magnets" or "two identical magnets"); we simply assert that "two" is exactly two. Plaintiffs themselves appear to agree, as they must. Thus, there is actually no dispute of meaning here – only a dispute of infringement, which Plaintiffs tacitly acknowledge by calling the term dispositive. The Court's role is not to resolve that factual dispute at Markman, but the Court can and should recognize the import of the term by giving it its full ordinary scope: the claim requires a protrusion containing two distinct magnets (not zero, not one, not a single magnet with two poles, but two magnets in the common sense of the word). Because the jury will understand "two magnets" without further help, and because any attempt by Plaintiffs to blur this requirement would contradict the intrinsic record, the Court should simply adopt the plain meaning. In sum, no construction is needed other than perhaps to note that "two" and "third" denote exact counts (which is self-evident).

The '530 patent claim itself and prosecution history leave no ambiguity. Indeed, the examiner noted that the prior art lacked exactly this *"two magnets… and third magnet"* configuration. The specification's explicit statement – *"The system 201 is further provided with 2 magnets 217 disposed within the thickness of the protrusion 219"* – is directly on point.   U.S. Patent No. 9,784,530 col. 6 ll. 60–63 (Def.'s App'x 007).  This intrinsic evidence reinforces that the patentee meant what was said: two means two. Plaintiffs cannot point to any contrary intrinsic evidence. Accordingly, the Court should decline any invitation to paraphrase this term, and instead hold the patentees to the clear numeric limitation they chose.

**5. "integrally secured"**

**Plaintiffs' Proposed Construction:** *"Permanently attached to form a unified whole* (Pls. Br. 7.)

**Defendants' Position:** *Plain and ordinary meaning (no construction necessary).* Plaintiffs' proposed construction improperly imports the limitations 'permanently or fixedly attached (not removable).' The plain meaning already conveys secure attachment without requiring absolute permanence or non-removability." The phrase "integrally secured to the back side of the body" describes how the strap assembly is connected to the holster body. Defendants submit that this phrase is used in its ordinary sense and is readily understandable: the strap assembly is secured to the body in an integral manner (i.e., as a part of the overall holster, rather than a temporary or loose attachment). Plaintiffs propose to redefine "integrally secured" with a verbose construction ("permanently or fixedly attached… functioning as a single unit"). This proposed definition is both unwarranted and potentially misleading.

To begin, the patent claims use "integrally secured" in a straightforward way. Claim 1 of the '530 patent recites *"a strap assembly integrally secured to the back side of the body."* The modifying adverb "integrally" conveys that the strap assembly is secured as an integral part of the body. *See also* '109 patent, claim 1 (reciting "a strap assembly secured to the back side of the body") In common usage, something done "integrally" means done in a way that forms a whole or complete unit. The claim does not specify any particular means of attachment – only that the strap assembly is *integrally secured* (implying a firm, preferably permanent attachment as opposed to a readily detachable coupling). Importantly, the patent does not say "integrally formed" or "unitary with," which might have suggested the strap and body are one piece of material. It says

"integrally secured," indicating that the strap assembly is attached securely in an integrated fashion. This choice of words was the patentees', and we must presume it carries its ordinary meaning unless defined otherwise.

Plaintiffs' construction, while ostensibly drawn from dictionary concepts of "integral," introduces extraneous notions and redundancies. Saying "permanently or fixedly attached (not removable)" simply elaborates what "secured" already implies (securely attached), and "functioning as a single unit" is an amorphous phrase that could confuse the jury. What does it add beyond "permanently attached"? If anything, it risks implying that the strap and body must operate as if monolithic, which Defendants might interpret as one-piece construction. Conversely, Plaintiffs likely intend their construction to *avoid* a one-piece interpretation and to emphasize that even a sewn-on or riveted strap qualifies as "integrally secured." But no construction is needed to reach that result – the plain language already does not require a one-piece formation. It simply requires that the strap assembly is securely affixed as part of the holster. Plaintiffs' own brief (Dkt. 133 at 13) presumably cited dictionary definitions to argue that *"integral"* means *"formed as a whole; constituent, necessary to completeness"*, etc., which is fine but hardly different from the ordinary connotation.

