Brandon James Leavitt, Tx Bar No. 24078841, *pro hac vice*
LEAVITT ELDREDGE LAW FIRM
4204 SW Green Oaks Blvd., Suite 140
Arlington, TX 76107
(214) 727-2055
brandon@uslawpros.com

Jason K. Smith, 14323
MK SMITH, APC
9891 Irvine Center Dr., Ste. 200
Irvine, CA 92618
801-916-8723
jsmith@mks-law.com

ATTORNEYS FOR PLAINTIFFS

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION**

---

| | |
|---|---|
| **JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**HER TACTICAL, LLC; E & R LLC** *dba* **HER TACTICAL; VICKY ARLENE JOHNSTON; and BLAKE CHEAL**<br><br>**Defendants.** | **PLAINTIFFS' CONSOLIDATED MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 1:22-cv-01121-AMA-DBP<br><br>Judge Ann Marie McIff Allen<br><br>Magistrate Judge Dustin B. Pead<br><br>**Jury Demand** |

---

Pursuant to Federal Rule of Civil Procedure 56 and DUCivR 56-1, Plaintiffs JM4 Tactical, LLC and James Chadwick Myers move for partial summary judgment on two narrow issues and, alternatively, for Rule 56(g) findings on undisputed facts.

First, Defendants cannot prove statutory invalidity under 35 U.S.C. §§ 101, 102, 103, or 112 as to any asserted patent, including the '530 Patent, the '109 Patent, and the four asserted

---

**PLAINTIFFS' ANSWER IN OPPOSITION TO MOTION TO DISMISS**                    **Page 1 of 32**

design patents. Defendants bear the clear-and-convincing-evidence burden under 35 U.S.C. § 282, disclosed no expert witness, and cannot meet that burden as a matter of law. Counterclaim 2 therefore fails to that extent. *See infra*.

Second, Ms. Johnston personally performed, directed, and assisted E&R LLC's accused design, sales, marketing, payment, and distribution acts. She cannot avoid personal responsibility for those acts merely because she acted "for E&R" or as an E&R employee. The undisputed record also establishes that Ms. Johnston knew of the '530 Patent no later than August 22, 2022, and knew of the '109 Patent by September 2023. *See infra*.

If the Court does not grant all requested relief, Plaintiffs alternatively request Rule 56(g) findings treating the material facts identified *infra* as established for the remainder of the case.

Plaintiffs do not seek summary judgment on direct infringement, doctrine-of-equivalents infringement, prosecution-history estoppel, patent-by-patent inducement liability or specific intent, Defendant Blake Cheal's individual liability, *Halo* enhancement, trade dress infringement, false advertising, damages, or any inventorship- or inequitable-conduct-based unenforceability theory the Court determines survives Defendants' disclosure failures. Those issues remain reserved for trial.

## TABLE OF CONTENTS

I.   BACKGROUND AND SUMMARY ................................................................................ 5

II.  ISSUES BEFORE THE COURT ................................................................................... 7

   A.  Can Defendants — who bear the clear-and-convincing-evidence burden under 35 U.S.C. § 282 and have disclosed no expert witness on any technical issue — prove statutory invalidity of any asserted patent as a matter of law? ............................................. 7

   B.  Should the Court find, based on Defendants' pleadings and Ms. Johnston's own admissions, that she personally performed E&R's accused acts and knew of the '530 Patent by August 22, 2022 and of the '109 Patent by September 2023? ........................... 7

   C.  In the alternative, should the Court enter findings under Federal Rule of Civil Procedure 56(g) on the material facts set forth in Part C of this Motion? .......................................... 7

III. STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................... 7

   i.   *Pre-Suit Knowledge and the August–September 2022 Notice Cycle*............................. 8

   ii.  *E&R LLC's Acts of Designing, Funding, Selling, and Operating Online Channels for the Accused Product* ................................................................................................ 10

   iii. *Vicky Johnston's Personal Conduct* ........................................................................ 12

   iv.  *Blake Cheal's Personal Acts in Support of E&R's Accused-Product Operations* ..... 14

   v.   *Defendants' Acts and Counterclaim Posture*............................................................ 15

   vi.  *Damages-Related Undisputed Facts (preserved without prejudice to scope of damages)* ................................................................................................................ 16

IV.  LEGAL STANDARD ............................................................................................... 17

V.   ARGUMENT AND AUTHORITIES............................................................................. 17

   A.  Defendants Cannot Prove Statutory Invalidity of any Asserted Patent Under 35 U.S.C. §§ 101, 102, 103, or 112 ................................................................................... 17

   i.   *Each Asserted Patent Is Presumed Valid; Defendants Bear the Clear-and-Convincing-Evidence Burden.* ................................................................................ 18

   ii.  *Defendants Cannot Carry Their Clear-and-Convincing Burden with Undisclosed Lay Opinions and Undeveloped Prior-Art References.* .................................................... 18

   iii. *Defendants Have not Disclosed any Expert Witness, and Discovery is Closed* ......... 20

   iv.  *Defendants' Bare Recitations of Statutory Sections and their Listed Prior-Art References do not Carry their Burden* ..................................................................... 21

   v.   *Counterclaim 2 Fails as to Statutory Invalidity for the Same Reasons* ..................... 22

   vi.  *Defendants' Non-Infringement and Prosecution-History-Estoppel Theories Are Not Invalidity Theories.* ............................................................................................... 23

*vii. Conclusion as to Part A* ............................................................................................ *23*

B. Ms. Johnston Personally Performed, Directed, and Assisted E&R's Accused Acts, and had Established Pre-Suit Knowledge of the Asserted Patents ......................................... 24

    *i.   The Limited Scope of Part B; Reservations for Trial* ................................................ *25*

    *ii.  Ms. Johnston Knew of the '530 Patent No Later Than August 22, 2022, and Knew of the '109 Patent by September 2023* ................................................................. *25*

    *iii. The August 22, 2022 Freedom-to-Operate Analysis Does Not Create a Genuine Dispute as to the Limited Findings Plaintiffs Seek.* ................................................. *26*

    *iv. Ms. Johnston Personally Performed, Directed, and Assisted E&R's Accused Acts... 28*

    *v.   Conclusion as to Part B* ................................................................................................. *31*

**VI. CONCLUSION** ................................................................................................................ **31**

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)* .............................................................17

*Ariad Pharms., Inc. v. Eli Lilly & Co., 598 F.3d 1336 (Fed. Cir. 2010) (en banc)* ................20

*Berkheimer v. HP Inc., 881 F.3d 1360 (Fed. Cir. 2018)* ..........................................................21

*Celotex Corp. v. Catrett, 477 U.S. 317 (1986)* ........................................................................17

