# Pl's MSJ App Ex 11
# Defs' LPR 2.4
# Initial Non-Infringement Disclosures

Chad S. Pehrson (12622)
Alexis Nelson (9566)
KUNZLER BEAN & ADAMSON, PC
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646
cpehrson@kba.law
anelson@kba.law

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, NORTHERN DIVISION

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | | |
|---|---|---|
| JM4 TACTICAL, LLC and JAMES CHADWICK MYERS, | : | |
| Plaintiff(s), | : | |
| v. | : | Case No. 1:22-cv-00121-DAK |
| HER TACTICAL, LLC; E & R LLC d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON; and BLAKE CHEAL, | : | |
| Defendant(s). | : | |

## DEFENDANTS' INITIAL NON-INFRINGEMENT, UNENFORCEABILITY AND INVALIDITY CONTENTOINS

These Initial Contentions are made based upon information reasonably known to these Defendants at this time and which Defendants currently reasonably believe it may use to support its claims or defenses. These contentions and disclosures do not include information that may be used solely for impeachment purposes. By making these contentions and disclosures, Defendants do not represent that they are identifying each and every document, tangible thing, or witness possibly relevant to this proceeding.

**<u>Non-Infringement Contentions Regarding '530 Patent.</u>**

Plaintiffs' infringement contentions acknowledge the '530 Patent's claims cannot be literally infringed.

This analysis indeed is self-evident.

Claim 1 of the '530 Patent provides:

1. A gun holster system for carrying a gun, comprising:

> a body having a front side and a back side forming an upper opening disposed therebetween and forming a lower opening at a lower surface of the body;
> a strap assembly integrally secured to the back side of the body, the strap assembly having:
> an elongated strap extending from and integrally secure to the back side of the body;
> a fastener protrusion extending from a back surface of the elongated strap; and
> a fastener housing extending from an outer surface of the back side of the body, the fastener housing being configured to engage with the fastener protrusion;
> wherein the elongated strap folds backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage;
> **two magnets** disposed within a thickness of the fastener protrusion; and
> **a third magnet** disposed within a thickness of the housing;
> wherein the two magnets are configured to engage with the third magnet;
> wherein engaging the two magnets with the third magnet does not obstruct the upper opening and does not obstruct or hinder entire removal of the gun from the body; and
> wherein a combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body.

['530 Patent, col.3, ln. 16 – col. 4, ln. 18].

Claim 1 is the only independent claim in the '530 Patent. Thus, each claim requires three magnets as an essential feature of the invention.

The Her Tactical Products consist of a gun holster configured to attach to an undergarment discretely and securely. An elongated flap is attached to the body of the holster and configured to extend around an undergarment strap, such as a bra strap. One end of the flap is securely attached

to the body of the holster via stitching, for example, and the opposite end of the flap is unsecured. In this manner, the flap is configured to fold over itself along a center line such that the attached end aligns with the unattached end. A single magnet is integrated into each end of the flap such that when the flap is folded, the magnets engage each other to secure the holster relative to the undergarment strap. This feature is illustrated in detail below:





The above rendering illustrates a single magnet incorporated into each end of the flap, as described above. This feature is also obvious upon basic inspection of the products. Thus, the Her Tactical Products simply do not include three magnets.

However, Plaintiffs claim that the '530 Patent is nonetheless infringed under the doctrine of equivalents. However, the DOE cannot be applicable given the straightforward application of the doctrine of prosecution history estoppel.

Specifically, the Notice of Allowance dated August 25, 2017, following prosecution of the '530 Patent confirms the criticality of the 3-patent limitation. [*See* Notice of Allowance, attached hereto as Exhibit C.] The Examiner's statement of reasons for allowance included the following:

> Stella **does not** disclose the fastener housing extending from the outer surface of the back side of the body, the fastener housing configured to engage with the fastener protrusion; two magnets disposed within the thickness of the fastener protrusion; *and the third magnet* disposed within the thickness of the housing; the two magnets are configured to engage with the third magnet; engaging the two magnets with the third magnet does not obstruct

the upper opening and does not obstruct or hinder entire removal of the gun from the body; and the combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body.

[NOA, p. 3 (bold underline in original; italics added for

emphasis)] The examiner further explained:

Esposito '250 **does not** disclose the strap assembly having: the elongated strap (12) extending from and integrally secured to the back side of the body (11 ); wherein the elongated strap (12) folded backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage; two magnets disposed within the thickness of the fastener protrusion; and the third magnet disposed within the thickness of the housing; the two magnets are configured to engage with the third magnet; engaging the two magnets with the *third magnet* does not obstruct the upper opening and does not obstruct or hinder entire removal of the gun form the body; and the combined magnetic retention strength generated *by the two magnets and third magnet* is strong enough to retain the gun within the body.

[NOA, p. 4 (bold and underline in original; italics added for

emphasis)] Further, the examiner also explained:

McStay '045 **does not** disclose the strap assembly having: the elongated strap (108) extending from and integrally secured to the back side of the body; the fastener housing (142) extending from the outer surface of the body; the elongated strap (108) folded backwards and away from the upper opening to cause the fastener protrusion (120) and the fastener housing (142) to engage; engaging the two magnets with the *third magnet* does not obstruct the upper opening and does not obstruct or hinder entire removal of the stored object (118) from the body; and wherein the combined magnetic retention strength generated by the *two magnets and third magnet* being strong enough to retain the stored object (118) within the body.

