# Pl's MSJ App Ex 14
# Defs' Final
# Non Infringement Disclosures

Chad S. Pehrson (12622)
Bryan B. Todd (19099)
**KB&A**
50 West Broadway Ste 1000
Salt Lake City, UT 84101
Telephone: (801) 994-4646
cpehrson@kba.law
btodd@kba.law

*Attorneys for Defendants*

---

### UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS,<br><br>Plaintiffs,<br><br>v.<br><br>HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual;<br><br>Defendants. | **DEFENDANTS' FINAL NON-INFRINGEMENT  CONTENTIONS**<br><br>Case No. 1:22-cv-00121-AMA-DPB<br><br>Judge Ann Marie McIff Allen<br><br>Magistrate Judge Dustin B. Pead |

Pursuant to LPR 3.1(b) and 2.4(c)-(e), Defendants Her Tactical, LLC, ("Her Tactical"),

E&R LLC ("E & R"), Vicky Arlene Johnston ("Johnston") and Blake Cheal ("Cheal")

(collectively, "Defendants") serve the following Final Non-Infringement and Unenforceability

Contentions. This disclosure is made solely for the purpose of this action. Discovery in this

matter is underway. Further, this disclosure is based upon information that the Defendant has

been able to obtain to date, together with Defendant's current good faith beliefs regarding the

Accused Instrumentalities, and is given without prejudice to Defendant's right to obtain leave to

supplement or amend its disclosures as discovery is provided, additional facts and information is ascertained, analysis is made, research is complete, and claims are construed.

This disclosure is based at least in part upon Defendants' present understanding of the patents-in-suit, U.S. Patent Nos. 11/747,109 (the "'109 Patent"), 9/784,530 (the "'530 Patent), D788,451 (the "D'451 Patent"), D811,731 (the "D'731 Patent), D836,329 (the D'329 Patent"), and D841,979 (the "D'979 Patent") (collectively the "Patents-in-Suit"), and the scope of the Patents-in-Suits' claims. Given that the scope of the claims of the Patents-in-Suit is a legal matter not yet determined by the Court, Defendants reserve the right to seek leave to supplement or amend this disclosure if its understanding of the claims changes, including if the Court issues a claim construction order that construes the claims of the Patents-in-Suit in a manner different from Defendants' current understanding.

To the extent that Defendants' contentions herein reflect constructions of claim limitations consistent with or implicit in Plaintiffs' infringement allegations as set forth in the Complaint or Final Infringement Contentions, no inference is intended nor should any be drawn that Defendants agree with Plaintiffs' infringement allegations or claim interpretations, and Defendants expressly reserve the right to contest such allegations. Defendants offer such contentions in response to Plaintiffs' infringement allegations as set forth in the Complaint and Infringement Contentions, and without prejudice to any position that Defendants may ultimately take as to any claim construction issues. Specifically, Defendants base these non-infringement contentions at least in part upon the claim scope and certain claim constructions that are implicitly or explicitly asserted by Plaintiffs, and nothing herein should be construed or represented as evidencing any express or implied agreement with any of Plaintiffs' claim construction or infringement positions.

Defendants reserve the right to amend or supplement their non-infringement and unenforceability contentions in accordance with the Court's schedule, rules, and procedures.

**LPR 2.4(b) – Non-Infringement Contentions**

a. Non-Infringement of Asserted Patents

In accordance with LPR 2.4(b), attached as Exhibit A is a chart, responsive to the chart served by Plaintiff under LPR 2.3(c), that identifies for each identified element in each asserted claim, to the extent known by Defendants, whether such element is present literally or under the doctrine of equivalents in each Accused instrumentality and, if not, the reason for such denial and the relevant distinctions.

b. Non-Infringement Under the Doctrine of Equivalents

Additionally, we disagree that prosecution history estoppel is limited. The *Amgen* Court was clear that "a narrowing amendment to satisfy any requirement of the Patent Act may give rise to an estoppel." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1345 (Fed. Cir. 2003).

Here, on December 1, 2016, the original claims were filed, the relevant portion of Claim 1 reading "a first magnet disposed within a thickness of the fastener protrusion; and a second magnet disposed within a thickness of the housing; wherein the first magnet is configured to engage with the second magnet." Several months later, on April 19, 2017, a non-final rejection of the claim was filed. In this Rejection, the Examiner rejected the claims under 35 U.S.C. 103 under Esposito in light of McStay. The Examiner noted that "Esposito does not disclose the first magnet disposed <u>within</u> the thickness of the fastener protrusion; and the second magnet disposed <u>within</u> the thickness of the housing; wherein the first magnet is <u>configured</u> to engage with the second magnet." But he went on to cite McStay saying "McStay teaches the first magnet (i.e.

