# Pl's MSJ App Ex 15
# Schramm FTO Analysis
# Myers Deposition Ex 9

Michael R. Schramm
Schramm Patent Services, LLC
E-mail: mikeschramm@besstek.net

August 22, 2022

EXHIBIT  9
WIT: C Myers
DATE: 4-22-24
Amanda Richards, CSR

Vicky Johnston
Her Tactical
E-mail: vicky@hertactical.com

Re: Freedom to Operate Analysis

Dear Vicky:

You have requested that I perform a freedom to operate (FTO) analysis of the Her Tactical gun holster (the Product) relative to the US patent 9,784,530 ('530). This letter is in response to that request.

As a background I note that "*Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device*" (see: Kahn v. Gen. Motors Corp., 135 F.3d 1472, 1477 (Fed. Cir. 1998)). Thus as applied to the instant case, even if only one element of any independent claim of '530 is not practiced by the Product, infringement of '530 by the product is avoided. Turning to '530, I note that '530 includes three claims, only one of which, claim 1, is an independent claim. Claim 1 of '530 reads as follows:

> "*A gun holster system for carrying a gun, comprising: a body having a front side and a back side forming an upper opening disposed therebetween and forming a lower opening at a lower surface of the body; a strap assembly integrally secured to the back side body, the strap assembly having: an elongated strap extending from and integrally secure to the back side of the body; a fastener protrusion extending from a back surface of the elongated strap; and a fastener housing extending from an outer surface of the back side of the body, the fastener housing being configured to engage with the fastener protrusion; wherein the elongated strap folds backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage;* **two magnets disposed within a thickness of the fastener protrusion; and a third magnet disposed within a thickness of the housing; wherein the two magnets are configured to engage with the third magnet; wherein engaging the two magnets with the third magnet does not obstruct the upper opening and does not obstruct or hinder entire removal of the gun from the body; and wherein a combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body.**"

While a limitation by limitation of the analysis is a useful tool in an assessment of FTO, in this case, as non-infringement of '530 by the Product is so obvious, I will forgo such a full detailed analysis and will instead focus on one aspect, namely the three magnet limitation (e.g. see the bolded claim text above). As you know, the Product has less than three magnets, and therefore the Product does not literally practice claim 1 (or any claim) of '530.

Moreover, it is also my opinion that the doctrine of equivalents would not apply here. I note that the three magnet limitation was not mere oversight. When applicant Meyers (James Meyers -

presumably a relative of Chad Meyers) originally filed the application that resulted in '530, claim 1 (and none of the claims of the '530 application) included the three magnet limitation (see attached "9784530 161206 Application as Filed"). These claims were rejected in the April 19, 2017 (see attached "9784530 170419 Office Action"). In an attempt to overcome the rejection, in a June 1, 2017 OA response, Meyers amended the claims to include the three magnet limitation (see attached "9784530 170601 OA Response & Amendment"). It is pointed out that in the June 1, 2017 response, Meyers expressly stated, inter alia, on the record, that:

> "*The Applicant respectfully traverses these rejections for at least the following reasons. Claim 1 is hereby amended to include the features: (1) **two magnets disposed within the fastener protrusion; (2) engaging the two magnets and the third magnet does not obstruct the upper opening; and (3) combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body**.*"

Further, in an August 21, 2017 mailed interview summary of a July 28, 2017 interview (see attached "9784530 170821 Interview Summary"), the examiner stated inter alia that:

> "*Ms. Felix discussed the amended claims which were formally filed on June 01. 2017. Amended claim 1, lines 10 - 18 filed on June 01, 2017 recite: "**two magnets disposed within a thickness of the fastener protrusion: and a third magnet disposed within a thickness of the housing; wherein the two magnets are configured to engage with the third magnet; wherein engaging the two magnets with the third magnet does not obstruct the upper opening; and wherein a combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body**." Examiner Vanterpool stated the amended claim 1 filed on June 01, 2017 is a step in the right direction. **In particular, the limitation of: "wherein engaging the two magnets magnets with the third magnet does not obstruct the upper opening; and wherein a combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body.**'"*

Lastly, I note that in the August 25, 2017 notice of allowance (see attached "9784530 170825 Notice of Allowance"), the examiner, in affirming the criticality of the three magnet limitation, expressly stated, inter alia, on the record, that:

> "*However, Stella does not disclose the fastener housing extending from the outer surface of the back side of the body, the fastener housing configured to engage with the fastener protrusion; **two magnets disposed within the thickness of the fastener protrusion; and the third magnet disposed within the thickness of the housing; the two magnets are configured to engage with the third magnet; engaging the two magnets with the third magnet does not obstruct the upper opening and does not obstruct or hinder entire removal of the gun from the body; and the combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body**.*"

And

> *However, Esposito '250 does not disclose the strap assembly having: the elongated strap (12) extending from and integrally secured to the back side of the body (11 ); wherein the elongated strap (12) folded backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage; **two magnets disposed within the thickness of the fastener protrusion; and the third magnet disposed within the thickness of the housing; the two magnets are configured to engage with the third magnet; engaging the two magnets with the third magnet does not obstruct the upper opening and does not obstruct or hinder entire removal of the gun form the body; and the combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body**.*

And

"*However, McStay '045 does not disclose the strap assembly having: the elongated strap (108) extending from and integrally secured to the back side of the body; the fastener housing (142) extending from the outer surface of the body; the elongated strap (108) folded backwards and away from the upper opening to cause the fastener protrusion (120) and the fastener housing (142) to engage; engaging the two magnets with the third magnet does not obstruct the upper opening and does not obstruct or hinder entire removal of the stored object (118) from the body; and wherein the combined magnetic retention strength generated by the two magnets and third magnet being strong enough to retain the stored object (118) within the body.*"

In addition to the above, I note that even if, in the nearly impossible scenario, where Meyers were to suggest some rational in a continuing application as to why claims based on the original Meyers applications should be allowed with the three magnet limitation, inasmuch as there are no children applications that claims priority to '530 (see attached "9784530 220822 Continuity Data"), Meyers is foreclosed from so arguing.

Separate from above, I note that where a third party asserts a baseless claim for patent infringement, the accused infringers has a plurality of options, one of which would be for the accused to seek a declaratory judgment (DJ) against the accuser, with a request to recover attorney's fees and other damages caused by the accuser. Should you be interested in seeking such remedies, I would be happy to provide a reference to a competent patent attorney.


DATE: August 22, 2022            Respectfully submitted,

Michael R. Schramm
_____
Michael R. Schramm
Registered Patent Agent
Reg. No. 56,441