Chad Pehrson (Utah Bar No. 12622) cpehrson@knh.law
Nathan Gardner (Utah Bar No. 19537) ngardner@knh.law
**KNH LLP**
50 W. Broadway, 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS, <br><br> Plaintiffs, <br><br> v. <br><br> HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual; <br><br> Defendants. | **DEFENDANTS HER TACTICAL LLC and E & R LLC's MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 1:22-cv-00121-AMA-DBP <br><br> District Judge Ann Marie McIff Allen <br><br> Magistrate Judge Dustin B. Pead |

## INTRODUCTION AND RELIEF REQUESTED

Defendants Her Tactical LLC and E & R LLC d/b/a Her Tactical (together "**Her Tactical**" or the "**Her Tactical LLCs**") hereby submit the following Motion for Summary Judgment as to Plaintiffs' claims for infringement of (1) U.S. Patent Nos. 9,784,530 and 11,747,109 (the "'**530 Patent**" and "'**109 Patent**," respectively, and together the "**Utility Patents**"); (2) U.S. Design Patent Nos. D788,451, D811,731, D836,329, and D841,979 (the "'**451**," "'**731**," "'**329**," and "'**979 Patents**," and together the "**Design Patents**"); and (3) Plaintiffs' trade dress / unfair competition

1

claim under 15 U.S.C. § 1125(a). Her Tactical LLC and E & R LLC file this motion jointly due to Her Tactical LLC being a direct successor entity to E & R LLC, and in the interests of efficiency and judicial economy.

The Court should grant summary judgment of no direct infringement under 35 U.S.C. § 271(a) and dismiss the trade dress claim, because Plaintiffs cannot meet their burden as to any asserted claim. Defendants Vicky Arlene Johnston and Blake Cheal are concurrently filing their own motions for summary judgment, each of which incorporates this Motion under DUCivR 7-1(a)(8) and develops party-specific defenses.

In 2021, Ms. Vicky Arlene Johnston started a side gig—she designed and arranged for the manufacture of a magnetic holster specifically marketed for women, sold under the brand "Her Tactical." Since then, Ms. Johnston has brought in less than $85,000 in total revenue from those sales. The company's research, production, marketing, and now litigation expenses vastly outweigh those revenues.

Regardless, neither E &R nor any other Defendant infringes any of Plaintiffs' asserted patents, and Plaintiffs cannot establish trade dress protection. And the analysis is not close. Patent infringement is an objective analysis. The '530 Patent contains a crystal clear limitation: **three magnets**. The accused Her Tactical products contain only **two**. Under the all-elements rule, literal infringement of the '530 is impossible. As to the doctrine of equivalents on the '530: the patentee disclaimed the two-magnet scope during prosecution, and Plaintiffs cannot recapture it now.

The '109 Patent fails for an independent reason. Although the '109 recites only two magnets (not three), the claim requires those two magnets to sit in two structurally distinct components: a strap-side fastener protrusion and a body-side fastener housing. The accused

2

products place both magnets in a single component—the flap. The two are not the same, and the distinction is clear.

Recent claim construction proceedings confirm both conclusions. Plaintiffs proposed a strained construction of "two magnets"— proposing "Two magnetic elements that work together"—designed to support an argument that the two magnets in the accused products somehow satisfy the '530's separate "two magnets . . . and a third magnet" arrangement, on the theory that two magnets allegedly "act like a single magnet." On December 18, 2025, the Court rejected that construction, declining to construe any of Plaintiffs' proposed terms and instead adopting the plain and ordinary meanings of all disputed terms. (Dkt. 144 (App. Tab 16).) Under plain meaning, two is not three; and under plain meaning, a flap-borne magnet is not a body-side fastener housing.

The four asserted Design Patents fail under similar logic: each was granted with at least one of the others cited as prior art, meaning the patent office has already determined the four designs to be distinct from one another. The accused Her Tactical products are even more distinct—they differ from each of the four asserted designs on the same features that distinguish those designs from each other. As to trade dress: the PTO twice rejected Plaintiffs' applications to register the holster's product configuration on functionality grounds, citing Plaintiffs' own '530 Patent as evidence of utilitarian advantage. Plaintiffs have no path to liability on any claim.

## BACKGROUND

### A. <u>Background of the Her Tactical Business.</u>

At the age of eight, Ms. Johnston was attacked by a stranger and dragged into the woods. Turning tragedy into purpose, Ms. Johnston has had a lifetime passion for promoting body safety

for women. Her day job is as a real estate agent, a profession in which women have historically been targets, including because they often work alone at empty houses. Worried about that danger, Ms. Johnston attended firearms courses but was discouraged at the lack of holsters appropriate for women. Repeatedly, Ms. Johnston was told: just put it in your purse. But Ms. Johnston did not carry a purse when running an open house. For years, she failed to find suitable holsters that fit her style, comfort, and safety needs. Eventually, she decided to take action: she researched and designed her own holsters—comfortable, safe, lightweight, and appropriate for a woman's wardrobe.

Ms. Johnston started E & R in 2021 with the focus of empowering women in self-defense and providing effective, safe, and comfortable concealed-carry solutions. In approximately five years of selling, the business has made less than $85,000 in total *revenue*, not including expenses. On first glance, that figure may seem not bad for a side gig, but it is not a profit figure. The business is deep in the red—without even factoring in the significant expenses of this litigation.

Ms. Johnston first heard from JM4 in August 2022. JM4 sent demand correspondence referencing only the '530 Patent. Pre-suit, Ms. Johnston retained a registered patent agent who provided a written freedom-to-operate analysis confirming non-infringement of the '530 Patent. (App. Tab 4.) Ms. Johnston conveyed Mr. Schramm's analysis to JM4. JM4 did not respond on the substance but instead filed the instant lawsuit.

