Chad S. Pehrson (Utah Bar No. 12622) cpehrson@knh.law
Nathan Gardner (Utah Bar No. 19537) ngardner@knh.law
**KNH LLP**
50 W. Broadway, 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS,<br><br>Plaintiffs,<br><br>v.<br><br>HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual;<br><br>Defendants. | **DEFENDANT VICKY ARLENE JOHNSTON'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:22-cv-00121-AMA-DBP<br><br>Judge Ann Marie McIff Allen<br><br>Magistrate Judge Dustin B. Pead |

Vicky Arlene Johnston is the sole member of both Her Tactical LLC and E & R LLC d/b/a Her Tactical (collectively "**Her Tactical**" or the "**Her Tactical Defendants**"). Both are small Utah limited liability companies through which she has, since 2021, designed and arranged for the manufacture of magnetic holsters specifically marketed for women. She is, simultaneously, a real estate agent. Her holster business is a side gig. The total revenue across nearly five years of selling is less than $85,000—a figure that is comfortably outpaced by the company's research,

1

manufacturing, and marketing expenses—not to mention the cost of defending this litigation. (App. Tab 17 at 89:20–23; *see* App. Tab 18 (Johnston Declaration).)

Plaintiffs have nonetheless named Ms. Johnston as a defendant in her individual capacity alongside her company, her husband, and her husband's family trust, on theories of direct, induced, and contributory patent infringement and trade dress / unfair competition liability, supplemented by an "alter-ego" theory that asks the Court to disregard E & R's corporate form. *See* Dkt. 74 ¶¶ 65–75. As addressed in separate motions,[1] Plaintiffs' underlying infringement and trade dress theories fail as a matter of law on the merits. But the issues regarding Ms. Johnston are independently dispositive. The law does not impute personal liability to the principal of a small LLC because that principal is also the sole employee, nor does it impute personal liability because a husband encourages a wife's entrepreneurship. The law does not impute personal liability because a single Venmo payment slipped through the side door of an otherwise corporate sales channel. And the law does not authorize Plaintiffs to recover from Ms. Johnston personally if the company has no underlying liability in the first place.

Ms. Johnston therefore moves for summary judgment in her favor on every claim asserted against her in her individual capacity. She incorporates by reference under DUCivR 7-1(a)(8) the substantive non-infringement and trade-dress showings in E & R's contemporaneously filed Motion for Summary Judgment.

---

[1] *See* Defendant E & R LLC d/b/a Her Tactical's Motion for Summary Judgment, filed contemporaneously herewith. Ms. Johnston incorporates that motion in its entirety pursuant to DUCivR 7-1(a)(8) and refers the Court to its showing on non-infringement of the Utility Patents and Design Patents and on the absence of a cognizable trade dress under 15 U.S.C. § 1125(a).

**INTRODUCTION AND RELIEF REQUESTED**

Defendant Vicky Arlene Johnston respectfully moves the Court for summary judgment in her favor on every claim asserted against her in her individual capacity in Plaintiffs' Second Amended Complaint (Dkt. 74). The claims comprise: (1) direct, induced, and contributory infringement of U.S. Patent Nos. 9,784,530 and 11,747,109 under 35 U.S.C. §§ 271(a), (b), and (c); (2) direct, induced, and contributory infringement of U.S. Design Patent Nos. D788,451, D811,731, D836,329, and D841,979 under the same provisions; and (3) trade dress / unfair competition under 15 U.S.C. § 1125(a), again with attendant secondary-liability theories. Plaintiffs further allege "alter-ego" liability against Ms. Johnston as the sole member of E & R LLC. (Dkt. 74 ¶¶ 65–75.) Each of those theories fails as a matter of law on this record, for any one of three independent and dispositive reasons.

*First*, because the accused Her Tactical products do not infringe any of Plaintiffs' asserted patents, do not violate any cognizable trade dress, and were sold under no actionable form of unfair competition—as established in the Her Tactical Defendants' contemporaneously filed Motion for Summary Judgment, which Ms. Johnston incorporates by reference under DUCivR 7-1(a)(8)—there is no underlying tort to which any theory of secondary or veil-piercing liability against Ms. Johnston can attach. *See, e.g., Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement[.]").

*Second*, even setting that absence aside, Plaintiffs cannot establish the elements of any claim against Ms. Johnston *personally* under § 271(a), (b), or (c), or for personal participation in trade dress infringement. The accused products were sold by E & R, not by Ms. Johnston in her

individual capacity; Ms. Johnston did not have the patent-specific knowledge and specific intent that induced and contributory infringement require; and Plaintiffs have offered no evidence that Ms. Johnston participated personally in any putatively infringing sale outside her capacity as E & R's sole employee.

