Chad S. Pehrson (Utah Bar No. 12622) cpehrson@knh.law
Nathan Gardner (Utah Bar No. 19537) ngardner@knh.law
**KNH LLP**
50 W. Broadway, 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

<div style="border:1px solid black;padding:10px;text-align:center">

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

</div>

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS,<br><br>       Plaintiffs,<br><br>v.<br><br>HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual;<br><br>       Defendants. | **DEFENDANT BLAKE CHEAL'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:22-cv-00121-AMA-DBP<br><br>Judge Ann Marie McIff Allen<br><br>Magistrate Judge Dustin B. Pead |

Blake Cheal has one connection to this case: since August 2020, he has been married to Vicky Arlene Johnston, the sole member of Her Tactical LLC and E&R LLC d/b/a Her Tactical (collectively "**Her Tactical**"). Mr. Cheal is not an officer, member, manager, employee, or agent of Her Tactical. He has never been paid by Her Tactical, and he has no operational role in the holster business. He has separately been named in his capacity as settlor and trustee of The Blake and Tanya Cheal Family Living Trust (the "**Trust**"), whose only alleged contact with Her Tactical is the occasional use of a Trust-owned vehicle to transport holsters. (App. Tab 19 (Cheal Decl.) ¶¶

1

1–6, 12–16.) Plaintiffs nonetheless allege that Mr. Cheal personally—and the Trust—are liable for direct, induced, and contributory patent infringement, for trade-dress / unfair competition, and as alter egos of Her Tactical. (Dkt. 74 ¶¶ 50, 55, 60, 65–75, 84.) As addressed in separate motions,[1] Plaintiffs' underlying infringement and trade-dress theories fail on the merits. But the issues regarding Mr. Cheal and the Trust are independently dispositive: the law does not impose derivative liability on a spouse merely because the other spouse owns and operates an LLC, and it does not extend alter-ego liability to a family trust because a vehicle it owns occasionally delivered holsters.

Mr. Cheal therefore moves for summary judgment in his favor on every claim asserted against him in his individual capacity and as settlor and trustee of the Trust. He incorporates by reference under DUCivR 7-1(a)(8) the substantive non-infringement and trade-dress showings in Her Tactical's contemporaneously filed Motion for Summary Judgment.

## INTRODUCTION AND RELIEF REQUESTED

Defendant Blake Cheal respectfully moves the Court for summary judgment in his favor on every claim asserted against him in his individual capacity and as settlor and trustee of The Blake and Tanya Cheal Family Living Trust in Plaintiffs' Second Amended Complaint (Dkt. 74). Each claim fails on this record for any one of three independent and dispositive reasons.

*First*, because the accused Her Tactical products do not infringe Plaintiffs' asserted patents

---

[1] *See* Defendants Her Tactical LLC and E&R LLC d/b/a Her Tactical (collectively "Her Tactical")'s Motion for Summary Judgment, and Defendant Vicky Arlene Johnston's Motion for Summary Judgment, both filed contemporaneously herewith. Mr. Cheal incorporates Her Tactical's motion in its entirety pursuant to DUCivR 7-1(a)(8) and refers the Court to its showing on non-infringement of the Utility Patents and Design Patents and on the absence of a cognizable trade dress under 15 U.S.C. § 1125(a).

and do not violate any cognizable trade dress—as established in Her Tactical's contemporaneously filed motion, incorporated under DUCivR 7-1(a)(8)—there is no underlying tort to which any theory of secondary or veil-piercing liability against Mr. Cheal or the Trust can attach. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).

**Second**, Plaintiffs cannot establish any element of personal infringement or unfair-competition liability as to Mr. Cheal: he has no role in Her Tactical, has never sold a holster, never advertised a holster, and had no pre-suit knowledge of any of Plaintiffs' patents.

**Third**, Plaintiffs' alter-ego theories—both as to Mr. Cheal personally and as to the Trust—fail under Utah law on undisputed facts. *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012); *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987). The Court should grant summary judgment in Mr. Cheal's favor and dismiss him—and the Trust—from this case.