The specification does not assign any special definition to "integrally secured." It does show, in one embodiment, the strap assembly and holster body appearing as a continuous piece (in Figures 2–3). However, nowhere does the spec mandate that configuration or disclaim other attachment methods. The figures alone cannot limit the claim to a one-piece device. And the use of the word "secured" (as opposed to "formed" or "integral with") strongly implies that attachment by separate pieces (so long as secure) is contemplated. In fact, during prosecution, the applicant

and examiner discussed the strap assembly being "integrally secured," but there was no suggestion that this meant "undetachably one-piece" – it was treated as a straightforward feature distinguishing a prior art holster where the strap might not have been attached in that way. The absence of any lexicography or disclaimer is telling: had the patentee meant "integrally" in some unusual way (e.g., *only* one-piece), one would expect an explicit statement. There is none.

Given the lack of intrinsic controversy, the plain meaning should govern. *Hill-Rom* and other cases teach that even if a patent shows one way of securing parts together, the claim should not be narrowed to that unless the patentee clearly limited it. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014). Here, Plaintiffs' construction, while purporting to be broad ("permanently attached"), could actually be argued to exclude a releasable attachment – but the claim doesn't speak of release or not. If a strap were bolted on but technically could be unscrewed, is that "not removable"? Plaintiffs' wording introduces such ambiguities. The better course is to stick with the phrase the patentees wrote. A juror will intuitively grasp that *"integrally secured"* implies a firm, built-in attachment of the strap to the holster body (as opposed to, say, a strap that is merely hooked on or easily detachable). We object to any construction that might inadvertently alter the scope or confuse the jury. Plaintiffs' proposed phrasing, with its multiple clauses, could do both.

In sum, no lexicography or disclaimer justifies departing from the ordinary meaning of "integrally secured." The term is used in a *descriptive sense*, not a highly technical one, and the jury can apply it to the facts (e.g., whether Defendants' strap assembly is secured in an integral fashion to the holster body) without a tutorial from the Court. The Court should therefore decline Plaintiffs' narrowing construction and maintain the claim's plain language.

15

**6. "combined magnetic retention strength . . . strong enough to retain the gun"**

**Plaintiffs' Proposed Construction:** *No construction necessary (phrase is functional; merely indicates the magnets' combined force is sufficient to hold the gun).* (Pls. Br. 15.)

**Defendants' Position:** *Plain and ordinary meaning (no construction necessary).* The claims recite that *"a combined magnetic retention strength generated by the [two/first] magnets and [third/second] magnet is strong enough to retain the gun within the body."* U.S. Patent No. 9,784,530 col. 4 ll. 1–7 (Def.'s App'x 007); see also '109 patent, claim 1.

This language is self-explanatory. It means that together the magnets produce a retaining force sufficient to keep the gun in the holster. Plaintiffs do not appear to advocate any special definition beyond that common-sense understanding. To the extent Plaintiffs raised this phrase in their brief, it was likely to argue that it is a *result-oriented* limitation that should not be construed to impose any numerical threshold or the like. The claim simply requires that the magnetic force be "strong enough" for the intended purpose. This is a relative term that the jury can apply. There is no hidden meaning to extract via construction.

Importantly, Plaintiffs have not pointed to anything in the intrinsic record that redefines "strong enough to retain the gun" or "combined magnetic retention strength." The specification uses similar language in describing the invention's operation, indicating that when the magnets engage, their combined strength holds the firearm in place. U.S. Patent No. 9,784,530 col. 6 ll. 63–67 (Def.'s App'x 006). This is a straightforward technological fact, not a term of art. The Court should resist any invitation to rephrase it. Any attempt to clarify what "strong enough" means in absolute terms would risk confusing the jury or importing an unintended standard. The words

"strong enough to retain the gun" should simply be given their ordinary, functional meaning: sufficiently strong to do the job of retention.