*Centricut, LLC v. Esab Group, Inc., 390 F.3d 1361 (Fed. Cir. 2004)* ....................................19

*Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632 (2015)* .............................................24, 27

*Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en banc)* ........... passim

*Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754 (2011)* ......................................24, 26

*Graham v. John Deere Co., 383 U.S. 1 (1966)* ........................................................................20

*Int'l Seaway Trading Corp. v. Walgreens Corp., 589 F.3d 1233 (Fed. Cir. 2009)* 20, 21, 22, 23

*Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142 (Fed. Cir. 2004)* ...............................19

*Lubby Holdings LLC v. Chung, 11 F.4th 1355 (Fed. Cir. 2021)* .........................................6, 31

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)* ..............................17

*Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91 (2011)* ...........................................................18

*Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898 (2014)* .............................................20

*Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304 (Fed. Cir. 2002)* ......................... passim

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc., 609 F.3d 1308 (Fed. Cir. 2010)* ....6, 31

### Statutes

15 U.S.C. § 1125(a) .......................................................................................................... passim

35 U.S.C. § 101 ................................................................................................ passim
35 U.S.C. § 102 ....................................................................................................... 5
35 U.S.C. § 103 ................................................................................................. 5, 20
35 U.S.C. § 112 ..................................................................................................... 20
35 U.S.C. § 171 ....................................................................................................... 5
35 U.S.C. § 271(b) ....................................................................................... 5, 24, 30
35 U.S.C. § 282 ......................................................................................... 5, 6, 7, 18

***Rules***

Fed. R. Civ. P. 26(a)(2) ................................................................................ 5, 15, 22
Fed. R. Civ. P. 56(a) ......................................................................................... 5, 17
Fed. R. Civ. P. 56(g) ..................................................................................... 5, 31, 32
Fed. R. Evid. 701 .................................................................................................... 5
Fed. R. Evid. 702 .............................................................................................. 5, 22
DUCivR 56-1 .......................................................................................................... 5

## I.    BACKGROUND AND SUMMARY

1.      This is a patent and unfair competition case about a women's-targeted IWB magnetic gun holster. Plaintiff JM4 Tactical, LLC owns six patents (two utility, four design) on the magnetic-retention holster Plaintiff James Chadwick Myers invented in 2016. Defendants began selling a competing product in May 2022 — approximately nine months *after* Defendant Vicky Arlene Johnston, by her own admission, reviewed Mr. Myers's claim of the '530 Patent to "make sure" her design did not infringe.

2.      Plaintiffs do not move on direct infringement of any patent. Direct infringement of the '109 Patent and the asserted design patents involves disputed structural and ordinary-observer questions appropriately resolved by a jury at trial. Direct infringement of the '530 Patent is intertwined with doctrine-of-equivalents and prosecution-history-estoppel issues that present material disputed facts also reserved for trial. Plaintiffs accordingly limit this Motion to

issues that *can* be resolved as a matter of law on the present record without trying the case on paper:

3.      **Statutory invalidity of every asserted patent.** Defendants pleaded that the asserted patents are invalid under 35 U.S.C. §§ 101, 102, 103, and 112, but they have disclosed no expert witness. Without admissible expert testimony tying prior art to the asserted claims on an element-by-element basis (or, for design patents, applying the *Egyptian Goddess* ordinary-observer comparison framework), Defendants cannot meet § 282's clear-and-convincing-evidence burden. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315–16 (Fed. Cir. 2002). Defendants' principal '530 argument — that the accused product has "less than three magnets" and that prosecution-history estoppel forecloses doctrine-of-equivalents infringement — is a non-infringement theory, not an invalidity theory. As a matter of law, Defendants cannot prove statutory invalidity of any asserted patent.

4.      Ms. Johnston's personal performance of E&R's accused acts and her dated knowledge of the '530 and '109 Patents. Defendants admit Ms. Johnston is "the sole owner of Her Tactical." ECF 84, ¶ 66. She admitted at deposition that she personally designed and operated the accused product on E&R's behalf and that "[i]t's the same for all of them." App. Ex. 1 at 13:25–14:11. She personally accepted accused-product payments through her personal Venmo account and personally directed in-person customer interactions through her husband on E&R's behalf. App. Ex. 1 at 100:6–20; 158:19–24; 163:19–164:8. Under *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010), and *Lubby Holdings LLC v. Chung*, 11 F.4th 1355 (Fed. Cir. 2021), she cannot avoid personal responsibility for those acts merely by characterizing them as taken "for E&R." Defendants admit, in three iterations of their

answer, that Ms. Johnston was aware of JM4's utility-patent rights no later than August 22, 2022. ECF 84, ¶ 29 (admit). Ms. Johnston admitted at her deposition that she was aware of the '109 Patent by September 2023. App. Ex. 1 at 108:23–109:1. These two findings — personal-acts and dated knowledge — can be entered as a matter of law without prejudging direct infringement, willfulness, or any patent-by-patent inducement-intent inquiry.

5.      For these reasons, set forth in detail below, the Court should grant partial summary judgment on each of the two discrete issues identified.

## II.    ISSUES BEFORE THE COURT

**A.      Can Defendants — who bear the clear-and-convincing-evidence burden under 35 U.S.C. § 282 and have disclosed no expert witness on any technical issue — prove statutory invalidity of any asserted patent as a matter of law?**

**B.      Should the Court find, based on Defendants' pleadings and Ms. Johnston's own admissions, that she personally performed E&R's accused acts and knew of the '530 Patent by August 22, 2022 and of the '109 Patent by September 2023?**

**C.      In the alternative, should the Court enter findings under Federal Rule of Civil Procedure 56(g) on the material facts identified in the Statement of Undisputed Material Facts above?**

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

6.      Plaintiff James Chadwick Myers is the sole inventor of each of the asserted patents. App. Ex. 3 at 43:18–21.

7.      Mr. Myers assigned all right, title, and interest in the asserted patents to Plaintiff JM4 Tactical, LLC. App. Ex. 3 at 113:18–23; 114:5–12; *id.* Ex. 10 (Patent Application Assignments).

8.      The asserted patents are: U.S. Patent No. 11,747,109 ("'109 Patent") (issued September 5, 2023); U.S. Patent No. 9,784,530 ("'530 Patent"); U.S. Design Patent No.

D788,451; U.S. Design Patent No. D811,731; U.S. Design Patent No. D836,329; and U.S. Design Patent No. D841,979.

9.      Defendant Her Tactical, LLC has its registered place of business at 69 East 200 North, Kaysville, Utah 84037. ECF 84, ¶ 3 (admit).

10.     Defendant E&R LLC has its registered place of business at 69 East 200 North, Kaysville, Utah 84037. ECF 84, ¶ 4 (admit).