[NOA, p. 5 (bold and underline in original; italics added for emphasis)]

Thus, the prosecution history demonstrates that inclusion of the express three magnet limitation in the sole independent claim (and thus every claim in the patent) was critical to patentability.

**Invalidity Contentions Regarding '530 Patent.**

Given the broad construction of the claims as presented in Plaintiffs' infringement contentions, the '530 Patent is invalid in view of the prior art, including each referenced cited during prosecution of the '530 Patent.

**Non-Infringement and Invalidity Contentions Regarding the Asserted Design Patents.**

To prove infringement, the patentee must establish that the ordinary observer "would be deceived into thinking that [the accused product] were the same as [the] patented design." Richardson, 597 F.3d at 1295; see also Gorham Co. v. White, 81 U.S. 511, 528 (1872). "[I] in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." Gorham, 81 U.S. at 528. The "ordinary observer test" is the sole test used to determine whether an accused product infringes a design patent. Egyptian Goddess, 543 F.3d at 678.  The patentee bears the burden to establish substantial similarity between the patented design and the accused design, and where the two designs are "sufficiently distinct" and "plainly dissimilar," the patentee fails to meet its burden of proving infringement as a matter of law. *Id.*  When assessing infringement, the ordinary observer compares "the patented and accused designs in the context of similar designs found in the prior art." *Id.* at 674.

The patented designs are not only not similar to the accused products, but they look

nothing alike.  To adequately show this point, Defendants hereby first incorporates the exact charts set forth in the Plaintiffs' infringement contentions.

Second, the ordinary observer test of course must take into account the prior art.  Thus, the Court in this case will consider, for instance, the '451 Design Patent—which is prior art to the other three.  Notably, though, this Court has already found, as Plaintiffs alleged, that each of the design patents was sufficiently similar to be shoehorned into identical infringement allegations.  As such, if Plaintiffs' four design patents were patentably distinct from each other, and given the far less similarity of Plaintiffs' products, then, Plaintiffs' products either do not infringe or the asserted design patents are invalid.

Further specific recitation of differences includes the following:

Differences between each of the asserted Design Patents and Products include:

1) The snap retention strap of the Products is missing in the asserted Design Patents;

2) The gun opening flaps of the Products are substantially different than the asserted Design Patents;

3) The magnetic strap of the asserted Design Patents extend as a portion of the holster side material, whereas the magnetic strap of the Products is attached to the side of the holster material;

4) The profile of the Products is of different shape than the asserted Design Patents.

5) The profile stitching/sewing is distinct whereas the asserted Design Patents has no such profile stitching/sewing.

6) The sewn seam of the folding joint of the magnetic retention strap is distinct whereas the asserted Design Patents has no such sewn joint.

7) The magnetic retention strap of the asserted Design Patents has a seam near the magnet

whereas HT does not.

8) The magnetic strap of the asserted Design Patents extends as a portion of the holster side material whereas the magnetic strap of the Products is attached to the side of the holster material.

9) The gun opening of the Products is different than the asserted Design Patents.

10) The muzzle opening of the Products is of a different shape than the asserted Design Patents.

11) The Products have an ID tag whereas the asserted Design Patents has no ID tag.

12) The Products have cross-stitching (for the snap strap) whereas the asserted Design Patents does not.

13) Very little of the magnetic strap of the Products is shown whereas a substantial length of the magnetic strap of the asserted Design Patents is shown.

**Unenforceability Contentions**

The claims of all asserted patents are invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112. Plaintiff James Chadwick Myers ("Myers") lacks standing to bring this suit because he is not the owner of the '530 Patent or any of the Design Patents. Plaintiff JM4 Tactical, LLC lacks standing to bring this suit because it is not the assignee of the '530 Patent of any of the Design Patents. Plaintiffs' patents are unenforceable given intentional misrepresentations to the USPTO regarding inventorship and Damon Albus

**Non-Infringement Contentions From Individual Defendants (Johnson and Cheal).**

Defendants Johnston and Cheal have additional non-infringement contentions.

Neither Johnston nor Cheal ever directly infringed any of the asserted patents, as they never made, sold, or offered to sell any infringing products. All such actions were taken by Her Tactical.

As to Plaintiffs' contentions of inducing infringement, Plaintiffs must plead and prove that (i) as to a particular patent of the four alleged patents, Defendants had knowledge of that

particular patent; (ii) Defendants knowingly induced a third party to infringe the patents; and (iii) Defendants had specific intent to induce a third-party to infringe the patent. *See DSU Med. Corp. v. JMS Co. Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc).

Neither of the Individual Defendants had knowledge of each asserted patent.

Neither of the Individual Defendants knowingly induced any act of infringement. *See USC IP P'ship, L.P. v. Facebook, Inc.*, 6:20-CV-00555-ADA, 2021 WL 3134260, at *1 (W.D. Tex. July 23, 2021) (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.).

Furthermore, the Individual Defendants sought out and obtained an accurate and appropriate opinion, which opinion found non-infringement and invalidity.

Defendants reserve the right to amend, correct, or supplement these initial contentions to identify additional discoverable documents and tangible things in its possession, custody or control supporting its claims and defenses as discovery and further investigation may reveal.

Dated:  May 3, 2023

By:   */s/   Chad S. Pehrson*

Chad S. Pehrson
KUNZLER BEAN & ADAMSON, PC
50 W. Broadway, Suite 1000
Salt Lake City, UT 84101
Tel.: (801) 994-4646
Fax: (801) 531-1929