Ferromagnetic Material) (See Paragraph 0027) disposed <u>within</u> the thickness of the fastener

protrusion (120); and the second magnet (114, 144 & 152) disposed <u>within</u> the thickness of the

housing (142) (See Figures 3, 4, 5, & 6) (See Paragraph 0032 & 0033) wherein the first magnet

(i.e. Ferromagnetic Material) is <u>configured</u> to engage with the second magnet (114, 144 & 152)

(See Paragraph 0027)." After McStay, the Examiner noted that it "would have been obvious to

one having ordinary skill in the art at the time the invention as field to make the first magnet

disposed <u>within</u> the thickness of the fastener protrusion; and the second magnet disposed <u>within</u>

the thickness of the housing; wherein the first magnet is <u>configured</u> to engage with the second

magnet."

On June 1, 2017, a set of amended claims was filed. These new claims included, in

relevant part, the following: "a first two magnets magnet disposed within a thickness of the

fastener protrusion; and a second third magnet disposed within a thickness of the housing;

wherein the <u>two magnets are</u> first magnet is configured to engage with the second <u>third</u> magnet."

It was not until after these amendments were made that Plaintiffs had an interview with the

Examiner on July 31, 2017. Thus, it is clear that the amendment from two to three magnets was

in direct response to overcome the obviousness rejection under 35 U.S.C. § 103. Thus, estoppel

should not be limited to structural arrangements, but should apply to equivalence theories based

on functional magnetic retention.

c.   <u>Non-Infringement From Individual Defendants (Johnston and Cheal)</u>

Defendants Johnston and Cheal maintain that they were never directly involved in the

infringement of the asserted patents, as they individually never made, sold, or offered to sell any

infringing products. All alleged acts of infringement were taken by Her Tactical.

As to Plaintiffs' contentions of inducing infringement, as set forth in Defendants' Initial Non-Infringement Contentions, Plaintiffs must plead and prove that (i) as to a particular patent of the four alleged patents, Defendants had knowledge of that particular patent; (ii) Defendants knowingly induced a third party to infringe the patents; and Defendants had specific intent to induce a third-party to infringe the patent. *See DSU Med. Corp. v. JMS Co. Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc).  Plaintiff has not sufficiently pled these elements.

Further, neither of the Individual Defendants had knowledge of the '109 patent prior to its issuance, and neither of the Individual Defendants induced any act of infringement.  *See USC IP P'ship, L.P. v. Facebook, Inc.*, 6:20-CV-00555-ADA, 2021 WL 3134260, at * (W.D. Tex. July 23, 2021) (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.).

Dated: June 27, 2025

Respectfully submitted,

**KB&A**
*/s/ Bryan B. Todd*
Chad S. Pehrson
Bryan B. Todd
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Bryan Todd, certify that on the 27th day of June, 2025, a true and correct copy of the foregoing **DEFENDANTS' FINAL NON-INFRINGEMENT  CONTENTIONS**  was served on counsel of record with the Court via the email.

*/s/ Bryan B. Todd*

**EXHIBIT A**

| Claim Language US 11/747,109 | Infringement Analysis | Response |
|---|---|---|
| **[P]** A gun holster system for carrying a gun, comprising: | Each Accused Instrumentality is designed and marketed as a gun holster system. <br><br> Defendants' own product descriptions identify their products as gun holster systems designed to carry firearms. | Defendant Her Tactical's Accused Instrumentalities are marketed as gun holsters, not gun holster systems. |
| **[A]** a body having an upper opening disposed between a front side and a back side, wherein the upper opening is configured to receive at least a portion of the gun therethrough; | **Literally satisfied.** Defendants describe their holster body as having front and back sides with a wide opening at the top for gun insertion. <br><br> Defendants' technical specifications and photographs show the required body structure with upper opening configuration. | Defendants note that the claim language cited by Plaintiffs is not the claim language of Claim 1 of the '109 Patent. Rather, the '109 Patent should read "a body having a front side and a back side that form an upper opening disposed therebetween." <br><br> Despite this, this element is not infringed as Defendants' gun holsters have a body with three distinct sides. A front, a back, and a spine. There is an opening created by these three sides where a firearm can be inserted, but Defendant's technical specifications (HERTACTICAL_003) clearly indicate that there is a third side, the spine, which is not claimed in Plaintiff's patent. |
| **[B]** a strap assembly comprising: **(i)** an elongated strap extending from the back side of the body; | **Literally satisfied.** Defendants' "flap" performs the same function as the claimed "strap" - the semantic distinction is insubstantial. <br> Technical Drawings Showing Strap/Flap Assembly: | Defendants note that the claim language cited by Plaintiffs is not the claim language of Claim 1 of the '109 Patent. Rather, the claim language should read "a strap assembly secured to the back |