### B.  Overview of the Accused Her Tactical Products.

There is no dispute regarding the structure of the accused Her Tactical products, which is illustrated in Plaintiffs' Final Infringement Contentions. (App. Tab 3.) Plaintiffs identify the following Her Tactical SKUs as accused:

4

Magnet-Holster-Micro (Black, Pink, Purple); Magnet-Holster-Compact (Black, Pink, Purple); HT-Neo-Magnet-Holster.

Each accused product consists of a holster body and a folded flap. A **single** magnet is integrated into each end of the flap. When the flap is folded over an undergarment strap, the two magnets engage one another to retain the holster in place. The accused products do not contain a third magnet, and the body of each accused product has no fastener housing extending from its back side. (App. Tab 3 at p. 11 (citing HerTactical_0830 ("magnets disposed in the thickness of the flap and configured on either end to fold down and attach"); HerTactical_0831 ("The flap folds around the undergarment to keep the holster securely in place using the 2 magnets embedded into the flap."))).) Each accused product also contains a snap-engageable retainer strap separate from the magnetic flap.

### C.  The Asserted Utility Patents.

U.S. Patent No. 9,784,530 issued on October 10, 2017 from an application filed October 28, 2016. The '530 Patent is included as App. Tab 1. U.S. Patent No. 11,747,109 issued on September 5, 2023—after this litigation began—and was added to the case in Plaintiffs' Second Amended Complaint. (Dkt. 74.) The '109 Patent is included as App. Tab 2. The '109 issued from Application No. 15/905,267, identified on the face of the issued patent as a continuation of Application No. 29/580,081 (the application that issued as design patent D811,731). (App. Tab 2, face page.)

Claim 1 of the '530 Patent provides:

A gun holster system for carrying a gun, comprising: a body having a front side and a back side forming an upper opening disposed therebetween . . . ; a strap assembly integrally secured to the back side of the body, the strap assembly having: an elongated strap extending from and integrally secure to the back side of the body; a fastener protrusion extending from a back surface of the elongated strap; and a

fastener housing extending from an outer surface of the back side of the body, the fastener housing being configured to engage with the fastener protrusion; wherein the elongated strap folds backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage; **two magnets** disposed within a thickness of the fastener protrusion; and **a third magnet** disposed within a thickness of the housing; wherein the two magnets are configured to engage with the third magnet . . . ; and wherein a combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body.

(App. Tab 1 at col. 3, ln. 16 – col. 4, ln. 18 (emphasis added).)

Each claim of the '530 Patent thus requires **three** magnets—two in the fastener protrusion and a third in the housing.

Claim 1 of the '109 Patent (the only independent claim of that patent) recites a structurally distinct two-piece fastener: a fastener protrusion extending from a back surface of an elongated strap, with **a first magnet** disposed within a thickness of the protrusion, and a fastener housing extending from an outer surface of the back side of the body, with **a second magnet** disposed within a thickness of the housing. (App. Tab 2 at col. 3, ln. 17 – col. 4, ln. 7.) Plaintiffs assert only claim 1 of the '109 Patent.

### D.  The Asserted Design Patents.

Plaintiffs claim that the accused Her Tactical products infringe the following four design patents:

- **D788,451**—Gun Holster.
- **D811,731**—Gun Holster.
- **D836,329**—Gun Holster.
- **D841,979**—Gun Holster.

Three of these patents—the '731, '329, and '979 Patents—were each granted with the '451 Patent cited as prior art. The face of each issued patent identifies the '451 as a reference cited and overcome during prosecution. (*See* App. Tab 10 (face page of D811,731); App. Tab 11 (face page

of D836,329); App. Tab 12 (face page of D841,979).) The patent office, in other words, already determined that the four asserted designs are distinct from one another.

Although further argument and specific critiques of each asserted design patent will follow later in this motion, by way of introduction the following images of the Plaintiff's ornamental design patents from the patent office are shown.

| Patent No. | | |
|---|---|---|
| D788,451 | | |



| D811,731 | |
| --- | --- |
| D836,329 | |



D841,979

FIG. 3          FIG. 1          FIG. 2

This introductory set of images, when compared to those below of the Products, show to even the most casual observer that there are more distinctions between the design of the Defendant's products than there are between the Plaintiff's own design patents, all of which are not to be viewed as collective, but as separate and individual, patently unique designs, in each case. The unique designs above are distinctly different from the Products seen below:

**MICRO MAGNETIC HOLSTER**



(SIZE EXAMPLE: RUGER LCP .380)

**COMPACT MAGNETIC HOLSTERS**



(SIZE EXAMPLE: RUGER EC9s 9mm)

*See In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings.").

### E.  The Court's December 18, 2025 Claim Construction Ruling.

The parties briefed claim construction in 2025. Plaintiffs proposed constructions for five terms: "fastener protrusion," "fastener housing," "disposed within a thickness," "two magnets,"

and "integrally secured." Defendants did not propose constructions and contended that plain and ordinary meaning should apply to every disputed term. (App. Tab 15 (Dkt. 132).)

Plaintiffs' proposed construction of "two magnets"—"Two magnetic elements that work together" (*id.* at 2)—was the linchpin of their theory that two magnets in the accused product satisfy the "two magnets . . . and a third magnet" arrangement of the '530 Patent. Plaintiffs supported their proposed construction by citing third-party magnet vendor materials for the proposition that "[t]wo or more magnets stacked together will exhibit nearly the same strength as a single magnet of the combined size," such that the two magnets in the accused products allegedly "act like a single magnet." (*See* Plaintiffs' Initial Infringement Contentions of April 19, 2023, at 12 (App. Tab 14).)

On December 18, 2025, the Court held a claim construction hearing and ruled from the bench. The minute entry states the ruling in full:

> For the reasons stated on the record, the Court declines to construe any of the terms proposed by plaintiff and will adopt the plain and ordinary meanings. This ruling can be revisited in the future if necessary.