*Third*, Plaintiffs' alter-ego theory fails as a matter of Utah law on undisputed facts. The limited set of allegations in Dkt. 74 ¶¶ 65–75—a shared residential address, a "family business" tagline, a single Venmo transaction, and the use of a vehicle—falls far short of establishing the two requirements for disregarding a Utah LLC's separate existence: "such unity of interest and ownership that the separate personalities" of the entity and individual no longer exist, and that observance of the entity form would "sanction a fraud, promote injustice, or an inequitable result would follow." *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶¶ 14, 25, 27–35, 284 P.3d 630; see also *Lodges at Bear Hollow Condo. Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 2015 UT App 6, ¶¶ 14–27, 344 P.3d 145; *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987); Utah Code § 48-3a-304.

Each of these three grounds is independently sufficient to dispose of every claim against Ms. Johnston in her individual capacity. The Court should grant summary judgment in Ms. Johnston's favor on all such claims and dismiss her from this case. *See* 35 U.S.C. § 271(a), (b), (c); 15 U.S.C. § 1125(a); Fed. R. Civ. P. 56(a).

## BACKGROUND

### A. Ms. Johnston and Her Tactical.

At the age of eight, Ms. Johnston was attacked by a stranger and dragged into the woods. Turning that experience into a calling, Ms. Johnston has spent her adult life advocating for

4

women's safety. In 2021, Ms. Johnston formed E & R LLC, a single-member Utah limited liability company, and began selling holsters under the brand name "Her Tactical," with a focus on empowering and fortifying women in self-defense and to provide effective, safe and comfortable concealed carry solutions for women. She believes that sometimes fashion and functionality prevent women from exercising their Second Amendment rights to protect themselves. Ms. Johnston is passionate about advocating for women to protect themselves and their families, in a responsible way.

Ms. Johnston's day job is a real estate agent. Women real estate agents have historically been targets, including because they often work alone at empty houses. Worried about this danger, Ms. Johnston attended firearms courses but was discouraged at the lack of holsters appropriate for women. Repeatedly, Ms. Johnston was told: just put it in your purse! But Ms. Johnston did not carry a purse when running an open house. For years, she failed to find suitable holsters that fit her style, comfort and safety needs. Eventually, she decided to take action: she researched and designed her own holsters that are comfortable, safe, lightweight and appropriate for a woman's wardrobe.

In five years of selling, Ms. Johnston's company Her Tactical reached grand total revenue of less than $85,000 selling magnetic holsters. On first glance, maybe that figure seems impressive for a side gig, but it is not a profit figure. In fact, the business is deep in the red, without even factoring in the significant expenses of this lawsuit.

**B.   Plaintiffs' Allegations Against Ms. Johnston in Her Individual Capacity.**

Plaintiffs' Second Amended Complaint asserts the same patent and trade-dress / unfair-competition claims against E & R, Ms. Johnston, and Mr. Cheal indistinguishably, plus an "alter-

ego" theory aimed at imposing E & R's liability personally on Ms. Johnston and Mr. Cheal. The relevant allegations against Ms. Johnston in her individual capacity, distilled, are these:

- *Direct infringement (§ 271(a)).* Plaintiffs allege that Ms. Johnston, individually, has "made, used, sold, offered for sale, and/or imported" the accused Her Tactical products. (Dkt. 74 ¶¶ 50, 55.)

- *Induced and contributory infringement (§§ 271(b), (c)).* Plaintiffs allege that Ms. Johnston "took action that was intended to cause and led to the literal or direct infringement of Plaintiffs' patents." (Dkt. 74 ¶ 60.)

- *Trade dress / unfair competition.* Plaintiffs allege that Ms. Johnston, individually, has engaged in unfair competition under 15 U.S.C. § 1125(a) by selling holsters that allegedly mimic Plaintiffs' putative trade dress. (Dkt. 74 ¶ 84.)

- *Alter-ego liability.* Plaintiffs allege that Ms. Johnston, Mr. Cheal, and the Cheal Family Trust are all "alter egos" of Her Tactical, citing: (a) Her Tactical's registered address being the same as Ms. Johnston's and Mr. Cheal's residence; (b) Her Tactical's "family business" tagline and joint photographs of Ms. Johnston and Mr. Cheal; (c) one Venmo transaction in which Ms. Johnston received payment in her personal account for a holster sold on behalf of Her Tactical; and (d) the use of a vehicle owned by the Cheal Family Trust to transport holsters on a small number of occasions. (Dkt. 74 ¶¶ 65–75.)

Plaintiffs do not identify any specific Her Tactical sale that was made by Ms. Johnston in her individual capacity rather than by the company. Plaintiffs do not identify any communication or document by which Ms. Johnston encouraged a third party to infringe any of Plaintiffs' asserted patents. And Plaintiffs do not identify, in their pleadings or in their Final Infringement Contentions,

any pre-issuance knowledge by Ms. Johnston of the '109 Patent—which issued on September 5, 2023, after this litigation was already pending. (App. Tab 3; App. Tab 17 at 98:9–11 ("So the first time you personally became aware of that patent was in September [2023]?" / "Yes. When I became aware.").)