## BACKGROUND

### A. Mr. Cheal Has No Operational Role in Her Tactical.

Mr. Cheal married Ms. Johnston in August 2020. (App. Tab 19 (Cheal Decl.) ¶ 1.) Ms. Johnston is the sole member, principal, and only employee of Her Tactical LLC and E&R LLC, two small Utah limited liability companies through which Ms. Johnston has sold holsters since 2021. (App. Tab 17 at 89:20–22; App. Tab 18 (Johnston Decl.) ¶ 5.) Mr. Cheal is not, and has never been, a member, manager, officer, employee, or agent of Her Tactical. He has no equity in Her Tactical and he has never received a salary, distribution, or other compensation from the business. (App. Tab 19 (Cheal Decl.) ¶¶ 2–4; App. Tab 18 (Johnston Decl.) ¶¶ 8–9; App. Tab 17 at 93:17–23.) He does not direct Her Tactical's decisions, design its products, contract with manufacturers, or appear on its public-facing accounts in any operational capacity. (App. Tab 19

(Cheal Decl.) ¶¶ 5–7.) Ms. Johnston has confirmed under oath that her husband "doesn't share that purpose" and "just supports me," that he is "just a cheerleader for me," and that "there's no way he could operate my business." (App. Tab 17 at 93:17–23.)

Through nearly five years of operation, the holster business has reached cumulative revenue of less than $85,000. Mr. Cheal has not received any of that revenue. (App. Tab 19 (Cheal Decl.) ¶ 4.)

### B.  Plaintiffs' Allegations Against Mr. Cheal.

Plaintiffs' Second Amended Complaint asserts the same patent and trade-dress / unfair-competition claims against Mr. Cheal personally as against Her Tactical and Ms. Johnston (Dkt. 74 ¶¶ 50, 55, 60, 84), plus a separate "alter-ego" theory aimed at imposing Her Tactical's liability on Mr. Cheal personally and on the Trust (*id.* ¶¶ 65–75). The factual basis for the alter-ego theory is thin.

Plaintiffs cite (a) the shared residential address of Mr. Cheal, Ms. Johnston, and Her Tactical (¶¶ 3–5); (b) Her Tactical's "family business" tagline, joint photographs, and plural-pronoun marketing (¶¶ 56, 70–71); (c) Ms. Johnston's alleged characterization of Mr. Cheal as a "business partner" (¶ 68); (d) Mr. Cheal's status as settlor and trustee of the Trust (¶ 69); (e) one alleged occasion on which Mr. Cheal received payment via Ms. Johnston's personal account (¶ 73); and (f) the use of a Trust-owned vehicle to transport holsters on at least two occasions (¶¶ 73–74). Plaintiffs do not identify any specific Her Tactical sale by Mr. Cheal in his individual capacity, any communication or document by which he encouraged a third party to infringe, any pre-litigation knowledge by him of any asserted patent, or any feature of Her Tactical's holsters he personally designed or directed. (App. Tab 19 (Cheal Decl.) ¶ 9.)

4

**C.  <u>The Trust's Only Connection to Her Tactical Is the Occasional Use of a Vehicle.</u>**

The Blake and Tanya Cheal Family Living Trust is a family living trust established for ordinary estate-planning purposes; it holds personal and family assets. (App. Tab 19 (Cheal Decl.) ¶ 12.) The Trust does not own, and has never owned, any equity or other interest in Her Tactical; the Trust has never received compensation, distributions, or any other financial benefit from Her Tactical; and the Trust has never had any role in managing, operating, or directing Her Tactical. (App. Tab 19 (Cheal Decl.) ¶¶ 13–15; App. Tab 18 (Johnston Decl.) ¶ 13.) The Trust's sole alleged operational contact with the holster business is that, on a few occasions, a vehicle the Trust owns was used by family members to transport Her Tactical holsters for shipment or delivery. (Dkt. 74 ¶¶ 73–74; App. Tab 19 (Cheal Decl.) ¶ 16.) The vehicle was not held out as a company asset and was not used as a regular operational asset of Her Tactical. (App. Tab 19 (Cheal Decl.) ¶ 16; App. Tab 18 (Johnston Decl.) ¶ 13.)

<div align="center"><u>**STATEMENT OF UNDISPUTED MATERIAL FACTS**</u></div>

Mr. Cheal relies on, and incorporates by reference, the Statement of Undisputed Material Facts in Her Tactical's contemporaneously filed Motion for Summary Judgment, as well as the Statement of Undisputed Material Facts in Ms. Johnston's contemporaneously filed Motion for Summary Judgment. The following additional undisputed facts, drawn from Mr. Cheal's sworn declaration and the supporting record, are material to the issues presented in this motion.