To the extent Plaintiffs seek to assure that this limitation does not impose a specific test, Defendants concur – but that is a matter of applying the claim, not construing it. For claim construction purposes, the phrase is plain. In fact, injecting additional verbiage could do harm. For example, if Plaintiffs suggested a construction like "the combined magnetic force that keeps the holstered firearm from falling out under normal movement," one might quibble about what "normal movement" entails. Such debates are unnecessary because the claim itself sets the standard ("retain the gun within the body") and a jury can determine, based on evidence, whether that standard is met in a given situation. There is no ambiguity requiring judicial clarification.

In short, this term exemplifies a scenario where *"the plain language of the claim is its own best definition."* The Court should leave it undisturbed. Any explanatory commentary from the Court would either repeat the phrase in different words or risk altering the scope. Neither is warranted here. Thus, "combined magnetic retention strength…strong enough to retain the gun" should be applied as written, with no further construction.

### 7. "elongated strap" ('109 patent; '530 patent)

**Plaintiffs' Proposed Construction:** a strap that is longer than it is wide. (Pls. Br. 8.)

**Defendants' Position:** Plain and ordinary meaning (no construction necessary). The term "elongated strap" should be given its plain meaning – essentially, a strap that has been lengthened or extended – with no additional limitations. Plaintiffs seek to add a requirement ("longer than it is wide") that is neither necessary nor supported by the patent. In particular, "elongated" is a common English word meaning extended in length or made longer. Nothing in the patents suggests

that "elongated" carries any special or unusual meaning beyond this everyday definition. Plaintiffs' proposal injects an arbitrary dimensional qualifier – *"longer than it is wide"* – into the claim. This adds nothing of substance. The intrinsic record contains no discussion of the strap's width or any ratio of length-to-width, so imposing such a requirement is unwarranted. In short, there is no ambiguity to resolve here. Injecting a dimensional limitation would only risk confusion. Accordingly, the Court should construe "elongated strap" in accordance with its plain and ordinary meaning, without adopting Plaintiffs' extraneous requirement.

### 8. "back side of the body" ('109 patent; '530 patent)

**Plaintiffs' Proposed Construction:** the side of the holster body opposite the front side. (Pls. Br. 8.)

Defendants' Position: Plain and ordinary meaning (no construction necessary). The term "back side of the body" should be applied as written, referring simply to the rear side of the holster body (i.e. the side opposite the holster's front). Plaintiffs' proposed definition is nothing more than a paraphrase of the term itself, offering no new insight. In particular, any person would readily understand that the holster body has a front side (the side facing outward or toward the user's body front) and a back side (the opposite side, typically closer to the wearer's body). Describing the "back side" as "the side opposite the front side" is literally the same concept expressed in extraneous words. Courts have cautioned that claim construction is "not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Here, Plaintiffs' construction adds no clarity; it merely restates the obvious relationship between the front and back of an object. Adopting such a redundant definition would not help the jury--a court

need not rewrite clear claim terms in different words when those terms are easily understood and not genuinely disputed.

Plaintiffs do not point to any ambiguity in "back side of the body" that needs resolving. Accordingly, "back side of the body" should be given its plain and ordinary meaning. Any further definition would be superfluous.

### 9. "magnetic retention"

**Plaintiffs' Proposed Construction:** "retention by magnetic force." (Pls. Br. 9.)

**Defendants' Position:** Plain and ordinary meaning (no construction necessary). The term "magnetic retention," as used in the patents (e.g. in describing a *"magnetic retention front side"* of the holster body), should be understood in its ordinary sense: it denotes that the holster uses magnetic forces to retain the firearm. This concept is already clear from the claim language and specification, and Plaintiffs' proposed construction merely repeats the same concept in different words. Our position is that no further definition is needed

First, the claims themselves make the meaning of *magnetic retention* clear. For example, one claim recites that magnets in the holster generate a combined magnetic retention strength sufficient to hold the gun in place. In other words, the holster's retention mechanism is accomplished via magnets. A juror reading the phrase "magnetic retention" in context would naturally understand it as retention accomplished by magnetic force.