11.     Defendant Vicky Arlene Johnston is the sole owner of Her Tactical, LLC. ECF 84, ¶ 66 (admit).

12.     Defendant Blake Cheal owns the property located at 3288 N. 1250 W., Pleasant View, Utah 84414. App. Ex. 8 at Cheal Resp. to RFA 54 ("Mr. Cheal in fact owns the home"); App. Ex. 8 at Cheal Resp. to Interrog. 20 (the Trust does not function); App. Ex. 5 E&R Resp. to RFA 11 (admit; storage at 3288 N. 1250 W.).

13.     Defendant Blake Cheal owns the truck identified in Plaintiffs' RFA 55. App. Ex. 8 at App. Ex. 8 at App. Ex. 8 at Cheal Resp. to RFA 55 ("Mr. Cheal in fact owns the truck.").

**i.      Pre-Suit Knowledge and the August–September 2022 Notice Cycle**

14.     On August 19, 2022, Plaintiffs sent a communication to Her Tactical referencing Plaintiffs' utility patent. ECF 84, ¶ 28 (qualified admit).

15.     Her Tactical responded to Plaintiffs' August 19, 2022 cease-and-desist letter by conveying a freedom-to-operate analysis and opinion procured from a licensed patent agent. ECF 28, Counterclaim ¶ 5; ECF 34, ¶ 5 (Plaintiffs' admission).

16.     The freedom-to-operate analysis described in SUMF-B.2 was authored by Michael R. Schramm of Schramm Patent Services, LLC, was dated August 22, 2022, and was directed to Vicky Johnston / Her Tactical. App. Ex. 15 (FTO Analysis dated Aug. 22, 2022).

17.     The August 22, 2022 freedom-to-operate analysis was, by its terms, an analysis "relative to the US patent 9,784,530 ('530)" — and not as to any other patent. App. Ex. 15, p. 1.

18.     The August 22, 2022 freedom-to-operate analysis "forgo[oes]" a "limitation by limitation . . . full detailed analysis" and instead "focus[es] on one aspect, namely the three magnet limitation." App. Ex. 15, p. 1–2.

19.     As of August 22, 2022, U.S. Patent No. 11,747,109 had not yet issued, and the August 22, 2022 freedom-to-operate analysis does not address the '109 Patent.

20.     On August 22, 2022, Defendant Vicky Johnston revealed that at least two of the Defendants were already aware of JM4's utility patent registration and declined to cease and desist selling Her Tactical holsters even after Plaintiffs informed her there were additional relevant patents. ECF 84, ¶ 29 (admit); *see also* ECF 28, ¶ 29 (admit); ECF 46, ¶ 29 (admit).

21.     Ms. Johnston first reviewed Mr. Myers's patent claim in August 2021. App. Ex. 1 at 31:13–25 ("It would be in August. . . . '21. Uh-huh.").

22.     On September 12, 2022, Her Tactical appeared on Good Things Utah to promote the accused products and a women's self-defense workshop. ECF 28, Counterclaim ¶ 6; ECF 34, ¶ 6 (Plaintiffs' admission).

23.     On September 19, 2022, Plaintiffs filed the Original Complaint asserting infringement of the '530 Patent. ECF 2.

24.     Defendants' first commercial sale of the accused product occurred in late May 2022. App. Ex. 1 at 27:18–19 ("May — very end of May is when I sold my very first product.").

25.     The '109 Patent issued September 5, 2023.

26.     Ms. Johnston was aware of the '109 Patent by September 2023. App. Ex. 1 at 108:23–109:1 (Q: "you were aware of the second utility patent by September of '23, correct?" A: "Correct.")

27.     Ms. Johnston testified at her deposition that she chose to halt accused-product sales in September 2023 because she was researching the newly issued '109 Patent. App. Ex. 1 at 97:11–98:1 ("I am choosing to halt my sales right now. . . . In September [2023]. . . . Because I'm researching this next patent that has come out."). Plaintiffs do not by this finding ask the Court to determine the actual halt date, which is reserved for trial.

### ii.     E&R LLC's Acts of Designing, Funding, Selling, and Operating Online Channels for the Accused Product

28.     E&R LLC designed, caused to be designed, or assisted in the design of one or more of the Accused Instrumentalities. App. Ex. 5 at App. Ex. 5 at App. Ex. 5 at E&R Resp. to RFA 1 (admit).

29.     E&R LLC funded, aided, or allowed its assets to fund or aid in the design, production, marketing, or sales of one or more of the Accused Instrumentalities. App. Ex. 5 at App. Ex. 5 at App. Ex. 5 at E&R Resp. to RFA 2 (admit).

30.     E&R LLC sold, caused to be sold, or allowed to be sold one or more of the Accused Instrumentalities. App. Ex. 5 at App. Ex. 5 at App. Ex. 5 at E&R Resp. to RFA 4 (admit).

31.     E&R LLC sold the accused product at: (i) Smith and Edwards Co. branch at 9010 South Redwood Road, West Jordan, Utah; (ii) Smith and Edwards Co. branch at 3936 N. 2000 W., Ogden, Utah; (iii) the Rocky Mountain Gun Show at the Mountain America Expo Center; (iv) the Weber County Shooting Complex at 2446 Rulon White Boulevard, Ogden, Utah; (v) via website, e-commerce listing, and social media accounts under E&R's control; and (vi) from the residential address 3288 N. 1250 W., Pleasant View, Utah. App. Ex. 5 at E&R Resp. to RFAs 5, 6, 7, 8, 9, 10 (admit).

32.     E&R LLC stored Accused Instrumentalities at the residential address 3288 N. 1250 W., Pleasant View, Utah. App. Ex. 5 at E&R Resp. to RFA 11 (admit).

33.     E&R LLC owned, operated, created, or managed the content of: (i) https://www.youtube.com/@hertactical (RFA 14); (ii) https://hertactical.com (RFA 15); (iii) https://www.facebook.com/vicky.johnston.397 (RFA 16); (iv) https://www.facebook.com/hertactical (RFA 17); (v) https://www.etsy.com/shop/HERTACTICAL (RFA 18); (vi) the specific Etsy listing https://www.etsy.com/listing/1240884431/her-tactical-magnetic-holster-for (RFA 19); and (vii) Instagram, TikTok, Pinterest, Alibaba, and Amazon channels for Her Tactical (RFAs 20–25). E&R Resp. to RFAs 14–25 (admit).

34.     Defendants' Her Tactical Products contain "[a] single magnet . . . integrated into each end of the flap such that when the flap is folded, the magnets engage each other to secure the holster relative to the undergarment strap." ECF 28, Counterclaim ¶ 49.