| | | |
|---|---|---|
| | Defendants' product documentation shows elongated strap/flap component extending from the holster body. | side of the body, the strap assembly having: (i) an elongated strap extending from the back side of the body."<br><br>Despite this, this element is not present. The flap in Defendant Her Tactical's Accused Instrumentalities is not an extension of the body, and the technical specifications (HERTACTICAL_003) indicate that the flap iss attached to the front side of the body. |
| **[B](ii)** a fastener protrusion extending from a back surface of the elongated strap; | **Literally satisfied.** Defendants' technical drawings show magnetic protrusions extending from their flap/strap assembly.<br><br>Defendants' technical documentation depicts magnetic protrusions on the strap component. | This element is not present. Defendant Her Tactical's Accused Instrumentalities comprises a single magnet in the flap, to the extent this magnet does protrude, it protrudes on the front surface of the flap. |
| **[B](iii)** a fastener housing extending from an outer surface of the back side of the body, the fastener housing being configured to engage with the fastener protrusion; | **Literally satisfied.** Defendants' documentation shows housings extending from the holster body configured to engage with the protrusion. Magnetic Housing and Protrusion Engagement: | This element is not present. As explained in the Specification of the '109 Patent, "The fastener protrusion is configured to engage within a *cavity* 307 created by a housing 305 the extends from the surface 303." (emphasis added). There is no housing present on the Accused Instrumentalities. As noted by Plaintiff, "Defendants' technical drawings show magnetic **protrusions** extending from their flap/strap |

| | | |
|---|---|---|
| | Defendants' technical documentation shows housing extending from body with magnetic engagement functionality. | assembly." (HERTACTICAL_003) (emphasis added). As Plaintiff noted there are protrusions, plural, and as these protrusions are magnetic, they engage with one another, and one is not housed within the other as required by this claim. |
| | | Plaintiff's chart wholly omitted the following element: "wherein the elongated strap folds backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage."<br><br>No response is provided due to absence of contention by Plaintiff. |
| **[C]** a first magnet disposed within a thickness of the fastener protrusion;<br><br>**[D]** a second magnet disposed within a thickness of the housing;<br><br>**[E]** wherein the first magnet is configured to engage with the second magnet, and wherein the engaging of the first magnet and the second magnet does not cause the elongated strap to | **Literally satisfied.** **[C]** Defendants explicitly acknowledge using embedded magnets that secure the folded flap with magnets positioned within the fastener components. **[D]** Defendants describe the second magnet positioned within the housing thickness to engage with the first magnet. **[E]** Defendants describe the second magnet positioned within the housing thickness to engage with the first magnet. **[F]** Defendants describe magnetic engagement that does not obstruct gun access, with the magnets positioned to keep the holster body firmly in place without interference.<br><br> | Element C is not present in Defendant Her Tactical's Accused Instrumentalities as any protrusion is caused by the magnet.<br><br>Element E is not present in Defendant Her Tactical's Accused Instrumentalities as the Accused Instrumentalities place the flap low enough on the holster body that the flap does not readily obstruct gun access, as is more common with a single piece holster like the one described in the '109 Patent.<br><br>Element F in the '109 Patent is described as the retention mechanism of the holseter. Plaintiffs fail to acknowledge that Defendant Her Tactical's Accused Instrumentalities |