(Dkt. 144 (App. Tab 16).)

Plaintiffs' "two magnets work together as one" theory was rejected. Under plain meaning, the '530 Patent requires three discrete magnets in the disclosed arrangement, and both Utility Patents require the strap-side fastener protrusion and body-side fastener housing arrangement that the Court adopted under plain meaning.

## F. Overview of Asserted Trade Dress.

Plaintiffs' only allegation regarding their asserted putative trade dress is contained in Paragraph 84 of the operative pleading:

11

The overall visual impression created in the consumer's mind when viewing the non-functional aspects of the Plaintiff's IWB magnetic retention gun holsters, and not from the utilitarian or useful aspects of the products, when considered together, is the Plaintiffs' trade dress.

(Dkt. 74 ¶ 84.)

The PTO twice refused registration of Plaintiffs' product configuration on functionality grounds, citing Plaintiffs' own '530 Patent as evidence of utilitarian advantage. On September 13, 2021, the PTO issued an Office Action refusing registration of Application No. 90/520,663 as functional. Plaintiffs abandoned that application on April 4, 2022 rather than respond. The PTO subsequently issued a Final Office Action refusing registration of Application No. 90/518,181 on November 7, 2022, again on functionality grounds. (App. Tab 5.) Plaintiffs hold no registered trade dress for their holster.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Ms. Vicky Arlene Johnston is the sole member of both E & R LLC d/b/a HER TACTICAL and HER TACTICAL, LLC. Both are single-member limited liability companies organized under the laws of Utah. Both operate the same Her Tactical magnetic-holster business under the same brand and sell the same accused products. (App. Tab 18 (Johnston Decl.) ¶ 2.)

2. Each claim of the '530 Patent requires three magnets: two disposed within a thickness of the fastener protrusion, and a third disposed within a thickness of the housing. (App. Tab 1 at col. 4, lns. 4–7.)

3. Claim 1 of the '109 Patent requires (i) a fastener protrusion extending from a back surface of an elongated strap, with a first magnet disposed within a thickness of the protrusion, and (ii) a fastener housing extending from an outer surface of the back side of the body, with a

12

second magnet disposed within a thickness of the housing. (App. Tab 2 at col. 3, ln. 17 – col. 4, ln. 7; *id.*, Fig. 3.)

4. Plaintiffs' Final Infringement Contentions identify the same flap component of the accused products as both the "fastener protrusion" and the "fastener housing" of claim 1 of the '109 Patent. (App. Tab 3 at pp.   7–11.)

5. Each accused Her Tactical product consists of a holster body and a folded flap, with one magnet integrated into each end of the flap; both magnets are embedded in the flap, and the body of the holster has no separately-extending housing on its back side. (App. Tab 3 at p. 11.)

6. The accused Her Tactical products contain only two magnets, one at each end of the folded flap. (App. Tab 3 at pp. 9–11.)

7. In prosecution on the '530 Patent, the applicant expressly amended every claim to add the "two magnets . . . and a third magnet" limitation in order to obtain patentability, and expressly argued that this specific amendment enabled patentability. (App. Tab 6 (Amendment Filed June 1, 2017).)

8. Edits to the three-magnet limitation were also made in a Supplemental Amendment to the PTO on July 31, 2017. (App. Tab 7.)

9. In an Examiner Interview Summary, the applicant's attorney "discussed the amended claims"—namely, the newly added three-magnet limitation as compared to the earlier pending two-magnet limitation. The Examiner responded that this specific amendment was particularly important and a "step in the right direction." (App. Tab 8.)

10. The Examiner's stated reason for allowability was the addition of the three-magnet limitation. (App. Tab 9 at p. 3.)

11. On June 27, 2025, Defendants served Final Non-Infringement Contentions under LPR 3.1(b) and 2.4(c)–(e), formally setting forth the structural and prosecution-history bases for non-infringement of the '530 Patent and the '109 Patent reflected in this Motion. (App. Tab 20.)

12. On December 18, 2025, the Court declined to construe any of Plaintiffs' proposed claim terms and adopted the plain and ordinary meanings of all disputed terms. (Dkt. 144 (App. Tab 16).)

13. Three of the four asserted Design Patents ('731, '329, and '979) were each granted by the PTO with the '451 Patent cited as prior art. (App. Tab 10 (face page of D811,731); App. Tab 11 (face page of D836,329); App. Tab 12 (face page of D841,979).)

14. The PTO refused registration of both trade-dress applications on functionality grounds (Application No. 90/520,663 (Office Action, Sept. 13, 2021); Application No. 90/518,181 (Final Office Action, Nov. 7, 2022)). (App. Tab 5.)

### **ARGUMENT**

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *PSN Ill., LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1168 (Fed. Cir. 2008). At summary judgment, the Court construes all facts and reasonable inferences in favor of the nonmovant. *PSN Ill.*, 525 F.3d at 1168. The moving party has the initial burden of identifying those portions of the record that demonstrate the absence of a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once that

showing is made, the nonmoving party must "cit[e] to particular parts of materials in the record" showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1)(A). A factual dispute is material only if it might affect the outcome under the governing law, and it is genuine only if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment of non-infringement requires a two-step analysis. "First, the claims of the patent must be construed to determine their scope. Second, a determination must be made as to whether the properly construed claims read on the accused device." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999). The Court has completed the first step by adopting the plain and ordinary meanings of all disputed terms. (Dkt. 144 (App. Tab 16).) Direct infringement may be proven either by literal infringement or under the doctrine of equivalents. "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id*. To survive summary judgment under the doctrine of equivalents, the patentee must come forward with "particularized testimony and linking argument" on a "limitation-by-limitation basis"; "[g]eneralized testimony as to the overall similarity" will not suffice. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328–29 (Fed. Cir. 2007).