### C. Ms. Johnston's Patent Due Diligence.

Long before the present litigation, Ms. Johnston took independent steps to ensure her holster designs did not infringe existing patents. She conducted her own searches in the U.S. Patent and Trademark Office's public databases. (App. Tab 17 at 29:7–30:5; App. Tab 18 (Johnston Decl.) ¶ 15.) When she received pre-suit demand correspondence from JM4 in August 2022 referencing the '530 Patent, Ms. Johnston promptly retained Michael R. Schramm of Schramm Patent Services, LLC, a qualified patent agent, who conducted a freedom-to-operate analysis. Mr. Schramm's analysis was direct: "non-infringement of '530 by the Product is so obvious" that he "forgo[ed] [a] full detailed analysis" and concluded that "the Product has less than three magnets, and therefore the Product does not literally practice claim 1 (or any claim) of '530." (App. Tab 4 at 1.) Mr. Schramm further opined that "the doctrine of equivalents would not apply here" because the patentee himself, Mr. Meyers, had amended the '530 claims during prosecution to add the three-magnet limitation in order to obtain patentability—foreclosing any later attempt to recapture two-magnet scope through equivalence. (App. Tab 4 at 1–3.) Mr. Schramm characterized JM4's threatened claim as "baseless" and noted that the appropriate remedy might include declaratory judgment with recovery of attorney's fees. (App. Tab 4 at 3; App. Tab 17 at 115:6–15, 144:7–11.) Based on the analysis, Ms. Johnston conveyed her non-infringement position to JM4. JM4 did not respond on its merits but instead filed this lawsuit. (App. Tab 18 (Johnston Decl.) ¶ 16.)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Ms. Johnston relies on, and incorporates by reference, the Statement of Undisputed Material Facts in the Her Tactical Defendants' contemporaneously filed Motion for Summary Judgment. The following additional undisputed facts are material to the issues presented in this motion.

1. Ms. Johnston is the sole member of both E & R LLC d/b/a HER TACTICAL and HER TACTICAL, LLC (collectively, "Her Tactical"). Both are single-member limited liability companies organized under the laws of Utah. (App. Tab 17 at 89:20–22; App. Tab 18 (Johnston Decl.) ¶ 2.)

2. Ms. Johnston is employed by Her Tactical. She does not engage in the holster business in her individual capacity. (App. Tab 17 at 89:23–25 ("I don't do things personally for the business. I am employed by my business, by E & R."); App. Tab 18 (Johnston Decl.) ¶¶ 7, 19.)

3. Her Tactical maintains a separate business checking account into which all sales revenue is deposited and out of which all business expenses are paid. (App. Tab 17 at 98:24–99:12 ("To my checking account with the business"; "So there is a business checking account that receives all payments?" / "Uh-huh"; "All expenses, do they come out of that account as well?" / "Correct"); App. Tab 18 (Johnston Decl.) ¶ 11.)

4. Her Tactical maintains a separate PayPal account, which is also tied to the company's business checking account, through which most online customer payments are received. (App. Tab 17 at 99:1–3; App. Tab 18 (Johnston Decl.) ¶ 11.)

8

5.  Ms. Johnston does not commingle Her Tactical funds with her personal funds. (App. Tab 17 at 99:13–17 ("there is no commingling between your account and these expenses—" / "I'm extremely careful with budgeting. ... And finances."); App. Tab 18 (Johnston Decl.) ¶ 11.)

6.  On a single occasion, a customer (Eleace Pierce) requested to pay for a holster via Venmo at an in-person meeting, and Ms. Johnston received the payment through her personal Venmo account but transferred those funds into Her Tactical's business checking account so that the transaction would be reflected in the company's accounting system. (App. Tab 17 at 100:1–5; App. Tab 18 (Johnston Decl.) ¶ 12.) That single transaction is the only instance in which any sale was processed through any account other than Her Tactical's. (App. Tab 18 (Johnston Decl.) ¶ 12.)

7.  Mr. Blake Cheal is not an officer, member, manager, employee, or agent of Her Tactical. (App. Tab 17 at 93:17–23 (Cheal "doesn't share that purpose. He just supports me"; "he's just a cheerleader for me"); App. Tab 18 (Johnston Decl.) ¶ 8.) Mr. Cheal does not direct Her Tactical's decisions and does not run the business. (App. Tab 17 at 93:21–23 ("There's no way he could operate my business."); App. Tab 18 (Johnston Decl.) ¶ 8.)

8.  Ms. Johnston's reference to Her Tactical as a "family-owned business" in marketing materials reflected the support of her family for her work; it did not reflect any ownership, employment, or financial interest by any family member, including Mr. Cheal. (App. Tab 17 at 147:13–17 ("it's a family-owned business, meaning it's my family that have helped and supporting me. But it's not—they don't run the business. They don't have ownership.