1.  Mr. Cheal married Ms. Johnston in August 2020. (App. Tab 19 (Cheal Decl.) ¶ 1.)

2.  Mr. Cheal is not, and has never been, an officer, member, manager, employee, or agent of Her Tactical. (App. Tab 19 (Cheal Decl.) ¶ 2; App. Tab 18 (Johnston Decl.) ¶ 8; App. Tab 17 at 93:17–23.)

<div align="center">5</div>

3. Mr. Cheal does not own, and has never owned, any equity or other ownership interest in Her Tactical. (App. Tab 19 (Cheal Decl.) ¶ 3; App. Tab 18 (Johnston Decl.) ¶ 9.)

4. Mr. Cheal has never received any salary, profit distribution, compensation, or other financial benefit from Her Tactical. (App. Tab 19 (Cheal Decl.) ¶ 4; App. Tab 18 (Johnston Decl.) ¶ 9.)

5. Mr. Cheal does not direct or control Her Tactical's business decisions and does not run the business. (App. Tab 17 at 93:21–23 ("There's no way he could operate my business."); App. Tab 19 (Cheal Decl.) ¶ 5; App. Tab 18 (Johnston Decl.) ¶ 8.)

6. Mr. Cheal has never made, used, sold, offered for sale, or imported any Her Tactical product. (App. Tab 19 (Cheal Decl.) ¶ 6.)

7. Mr. Cheal has never made any advertisement, public statement, or third-party communication about any Her Tactical product, any holster of any kind, or any of Plaintiffs' patents. (App. Tab 19 (Cheal Decl.) ¶ 7.)

8. Mr. Cheal had no knowledge of any of the four asserted Design Patents (D788,451; D811,731; D836,329; D841,979) or the '530 Utility Patent before this lawsuit was filed, and had no knowledge of the '109 Utility Patent before its issuance on September 5, 2023. (App. Tab 19 (Cheal Decl.) ¶ 9.)

9. Mr. Cheal has never formed any belief about whether any Her Tactical product infringes any Plaintiff's patent or any other patent. (App. Tab 19 (Cheal Decl.) ¶ 10.)

10. Mr. Cheal has never received any payment in connection with any Her Tactical sale, including but not limited to via Ms. Johnston's personal Venmo account, PayPal account, or any other channel. (App. Tab 19 (Cheal Decl.) ¶ 8 (categorically denying the allegation

in Dkt. 74 ¶ 73).)

11.    Mr. Cheal is the settlor and a trustee of The Blake and Tanya Cheal Family Living Trust (the "**Trust**"). (Dkt. 74 ¶¶ 5, 69; App. Tab 19 (Cheal Decl.) ¶ 12.)

12.    The Trust does not own, and has never owned, any equity or other interest in Her Tactical. The Trust does not employ any Her Tactical personnel. The Trust has never received compensation, profit distributions, or any other financial benefit from Her Tactical. The Trust has never had any role in managing or operating Her Tactical. (App. Tab 19 (Cheal Decl.) ¶¶ 13–15; App. Tab 18 (Johnston Decl.) ¶ 13.)

13.    On a small number of occasions, a vehicle owned by the Trust was used to transport Her Tactical holsters for shipment or delivery. The vehicle was not held out as a company asset, was not used as a regular operational asset of Her Tactical, and was not subject to any compensation arrangement with Her Tactical for that use. (App. Tab 19 (Cheal Decl.) ¶ 16; App. Tab 18 (Johnston Decl.) ¶ 13.)

14.    Plaintiffs' Final Infringement Contentions identify no sale of any accused product made by Mr. Cheal in his individual capacity. (App. Tab 3.)

**ARGUMENT**

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court has already construed the asserted utility-patent claims at plain and ordinary meaning. (Dkt. 144 (App. Tab 16).) Her Tactical's contemporaneously filed motion shows that the accused products do not infringe any of Plaintiffs' asserted patents and that Plaintiffs cannot establish a cognizable trade dress. Mr. Cheal incorporates that showing under

7

DUCivR 7-1(a)(8) and adds, below, defenses specific to his individual and trustee capacities.

## I.    Where Her Tactical Is Entitled to Summary Judgment of Non-Infringement, No Theory of Personal or Trustee Liability Against Mr. Cheal Survives.