Second, Plaintiffs propose defining *magnetic retention* as "retention by magnetic force," which is essentially saying the same thing as the claim language. This offers no additional clarity — it's a one-to-one substitution of words (*"magnetic"* → *"by magnetic force"*, *"retention"* →

*"retention"*). Such a construction is unnecessary because it does not change or clarify the scope in any way. If the term itself is readily understandable, rephrasing it is not helpful.

Further, isolating the words "magnetic retention" for a standalone definition could even be misleading. The patents describe a specific configuration of magnets (in the holster body and strap) that work together to secure the firearm. By broadly saying "retention by magnetic force," one might detach the term from that context, potentially broadening it to any magnetic mechanism. The claimed invention, however, is particular about how the magnets interact (a combined force between specific magnets). Thus, it is better to leave the term in the context of the full claim language, rather than adopt an abstract definition that might sow confusion about the source or arrangement of the magnetic force.

In sum, "magnetic retention" is a self-explanatory term in the context of these patents. It simply refers to the firearm being held in place by magnetic attraction. Because this is readily understood, the Court should decline to replace the term with Plaintiffs' redundant phrasing. The plain and ordinary meaning – as informed by the surrounding claim language – is more than sufficient. No further construction is required.

**10. "body having a front side and a back side" –**

**"Plaintiffs' Proposed:** 'Holster body with front and rear surfaces forming cavity' (Pls. Br. 9).

**Defendants' Position:** Plain and ordinary meaning (no construction necessary). This term is self-explanatory: a holster body with opposing front and back sides forming an opening. Plaintiffs' paraphrase adds nothing, and the patents describe distinguishable sides without further

limitation (e.g., figs. 2-3). U.S. Patent No. 9,784,530 col. 4 ll. 1–7 (Def.'s App'x 007); U.S. Patent No. 11,747,109 col. 4 ll. 1–7 (Def.'s App'x 026).

In each instance above, Plaintiffs have not identified any legitimate ambiguity or any clear intent by the patentee to assign a special meaning. The plain terms – *fastener protrusion, fastener housing, disposed within a thickness, two/third magnets, integrally secured, combined magnetic retention strength* – are neither unfamiliar to a juror nor used in an idiosyncratic way in the patents. The intrinsic record (claims, specification, and prosecution history) confirms their ordinary meanings and reveals no disavowal of that ordinary scope. Accordingly, Defendants respectfully request that the Court adopt the plain and ordinary meaning of each disputed term and reject Plaintiffs' narrowing constructions.

## CONCLUSION

For the foregoing reasons, Defendants urge the Court to simply state that the disputed terms of the '109 and '530 patents are construed in accordance with their plain and ordinary meaning, and to decline Plaintiffs' attempts to rewrite those terms. Plaintiffs' proposed constructions find no support in the intrinsic evidence and are driven by litigation objectives rather than true ambiguity in the patent. Under controlling Federal Circuit law, the heavy presumption in favor of ordinary meaning has not been overcome. The patentees did not act as their own lexicographer for these terms, nor did they clearly disclaim any scope beyond the plain language. As such, the Court should give effect to the claims as written, without importation of extraneous limitations or gloss. This approach honors the patent and the public notice function of claims, and it avoids unduly narrowing (or broadening) the claims to fit a particular infringement theory. Defendants respectfully ask that the Court adopt the plain meaning for each term and hold that no further

construction is required. Such an outcome will allow the case to proceed to the fact-finder on the real question – whether the accused holsters meet the claim requirements – without the claims being distorted at the outset.

DATED this 19th day of September 2025.

Respectfully submitted,

**KBA**

*/s/ Chad S. Pehrson*
Chad S. Pehrson
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on the 19th day of September, 2025, a true and correct copy of the foregoing

**RESPONSE TO PLAINTIFFS' CLAIM CONSTRUCTION BRIEF** was filed with the Court

and that the document has been forwarded to all parties via the Court's electronic filing system.


*/s/ Chad S. Pehrson*