35.     Defendants' Initial Non-Infringement Contentions describe the accused Her Tactical Products as follows, *verbatim*:

> The Her Tactical Products consist of a gun holster configured to attach to an undergarment discretely and securely. An elongated flap is attached to the body of the holster and configured to extend around an undergarment strap, such as a bra strap. One end of the flap is securely attached to the body of the holster via stitching, for example, and the opposite end of the flap is unsecured. In this manner, the flap is configured to fold over itself along a center line such that the attached end aligns with the unattached end. A single magnet is integrated into each end of the flap such that when the flap is folded, the magnets engage each other to secure the holster relative to the undergarment strap.

App. Ex. 11 ("Initial Non-Infringement Contentions"), p. 2–3.

36.     The accused Her Tactical Products do not include three magnets. *Id*. at 3 ("the Her Tactical Products simply do not include three magnets"); App. Ex. 15, p. 1 ("the Product has less than three magnets").

37.     On August 20, 2021, Ms. Johnston personally created a Facebook page for "Her Tactical." ECF 84, ¶ 20 (admit).

38.     On September 24, 2021, Defendants posted a video showing an IWB magnetic-retention holster they planned to launch in October 2021. ECF 84, ¶ 23 (admit).

39.     Her Tactical has advertised the accused product online since at least January 18, 2022. ECF 84, ¶¶ 25, 27 (admit).

40.     Her Tactical posted informational videos regarding the accused product, including videos featuring Defendant Grant Cavalli. ECF 84, ¶ 39 (admit).

### iii.     Vicky Johnston's Personal Conduct

41.     Ms. Johnston appeared at her deposition both personally and as Her Tactical's Rule 30(b)(6) corporate representative. App. Ex. 1 at 10:8–11. Ms. Johnston testified she is the sole employee, owner, and officer of Her Tactical. *Id*. at 10:12–15. She described E&R / Her Tactical as "my business." *Id.* at 11:6–8.

42.     Ms. Johnston is the "sole provider" — the human "person that is a representative of the company." App. Ex. 1 at 13:22–23.

43.     Ms. Johnston personally designed the accused product on E&R's behalf and personally engages in every act of designing, funding, and selling: "It's the same for all of them." App. Ex. 1 at 13:25–14:11.

44.     Ms. Johnston operates the accused business from her home address: "I kept this a home business. Like, it's a side hustle. So, yes, I do it from home." App. Ex. 1 at 18:1–11. Her authorization to operate from the home is "implied permission" by Mr. Cheal's "performance" of not objecting. *Id*. at 88:17–89:9.

45.     Ms. Johnston personally accepted at least two accused-product payments through her personal Venmo account from customer Eleace Bartels, and the funds were thereafter deposited into E&R's business checking account. App. Ex. 1 at 100:6–20; 130:18–20; *id.* Ex. 8.

46.     Ms. Johnston also personally paid Defendant Grant Cavalli, Her Tactical's instructor at multiple firearms-training events at which the accused product was offered for sale, through her personal Venmo account. Cavalli testified that he "received payments from . . . Her Tactical" via "Venmo to Venmo," App. Ex. 2 at 12:1–5, and confirmed on inspection of his phone, in the course of his deposition, that the payments came from "Vicky Johnston's personal Venmo." *id.* 15:14–19 ("[I]t appears that Mr. Cavalli is receiving payments from Vicky Johnston's personal Venmo. . . . Q. Mr. Cavalli, can you confirm that? A. Based on what I see, yes."). Ms. Johnston also testified that Her Tactical does not have a Venmo account. App. Ex. 1 at 100:6–8 (Q: "Does your business have a Venmo account?" A: "No.").

47.     For at least one accused-product transaction, Ms. Johnston used her personal phone for customer communications, App. Ex. 1 at 159:7 ("It's the only phone I have."), and directed the customer to retrieve the accused holster from her personal residence, *id.* at 158:19–24.

48.     Ms. Johnston personally designed the accused product and provided the design to the manufacturer: "Well, I design it and I give it to them." App. Ex. 1 at 27:1–5; *id.* 26:24–27:12 (purchasing through Alibaba/manufacturers and communicating design information).

49.     Ms. Johnston began product research in August 2021 and developed the product between August and December 2021. App. Ex. 1 at 28:12–15; 29:1–4. She also testified that she is the inventor of her products. *Id*. at 21:21–24.

50.     Ms. Johnston testified she "is not an expert on magnets" and has not done any analysis of magnet stacking or related magnetic-engagement principles. App. Ex. 1 at 179:1–7; 183:17–22. She has not retained an expert on magnets. *Id*. at 182:25–183:3.

### iv.     Blake Cheal's Personal Acts in Support of E&R's Accused-Product Operations

51.     Mr. Cheal "does support his wife in her business endeavors." App. Ex. 8 at App. Ex. 8 at App. Ex. 8 at Cheal Resp. to Interrog. 22 (sworn).

52.     Mr. Cheal "has indeed utilized his truck to assist [Ms. Johnston] in transporting certain holsters owned by Her Tactical." App. Ex. 8 at App. Ex. 8 at App. Ex. 8 at Cheal Resp. to Interrog. 22 (sworn).

53.     On at least one occasion, one or more of the Defendants transported accused holsters using a vehicle that Mr. Cheal personally owns. ECF 84, ¶ 74 (qualified admit); App. Ex. 8 at Cheal Resp. to Interrog. 22; App. Ex. 8 at Cheal Resp. to RFA 55.

54.    During a customer interaction captured on video and produced by Plaintiffs to Defendants in or before spring 2023 (App. Ex. 1 at 160:19–20), Mr. Cheal — at the request and direction of Ms. Johnston — produced accused holsters from a vehicle and discussed the products' features (including gun-size configuration, color, and the magnetic version) with the customer. App. Ex. 1, Depo. Ex. 24 (text messages JM4HT-0853 and video JM4HT-0862); App. Ex. 1 at 163:19–164:8; 168:18–169:12.

**v.    Defendants' Acts and Counterclaim Posture**

55.    Defendants pleaded affirmative invalidity defenses based on 35 U.S.C. §§ 101, 102, 103, and 112, and identified the following prior-art references in support: as to the '109 Patent, US20130254976A1, US9072361B1, US20150260479A1, and US9360273B1, plus an alleged abandonment ground based on the petition-to-revive declaration. ECF 84, p. 6–7. As to the asserted design patents, Defendants identified U.S. Patent No. 4,435,506; U.S. Patent No. D543,353; U.S. Patent No. D543,354; U.S. Patent No. D718,523; U.S. Patent No. D356,677; and U.S. Patent No. D770,172, in their App. Ex. 14.