| | | |
|---|---|---|
| obstruct the upper opening of the body and does not obstruct or hinder removal of the  gun from the body;<br><br>**[F]** wherein a combined magnetic retention strength generated by the first magnet and the second magnet is strong enough to retain the gun within the body; | 1[1]<br><br>**[C]** Defendants' product specifications show magnet placement within fastener components, and Johnston has admitted to using exactly two magnets. **[D]** Defendants' product documentation shows second magnet location and magnetic engagement between components. **[E]** Defendants' technical documentation describes magnetic engagement without obstruction, and marketing materials emphasize quick gun access. **[F]** Defendants' marketing materials emphasize strong magnetic hold for gun retention using their two- magnet configuration. | don't rely solely on magnetic retention, but have added an additional mechanism to secure the gun in place, an elastic retention strap that extends across the upper opening of the body and can be fastened and unfastened. This crucial element to Defendant Her Tactical's design is not contemplated or taught in the '109 Patent. Thus, the claim that the magnets retain a gun in Element F does not support infringement, as they ignore a crucial element of Defendant Her Tactical's Accused Instrumentalities. |
| **[G]** wherein the elongated strap is configured to fold over an article of clothing such that the first magnet and the second magnet provide magnetic retention to retain the gun holster system to the article of clothing. | Literally satisfied. Defendants describe exactly this functionality, with the magnetic flap designed to close over undergarment fabric and engage magnets to keep the holster body firmly in place.<br><br>Defendants' technical specifications describe undergarment placement and magnetic closure using embedded magnets in the flap. | |

Claim 1 of U.S. Patent No. 9,784,530

| Claim Element | Accused Instrumentality | Doctrine of Equivalents Analysis | Response |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **[P]** A gun holster system for carrying a gun, comprising: | Each Accused Instrumentality is designed and marketed as a gun holster system. Defendants' own product descriptions identify their products as gun holster systems designed to carry firearms. | Same as literal infringement analysis for '109 patent - no dispute on this element. | Defendant Her Tactical's Accused Instrumentalities are not "gun holster systems" rather they are marketed simply as gun holsters. |
| **[A]** a body having an upper opening disposed between a front side and a back side, wherein the upper opening is configured to receive at least a portion of the gun therethrough; | **Literally satisfied.** Defendants describe their holster body as having front and back sides with a wide opening at the top for gun insertion. Defendants' technical specifications and photographs show the required body structure with upper opening configuration. | N/A - literal infringement established. | Defendant Her Tactical notes that the claim language cited by Plaintiffs is not the claim language of Claim 1 of the '530 Patent. Rather, the claim language should read "a body having a front side and a back side forming an upper opening disposed therebetween and forming a lower opening  at a lower surface of the body."<br><br>Defendant Her Tactical's gun holsters have a body with three distinct sides. A front, a back, and a spine. There is an opening created by these three sides where a firearm can be inserted, but Defendant's technical specifications (HERTACTICAL_003) clearly indicate that there is a third side, the spine, which is not claimed in Plaintiff's patent. |

| | | | |
|---|---|---|---|
| **[B]** a strap assembly comprising: **(i)** an elongated strap extending from the back side of the body; | **Literally satisfied.** Defendants' "flap" performs the same function as the claimed "strap" - the semantic distinction is insubstantial. Defendants' product documentation shows elongated strap/flap component extending from the holster body. | N/A - literal infringement established. | Defendant Her Tactical notes that the claim language cited by Plaintiffs is not the claim language of Claim 1 of the '530 Patent. Rather the claim language should read "a strap assembly integrally secured to the back side body, the strap assembly having: (i) an elongated strap extending from and integrally secure to the back side of the body." <br><br> Defendants' technical specification (HERTACTICAL_003) comprises a folding magnetic flap attached to the front side of the holster, not the "back side of the body" as claimed by the '530 Patent. |
| **[B](ii)** a fastener protrusion extending from a back surface of the elongated strap; | **Literally satisfied.** Defendants' technical drawings show magnetic protrusions extending from their flap/strap assembly. Defendants' technical documentation depicts magnetic protrusions on the strap component. | N/A - literal infringement established. | Defendant Her Tactical's Accused Instrumentalities comprise a flap that has a magnet contained within the strap. But the magnet does not create a protrusion extending from the back surface of the flap; rather, any protrusion created by the magnet extends from the front surface of the flap. |