I.    **Literal Infringement of Any Claim of the '530 Patent Is Impossible, and E & R Is Entitled to Judgment as a Matter of Law.**

A short review of the '530 Patent relative to the accused Her Tactical products shows the inevitable and obvious absence of literal infringement. Each claim requires three magnets in a

specific arrangement. The accused products have two. That is the end of the literal-infringement analysis.

### A.  <u>Each Claim of the '530 Patent Requires Three Magnets.</u>

Claim 1—the only independent claim in the '530 Patent—expressly recites "two magnets disposed within a thickness of the fastener protrusion; **and a third magnet** disposed within a thickness of the housing." (App. Tab 1 at col. 4, ln. 4 (emphasis added).) Each dependent claim incorporates that limitation.

The Notice of Allowance dated August 25, 2017 confirms the criticality of the three-magnet limitation. (*See* App. Tab 9.) The Examiner's statement of reasons for allowance specifically identifies the three-magnet limitation as the basis for distinguishing the cited art:

> Stella does not disclose the fastener housing extending from the outer surface of the back side of the body, the fastener housing configured to engage with the fastener protrusion; two magnets disposed within the thickness of the fastener protrusion; and the third magnet disposed within the thickness of the housing; the two magnets are configured to engage with the third magnet . . . .

(App. Tab 9 at p. 3 (emphasis added).)

The Examiner repeated essentially the same point in distinguishing two other prior art references, *Esposito '250* and *McStay '045*. (App. Tab 9 at pp. 4–5.) Inclusion of the express three-magnet limitation, in the sole independent claim and thus in every claim of the patent, was critical to patentability.

### B.  <u>No Accused Product Contains Three Magnets.</u>

As shown in Plaintiffs' own infringement contentions and as undisputed by Plaintiffs: each accused Her Tactical product consists of a holster body and a folded flap, with a **single** magnet integrated into each end of the flap. When the flap is folded over an undergarment strap, the two

magnets engage one another to retain the holster in place. (App. Tab 3 at p. 11 (citing HerTactical_0830 ("magnets disposed in the thickness of the flap and configured on either end to fold down and attach"); HerTactical_0003 (cross-section view labeling "Inside of Front magnet" and "Second magnet")).)

In short, the accused products do not include three magnets. Under the all-elements rule—the basic building block of patent infringement—literal infringement is impossible. *Bayer*, 212 F.3d at 1247.

**C.  The Court's Claim Construction Ruling Forecloses Plaintiffs' "Two Magnets Work Together as One" Theory.**

Notably, despite alleging literal infringement, Plaintiffs appear to be aware that the accused products do not have three magnets. Their workaround was to propose a strained construction of "two magnets" at claim construction—that the term should mean "Two magnetic elements that work together"—so that the two magnets in the accused products could be re-characterized as one functional unit, leaving "room" for the patent's separate "third magnet" limitation. (Dkt. 132 at 2 (App. Tab 15).)

The Court rejected that construction. (Dkt. 144 (App. Tab 16).) Under plain and ordinary meaning, "two magnets disposed within a thickness of the fastener protrusion; and a third magnet disposed within a thickness of the housing" requires three discrete magnet elements arranged as the claim describes. Two magnets are not three magnets, no matter how they "work together." With the proposed construction rejected, Plaintiffs have no path to literal infringement of the '530 Patent.

17

**II.    Infringement of the '530 Patent Via the Doctrine of Equivalents Is Impossible, Given the Patentee's Own Representations to the USPTO.**

The doctrine of equivalents is expressly precluded where the patentee made representations to the USPTO that conflict with the articulated infringement theory. *Advanced Steel Recovery v. X-Body Equip.*, 808 F.3d 1313, 1320 (Fed. Cir. 2015) ("Our case law also establishes that there are limitations to the doctrine of equivalents. 'Whether the result of the All Limitations Rule, prosecution history estoppel, or the inherent narrowness of the claim language, many limitations warrant little, if any, range of equivalents.'").

The doctrine of equivalents is limited by the all-elements rule and prosecution-history estoppel, and it cannot be applied so broadly that it effectively eliminates a claim element. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 39 n.8 (1997). Specifically, prosecution history estoppel "prevents a patentee from recapturing through the doctrine of equivalents subject matter that was surrendered during prosecution." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733–34 (2002). The doctrine presumptively applies when the applicant made a narrowing claim amendment related to patentability.[1] *Id.* at 736–37.

Prosecution-history estoppel can arise "either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to

---

[1]  A patentee can rebut the presumptive application of prosecution history estoppel by qualifying for one of three exceptions by a preponderance of the evidence: (1) that "the equivalent may have been unforeseeable at the time of the application"; (2) that "the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question"; and (3) that "there may be some other reason suggesting that the patentee could not reasonably be expected to have described the [equivalent]." *Festo*, 535 U.S. at 740–41. None of these exceptions applies here. Indeed, the amendment was made for the very purpose of avoiding the two-magnet prior art. JM4 cannot now rewrite (prosecution) history to meet the needs of a newfound litigation strategy.

18

the patent examiner ('argument-based estoppel')." *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1380 (Fed. Cir. 2019). Here, both apply.

First, as shown in the amendments filed by the applicant on June 1, 2017, the applicant expressly amended every claim to give up a two-magnet limitation in favor of a three-magnet limitation. (*See* App. Tab 6 (Amendment Filed June 1, 2017).) Second, the applicant expressly argued that this specific amendment enabled patentability:

> Claim 1 is hereby amended to include the features: (1) two magnets disposed within the fastener protrusion; (2) engaging the two magnets and the third magnet does not obstruct the upper opening; and (3) combined magnetic retention strength generated by the two magnets and third magnet is strong enough to retain the gun within the body. After review of the art, it is submitted that the cited references fail to disclose or teach features (1)–(3) hereby amended in the base claim.