They don't—they are not an employee. They have no financial gain."); App. Tab 18 (Johnston Decl.) ¶ 9.)

9. On a small number of occasions, a vehicle owned by The Blake and Tanya Cheal Family Living Trust was used for incidental transportation of Her Tactical holsters for shipment or delivery. The Trust has never owned any interest in Her Tactical, received compensation or profit distributions from Her Tactical, or had any role in managing or operating Her Tactical. The vehicle was not held out as a company asset and was not used as a regular operational asset of Her Tactical. (App. Tab 18 (Johnston Decl.) ¶ 13.)

10. Ms. Johnston conducted her own pre-launch patent searches via the U.S. Patent and Trademark Office's public databases. (App. Tab 17 at 29:7–30:5; App. Tab 18 (Johnston Decl.) ¶ 15.)

11. Upon receiving pre-suit correspondence from JM4 in August 2022 referencing the '530 Patent, Ms. Johnston promptly retained Michael R. Schramm of Schramm Patent Services, LLC, a qualified patent agent, who conducted a freedom-to-operate analysis concluding (i) that the accused Her Tactical products do not literally infringe any claim of the '530 Patent because the products contain fewer than three magnets, and (ii) that the doctrine of equivalents "would not apply here" because the patentee's own narrowing amendment of the '530 claims during prosecution forecloses recapture of two-magnet scope. (App. Tab 4 at 1–3 (Schramm FTO Analysis, Aug. 22, 2022); App. Tab 17 at 115:6–15; App. Tab 18 (Johnston Decl.) ¶ 16.)

12. Based on the Schramm FTO Analysis, Ms. Johnston conveyed her non-infringement position to JM4 prior to suit. JM4 did not substantively respond and instead filed the present action. (App. Tab 18 (Johnston Decl.) ¶ 16.)

13. The '109 Patent issued on September 5, 2023, after this litigation was already pending. Ms. Johnston had no knowledge of the '109 Patent prior to its issuance. (App. Tab 17 at 98:9–11 ("So the first time you personally became aware of that patent was in September [2023]?" / "Yes. When I became aware."); App. Tab 18 (Johnston Decl.) ¶ 17.)

14. Plaintiffs' Final Infringement Contentions do not identify any sale of an accused product made by Ms. Johnston in her individual capacity (as opposed to a sale made by E & R, of which Ms. Johnston is the sole employee). (App. Tab 3; App. Tab 18 (Johnston Decl.) ¶ 19.)

15. On June 27, 2025, Defendants—including Ms. Johnston—served Final Non-Infringement Contentions under LPR 3.1(b) and 2.4(c)–(e), formally setting forth the structural and prosecution-history bases for non-infringement that were known to Ms. Johnston throughout the relevant period. (App. Tab 20.)

## **ARGUMENT**

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court has already construed the asserted utility-patent claims at plain and ordinary meaning. (Dkt. 144 (App. Tab 16).) Her Tactical's contemporaneously filed motion shows that the accused products do not infringe any of Plaintiffs' asserted patents and

that Plaintiffs cannot establish a cognizable trade dress. Ms. Johnston incorporates that showing under DUCivR 7-1(a)(8) and adds, below, defenses specific to her individual capacity.

## I.     Where the Her Tactical Defendants Are Entitled to Summary Judgment of Non-Infringement, No Theory of Personal Liability Against Ms. Johnston Survives.

Every theory of liability Plaintiffs assert against Ms. Johnston in her individual capacity—direct, induced, contributory, trade-dress, and alter-ego—depends, at the threshold, on the existence of an underlying tort. As the Federal Circuit has held: "indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement[.]" *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[L]iability for inducement must be predicated on direct infringement."); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341–42 (1961) (contributory infringement requires direct infringement). The same logic governs alter-ego liability: "Alter ego theory is not an independent claim for relief; rather, it is a theory of liability." *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 6 n.1, 284 P.3d 630. If Her Tactical has no liability, there is nothing to remedy, and therefore, no liability to transmit to Ms. Johnston. The same is true for personal participation in a corporation's trade dress infringement: where the corporation has no underlying liability, no individual is personally liable for participating in the corporation's lawful conduct. *Cf. Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994).

The Her Tactical Defendants' Motion for Summary Judgment, incorporated here under DUCivR 7-1(a)(8), establishes that the accused Her Tactical products do not infringe any claim of the '530 or '109 Patents, do not infringe any of the asserted Design Patents, and do not violate any cognizable trade dress under § 1125(a). For the reasons stated in that motion—and adopted here

12

in full—there is no underlying patent or trade dress infringement to which any theory of personal liability against Ms. Johnston can attach. That alone disposes of every claim against her, and the Court need not reach the additional grounds developed in Sections II and III below.