Each derivative theory Plaintiffs assert against Mr. Cheal—including induced infringement, contributory infringement, and alter-ego liability—requires an underlying actionable violation. And Plaintiffs' direct theories against Mr. Cheal fail independently because he did not personally make, use, sell, offer to sell, import, advertise, or direct any accused conduct. As the Federal Circuit has held: "Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement[.]" *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341–42 (1961). The same logic governs alter-ego liability: "Alter ego theory is not an independent claim for relief; rather, it is a theory of liability." *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 6 n.1, 284 P.3d 630. If Her Tactical has no liability, there is nothing to remedy and nothing to be "pierced" through to Mr. Cheal or the Trust. The same is true for personal participation in a corporation's trade dress infringement: where the corporation has no underlying liability, no individual or trust can be personally liable for participating in the corporation's lawful conduct. *Cf. Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994).

Her Tactical's Motion for Summary Judgment, incorporated here under DUCivR 7-1(a)(8), establishes that the accused Her Tactical products do not infringe any claim of the '530 or '109 Patents, do not infringe any of the asserted Design Patents, and do not violate any cognizable trade dress under § 1125(a). For the reasons stated in that motion—and adopted here in full—there is no

underlying patent or trade dress infringement to which any theory of personal or trustee liability against Mr. Cheal can attach. That alone disposes of every claim against him, and the Court need not reach the additional grounds developed in Sections II through IV below.

## II. Even if There Were Underlying Infringement, Plaintiffs Cannot Establish Direct, Induced, or Contributory Infringement by Mr. Cheal Personally.

### A. No Direct Infringement by Mr. Cheal Personally Under § 271(a).

Direct patent infringement under 35 U.S.C. § 271(a) requires that the defendant "make[], use[], offer[] to sell, or sell[] [a] patented invention." To impose personal liability on an individual, the plaintiff must show that the individual personally made, used, sold, or offered for sale an accused product. *Cf. Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1411– 12 (Fed. Cir. 1996); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990).

Plaintiffs cannot meet this burden as to Mr. Cheal—because Mr. Cheal has never made, used, sold, offered for sale, or imported any Her Tactical product. (SUMF ¶ 6; App. Tab 19 (Cheal Decl.) ¶ 6.) He is not an officer, member, employee, or agent of Her Tactical; he does not run the business; he has no operational role at all. (SUMF ¶¶ 2, 5.) Plaintiffs' Final Infringement Contentions identify no sale by Mr. Cheal. (SUMF ¶ 14.) Without evidence that Mr. Cheal personally engaged in any act enumerated in § 271(a), Plaintiffs cannot meet their burden on direct infringement. *See Manville Sales*, 917 F.2d at 552. Summary judgment in favor of Mr. Cheal is appropriate.

### B. No Induced Infringement Under § 271(b).

Induced infringement under 35 U.S.C. § 271(b) requires that the accused inducer "(1) knew of the patent, (2) knowingly induced the infringing acts, and (3) possessed a specific intent to

encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304–06 (Fed. Cir. 2006) (en banc in relevant part); *see Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–71 (2011) (induced infringement requires knowledge that the induced acts constitute patent infringement, with willful blindness sufficient to satisfy the knowledge requirement); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005) ("evidence of active steps . . . taken to encourage direct infringement" required).

Plaintiffs cannot meet any of these elements. Mr. Cheal had no knowledge of any of the four asserted Design Patents or the '530 Utility Patent before this lawsuit was filed, and had no knowledge of the '109 Utility Patent before its issuance on September 5, 2023, after the lawsuit was already pending. (SUMF ¶ 8.) That alone defeats induced infringement of the '109 Patent for any pre-issuance period and bars the claim entirely as to all asserted patents. *Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338, 1349 (Fed. Cir. 2015) (en banc). Mr. Cheal has likewise never formed any belief about whether any Her Tactical product infringes any patent (SUMF ¶ 9), has never directed any third party to use, sell, manufacture, or import any product for the purpose of infringing any patent (App. Tab 19 (Cheal Decl.) ¶ 11), and has never made any third-party communication about any holster, any patent, or any of Plaintiffs' alleged trade dress (SUMF ¶ 7).

Plaintiffs' inducement allegation—that Mr. Cheal "took action that was intended to cause" infringement (Dkt. 74 ¶ 60)—is pleaded "on information and belief" and is conclusory. Conclusory allegations cannot survive summary judgment when the discovery record is closed and the moving party has affirmative sworn evidence of non-involvement. *DSU Med.*, 471 F.3d at 1306; c*f. Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992) (good-faith belief of non-infringement is

relevant to specific intent). Summary judgment of no induced infringement should be entered as to all asserted patents.