56.    Defendants have not disclosed any expert witness on validity, claim construction, infringement, or any other technical issue, and the time for any such disclosure has passed. ECF 129 (Scheduling Order).

57.    App. Ex. 10, identify the following persons as having discoverable information: Vicky Johnston, Blake Cheal, James Chadwick Myers, counsel for Plaintiffs, a representative of Chamber Media, Mike Ewaliko, a representative of Etsy, a representative of Amazon, Mike Schramm, the USPTO, Damon Albus, and a representative of Smith and Edwards. App. Ex. 10, p. 2–4. None of these persons is identified as a Rule 26(a)(2) expert (retained or non-retained).

58.     Mike Schramm is identified in App. Ex. 10 only as the author of a "[n]on-infringement opinion prepared relating to Plaintiffs' intellectual property." App. Ex. 10, p. 3. Mr. Schramm is the patent agent who authored the August 22, 2022 freedom-to-operate analysis. See supra ¶ 11.

59.     Mike Ewaliko is identified in App. Ex. 10 only as having "[k]nowledge regarding prior art including magnetic holsters sold in or about 2015." App. Ex. 10, p. 3.

60.     Damon Albus is identified in App. Ex. 10 only as having knowledge regarding alleged "true inventor[ship] on Plaintiffs' patents," "intentional misrepresentations to the USPTO regarding inventorship," and "the history of using magnets in pistol holders, which has been a 'common' method for many years." App. Ex. 10, p. 4.

61.     Discovery has closed.

62.     Defendants produced HT_SITE_REVISIONS_0001-585 on or about October 30, 2023, as the WordPress documentation for the hertactical.com website. App. Ex. 6 at Johnston Resp. to Interrog. 16.

**vi.     Damages-Related Undisputed Facts (preserved without prejudice to scope of damages)**

63.     Defendants disclosed in their LPR 2.2(b) Disclosures, dated March 20, 2023, that "[t]hrough February 2023, gross sales revenue is $26,090.63" for the accused product, with sales running from May 2022 to the date of disclosure. App. Ex. 9, p. 2.

64.     As of November 2, 2023, Defendants' total gross revenue from the accused product since first sale was, at minimum, $48,000. App. Ex. 1 at 119:18–20. (Plaintiffs preserve the right to prove additional gross revenue and additional sales channels through trial discovery and supplemental productions.)

65.     Ms. Johnston, testifying as E&R LLC's Rule 30(b)(6) corporate representative, admitted at deposition that E&R "had profit, but . . . expenses are overexcessive of any profit or income." App. Ex. 1 at 14:20–22.

## IV.     LEGAL STANDARD

66.     Summary judgment "shall" be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" exists only where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

67.     Where the nonmoving party will bear the burden of proof at trial, the moving party "may meet its burden by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has done so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It must produce admissible evidence sufficient to permit a reasonable jury to find for it on each contested element. *Anderson*, 477 U.S. at 252.

## V.     ARGUMENT AND AUTHORITIES

**A.     Defendants Cannot Prove Statutory Invalidity of any Asserted Patent Under 35 U.S.C. §§ 101, 102, 103, or 112**

68.     This Part A addresses Defendants' *statutory* invalidity defense under 35 U.S.C. §§ 101, 102, 103, and 112 as to each of the asserted patents — the '530 Patent, the '109 Patent, and

the four asserted design patents (D788,451, D811,731, D836,329, and D841,979) — together with the corresponding portions of Counterclaim 2 (declaratory judgment of invalidity).

69.    Plaintiffs do *not* in this Part A ask the Court to resolve: (i) direct infringement of any asserted patent (literal or under the doctrine of equivalents); (ii) prosecution-history-estoppel issues, which intersect with the '530 doctrine-of-equivalents analysis and present genuine disputes of material fact reserved for trial; (iii) any inventorship- or inequitable-conduct-based unenforceability theory the Court may determine survives Defendants' disclosure failures; or (iv) damages.

      **i.**      **Each Asserted Patent Is Presumed Valid; Defendants Bear the Clear-and-Convincing-Evidence Burden.**

70.    Under 35 U.S.C. § 282(a), "[a] patent shall be presumed valid." Defendants bear the burden to prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91, 95 (2011) ("[A] defendant seeking to overcome this presumption must persuade the factfinder of its invalidity defense by clear and convincing evidence."). The presumption is "[a] formidable evidentiary obstacle" that survives until clear-and-convincing evidence rebuts it. *Id.* at 100. The presumption applies separately to each asserted patent — including the '530 Patent, the '109 Patent, and each of the four design patents.

      **ii.**      **Defendants Cannot Carry Their Clear-and-Convincing Burden with Undisclosed Lay Opinions and Undeveloped Prior-Art References.**

71.    This is not a case in which Defendants have come forward with a clean, admitted, element-by-element prior-art disclosure that a lay factfinder could compare to the asserted claims unaided. Defendants identify references, but they do not provide admissible expert testimony

tying each limitation to each reference, articulating the level of ordinary skill in the art, identifying claim scope, or applying the design-patent ordinary-observer comparison framework.

72.     The Federal Circuit has long recognized that proving invalidity by clear and convincing evidence ordinarily requires testimony from one skilled in the art. The leading authority is *Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304 (Fed. Cir. 2002):

> Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. Testimony concerning anticipation must be made on an element-by-element basis.

*Id.* at 1315–16.

73.     Without such testimony tying the prior art to the asserted claims as one of skill would understand them, a defendant "did not present clear and convincing evidence of anticipation" and could not survive summary judgment. *Id.* at 1316; *accord Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1151–52 (Fed. Cir. 2004) ("[A] party challenging validity must do more than simply submit prior art reference for the court's consideration.").

74.     While the Federal Circuit has acknowledged that expert testimony is sometimes unnecessary where the technology is "easily understandable" without expertise, *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369–70 (Fed. Cir. 2004), it has emphasized that expert testimony is "important where the field is complex or where the relevant prior art reference is technical in nature." *Id.*

75.     This case sits squarely in the latter category. The asserted patents involve magnetic-retention engineering: claim elements include configuration of two magnets within a "fastener protrusion" engaging with a third magnet within a "fastener housing," resulting in a

"combined magnetic retention strength . . . strong enough to retain the gun within the body" without obstructing the upper opening or hindering removal. *See* '530 Patent, claim 1.

76.     The asserted design patents implicate ornamental-design analysis under the *Egyptian Goddess* "ordinary observer" framework against design-patent prior art that itself must be situated in the eye of "an ordinary observer, familiar with the prior art designs." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 683 (Fed. Cir. 2008) (en banc); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). These are not the kind of inquiries a lay factfinder can perform unaided.