| | | | |
|---|---|---|---|
| **[B](iii)** a fastener housing extending from an outer surface of the back side of the body, the fastener housing being configured to engage with the fastener protrusion; | **Literally satisfied.** Defendants' documentation shows housings extending from the holster body configured to engage with the protrusion. Defendants' technical documentation shows housing extending from body with magnetic engagement functionality. | N/A - literal infringement established. | The specification for the '530 Patent states that the "fastener protrusion is configured to engage within a cavity **307** created by a housing **305** that extends from surface **303**." None of the Accused Instrumentalities have any cavity created by a housing. Rather, the flap is secured by two magnets engaging one another. Thus, the element of a fastener housing is not present in the Accused Instrumentalities. |
| **[C]** wherein the elongated strap folds backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage; | **Literally satisfied.** Each Accused Instrumentality meets this limitation literally because they each comprise an elongated strap that folds backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage, as described and shown in the Defendants' disclosures. Defendants describe exactly this functionality where their magnetic flap/strap folds backwards from the holster opening, bringing the magnetic protrusion and housing components into engagement position. Defendants' technical documentation and product photographs demonstrate the | N/A - literal infringement established. This element describes the specific mechanical action that enables magnetic fastener engagement. Defendants' products clearly demonstrate this folding motion in their technical specifications, marketing materials, and instructional content. The strap/flap component physically folds away from the gun opening to bring magnetic components together for secure closure. | The specification for the '530 Patent states that the "fastener protrusion is configured to engage within a cavity **307** created by a housing **305** that extends from surface **303**." None of the Accused Instrumentalities have any cavity created by a housing. Rather, the flap is secured by two magnets engaging one another. Thus, the element of a fastener housing is not present in the Accused Instrumentalities. |

|  |  |  |  |
|---|---|---|---|
|  | folding<br>motion that enables magnetic closure. |  |  |
| **[D]** two magnets disposed within a thickness of the fastener protrusion; | **Satisfied under doctrine of equivalents** using one magnet instead of two in the protrusion. Defendants acknowledge using embedded magnets within their fastener components. | **Function:** Provides magnetic force for closure engagement and retention. **Way:** Magnet(s) disposed within protrusion thickness create magnetic field for engagement with housing magnet. **Result:** Secure magnetic connection with housing magnet enabling holster closure.<br>**Insubstantial Difference:** One vs. two magnets performs substantially the same function - both create magnetic force sufficient for engagement. Technical evidence shows single magnet achieves same functional<br>result. | Plaintiff's doctrine of equivalents arguments fail as prosecution history estoppel restricts Plaintiff from asserting this doctrine. The prosecution history of the '530 Patent clearly shows that the examiner considered the number of magnets to be a material difference. The originally filed Claim 1 claimed "a first magnet disposed within a thickness of the fastener protrusion; and a second magnet disposed within a thickness of the housing." On April 19, 2017, a Non-Final Rejection was issued. Shortly thereafter, on June 1, 2017, Claim 1 was amended to claim "two magnets disposed within a thickness of the fastener protrusion; and a third magnet disposed within a thickness of the housing." |

| [E] a third magnet disposed within a thickness of the housing; | **Satisfied under doctrine of equivalents** using second magnet (defendants' housing magnet) instead of third magnet. Defendants describe the second magnet positioned within the housing thickness to engage with the first magnet. | **Function:** Provides corresponding magnetic force to attract and engage with protrusion magnet(s). **Way:** Magnet disposed within housing thickness creates attractive magnetic force. **Result:** Secure magnetic retention system enabling reliable closure. **Insubstantial Difference:** Second vs. third magnet performs substantially the same function of providing housing-based magnetic attraction. | Plaintiff's doctrine of equivalents arguments fail as prosecution history estoppel restricts Plaintiff from asserting this doctrine. The prosecution history of the '530 Patent clearly shows that the examiner considered the number of magnets to be a material difference. The originally filed Claim 1 claimed "a first magnet disposed within a thickness of the fastener protrusion; and a second magnet disposed within a thickness of the housing." On April 19, 2017, a Non-Final Rejection was issued. Shortly thereafter, on June 1, 2017, Claim 1 was amended to claim "two magnets disposed within a thickness of the fastener protrusion; and a third magnet disposed within a thickness of the housing." |
| [F] wherein the two magnets are configured to engage with the third magnet; | **Satisfied under doctrine of equivalents** using two-magnet engagement (one protrusion magnet engaging with one housing magnet). Defendants describe magnetic engagement between their strap and housing components. | **Function:** Creates magnetic retention force between strap and housing components. **Way:** Magnetic attraction between protrusion and housing components through magnetic field interaction. **Result:** Secure closure without mechanical fasteners, enabling quick access while maintaining | Again, Plaintiff's doctrine of equivalents argument fails as prosecution history estoppel restricts Plaintiff from asserting this doctrine. The '530 Patent claims two magnets engaging a third magnet. This is not present in any of Defendants' Accused Instrumentalities. Each |