(App. Tab 6.)

Similar to the June 1 amendments and arguments, edits to the three-magnet limitation were also made in the Supplemental Amendment of July 31, 2017. (App. Tab 7.) The Examiner Interview Summary reveals that the applicant's attorney "discussed the amended claims"—the newly added three-magnet limitation—and that the Examiner stated this amendment was particularly important and a "step in the right direction." (App. Tab 8.)

Furthermore, in addition to that obvious prosecution history estoppel, as the Supreme Court has explained, "if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court . . ." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016). "Under the doctrine of equivalents, an infringement theory thus fails if it renders a claim limitation inconsequential or ineffective." *Id.* Here, Plaintiffs are seeking to justify their errant assertion of the '530 Patent by claiming the disclaimed scope as the basis for their doctrine-of-equivalents infringement theory. That effort is

19

legally invalid on its face. *See Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425-26 (Fed. Cir. 1989) ("The party asserting infringement must present 'evidence and argument concerning the doctrine and each of its elements.' The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement.").

In short, the patentee's narrowing claim amendments and related arguments—and the fact that the doctrine of equivalents would impermissibly expand the scope of the claims to vitiate the claimed point of novelty—render the application of the doctrine of equivalents improper. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979-81 (Fed. Cir. 1999). Summary judgment of no infringement under the doctrine of equivalents should be granted.

III.   **The '109 Patent Fails Because the Accused Products Have No Body-Side Fastener Housing Containing a Magnet.**

Plaintiffs added the '109 Patent to this case after it issued on September 5, 2023. (Dkt. 53; Dkt. 74.) The '109 differs from the '530 in one important respect: it recites only two magnets, not three. The substitution does not bring Plaintiffs' theory any closer to the accused products. If anything, the '109's claim language demands more, not less, structural specificity than the '530, and the accused products fail it on the same evidence Plaintiffs have introduced themselves. The patent claims a two-component magnetic fastener—a fastener protrusion on the strap, with a first magnet inside, and a fastener housing on the body, with a second magnet inside. The accused products have a one-component fastener: a single flap that holds both magnets. The two are not the same, and the analysis is not close.

A.   **Claim 1 of the '109 Patent Requires Two Distinct Components in Two Distinct Locations, Each Holding One Magnet.**

Claim 1—the only independent claim of the '109 Patent—recites a strap assembly with

three structural pieces:

> a strap assembly secured to the back side of the body, the strap assembly having: an elongated strap extending from the back side of the body; **a fastener protrusion extending from a back surface of the elongated strap**; and **a fastener housing extending from an outer surface of the back side of the body**, the fastener housing being configured to engage with the fastener protrusion; wherein the elongated strap folds backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage; **a first magnet disposed within a thickness of the fastener protrusion**; and **a second magnet disposed within a thickness of the housing** . . . .

(App. Tab 2 at col. 3, ln. 17 – col. 4, ln. 7 (emphasis added).)

The claim's structural anatomy is unambiguous. Two of the components live on the strap: the strap itself, and the fastener protrusion that "extend[s] from a back surface" of the strap. The third component lives on the body: the fastener housing that "extend[s] from an outer surface of the back side of the body." (*Id.*) The first magnet sits inside the strap-side protrusion; the second magnet sits inside the body-side housing. (*Id.* at col. 4, lns. 4–7.) The claim's "engagement" limitation describes what happens when the strap folds: "the fastener protrusion and the fastener housing . . . engage." (*Id.* at col. 4, lns. 1–3.) The patent's own figures depict precisely this geometry. (*See id.*, Fig. 3 (back oblique view showing housing 305 extending from body surface 303 with magnet 307 inside, opposite protrusion 219 extending from strap 215 with magnet 217 inside).)

The patent's specification confirms that the protrusion and housing are structurally separate components in different locations. The detailed description states that "[t]he fastener protrusion is configured to engage within a cavity 307 created by a housing 305 [that] extends from surface 303," with the protrusion fitting "within housing, which in turn creates a means to secure the assembly to the body." (App. Tab 2 at col. 2, lns. 47–55.) "[T]he protrusion and the cavity have

21

the same geometric cylindrical shape." (*Id.* at col. 2, lns. 53–55.) The patentee thus described—and chose to claim—a discrete protrusion-and-housing arrangement, with the two components meeting one another along a defined fold line, and with each component carrying its own magnet.

In short, the '109 claims a two-piece fastener with one magnet per piece. Components and magnets are paired by location.

### B. The Accused Her Tactical Products Have a Single Flap Containing Both Magnets, with No Fastener Housing Extending from the Body.

Plaintiffs' own evidence describes the accused products in unambiguous terms. Specifically, Plaintiffs' Final Infringement Contentions say the holster works as follows: "The flap folds around the undergarment to keep the holster securely in place using the **2 magnets embedded into the flap**." (App. Tab 3 at p. 11 (quoting HerTactical_0831).) Likewise: "magnets disposed in the **thickness of the flap** and configured on either end to fold down and attach." (*Id.* (quoting HerTactical_0830).) Both magnets—both—sit "in the flap," "on either end."

Plaintiffs' annotated photographs of the accused products (App. Tab 3 at pp. 9–11) confirm the physical layout. Each accused product consists of a holster body and a folded flap. A magnet is integrated into each end of the flap. When the flap is folded over an undergarment, the two magnets in the flap engage one another to retain the holster in place. The body of the holster—the part that wraps around the gun—has no separate component "extending from an outer surface of [its] back side." There is no body-mounted housing; no body-mounted cavity; no second-magnet-in-body-side-housing. The flap, alone, holds both magnets.