That conclusion is reinforced by what Plaintiffs themselves were on notice of before they filed this lawsuit. In August 2022, Ms. Johnston's pre-suit patent agent, Mr. Schramm, conducted a freedom-to-operate analysis and informed JM4 that the accused products avoid the '530 Patent both literally (because the accused products contain fewer than three magnets) and under the doctrine of equivalents (because the patentee's own narrowing claim amendment during prosecution forecloses recapture of two-magnet scope). (App. Tab 4 at 1–3.) Mr. Schramm characterized JM4's threatened claim as "baseless." (*Id.* at 3.) JM4 received that analysis and chose to file suit anyway. Mr. Schramm further opined that the doctrine of equivalents would not apply because the '530 prosecution history shows that the patentee narrowed the claims to require a three-magnet configuration, and *Festo* prevents a patentee from recapturing through equivalence claim scope surrendered to obtain the patent. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733–34, 740–41 (2002). The non-existence of an underlying tort against E & R is not, in other words, a litigation construct—it was the considered conclusion of qualified pre-suit counsel.

## II.     Even if There Were Underlying Infringement, Plaintiffs Cannot Establish Direct, Induced, or Contributory Infringement by Ms. Johnston Personally.

### A.   No Direct Infringement by Ms. Johnston Personally Under § 271(a).

Direct patent infringement under 35 U.S.C. § 271(a) requires that the defendant "make[], use[], offer[] to sell, or sell[] [a] patented invention." To impose personal liability on a corporate principal under § 271(a), the plaintiff must show that the principal performed an infringing act in

the principal's *personal* capacity—not merely that the principal authorized acts performed by the corporation. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552–53 (Fed. Cir. 1990) (for corporate officers to be personally liable for corporate infringement under § 271(a), "there must be evidence to justify piercing the corporate veil"); *cf. Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1411–12 (Fed. Cir. 1996) (explaining that although "[i]n general, a corporate officer is personally liable for his tortious acts," personal liability for corporate patent infringement depends on the nature and culpability of the conduct).

Plaintiffs' Final Infringement Contentions identify accused sales by E & R, not by Ms. Johnston in her individual capacity. (App. Tab 3.) And Ms. Johnston's deposition testimony establishes the same: she does not engage in the holster business personally. (App. Tab 17 at 89:23–25 ("I don't do things personally for the business. I am employed by my business, by E & R."); SUMF ¶ 2.) Her sworn declaration confirms it: "[E]very sale of a Her Tactical product (with the exception of the single Venmo transaction described in paragraph 12 above) has been a sale by E & R, processed through E & R's business accounts. I have never sold any Her Tactical product in my personal capacity, as a personal merchant, outside of my employment with E & R." (App. Tab 18 (Johnston Decl.) ¶ 19.)

Plaintiffs have presented no evidence to the contrary. They identify a single Venmo transaction (the Eleace Pierce sale) (Dkt. 74 ¶ 72), but Ms. Johnston's testimony makes clear that even that transaction was conducted on E & R's behalf and the funds transferred into E & R's business accounting system. (App. Tab 17 at 100:1–20; SUMF ¶ 6.) That single, accounting-routed transaction is not an act of personal direct infringement; at most, it is an isolated record-keeping

irregularity that does not show Ms. Johnston "made, used, offered to sell, or sold" anything in her individual capacity within the meaning of § 271(a).

Without evidence that Ms. Johnston personally—as opposed to E & R—made, used, sold, or offered for sale any accused product, Plaintiffs cannot meet their burden on direct infringement. *See Manville Sales*, 917 F.2d at 552. Summary judgment in favor of Ms. Johnston is appropriate.

**B. No Induced Infringement Under § 271(b).**

Induced infringement under 35 U.S.C. § 271(b) requires that the accused inducer "(1) knew of the patent, (2) knowingly induced the infringing acts, and (3) possessed a specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304–06 (Fed. Cir. 2006) (en banc in relevant part). Inducement requires knowledge that the induced acts constitute patent infringement; that knowledge may be shown by actual knowledge or willful blindness, but not by mere negligence, recklessness, or deliberate indifference to a known risk. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–71 (2011); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). And "evidence of active steps . . . taken to encourage direct infringement" is required; mere knowledge of, or participation in, a corporation's general business is not enough. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005).

Plaintiffs cannot meet any of these elements as to Ms. Johnston personally.

### 1. No pre-issuance knowledge of the '109 Patent.

As an absolute bar to induced infringement of the '109 Patent, the patent did not issue until September 5, 2023—after this lawsuit was already pending. (App. Tab 2; SUMF ¶ 13.) Inducement liability depends on the accused inducer's knowledge or willful blindness during the period of the

alleged inducing conduct. *See Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338, 1349–50 (Fed. Cir. 2015) (en banc). It is undisputed that Ms. Johnston had no knowledge of the '109 Patent before September 2023. (App. Tab 17 at 98:9–11; SUMF ¶ 13.) Plaintiffs therefore cannot show induced infringement of the '109 Patent for any period predating September 5, 2023.