### C. No Contributory Infringement Under § 271(c).

To the extent Plaintiffs continue to press a contributory-infringement theory under 35 U.S.C. § 271(c), it fares no better. Section 271(c) is inapposite here: it concerns the sale of "a component of a patented machine . . . or a material or apparatus for use in practicing a patented process," not the conduct alleged against Mr. Cheal. And in any event, contributory infringement, like induced infringement, requires actual knowledge of the patent at the time of the conduct. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964); *Global-Tech*, 563 U.S. at 766. For the reasons set forth in Section II.B above, Mr. Cheal had no pre-act knowledge of any asserted patent. Summary judgment of no contributory infringement is appropriate.

### III.    Even if There Were Underlying Trade-Dress Infringement, Mr. Cheal Has No Personal Liability for It.

Personal liability of an individual for a corporation's alleged Lanham Act trade-dress infringement requires that the individual "knowingly directs, controls, ratifies, participates in, or is the moving force behind the infringing activity." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994). Mr. Cheal is not part of Her Tactical's corporate structure at all—he is not an officer, director, employee, or agent (SUMF ¶ 2)—and has never directed or participated in any sale, marketing, or advertising activity by Her Tactical, nor made any public statement about any holster product (SUMF ¶¶ 5–7). He cannot, on this record, be the "moving, active conscious force" behind Her Tactical's alleged trade-dress infringement. Summary judgment in his favor on the trade-dress / unfair-competition claim is appropriate.

11

### IV.    Plaintiffs' Alter-Ego Theories Fail as a Matter of Utah Law.

Plaintiffs' final theories of liability—that the Court should disregard Her Tactical's separate corporate existence and impose its liability on Mr. Cheal personally and on the Trust—fail on undisputed facts. Under Utah law, alter-ego liability requires a plaintiff to satisfy a *two-prong* test: (1) "such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and (2) that "observance of the corporate form would sanction a fraud, promote injustice, or [ ] result in an inequity." *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012); *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987). "Both elements must be satisfied to pierce the corporate veil." *Jones & Trevor*, 284 P.3d at 635. The doctrine "is not to be lightly invoked." *Id.* at 633. As applied here, Plaintiffs cannot satisfy either prong of the test—and they must do so separately as to Mr. Cheal personally and as to the Trust.

### A.  Mr. Cheal Personally Is Not an Alter Ego of Her Tactical.

Mr. Cheal's alter-ego case is even thinner than Ms. Johnston's—because while Ms. Johnston *is* the principal of Her Tactical (and Plaintiffs' alter-ego theory against her at least asks the Court to look through her management role to her personal liability), Mr. Cheal has no role at all. He is not an officer, member, manager, employee, or agent of Her Tactical. (SUMF ¶ 2.) He owns no equity in Her Tactical. (SUMF ¶ 3.) He has never received any compensation, distribution, or financial benefit from Her Tactical. (SUMF ¶ 4.) He does not direct Her Tactical's business. (SUMF ¶ 5.) The very predicate of the unity-of-interest prong—that the corporation and the individual have so commingled their operations and finances that they are indistinguishable, *Colman*, 743 P.2d at 786—is absent here.

Plaintiffs' alter-ego theory against Mr. Cheal personally rests on three categories of allegation, none of which establishes either prong of the test as a matter of law.

### 1. The formality factors Plaintiffs cite do not establish unity of interest.

Plaintiffs' alter-ego allegations against Mr. Cheal personally are: (a) Mr. Cheal resides at the same address as Ms. Johnston and as Her Tactical's registered office (Dkt. 74 ¶¶ 3–5); (b) Her Tactical's marketing uses the phrase "family-owned business" and plural pronouns and group taglines such as "HerNation Family" and "Her Family" (¶¶ 56, 70–71); (c) Ms. Johnston has, on Plaintiffs' information and belief, "credited Cheal as a business partner" (¶ 68); and (d) on a small number of occasions, a vehicle owned by the Trust was used to transport Her Tactical holsters (¶¶ 73–74). None of these allegations—singly or in combination—establishes substantive unity of operation between Mr. Cheal and Her Tactical as Utah law requires. *Colman*, 743 P.2d at 786.

The shared address has an unremarkable explanation: Mr. Cheal and Ms. Johnston are married, and Ms. Johnston performs Her Tactical's administrative work from the residence she shares with Mr. Cheal. (App. Tab 18 (Johnston Decl.) ¶ 10.) The "family-owned business" framing reflects family support for Ms. Johnston's work, not co-ownership: "it's my family that have helped and supporting me. But it's not—they don't run the business. They don't have ownership. They don't—they are not an employee. They have no financial gain." (App. Tab 17 at 147:13–17.) Ms. Johnston has further testified that her husband is "just a cheerleader for me" and that "there's no way he could operate my business." (App. Tab 17 at 93:19–23.)