77.     The same expert-evidence requirement applies to the other statutory grounds Defendants have pleaded: obviousness under § 103 requires the *Graham v. John Deere* factual inquiries, including evidence of the level of skill in the art and motivation to combine, *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966); written description and enablement under § 112(a) require evidence of what "those skilled in the art" would understand from the specification, *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc); indefiniteness under § 112(b) requires evidence of how a person of ordinary skill in the art would understand the claim's scope, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014); and § 101 patent-eligibility analysis "can . . . involve underlying questions of fact" requiring evidentiary support, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

### iii.     Defendants Have not Disclosed any Expert Witness, and Discovery is Closed

78.     Defendants have not disclosed any expert witness. Discovery has closed under the operative scheduling order. ECF 129. Defendants therefore cannot present expert testimony on any element of any of their pleaded invalidity defenses.

iv.   **Defendants' Bare Recitations of Statutory Sections and their Listed Prior-Art References do not Carry their Burden**

79.    Plaintiffs do not contend that Defendants have failed to identify *any* prior-art references. As to the '109 Patent, Defendants pleaded alleged abandonment grounds and identified four prior-art references: US20130254976A1, US9072361B1, US20150260479A1, and US9360273B1. ECF 84, p. 6–7. As to the four asserted design patents, Defendants identified additional prior-art references in their June 27, 2025 Final Non-Infringement Contentions, including U.S. Patent No. 4,435,506; U.S. Patent No. D543,353; U.S. Patent No. D543,354; U.S. Patent No. D718,523; U.S. Patent No. D356,677; and U.S. Patent No. D770,172.

80.    The dispositive defect is not that the references are absent; it is that Defendants lack the *admissible expert evidence* needed to convert these references into clear and convincing proof of invalidity. The listed references identify themselves, but they do not — and cannot — speak for themselves. *Schumer* requires expert testimony explaining, on an element-by-element basis, "how each claim element is disclosed in the prior art reference." 308 F.3d at 1315. For design patents, the *Egyptian Goddess* "ordinary observer" comparison and the *International Seaway* substantial-similarity assessment require analogous testimony situating the prior art in the eye of a hypothetical ordinary observer "familiar with the prior art." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 683 (Fed. Cir. 2008) (en banc); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). Defendants have offered no such testimony, and the time for doing so has passed.

81.    Defendants' alleged abandonment theory fares no better. Defendants identify no admissible evidence from which a reasonable jury could find, by clear and convincing evidence, that the '109 Patent is invalid under §§ 101, 102, 103, or 112 based on the revival petition. Nor

have Defendants disclosed any expert or Rule 26(a)(2)(C) witness to explain how the prosecution record establishes a statutory invalidity defense. A bare assertion of prosecution irregularity is not clear-and-convincing evidence of statutory invalidity.

82. Plaintiffs anticipate Defendants may attempt to avoid this gap by characterizing certain non-retained percipient witnesses — including individuals identified in App. Ex. 10 such as Mike Ewaliko (electrical engineer) and Damon Albus (industrial designer) — as offering testimony sufficient to fill the role of an expert. They cannot. None of these witnesses was disclosed under Rule 26(a)(2)(B) as a retained expert, none has been identified under Rule 26(a)(2)(C) as a non-retained expert opining on validity, and none has been the subject of a Rule 26(a)(2) report or summary disclosure on validity issues. Their factual testimony — about, for example, whether Defendants' magnetic configuration "works" — is admissible as percipient testimony but is not admissible under Rule 702 to opine on what a person of ordinary skill in the art would have understood from a prior-art patent, or on the substantial similarity of an accused design to prior-art designs in the eye of an ordinary observer. *See* Fed. R. Civ. P. 26(a)(2); Fed. R. Evid. 701, 702. Lay witnesses cannot supply the expert evidence Schumer, Egyptian Goddess, and International Seaway require.

### v. Counterclaim 2 Fails as to Statutory Invalidity for the Same Reasons

83. Defendants' Counterclaim 2 seeks declaratory judgment of invalidity and unenforceability of the '530 Patent and the four design patents. ECF 28, ¶¶ 18–22. As the counterclaim plaintiff, Defendants bear the same clear-and-convincing-evidence burden as on the affirmative defense. The lack of expert disclosure defeats Counterclaim 2 as to statutory invalidity for the same reasons as the affirmative defense, including as to the '530 Patent. The

non-statutory-invalidity portion of Counterclaim 2 (e.g., any inventorship-based unenforceability theory) is not addressed by this Motion and remains for trial.

  **vi.**  **Defendants' Non-Infringement and Prosecution-History-Estoppel Theories Are Not Invalidity Theories.**

84.  Plaintiffs anticipate Defendants will argue at trial that the accused products do not literally infringe the '530 Patent because the accused products contain "less than three magnets" and that the doctrine of equivalents is foreclosed by prosecution-history estoppel arising out of the '530's three-magnet narrowing amendment. See App. Ex. 11, p. 3–4; App. Ex. 15 (FTO Analysis dated Aug. 22, 2022).

85.  Those are non-infringement theories, not invalidity theories. They may be presented at trial on infringement. They do not, however, supply clear-and-convincing evidence that the '530 Patent is invalid under §§ 101, 102, 103, or 112. Defendants cannot transform a non-infringement contention into an invalidity defense merely by reciting statutory section numbers without disclosed expert testimony or an element-by-element invalidity analysis. *See* Schumer, 308 F.3d at 1315–16. Indeed, Defendants' own May 31, 2023 LPR 2.4 Supplement essentially concedes the point — characterizing prior-art consideration as "largely insignificant" and "likely . . . unnecessary" except in the contingent event that the Court accepts Plaintiffs' "broad infringement contentions." App. Ex. 12, p. 2. Defendants cannot bootstrap a contingent invalidity defense — undeveloped, with no expert disclosure, and conditioned on a litigation event that has not occurred — into clear-and-convincing evidence at trial.

  **vii.**  **Conclusion as to Part A**

86.  Defendants cannot establish statutory invalidity of any asserted patent by clear and convincing evidence as a matter of law. The Court should grant summary judgment that

**PLAINTIFFS' ANSWER IN OPPOSITION TO MOTION TO DISMISS**    **Page 23 of 32**

(i) Defendants' invalidity defense fails under §§ 101, 102, 103, and 112 as to the '530 Patent, the '109 Patent, and the four asserted design patents; and (ii) the corresponding portion of Counterclaim 2 fails as to those statutory grounds. Plaintiffs do not seek summary judgment in this Motion on direct infringement, doctrine-of-equivalents infringement, prosecution-history estoppel, damages, or any inventorship-based unenforceability theory the Court may determine survives Defendants' disclosure failures.