| | | retention. **Insubstantial Difference:** Two- magnet vs. three-magnet engagement achieves same magnetic retention function. | Accused Instrumentality comprises one magnet engaging a second magnet, and no third magnet is anywhere present. |
|---|---|---|---|
| **[G]** wherein the engaging of the two magnets and the third magnet does not cause the elongated strap to obstruct the upper opening of the body and does not obstruct or hinder removal of the gun from the body; | **Satisfied under doctrine of equivalents.** Defendants describe magnetic engagement that does not obstruct gun access, with magnets positioned to keep holster body firmly in place without interference. Marketing materials emphasize quick gun access. | **Function:** Ensures unobstructed gun access during magnetic engagement. **Way:** Magnetic positioning and engagement design that avoids interference with gun opening. **Result:** Secure magnetic retention while maintaining clear gun access path. **Insubstantial Difference:** Two- magnet system achieves same non-obstruction function as three- magnet system. | Defendants note that the claim language cited by Plaintiffs is not the claim language of Claim 1 of the '530 Patent. Rather the claim language should read "wherein engaging the two magnets with the third magnet does not obstruct the upper opening and does not obstruct or hinder entire removal of the gun from the body; and." Again, Plaintiff's doctrine of equivalents argument fails as prosecution history estoppel restricts Plaintiff from asserting this doctrine. The '530 Patent claims two magnets engaging a third magnet. This is not present in any of Defendants' Accused Instrumentalities. Each Accused Instrumentality comprises one magnet engaging a second magnet, and no third magnet is anywhere present. |

| | | | |
|---|---|---|---|
| **[H]** wherein a combined magnetic retention strength generated by the two magnets and the third magnet is strong enough to retain the gun within the body; | **Satisfied under doctrine of equivalents.** Defendants advertise "strong magnetic hold" and "2 embedded magnets that secure the folded flap" to "keep your gun securely in place" using their two-magnet system. **Technical Evidence:** Defendants acknowledge that stacked magnets "will work as one to exert a greater magnetic force." Technical literature confirms stacked magnets act like a single magnet and exhibit nearly the same strength as a single magnet of combined size. | **Function:** Provides sufficient magnetic retention force for gun security within holster body. **Way:** Combined magnetic forces from multiple magnets working together to create retention strength. **Result:** Secure gun retention within holster body preventing unintended movement or loss. | Again, Plaintiff's doctrine of equivalents argument fails as prosecution history estoppel restricts Plaintiff from asserting this doctrine. The '530 Patent claims two magnets engaging a third magnet. This is not present in any of Defendants' Accused Instrumentalities. Each Accused Instrumentality comprises one magnet engaging a second magnet, and no third magnet is anywhere present. |

**Claim 3 of U.S. Patent No. 9,784,530**

| Claim Element | Accused Instrumentality | Doctrine of Equivalents Analysis | Response |
|---|---|---|---|
| **[P]** The system of claim 1, | As demonstrated in the claim 1 analysis above, each Accused Instrumentality infringes the system of claim 1 under the doctrine of equivalents. The two-magnet configuration performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed three-magnet system. | Incorporates all claim 1 doctrine of equivalents analysis by reference. The foundational gun holster system with magnetic retention functionality is established. | As demonstrated above, Defendants' Accused Instrumentalities do not practice each limitation of Claim 1 of the '530 Patent, and Plaintiffs' doctrine of equivalents arguments are barred by prosecution history estoppel. |
| **[A]** wherein the lower opening is configured to receive a portion of the gun therethrough. | **Literally satisfied.** Defendants' holster body includes a lower opening configured to receive a portion of the gun therethrough. Defendants' technical specifications and product photographs show the holster body with both upper and lower openings designed for gun insertion and partial extension. | N/A - literal infringement established. This element adds no complexity to the infringement analysis as it describes a standard feature of gun holsters that allows the gun barrel or trigger guard to extend through the bottom of the holster body. | |