That is the architecture, and Plaintiffs do not dispute it. They have always taken the position that the accused product has "2 magnets," and they have always pointed to the same flap-bound location—"embedded into the flap," "on either end"—for both. (*Id.*)

22

### C. <u>Literal Infringement of Claim 1 Is Therefore Impossible on Three Independent Grounds.</u>

Each claim limitation must be present in the accused device, literally or by equivalents. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id.* Here, three structural limitations of claim 1 are absent from the accused products, each independently dispositive.

*First*, the accused products lack a "fastener housing extending from an outer surface of the back side of the body." (App. Tab 2 at col. 3, lns. 26–28.) The body of each accused product is a one-piece pouch into which the gun is inserted; nothing extends from its back-side outer surface as a discrete housing structure. Plaintiffs' own demonstrative photographs do not show any such body-mounted housing because none exists. The flap, which Plaintiffs attempt to map to this limitation, does not "extend[] from" the body's back side—it extends from the *strap*, on the opposite side of the holster, and folds *over* the body.

*Second*, the accused products lack a "second magnet disposed within a thickness of the housing." (*Id.* at col. 4, lns. 6–7.) This limitation cannot be present where the housing itself is not present. And independently, both magnets in the accused product are disposed within the thickness of the same flap—not within the thickness of any body-mounted housing. (App. Tab 3 at p. 11.)

*Third*, the accused products do not satisfy the engagement limitation, which requires that "the elongated strap folds backwards and away from the upper opening to cause the fastener protrusion and the fastener housing to engage." (App. Tab 2 at col. 4, lns. 1–3.) In the accused products, when the flap folds, the two magnets engage *each other*—not a separate body-mounted

23

housing. The protrusion-housing engagement the claim requires is not present, because one of those two structures is missing.

Each of these three failures is independently fatal to literal infringement. *Bayer*, 212 F.3d at 1247.

### D. The Doctrine of Equivalents Cannot Salvage Plaintiffs' Theory Because It Would Vitiate the Claim's Structural Limitations.

In their Final Infringement Contentions, Plaintiffs anticipate the structural mismatch and resort to the doctrine of equivalents. They argue that "any perceived distinction between the fastener housing and protrusions of the respective flap/strap assemblies is not substantial." (App. Tab 3 at p. 9.) They support that argument by noting that the accused product has "magnets disposed in the thickness of the flap and configured on either end to fold down and attach," and that the magnets, like those in the patented holster, "engage with each other." (*Id.*) On Plaintiffs' theory, two magnets in one flap perform the same function as two magnets in two separate components, so the difference is immaterial.

Plaintiffs' theory fails as a matter of law for three independent reasons.

#### 1. *The all-elements rule.*

The doctrine of equivalents must be applied "to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine . . . is not allowed such broad play as to effectively eliminate [a claim] element in its entirety." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). Plaintiffs' theory does precisely what *Warner-Jenkinson* forbids: it sweeps the body-side "fastener housing extending from an outer surface of the back side of the body" out of claim 1 by deeming the strap-side flap to be its substantial equivalent. There is no separate body-side structure left to be equivalent *to* anything;

24

the limitation is read out of the claim. "[I]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016). That is this case.

### 2. Specific exclusion.

Even where the all-elements rule is not directly invoked, the doctrine of equivalents cannot reach subject matter that the claim language specifically excludes. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001) ("[T]he doctrine of equivalents does not extend . . . to a structure that is specifically excluded from the scope of the claims."); *see also Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997) ("[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure."). By specifying that the fastener housing must "extend[] from an outer surface of the back side of the body," and that the protrusion must "extend[] from a back surface of the elongated strap" (App. Tab 2 at col. 3, lns. 23–28), the patentee chose claim language that *locates* each component in a different place. A flap-borne magnet cannot be equivalent to a body-borne housing without erasing the words the patentee selected. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006) (claim construction may not "render[] the structural language . . . meaningless").

### 3. Plaintiffs' "any perceived distinction is not substantial" rationale Impermissibly merges separate claim limitations.

Plaintiffs' contentions assert that the same flap provides both the "fastener protrusion" of limitation B(ii) *and* the "fastener housing" of limitation B(iii). (App. Tab 3 at pp. 8–9.) That is not a doctrine-of-equivalents argument; it is a rewrite of the claim. Treating one component as filling

two structurally distinct claim limitations does not stretch equivalence—it deletes one limitation altogether. The doctrine of equivalents was never meant to be a tool for that result. *Warner-Jenkinson*, 520 U.S. at 29; *Akzo Nobel*, 811 F.3d at 1342.

For each of the foregoing reasons, the accused products do not infringe claim 1 of the '109 Patent, either literally or under the doctrine of equivalents.

**IV.    No Reasonable Ordinary Observer Familiar With the Prior Art Could Find the Accused Products Substantially the Same as Any Asserted Design Patent.**

Design-patent infringement is assessed under the ordinary-observer test, viewed in light of the prior art. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677–78 (Fed. Cir. 2008). A review of the '451, '731, '329, and '979 Design Patents relative to the accused Her Tactical products (the "Products") shows the inevitable and obvious absence of literal infringement. Significant differences between the asserted Design Patents and the Products are illustrated below. The accused Her Tactical products are functionally identical across SKUs, differing only in size and color—neither of which is relevant to the design patents being asserted. The visual comparisons that follow use one representative size and color, but the same arguments apply to all accused SKUs.