And as to any acts post-issuance, Plaintiffs have shown no evidence that Ms. Johnston— upon learning of the '109 Patent—did anything new to encourage infringing acts. The Schramm FTO analysis (App. Tab 4), procured well before the '109 issued, does not bear on post-issuance conduct, and Plaintiffs offer no other proof.

### 2. No specific intent to encourage infringement.

Even as to the '530 Patent and the asserted Design Patents, of which Ms. Johnston was aware before suit, Plaintiffs cannot establish the specific-intent element. To the contrary, the undisputed record shows that Ms. Johnston actively sought to *avoid* infringement: she conducted independent USPTO patent searches before launch (SUMF ¶ 10), and immediately upon receiving JM4's August 2022 demand correspondence, she retained patent counsel and obtained a formal non-infringement opinion. (SUMF ¶¶ 11–12.)

The Schramm FTO opinion goes well beyond a baseline non-infringement conclusion: it advised Ms. Johnston that the accused products avoid the '530 Patent both literally (because the products contain fewer than three magnets) and under the doctrine of equivalents (because the patentee's own narrowing amendment forecloses two-magnet scope). (App. Tab 4 at 1–3.) Mr. Schramm characterized JM4's threatened claim as "baseless." (*Id.* at 3.) And Ms. Johnston has confirmed under oath that she "have[s] never intended to encourage any third party to infringe any of Plaintiffs' asserted patents or any other patent" and "have[s] never directed any third party to

16

use, sell, manufacture, or import any product for the purpose of infringing any patent." (App. Tab 18 (Johnston Decl.) ¶ 18.)

A defendant who, having been put on notice of a patent, retains qualified counsel and obtains a written opinion that infringement is foreclosed on multiple independent grounds does not thereby form the specific intent to encourage infringement—the opposite is true. *Cf. Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992) ("[T]o willfully infringe a patent, the patent must exist and one must have knowledge of it. A 'good faith' belief of non-infringement . . . is relevant to a determination of willfulness.").

### 3. No "active steps to encourage" infringement.

Plaintiffs identify no specific communication or act by Ms. Johnston directed at any third party that constitutes the "active step" required to induce infringement. *Grokster*, 545 U.S. at 936-37. Their inducement allegations are conclusory: that Ms. Johnston "took action that was intended to cause and led to the literal or direct infringement of Plaintiffs' patents." (Dkt. 74 ¶ 60.) Conclusory allegations of intent cannot survive summary judgment. *DSU Med.*, 471 F.3d at 1306. Summary judgment of no induced infringement should be entered as to all asserted patents.

### C. No Contributory Infringement Under § 271(c).

To the extent Plaintiffs continue to press a contributory-infringement theory under 35 U.S.C. § 271(c), it fares no better. Section 271(c) requires the sale, offer for sale, or import of "a component of a patented machine . . . or a material or apparatus for use in practicing a patented process, constituting a material part of the invention," where the defendant has knowledge that the component is "especially made or especially adapted for use in [the patented] infringement" and the component is "not a staple article . . . of commerce suitable for substantial noninfringing use."

17

35 U.S.C. § 271(c). Plaintiffs identify no separate component-supply theory under § 271(c). Their theory is that Her Tactical sold completed accused holsters. That is a direct-infringement theory against the company, not a contributory-infringement theory against Ms. Johnston personally.

And in any event, contributory infringement, like induced infringement, requires that the defendant have actual knowledge of the patent at the time of the conduct. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964); *Global-Tech*, 563 U.S. at 766. For the same reasons set forth in Section II.B above, Ms. Johnston had no pre-issuance knowledge of the '109 Patent and no specific intent to enable infringement of any patent of which she was aware. Summary judgment of no contributory infringement is appropriate.

### D. No Personal Trade-Dress / Unfair-Competition Liability.

Personal liability of a corporate principal for the corporation's alleged trade-dress infringement requires more than the principal's general operation of the company, it requires that the principal knowingly "directs, controls, ratifies, participates in, or is the moving force behind the infringing activity." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994). "The individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Omega, S.A. v. Giftland Co.*, No. 03-5808, 2005 WL 1925791, at *4 (D.N.J. Aug. 11, 2005) (quoting *Chanel, Inc. v. Italian Activewear of Fl., Inc.*, 931 F.2d 1472, 1478 n.8 (11th Cir. 1991).

Even if Plaintiffs could establish a valid and protectable trade dress—which, as E & R's motion demonstrates, they cannot—there is no record evidence that Ms. Johnston personally

directed any conduct that knowingly infringed any cognizable trade dress. To the contrary, Ms. Johnston operated openly under her own "Her Tactical" brand, never intended for the Her Tactical products to be confused with any of Plaintiffs' products, and obtained a freedom-to-operate analysis before commercial sales. (SUMF ¶¶ 10–11; App. Tab 18 (Johnston Decl.) ¶ 20 ("I have always operated Her Tactical openly under its own brand name. I have never intended for Her Tactical's products to be confused with any of Plaintiffs' products and have not been informed of any actual confusion among customers.").) Personal participation in trade-dress infringement is therefore not made out, and summary judgment should be granted.