Mr. Cheal corroborates this in his own sworn declaration: he is not an officer, member, manager, employee, or agent of Her Tactical; he has no equity in Her Tactical; he has never been compensated by Her Tactical; and he has no operational role in the business. (SUMF ¶¶ 2–5.) The

13

vehicle use, finally, pertains to the Trust as the vehicle's owner—not to Mr. Cheal personally—and is incidental and occasional. (SUMF ¶ 13.) Marketing language, casual references to spousal support, and the occasional use of a family vehicle do not transform a non-employee spouse into a corporate alter ego.

### 2. Plaintiffs' "payment to Cheal" allegation is denied and unsupported.

Plaintiffs allege "on information and belief" that "on at least one occasion Cheal received payment via Johnston's personal account for a holster sold on behalf of Her Tactical and caused delivery to occur via a vehicle owned by [the Trust]." (Dkt. 74 ¶ 73.) Mr. Cheal denies that allegation: he has never received any payment in connection with any Her Tactical sale, by any means or channel. (SUMF ¶ 10; App. Tab 19 (Cheal Decl.) ¶ 8.) Plaintiffs offer no evidence in support of the allegation. Where, as here, the moving party has come forward with sworn evidence affirmatively denying an allegation and the non-moving party has no contrary evidence, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### 3. The fraud-or-inequity prong is not satisfied.

Even if Plaintiffs could establish unity of interest as to Mr. Cheal, they bear an independent burden on the second prong of *Jones & Trevor*: that "observance of the corporate form would sanction a fraud, promote injustice, or . . . result in an inequity." 284 P.3d at 635. There is no fraud, injustice, or inequity in declining to hold a non-involved spouse personally liable for his wife's small LLC. To the contrary, the inequity here would be the opposite: imposing personal liability on a husband who has no role in the alleged tort, no knowledge of the patents, no participation in any sale, and no benefit from the business. Utah law forecloses that result. *See id.* at 633 (alter-ego doctrine is "not to be lightly invoked").

14

## B.  <u>The Trust Is Not an Alter Ego of Her Tactical.</u>

Plaintiffs' second alter-ego theory—that the Trust is an alter ego of Her Tactical (Dkt. 74 ¶ 75)—fails for similar reasons, with even less factual basis than the personal theory. Whether framed as a claim against Mr. Cheal in his trustee capacity or as an attempt to reach trust assets, Plaintiffs must identify evidence connecting the Trust itself to the alleged wrongdoing. They have not.

The Trust owns no equity in Her Tactical, has never employed Her Tactical personnel, has never received compensation, distributions, or any other financial benefit from Her Tactical, and has never had any role in managing or operating Her Tactical. (SUMF ¶ 12.) The single contact between the Trust and Her Tactical's business is the use, on a small number of occasions, of a Trust-owned vehicle to transport Her Tactical holsters. (SUMF ¶ 13.) That single, incidental fact does not begin to satisfy Utah's unity-of-interest prong, which asks whether the corporation and the would-be alter ego have so commingled their operations that they are functionally indistinguishable. *Colman*, 743 P.2d at 786. The Trust and Her Tactical have entirely separate purposes, entirely separate management, entirely separate financial flows, and entirely separate legal existences.

The fraud-or-inequity prong is independently unmet. The Trust did not *do* anything tortious; the Trust was not *used* to perpetrate any wrong; the Trust merely owned a vehicle that was occasionally driven for a small business's logistical convenience. Utah law does not extend alter-ego liability that far. *Jones & Trevor*, 284 P.3d at 633.

Because Plaintiffs cannot satisfy either prong of the *Jones & Trevor* / *Colman* test as to Mr. Cheal personally or as to the Trust, the alter-ego theory fails as a matter of law and summary

judgment is appropriate.

## CONCLUSION

For the reasons set forth above, the Court should enter summary judgment in favor of Blake Cheal, individually and in his capacity as settlor and trustee of The Blake and Tanya Cheal Family Living Trust, and dismiss all claims against him with prejudice.

DATED this 8th day of May 2026.

Respectfully submitted,

**KNH LLP**

*/s/ Chad S. Pehrson*
Chad S. Pehrson
Nathan Gardner

*Attorneys for Defendants*



16

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2026, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF filing system, which will send notification of such filing to all counsel of record.

*/s/Chad S. Pehrson*