**B.     Ms. Johnston Personally Performed, Directed, and Assisted E&R's Accused Acts, and had Established Pre-Suit Knowledge of the Asserted Patents**

87.     Plaintiffs do not in this Motion ask the Court to enter a final liability ruling on induced infringement of any particular asserted patent. Inducement under 35 U.S.C. § 271(b) is patent-specific: it requires patent-by-patent knowledge and patent-by-patent specific intent. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 638–39 (2015); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Ultimate inducement findings — particularly the patent-by-patent intent prong — properly belong to the trial finder of fact upon a determination of direct infringement.

88.     Two distinct sub-issues, however, can be resolved as a matter of law on the present record without prejudging direct infringement, willfulness, or any patent-specific intent inquiry: (i) That Ms. Johnston personally performed, directed, and assisted E&R's accused design, sales, marketing, payment, and distribution acts, and that she cannot avoid personal responsibility for those acts merely by characterizing them as taken "for E&R" or "in [her] capacity as an employee of E&R"; and (ii) That Ms. Johnston knew of Plaintiffs' '530 Patent no later than August 22, 2022, and knew of the '109 Patent by September 2023.

89.     Each is supported by Ms. Johnston's own admissions and, as to (ii), by the three-iteration deemed admission in Defendants' operative Answer.

### i.      The Limited Scope of Part B; Reservations for Trial

90.     The relief Plaintiffs request in Part B is limited to two findings: Ms. Johnston's personal performance of E&R's admitted accused acts, and her dated knowledge of the '530 and '109 Patents. Plaintiffs reserve for trial: direct infringement of any asserted patent, including any "offer to sell" or "sale" determination; •doctrine-of-equivalents infringement and any prosecution-history-estoppel issue; patent-by-patent specific-intent findings as to inducement, including any defense based on Defendants' August 22, 2022 freedom-to-operate analysis; enhancement under *Halo*; Defendant Cheal's individual liability; and the underlying merits of inducement liability, which becomes operative for each asserted patent only if direct infringement is found at trial.

### ii.     Ms. Johnston Knew of the '530 Patent No Later Than August 22, 2022, and Knew of the '109 Patent by September 2023

91.     Ms. Johnston's pre-suit knowledge of the asserted patents is established by two independent categories of admissions, any one of which is sufficient under *Global-Tech*.

92.     First, the deemed admission. Defendants admit paragraph 29 of the operative complaint: "[o]n August 22, 2022, Johnston revealed at least two of the Defendants were already aware of JM4's utility patent registration and then declined to cease and desist selling the Her Tactical holsters even after Plaintiffs informed her that there were additional relevant patents." ECF 84, ¶ 29. The same allegation was admitted in ECF 28, ¶ 29 and ECF 46, ¶ 29 — a three-iteration deemed admission. Under Rule 8(b)(6), Ms. Johnston's pre-suit knowledge as of August 22, 2022 is conclusively established.

93.     Second, Ms. Johnston's deposition testimony. Asked when she first looked at Mr. Myers's claim, Ms. Johnston testified that it was "in August" of 2021: "Q. When did you first look at Chad's claim? A. It would be in August. Q. August of '21? A. '21. Uh-huh." App. Ex. 1 at 31:13–25. Ms. Johnston's review of Mr. Myers's patent claim therefore predates Defendants' first commercial sale (May 2022, *id.* at 27:18–19) by approximately nine months.

94.     The '109 Patent. Ms. Johnston also admitted at deposition that she was aware of the '109 Patent by September 2023 — its month of issuance: "Q. And I understand from your testimony that you were aware of the second utility patent by September of '23, correct? A. Correct." App. Ex. 1 at 108:23–109:1. The knowledge prong as to the '109 Patent is therefore established as of the patent's issuance.

95.     The record establishes, as a matter of law, that Ms. Johnston knew of the '530 Patent no later than August 22, 2022, and knew of the '109 Patent by September 2023. No reasonable jury could find otherwise. Knowledge as to each individual asserted design patent is not separately addressed by Part B and remains for trial as needed. Likewise, the duration and quantum of post-issuance conduct as to the '109 Patent is reserved for trial.

### iii.     The August 22, 2022 Freedom-to-Operate Analysis Does Not Create a Genuine Dispute as to the Limited Findings Plaintiffs Seek.

96.     Plaintiffs anticipate Defendants will invoke the August 22, 2022 freedom-to-operate analysis to argue a good-faith subjective belief of non-infringement. *See* ECF 28, Counterclaim ¶ 5; *see also* App. Ex. 15 (FTO Analysis dated Aug. 22, 2022). The FTO may be relevant to Defendants' subjective intent at trial as to the '530 Patent, and Plaintiffs reserve patent-by-patent intent and willfulness questions for trial accordingly. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015).

97.     The FTO does not, however, create a genuine dispute as to the limited findings Plaintiffs request in this Part B, for three reasons drawn from the face of the document itself:

98.     First, the FTO is by its terms limited to the '530 Patent. The opinion states that it was prepared "relative to the US patent 9,784,530 ('530)." App. Ex. 15, p. 1. The author "forgo[oes] . . . a full detailed analysis" and instead "focus[es] on one aspect, namely the three magnet limitation." *id.* at 1–2. As of August 22, 2022, the '109 Patent had not yet issued; the FTO does not address the '109. Likewise, the FTO does not address any of the four asserted design patents.

99.     Second, the FTO does not address knowledge. The FTO is silent on Defendants' knowledge of the patents — it presupposes such knowledge. The deemed admission in ECF 84, ¶ 29 and Ms. Johnston's deposition testimony at 31:13–25 and 108:23–109:1 establish the dated knowledge findings Plaintiffs seek without any need to discount the FTO.

100.    Third, the FTO does not address Ms. Johnston's personal performance of E&R's accused acts. Whether Ms. Johnston personally designed, sold, and supervised distribution of the accused product is a question answered by Ms. Johnston's own deposition testimony — not by the FTO opinion. As discussed below in connection with the personal-acts findings, the personal-acts findings Plaintiffs seek are independent of any non-infringement opinion.

101.    To the extent Defendants further contend the FTO supports a subjective belief of non-infringement that defeats inducement intent at trial, those contentions can be developed in opposition to a future motion in limine, in jury instructions, or in trial argument. They are not relevant to the limited findings sought in Part B.

iv.     **Ms. Johnston Personally Performed, Directed, and Assisted E&R's Accused Acts.**

102.    Defendants admit that Ms. Johnston "is the sole owner of Her Tactical." ECF 84, ¶ 66. Ms. Johnston admitted at deposition that she personally designed, funded, and operated the accused product on E&R's behalf:

> Q. So you did design it, just not in your personal capacity?
> A. Correct.
> Q. You designed it on behalf of E&R?
> A. For E&R. Yeah.
> Q. … what you're saying is you did it, but you did it on behalf of E&R, not in any personal capacity; is that what you are saying?
> A. Not in any personal capacity. I'm employed by E&R.
> Q. Okay.
> A. It's the same for all of them.