**Design Patent D788,451**

| Prior Art (from D788,451) | D788,451 | Accused Instrumentality | Response |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| U.S. Patent No. 4,435,506 (issued Apr. 20, 1982) | | | Defendants' Accused Instrumentalities have a different appearance and create a different overall visual impression as the flap wherein each magnet is housed in a separate piece from the body of the holster. Additionally, Defendants' Accused Instrumentalities comprise an elastic retention strap not present in the D'451 Patent. |
| U.S. Patent No. D543,354 (issued May 29, 2007) | | | Plaintiff's infringement contentions here rely on comparisons between the D'451 Patent and technical drawings associated with Defendants' Accused Instrumentalities. This approach is legally flawed and insufficient to establish design patent infringement. The test for design patent infringement under *Egyptian Goddess* requires the side-by-side comparison of the patented design and the accused product itself, not technical drawings or renderings of the accused product. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008). |
| U.S. Patent No. D543,353 (issued May 29, 2007) | | | |



| | | | |
|---|---|---|---|
| Cox, U.S. Patent No. D718,523 (Dec. 02, 2014) | | | . |

i. **Design Patent D811,731 – Prior Art vs. Claimed Design vs. Accused Product:**

| Prior Art (from D811,731) | D811,731 – claim 1 | Accused Instrumentality | Response |
|---|---|---|---|
| Nichols, U.S. Patent No. D811,731 (Jan. 19, 1988) | | | Plaintiff's infringement contentions here rely on comparisons between the D'731 Patent and technical drawings associated with Defendants' Accused Instrumentalities. This approach is legally flawed and insufficient to establish design patent infringement. The test for design patent infringement under *Egyptian Goddess* |



| | | | requires the side-by-side comparison of the patented design and the accused product itself, not technical drawings or renderings of the accused product. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008). |

Kalasountas, U.S. Patent No. D356,677 (Mar. 28, 1995)

Cox, U.S. Patent No. D718,523 (Dec. 02, 2014)

Crouch, U.S. Patent No. D770,172 (Nov. 01, 2016)

Myers, U.S. Patent No. D788,731 (patent-in-suit)

ii.       **Design Patent D836,329 – Prior Art vs. Claimed Design vs. Accused Product:**

| Prior Art (from D836,329) | D836,329 – claim 1 | Accused Instrumentality | Response |
|---|---|---|---|
| Nichols, U.S. Patent No. D811,731 (Jan. 19, 1988) | | | Plaintiff's infringement contentions here rely on comparisons between the D'329 Patent and technical drawings associated with Defendants' Accused Instrumentalities. This approach is legally flawed and insufficient to establish design patent infringement. The test for design patent infringement under *Egyptian Goddess* requires the side-by-side comparison of the patented design and the accused product itself, not technical drawings or renderings of the accused product. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008). |
| Kalasountas, U.S. Patent No. D356,677 (Mar. 28, 1995) | | | |
| Cox, U.S. Patent No. D718,523 (Dec. 02, 2014) | | | |
| | | | |

| | | | |
|---|---|---|---|
| Crouch, U.S. Patent No. D770,172 (Nov. 01, 2016) | | | |
| Myers, U.S. Patent No. D788,731 (patent-in-suit) | | | |

LPR 2.4(b) Non-Infringement Contentions Claim Chart for Case No. 1:22-cv-00121-AMA-DBP

### iii.     Design Patent D841,979 – Prior Art vs. Claimed Design vs. Accused Product:

| Prior Art (from D841,979) | D841,979 – claim 1 | Accused Instrumentality | Response |
|---|---|---|---|
| Nichols, U.S. Patent No. D811,731 (Jan. 19, 1988) | | | Plaintiff's infringement contentions here rely on comparisons between the D'979 Patent and technical drawings associated with Defendants' Accused Instrumentalities. This approach is legally flawed and insufficient to establish design patent infringement. The test for design patent infringement under *Egyptian Goddess* requires the side-by-side comparison of the patented design and the accused product itself, not technical drawings or renderings of the accused product. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008). |
| Kalasountas, U.S. Patent No. D356,677 (Mar. 28, 1995) | | | |
| Cox, U.S. Patent No. D718,523 (Dec. 02, 2014) | | | |

LPR 2.4(b) Non-Infringement Contentions Claim Chart for Case No. 1:22-cv-00121-AMA-DBP



| | | |
|---|---|---|
| Crouch, U.S. Patent No. D770,172 (Nov. 01, 2016) | | |
| Myers, U.S. Patent No. D788,731 (patent-in-suit) | | |