## A.  Design Patent D788,451 Compared to the Accused Products.

| D788,451 ('451) Drawings | Her Tactical (HT) Products | Clear Differences |
|---|---|---|
| FIG. 3 | | 1.  The profile of HT is of a different shape than '451.<br><br>2.  HT has an ID tag whereas '451 has no ID tag.<br><br>3.  The magnetic retention strap of '451 has a seam near the magnet whereas HT does not.<br><br>4.  The magnetic strap of '451 extends as a portion of the holster side material whereas the magnetic strap of HT is attached to the side of the holster material. |

27

| D788,451 ('451) Drawings | Her Tactical (HT) Products | Clear Differences |
|---|---|---|
|  FIG. 4 | | 5. The profile stitching and sewing is distinct whereas '451 has no such profile stitching/sewing. |
| FIG. 5 | | 6.  HT has a snap retention strap whereas '451 does not. |

| D788,451 ('451) Drawings | Her Tactical (HT) Products | Clear Differences |
|---|---|---|
| FIG. 6 | | |
| FIG. 7 | | 7. The gun opening of HT is of a different shape than the gun opening of '451. |
| FIG. 8 | | |



| D788,451 ('451) Drawings | Her Tactical (HT) Products | Clear Differences |
|---|---|---|
|  | | 8.  The magnetic flap of HT folds flat whereas '451 is substantially rounded. |

**B.  Design Patent D811,731 Compared to the Accused Products.**

| D811,731 ('731) Drawings | Her Tactical (HT) Products | Clear Differences |
|---|---|---|



FIG. 1

FIG. 2

1. The profile of HT is of a different shape than '731.

2. The profile stitching/sewing is distinct whereas '731 has no such profile stitching/sewing.

3. The magnetic retention strap of '731 has a seam near the magnet whereas HT does not.

4. The magnetic strap of '731 folds over an outer edge/profile of the holster whereas HT does not.

5. The magnetic strap of '731 is connected to an opposite side of the holster as compared to HT.

6. HT has an ID tag whereas '731 has no ID tag.



FIG. 3

FIG. 4

7.  The HT has a snap retention strap and '731 does not.

8.  The magnetic strap of '731 extends as a portion of the holster side material whereas the magnetic strap of HT is attached to the side of the holster material.

**C.     Design Patent D836,329 Compared to the Accused Products.**



| D836,329 ('329) Drawings | Her Tactical (HT) Products | Clear Differences |
|---|---|---|
| FIG. 1 | | 1.  The profile of HT is of a different shape than '329.<br><br>2. The magnetic retention strap of '329 has a seam near the magnet whereas HT does not.<br><br>3.  The magnetic strap of '329 folds over an outer edge/profile of the holster whereas HT does not. |
| FIG. 2 | | 4.  The magnetic strap of '329 is connected to an opposite side of the holster as compared to HT.<br><br>5.  HT has an ID tag whereas '329 has no ID tag. |



| | | 6. The HT has a snap retention strap and '329 does not. |
|---|---|---|
| FIG. 3 | | |
| FIG. 4 | | 7. The magnetic strap of '329 extends as a portion of the holster side material whereas the magnetic strap of HT is attached to the side of the holster material. |

### D.      Design Patent D841,979 Compared to the Accused Products.

| D841,979 ('979) Drawings | Her Tactical (HT) Products | Clear Differences |
|---|---|---|

| | | |
|---|---|---|
| FIG. 1 | | 1. The profile of HT is of a different shape than '979, with '979 have a separate distinct shape differing between the front and the back of the holster. |
| FIG. 2 | | 2. The magnetic strap of '979 folds over an outer edge/profile of the holster whereas HT does not.

3. The magnetic strap of '979 is connected to an opposite side of the holster as compared to HT.

4. HT has an ID tag whereas '979 has no ID tag.

5. The HT has a snap retention strap and '979 does not. |
| FIG. 3 | | 6. The magnetic strap of '979 extends as a portion of the holster side material whereas the magnetic strap of HT |





| | | is attached to the side of the holster material |
| | | 7. The HT includes cross-stitching whereas '979 does not |
| | | 8. The magnetic strap of HT is external and continuously connected, whereas the magnetic strap of '979 is not continuous with one part being integral to the holster while the other part is attached externally. |

FIG. 4

FIG. 5

## V. The Prior Art and Prosecution History Confirm the Narrow Scope of the Asserted Design Patents.

The prior art and prosecution history confirm that the asserted design space is narrow and that visual differences among similar holster designs matter. Three of the asserted Design Patents—the '731, '329, and '979 Patents—issued with the '451 Patent cited as prior art. (App. Tab 10 (face page of D811,731); App. Tab 11 (face page of D836,329); App. Tab 12 (face page

36

of D841,979).) The ordinary-observer analysis must account for that prior art context. *Egyptian Goddess*, 543 F.3d at 677–78 (Fed. Cir. 2008.) When the claimed design and accused design are compared in light of the prior art, differences that might otherwise appear minor can take on greater significance because the claimed design occupies a narrow field.

That is precisely the case here. Plaintiffs' own design-patent portfolio demonstrates that the PTO treated relatively modest visual differences among holster designs as sufficient to distinguish one design from another. The accused Her Tactical products are more visually distinct from each asserted design than the asserted designs are from each other. As shown in Section IV, the accused products have a different overall profile, an external magnetic flap attached differently from the claimed designs, a visible ID tag, a snap retention strap, different profile stitching, and different opening and strap geometry. Those differences are not isolated or trivial; they materially affect the overall visual impression of the accused products.

The following side-by-side comparison illustrates the point.

### A.    Side-by-Side Example.



| Asserted Patent '451 | Asserted Patent '731 | Asserted Patent '329 | Asserted Patent '979 | Her Tactical Product |
|---|---|---|---|---|

An ordinary observer familiar with the prior art would not be deceived into believing that the accused Her Tactical design is the same as any asserted design. All four asserted Design Patents show a magnetic strip that is integrated into or formed as part of the holster body design and folds down in a materially different manner. The accused Her Tactical products, by contrast, use an externally attached magnetic flap. The accused products also include a snap retention strap at the top of the holster, while the asserted designs do not. The accused products include an ID tag, visible profile stitching, and a different overall holster silhouette. These differences are apparent in the same visual features that dominate the overall appearance of the claimed designs.