### III.    Plaintiffs' Alter-Ego Theory Fails as a Matter of Utah Law.

Plaintiffs' final theory of personal liability—that the Court should disregard Her Tactical's separate corporate existence and impose its liability personally on Ms. Johnston—fails on undisputed facts. Under Utah law, alter-ego liability requires a plaintiff to satisfy a *two-prong* test: (1) "such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and (2) that "observance of the corporate form would sanction a fraud, promote injustice, or result in an inequity." *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012); *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987). Both elements must be satisfied to pierce the corporate veil. *Jones & Trevor*, 284 P.3d at 635. Moreover, courts "will only reluctantly and cautiously pierce the corporate veil," and the inquiry is highly fact-dependent. *Jones & Trevor*, 2012 UT 39, ¶ 15, 284 P.3d 630.

Plaintiffs cannot satisfy either prong of the *Jones & Trevor* test, much less both, on the undisputed record.

### A. <u>Prong One: The Required "Unity of Interest" Is Absent.</u>

The "unity of interest" prong asks whether the LLC and its principal are so commingled in operation, finance, and decision-making that they have, in substance, become indistinguishable. *Colman*, 743 P.2d at 786. Utah courts assess this prong by reference to a nonexclusive list of factors, including: (1) undercapitalization of a one-person corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant owner; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; and (7) use of the entity as a facade for the operations of the dominant owner. *Jones & Trevor*, 2012 UT 39, ¶¶ 16–18, 284 P.3d 630; *Colman*, 743 P.2d at 786. The undisputed record cuts against Plaintiffs on each.

#### 1. *Separate accounts and no commingling of funds.*

E & R maintains a separate business checking account into which all sales revenue is deposited and out of which all business expenses are paid. (SUMF ¶ 3.) E & R also maintains a separate PayPal account tied to that business checking account. (SUMF ¶ 4.) Ms. Johnston testified, unequivocally, that she does not commingle E & R's funds with her personal funds: "I'm extremely careful with budgeting. ... And finances." (App. Tab 17 at 99:13–17; SUMF ¶ 5.) The single Venmo transaction Plaintiffs invoke (Dkt. 74 ¶ 72) was an isolated customer convenience—the customer asked to pay through Venmo at an in-person meeting—and the funds were promptly transferred into E & R's business account so that the transaction would be reflected in E & R's accounting system. (App. Tab 17 at 100:1–20; SUMF ¶ 6.) That single, accounting-routed transaction does not establish the systemic commingling that Utah law requires for the unity-of-

20

interest prong. *Cf. Colman*, 743 P.2d at 786 (commingling factor concerns systematic indifference to corporate form, not isolated transactions).

### 2. Corporate formalities observed.

Her Tactical was duly organized as a Utah LLC and Ms. Johnston has maintained its formal existence since 2021. (App. Tab 17 at 122:19–25, 123:1–9 (E & R formation documents); SUMF ¶ 1.) She files Her Tactical's annual reports and tax filings, maintains its corporate books, and operates the business under its registered name and trademarks. (App. Tab 18 (Johnston Decl.) ¶ 14.) Plaintiffs identify no instance in which Ms. Johnston has held Her Tactical out as anything other than a separate legal entity, executed contracts in her personal name on Her Tactical's behalf, or otherwise disregarded the corporate form.

Furthermore, because E & R is a Utah LLC, Utah Code § 48-3a-304(2) independently confirms that any alleged failure to observe LLC formalities is not, by itself, a ground for imposing company liability on a member or manager. Even if Plaintiffs could show that Her Tactical failed to observe corporate formalities, that showing falls short of what is needed to pierce the corporate veil.

### 3. The "shared address" allegation is irrelevant to alter-ego analysis.

Plaintiffs' lead alter-ego allegation is that E & R's registered address is the same as Ms. Johnston's and Mr. Cheal's residence. (Dkt. 74 ¶¶ 3–5.) That is true, and it has an unremarkable explanation: Ms. Johnston performs E & R's administrative work from her home, which is why E & R's registered office address is her residential address. (App. Tab 18 (Johnston Decl.) ¶ 10.) E & R does not pay personal household expenses, and Ms. Johnston keeps E & R's finances, books, records, and business activities separate from her personal affairs. (*Id.*) Innumerable single-

21

member LLCs are properly registered to their members' residential addresses, and Utah law does not treat such registration—standing alone or in combination with the other thin allegations Plaintiffs muster—as a basis for piercing the corporate veil. *Cf. Colman*, 743 P.2d at 786 (factors must show *substantive* unity of operation, not merely formal address overlap).