App. Ex. 1 at 13:25–14:11.

103.    Defendant E&R LLC formally admitted Plaintiffs' RFA No. 1, that "You have designed, caused to be designed, or assisted in the design of one or more of the Accused Instrumentalities," as well as RFAs 4 (sold) and 14–25 (operated all online sales channels for the accused product). App. Ex. 5. As Ms. Johnston has admitted, "[i]t's the same for all of them": Ms. Johnston is the human actor behind every act E&R has admitted.

104.    The personal-corporate distinction Ms. Johnston advances on the page collapses on the record. The accused business is not separate from Ms. Johnston in operational fact:

a.     Ms. Johnston personally identifies as the "sole provider" — the "person that is a representative of the company." App. Ex. 1 at 13:22–23;

b.     The accused business operates out of Ms. Johnston's home, with no separate commercial premises. App. Ex. 1 at 18:1–11. Even Ms. Johnston's permission to conduct business there is "implied" — through

her husband's "performance" of not objecting — rather than the kind of formal lease arrangement an arm's-length corporate enterprise would have. *Id.* at 88:17–89:9.

c.    Ms. Johnston has personally accepted accused-product payments through her personal Venmo account, including at least two payments from a single customer that she later transferred to E&R's checking account. App. Ex. 1 at 100:6–20; *id.* at 130:18–20 (confirming Exhibit 8 documents personal-Venmo accused-product payments). Her Tactical itself has no Venmo account. App. Ex. 1 at 100:6–8.

d.    Ms. Johnston has also personally paid Defendant Grant Cavalli — Her Tactical's instructor at multiple firearms-training events at which the accused product was offered for sale — through the same personal Venmo account, as Cavalli confirmed at deposition after inspecting his phone. App. Ex. 2 at 15:14–19 ("[I]t appears that Mr. Cavalli is receiving payments from Vicky Johnston's personal Venmo. . . . Q. Mr. Cavalli, can you confirm that? A. Based on what I see, yes.").

e.    For the same Bartels transaction, Ms. Johnston used her personal phone to communicate with the customer, App. Ex. 1 at 159:7 ("It's the only phone I have."), and directed the customer to pick up the accused holster from her personal residence. *Id.* at 158:19–24.

f.    During a customer interaction captured on video and produced by Plaintiffs' private investigator, Ms. Johnston personally directed the

customer to Mr. Cheal to retrieve accused holsters from a vehicle, with Mr. Cheal then producing accused holsters and discussing product features at Ms. Johnston's instruction. App. Ex. 1, Depo. Ex. 24; App. Ex. 1 at 163:19–164:8; *id.* at 168:18–169:12.

105. These are not the acts of a passive corporate principal. They are the acts of the individual operator who personally designs, sells, accepts payment for, and supervises the distribution of the accused product. Under controlling Federal Circuit law, those acts are sufficient to establish personal § 271(b) liability without any corporate-veil analysis.

106. In *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, the Federal Circuit held: "corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement regardless of whether the corporation is the alter ego of the corporate officer." 609 F.3d 1308, 1316 (Fed. Cir. 2010).

107. The Federal Circuit reaffirmed in *Lubby Holdings LLC v. Chung*, 11 F.4th 1355 (Fed. Cir. 2021), that veil-piercing is unnecessary when liability is grounded in the individual's own acts of infringement: "[A] corporate officer is, of course, personally liable for his own acts of infringement, even when those acts are committed in his corporate capacity." *Id.* at 1361 (*citing Wordtech*, 609 F.3d at 1316).

108. Ms. Johnston did the acts. She may not avoid personal responsibility for those acts merely by saying she acted "for E&R." Whether those established acts satisfy direct infringement, induced infringement, or willfulness as to any particular asserted patent is reserved for trial.

### v.    Conclusion as to Part B

109.    The Court should enter partial summary judgment, or alternatively findings under Federal Rule of Civil Procedure 56(g), that: (i) Ms. Johnston personally performed, directed, and assisted E&R's accused design, sales, marketing, payment, and distribution acts, and may not avoid personal responsibility for those acts merely by characterizing them as taken "for E&R" or "in [her] capacity as an employee of E&R"; and (ii) Ms. Johnston had knowledge of Plaintiffs' '530 Patent no later than August 22, 2022, and had knowledge of the '109 Patent by September 2023.

110.    Patent-by-patent inducement liability — including any specific-intent determination that depends on patent-by-patent claim-application questions or on Defendants' subjective belief of non-infringement — is reserved for trial.

## VI.    CONCLUSION

111.    For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Consolidated Motion for Partial Summary Judgment as follows:

a.    Partial summary judgment that Defendants cannot prove statutory invalidity under 35 U.S.C. §§ 101, 102, 103, or 112 as to any asserted patent — including the '530 Patent, the '109 Patent, and the four asserted design patents (D788,451, D811,731, D836,329, and D841,979) — and that Counterclaim 2 fails to that extent. Plaintiffs do not seek summary judgment on direct infringement, doctrine-of-equivalents infringement, prosecution-history estoppel, damages, or any inventorship- or inequitable-conduct-based unenforceability theory the Court may determine survives Defendants' disclosure failures;

b.    Partial summary judgment, or alternatively findings under Federal Rule of Civil Procedure 56(g), that Ms. Johnston (i) personally performed, directed, and assisted E&R LLC's accused design, sales, marketing, payment, and distribution acts, and may not avoid personal responsibility for those acts merely because she acted "for E&R" or "in [her] capacity as an employee of E&R," and (ii) had knowledge of Plaintiffs' '530 Patent no later than August 22, 2022 and of the

'109 Patent by September 2023. Whether those established facts satisfy induced infringement as to each asserted patent, upon a finding of direct infringement at trial, may be applied patent-by-patent at trial; and

**c.** In the alternative, as to any relief not granted in (a) and (b), findings under Federal Rule of Civil Procedure 56(g) treating each of the material facts set forth in the Statement of Undisputed Material Facts (¶¶ 1–62) of this Motion as established for the remainder of this case.

112. Plaintiffs also respectfully request such other and further relief as the Court deems just and proper.

Dated this 8th day of May 2026.

Respectfully Submitted,

  /Brandon J. Leavitt/
**Brandon James Leavitt**

### CERTIFICATE OF SERVICE

By my signature above I hereby certify that a true and correct copy of the above document has been forwarded to all counsel of record via the Court's electronic filing system.