Plaintiffs' infringement contentions do not create a triable issue. Plaintiffs assert that "an ordinary observer, familiar with prior art designs, without unusually careful effort, would be unable in a side-by-side comparison to easily distinguish the claimed design and any of the Accused Instrumentalities." (App. Tab 3 at 21.) But the side-by-side comparisons show the opposite. The relevant question is not whether the accused products share the general concept of a magnetic holster. Design-patent protection does not extend to that functional idea. The question is whether the accused products are substantially the same as the claimed ornamental designs in the eyes of an ordinary observer familiar with the prior art. *Egyptian Goddess*, 543 F.3d at 677–78. They are not.

This Court's post-*Egyptian Goddess* decision in *Arc'teryx Equipment, Inc. v. Westcomb Outerwear, Inc.*, 2008 WL 4838141, 89 U.S.P.Q.2d 1894 (D. Utah Nov. 4, 2008), confirms the proper approach. There, the Court found that differences between the accused products and the patented designs became more apparent when viewed in light of the prior art, and held that no

38

reasonable jury could find that an ordinary observer familiar with the prior art would be deceived into confusing the accused design with the claimed design. Id. The same result follows here.

Because the asserted Design Patents occupy a narrow field, and because the accused Her Tactical products create a materially different overall visual impression from each asserted design, no reasonable ordinary observer familiar with the prior art could find infringement. Summary judgment of non-infringement should therefore be granted on the '451, '731, '329, and '979 Design Patents.

**VI.    Summary Judgment Is Proper on the Trade Dress / Unfair Competition Claim.**

When a purported trade dress is one of product design, as opposed to product packaging, "secondary meaning is the only avenue available for proving distinctiveness . . . because a product's design . . . is not inherently distinctive." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000) ("[T]o the extent there are close cases, . . . courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning."). The District of Utah has accordingly observed that courts should "exercise[] particular 'caution' when extending protection to product designs," because the "potential for misuse of trade dress law is of particular concern in product design cases, as 'product design almost invariably serves purposes other than source identification.'" *Hammerton, Inc. v. Heisterman*, No. 2:20-cv-00806-TS, 2008 WL 2004327, at *6 (D. Utah May 9, 2008) (quoting *Wal-Mart*, 529 U.S. at 213).

**A.    Plaintiffs Cannot Establish Secondary Meaning or Non-Functionality.**

To prevail on product-design trade dress under § 1125(a), Plaintiffs must identify a protectable trade dress, prove it is nonfunctional, prove secondary meaning, and prove likely confusion. Product design is not inherently distinctive and requires secondary meaning. *Wal-Mart*,

529 U.S. at 212–16. Plaintiffs are ambitious at acquiring registered IP. Yet as held by the PTO, trade dress may be the worst fit of all IP categories for the holster.

It is particularly difficult to argue at the same time that a holster should be eligible for utility patents as having useful, novel features, while simultaneously arguing that the same holster contains non-useful features serving as source identifiers. As to Plaintiffs' two separate applications for trade dress protection, the PTO dispatched each with vigor.

As to the '181 Application, the PTO in its final rejection stated:

> As stated previously, a mark that consists of a three-dimensional configuration of a product or its packaging is functional, and thus unregistrable, when the evidence shows that the design provides identifiable utilitarian advantages to the user i.e., the product or container "has a particular shape because it works better in [that] shape."

(App. Tab 5 (Final Action, Nov. 7, 2022, Prosecution History of Trade Dress Application 90518181).)

Meanwhile, as to the '663 Application, the PTO explained:

> As seen from the attached patent, the use of a magnet embedded on/in the holster lends to the improved method of securing the firearm or other holstered weapon. The use of magnets on the present holster also creates a utilitarian advantage regarding the applied-for product. Therefore the applied-for product design is functional and registration must be refused pursuant to Section 2(e)(5) of the Trademark Act. A determination that an applied-for configuration mark is functional constitutes an absolute bar to registration on the Principal or Supplemental Registers, regardless of any evidence of acquired distinctiveness.

(App. Tab 5 (Office Action, Sept. 13, 2021, Prosecution History of Trade Dress Application 90520663).)

The PTO rejected Plaintiffs' requests for good reason: Plaintiffs' holster design is functional and does not identify a source. Plaintiffs' own description of the trade dress does not bolster their cause: "The overall visual impression created in the consumer's mind when viewing

40

the non-functional aspects of the Plaintiff's IWB magnetic retention gun holsters, and not from the utilitarian or useful aspects of the products, when considered together, is the Plaintiffs' trade dress." (Dkt. 74 ¶ 84.) That formulation is circular: it asserts trade dress in "non-functional aspects" without identifying any.

## B. **Even if Plaintiffs Were Entitled to Trade Dress Protection, the Accused Products Do Not Infringe.**

Even setting aside the threshold problems above, the accused Her Tactical products do not infringe any cognizable trade dress. The accused products are sold under a distinct "Her Tactical" name and brand, with their own distinct design features (including the ID tag, snap retention strap, profile stitching, and externally attached magnetic strap discussed in Section IV above). Plaintiffs offer no evidence of actual confusion. There is no likelihood-of-confusion case to be tried.

## CONCLUSION

For the reasons set forth above, Defendants Her Tactical LLC and E & R LLC d/b/a Her Tactical respectfully request that the Court grant summary judgment of non-infringement on Plaintiffs' claims of patent infringement (the '530 and '109 Utility Patents and the '451, '731, '329, and '979 Design Patents) and on Plaintiffs' trade dress / unfair competition claim under 15 U.S.C. § 1125(a), and enter judgment in E & R's favor.

DATED this 8th day of May 2026.

Respectfully submitted,

**KNH LLP**

*/s/ Chad S. Pehrson*
Chad S. Pehrson
Nathan Gardner
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

II hereby certify that on May 8, 2026, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF filing system, which will send notification of such filing to all counsel of record.

*/s/ Chad S. Pehrson*