### 4. The "family business" tagline does not establish unity of interest.

Plaintiffs cite E & R's use of the phrase "family-owned business" in marketing materials and the company's use of plural pronouns ("we," "us," "our") and group taglines ("HerNation Family," "Her Family") as evidence that Mr. Cheal is a co-owner of E & R. (Dkt. 74 ¶¶ 56, 70–71.) Plaintiffs further allege that "Johnston has credited Cheal as a business partner." (Dkt. 74 ¶ 68.) Ms. Johnston has explained both points under oath: "it's a family-owned business, meaning it's my family that have helped and supporting me. But it's not—they don't run the business. They don't have ownership. They don't—they are not an employee. They have no financial gain." (App. Tab 17 at 147:13–17; SUMF ¶ 8.) She has further testified that Mr. Cheal is, in operational fact, "just a cheerleader for me" and "there's no way he could operate my business." (App. Tab 17 at 93:19–23; SUMF ¶ 7.) Marketing language describing the founder's family support—and casual references to a spouse's emotional or moral encouragement—do not transform an LLC into a different business. Utah law treats the unity-of-interest prong as a question of substantive operation, not the words a small business uses on its website. *See Colman*, 743 P.2d at 786. Plaintiffs offer no contrary evidence of Mr. Cheal's actual ownership, employment, or compensation. (SUMF ¶ 8; App. Tab 18 (Johnston Decl.) ¶¶ 8–9.)

### 5. The vehicle and incidental Venmo allegations do not move the needle.

The remaining factual allegations supporting Plaintiffs' alter-ego theory—that one or more

22

Defendants transported holsters using a vehicle owned by the Cheal Family Trust (Dkt. 74 ¶¶ 73–74), and the single Venmo transaction by which Ms. Johnston received a customer payment in her personal account before transferring those funds to E & R (Dkt. 74 ¶ 72; SUMF ¶ 6)—are at most incidental and at most a handful of occurrences over a multi-year period.[2] (SUMF ¶¶ 6, 9.) Critically, the vehicle was not held out as an E & R asset and was not used as a regular operational asset of E & R; the Trust itself has never owned any interest in E & R, received compensation or distributions from E & R, or had any role in managing or operating E & R. (SUMF ¶ 9; App. Tab 18 (Johnston Decl.) ¶ 13.) *Jones & Trevor* requires evidence that the corporate form has been so systematically disregarded that it has lost its separate existence, 284 P.3d at 635. *Colman* requires evidence that the entity is, in fact, "the alter ego of one or a few individuals." 743 P.2d at 786. A "few car trips and one Venmo payment" record is not such evidence.

**B. <u>Prong Two: Plaintiffs Cannot Show That Upholding the Corporate Form Would Sanction a Fraud or Result in Inequity.</u>**

Even if Plaintiffs could establish unity of interest, they bear an independent burden on the second prong: that "observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Jones & Trevor*, 284 P.3d at 635. Utah law treats this prong as substantively demanding. A mere disagreement with the result of the corporate form is not enough.

There is no fraud, injustice, or inequity here. Ms. Johnston started E & R for a legitimate business purpose—to design and sell holsters appropriate for women—and has operated the

---

[2] Plaintiffs separately allege at Dkt. 74 ¶ 73 that Mr. Cheal received payment via Ms. Johnston's personal account on at least one occasion. That allegation is addressed in Mr. Cheal's contemporaneously filed Motion for Summary Judgment.

business openly, with separate accounts, separate books, and separate decision-making, since 2021. (SUMF ¶¶ 1–5.) She conducted independent patent searches, retained qualified patent counsel upon receiving JM4's pre-suit demand, and obtained a formal non-infringement opinion. (SUMF ¶¶ 10–12.) Plaintiffs do not contend that E & R was undercapitalized to render Plaintiffs unable to recover or that the corporate form was created or used to evade any obligation.

This is not a case of corporate-form abuse. It is a case in which Plaintiffs sued a single-member LLC and now seek to expand the case beyond its corporate target by invoking veil-piercing as a tactical convenience. Utah law forecloses that expansion.

Because Plaintiffs cannot satisfy either prong of the *Jones & Trevor* / *Colman* test, the alter-ego theory fails as a matter of law and summary judgment is appropriate.

## CONCLUSION

For the reasons set forth above, the Court should grant summary judgment in Ms. Johnston's favor on every claim asserted against her in her individual capacity in this action.

DATED this 8th day of May 2026.

<div style="margin-left:40%">

Respectfully submitted,

**KNH LLP**

*/s/ Chad S. Pehrson*
Chad S. Pehrson
Nathan Gardner

*Attorneys for Defendants*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2026, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF filing system, which will send notification of such filing to all counsel of record.


*/s/Chad S. Pehrson*