Chad S. Pehrson (Utah Bar No. 12622) cpehrson@knh.law
Nathan Gardner (Utah Bar No. 19537) ngardner@knh.law
**KNH LLP**
50 W. Broadway, 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS, <br><br> Plaintiffs, <br><br> v. <br><br> HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual; <br><br> Defendants. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CONSOLIDATED MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Case No. 1:22-cv-00121-AMA-DBP <br><br> District Judge Ann Marie McIff Allen <br><br> Magistrate Judge Dustin B. Pead |

## I. INTRODUCTION

Plaintiffs seek two findings on summary judgment.  Each request fails under controlling Federal Circuit and Supreme Court authority, and at minimum on the genuine factual disputes that permeate the record. On invalidity, Plaintiffs argue that Defendants' affirmative defenses under 35 U.S.C. §§ 101, 102, 103, and 112 fail as a matter of law because no Rule 26(a)(2) expert was disclosed. But Plaintiffs have it backwards: at summary judgment, Plaintiffs, as the movants, bear the threshold burden to show no genuine dispute of material fact. Plaintiffs' own brief

1

acknowledges that expert testimony is "sometimes unnecessary where the technology is 'easily understandable' without expertise" (Pl. MPSJ ¶ 74, citing *Centricut, LLC v. Esab Group, Inc., 390 F.3d 1361, 1369-70 (Fed. Cir. 2004)*), and the Federal Circuit has repeatedly granted design-patent summary judgment on documentary records without any expert testimony — most recently in *Lanard Toys Ltd. v. Dolgencorp LLC, 958 F.3d 1337 (Fed. Cir. 2020)*, and *MRC Innovations, Inc. v. Hunter Mfg., LLP, 747 F.3d 1326 (Fed. Cir. 2014)*.

The August 22, 2022 freedom-to-operate analysis by registered patent agent Michael R. Schramm and the October 3, 2022 design-patent freedom-to-operate analysis (D. Opp. App. Tab 1) provide exactly the kind of element-by-element documentary record those cases approve. Plaintiffs' reliance on *Schumer v. Laboratory Computer Systems, Inc., 308 F.3d 1304 (Fed. Cir. 2002)*, is misplaced: *Schumer* says expert testimony is "typically" required — not categorically — and addresses the burden of proving invalidity, where the Federal Circuit vacated summary judgment of invalidity because the supporting testimony was insufficient. *Schumer* thus makes invalidity-related summary judgment hard to win; it does not establish that a non-movant must produce expert testimony to defeat a motion that the invalidity defenses fail. And on § 101, Plaintiffs themselves cite *Berkheimer v. HP Inc., 881 F.3d 1360 (Fed. Cir. 2018)*, which holds that subject-matter eligibility questions can involve underlying questions of fact that preclude summary judgment.

On the knowledge findings, Plaintiffs request two abstract holdings: that Ms. Johnston knew of the '530 Patent by August 22, 2022, and of the '109 Patent by September 2023. The first conflates awareness of the '530 Patent's existence (which the August 2022 correspondence establishes) with knowledge of infringement, inducement intent, or willfulness, which the same

record affirmatively rebuts: within days of receiving the cease-and-desist email, Ms. Johnston obtained and produced a registered patent agent's non-infringement analysis. As Plaintiffs concede (Pl. MPSJ ¶ 96), the freedom-to-operate analysis ("FTO") "may be relevant to Defendants' subjective intent at trial as to the '530 Patent." It is also material to the limited finding Plaintiffs request: bare "knowledge of the patent" is doctrinally distinct from "knowledge that the induced acts constitute patent infringement," *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015), and the abstract finding Plaintiffs request would prejudge the latter without a trial. The '109 Patent finding fails for a more fundamental reason: the '109 did not issue until September 5, 2023, and the Federal Circuit has held that "[t]o willfully infringe a patent, the patent must exist and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). The same logic applies a fortiori to inducement, which requires knowledge that induced acts "constitute patent infringement." *Commil*, 575 U.S. at 639. There is no patent to infringe before September 5, 2023.

On the personal-acts findings, Plaintiffs ask the Court to hold as a matter of law that Vicky Johnston personally performed E&R's "accused design, sales, marketing, payment, and distribution acts" and may not characterize them as taken "for E&R" or "in [her] capacity as an employee of E&R." But Plaintiffs' theory collapses on contact with the doctrinal framework they themselves invoke. Under *Lubby Holdings LLC v. Chung*, 11 F.4th 1355 (Fed. Cir. 2021), an officer is personally liable only for the officer's "own acts of infringement" — not the corporation's. Whether Ms. Johnston's role as sole agent and sole employee of E & R consists of personal acts of direct infringement, or instead of corporate-agent acts requiring veil-piercing for derivative liability, is itself a fact-intensive question on a contested record. Ms. Johnston's own

3

deposition testimony — the very passage Plaintiffs quote — expressly disclaims personal capacity: "Not in any personal capacity. I'm employed by E&R." (Johnston Dep. 14:9-10.) And Plaintiffs concede they reserve direct infringement, inducement intent, and willfulness for trial (Pl. MPSJ ¶¶ 87, 90, 110). They cannot win the threshold "personal acts" finding without first establishing direct infringement — which they decline to seek now and which presents genuine disputes precluding summary judgment.

The Court should deny Plaintiffs' motion in its entirety. The alternative Rule 56(g) findings — which Plaintiffs propose as fallback relief on each of 62 SUMF paragraphs — should also be denied. Rule 56(g) is not a vehicle for treating contested factual narratives as conclusively established for trial purposes.

## II. BACKGROUND

This is a patent and unfair-competition case concerning two competing women's-targeted inside-the-waistband magnetic gun holsters. Plaintiff JM4 Tactical, LLC asserts six patents — two utility (the '530 and '109 Patents) and four design (D788,451, D811,731, D836,329, D841,979) — against Defendants Her Tactical LLC; E & R LLC, d/b/a Her Tactical; Vicky Arlene Johnston; and Blake Cheal. Her Tactical LLC and E & R LLC are both Utah single-member limited liability companies, of which Ms. Johnston is the sole member. E & R LLC operated under the Her Tactical d/b/a, and Her Tactical LLC is treated in Defendants' related Johnston summary-judgment motion (Dkt. 153 ¶ 1) as the successor entity to E & R LLC.

Defendant Vicky Johnston formed E & R LLC in 2017 — five years before the accused product entered the market — for the purpose of conducting real estate operations. (Johnston Dep. 91:17-20.) "Her Tactical" is a d/b/a (doing-business-as) name under which E & R LLC has

4

marketed and sold the accused magnetic holsters since approximately May 2022. (*Id.* 91:21-92:22; Pl. MPSJ ¶ 24.) E & R LLC operates a single business checking account that receives all payments and distributes funds to vendors, employees, and other obligations. (Johnston Dep. 92:12-17.) Ms. Johnston has testified that she does not "use [her] personal checking account" for business activity and that "[e]verything goes through the business." (*Id.* 99:5-6.) Gross revenue from the accused product over five years totals less than $50,000, and Ms. Johnston has testified that expenses have exceeded revenue. (*Id.* 14:20-22.)

Before launching the accused product, Ms. Johnston and her counsel sought a freedom-to-operate analysis from Michael R. Schramm, a registered patent agent (USPTO Reg. No. 56,441), of Schramm Patent Services, LLC. The August 22, 2022 Schramm Analysis addresses Plaintiff's '530 Patent and concludes that "non-infringement of [the '530 Patent] by the Product is so obvious" because the accused product "has less than three magnets" — the central claim limitation. (Pl. App. Ex. 15, p. 1-2.) A separate October 3, 2022 Schramm Analysis applies *Egyptian Goddess* and *Lanard Toys* in element-by-element comparison to Plaintiffs' four asserted design patents and concludes the accused product "does not practice the limitation of any of the Myers Design Patents claims." (Defendants' Opposition Appendix of Evidence (cited herein as "D. Opp. App."), Tab 1.) Defendants' first commercial sale occurred in late May 2022. (Pl. MPSJ ¶ 24.)

Plaintiffs filed the original Complaint on September 19, 2022, asserting infringement of the '530 Patent and the four design patents (D788,451; D811,731; D836,329; and D841,979). (D. Opp. App. Tab 4; Dkt. 2.) The '109 Patent did not issue until September 5, 2023 — nearly one year after the original Complaint was filed — and accordingly could not have been part of the original action. (Pl. MPSJ ¶ 25.) When Ms. Johnston learned of the '109 Patent's issuance, she

proactively halted accused-product sales pending research into the new patent. (Johnston Dep. 97:11-98:1.)

Discovery has closed. No party has designated an expert witness, and the time for designations has expired (Dkt. 129.)

Plaintiffs filed the present Consolidated Motion for Partial Summary Judgment on May 8, 2026 (Dkt. 151). Separately, Defendants filed three motions for summary judgment (Dkts. 152, 153, 155). Plaintiffs seek a holding that Defendants' invalidity defenses fail as a matter of law for lack of expert testimony, and findings that Ms. Johnston personally performed E&R's accused acts and had knowledge of the '530 and '109 Patents. As Plaintiffs expressly state, they do not seek summary judgment on direct infringement, doctrine-of-equivalents infringement, prosecution-history estoppel, patent-by-patent inducement intent, Mr. Cheal's individual liability, Halo enhancement, trade dress, false advertising, damages, or inventorship-based unenforceability. (Pl. MPSJ ¶¶ 2, 90.) Those issues are reserved for trial.

This opposition addresses Plaintiffs' two requests in turn and the alternative Rule 56(g) relief.

### III. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to DUCivR 56-1(c)(3), Defendants respond to those SUMF paragraphs material to the relief Plaintiffs seek. Except where expressly admitted, Defendants dispute Plaintiffs' legal characterizations, inferences, and any use of isolated evidentiary facts as Rule 56(g) findings beyond the narrow purposes of this motion.

¶ 20 (Pl. MPSJ) — Asserted: "On August 22, 2022, Defendant Vicky Johnston revealed that at least two of the Defendants were already aware of JM4's utility patent registration."

6

Response: UNDISPUTED IN PART / DISPUTED AS TO LEGAL SIGNIFICANCE. Defendants do not dispute that the August 2022 correspondence identified the '530 Patent. That establishes, at most, awareness of the patent's existence. It does not establish knowledge of infringement, specific intent to induce infringement, willfulness, culpability, or any patent-by-patent application of the asserted claims to the accused products. Knowledge of "a patent's existence" is doctrinally distinct from knowledge "that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). The same August 2022 record on which Plaintiffs rely includes Defendants' contemporaneous Schramm FTO (Pl. App. Ex. 15) and good-faith non-infringement position. (D. Opp. App. Tab 2 (Dkt. 84 ¶ 29).)

¶ 21 (Pl. MPSJ) — Asserted: "Ms. Johnston first reviewed Mr. Myers's patent claim in August 2021."

Response: UNDISPUTED THAT MS. JOHNSTON REVIEWED CLAIM IN AUGUST 2021 / DISPUTED AS TO LEGAL SIGNIFICANCE. Ms. Johnston reviewed Mr. Myers's patent claim in August 2021 to confirm her design did not infringe the '530 Patent — and concluded it did not. This is the foundational purpose of a "freedom to operate" review and is corroborated by the subsequent Schramm Analyses. The fact that Ms. Johnston reviewed the claim is not in dispute; the implication that such review establishes anything beyond "knowledge of the patent's existence" — much less knowledge of infringement under *Commil* — is contested and immaterial to the limited findings Plaintiffs seek.

¶ 26 (Pl. MPSJ) — Asserted: "Ms. Johnston was aware of the '109 Patent by September 2023."

Response: UNDISPUTED THAT MS. JOHNSTON BECAME AWARE OF '109 IN SEPTEMBER 2023 / DISPUTED AS TO LEGAL SIGNIFICANCE. The '109 Patent issued September 5, 2023. (Pl. MPSJ ¶ 25.) Awareness "by September 2023" is contemporaneous with — not before — the patent's issuance. As a matter of law, no pre-September 5, 2023 conduct can support knowledge-based liability for the '109 Patent because the patent did not exist. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236-37 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it."); 35 U.S.C. § 271(a) (liability for acts "during the term of the patent"); 35 U.S.C. § 154(a)(2) (patent term begins on issuance). To the extent Plaintiffs seek a finding implying anything beyond the temporal fact that Ms. Johnston learned of the '109 Patent contemporaneously with its issuance, that broader finding is contested and immaterial.

¶ 27 (Pl. MPSJ) — Asserted: "Ms. Johnston testified at her deposition that she chose to halt accused-product sales in September 2023 because she was researching the newly issued '109 Patent."

Response: UNDISPUTED AS TO TEMPORAL FACT / SIGNIFICANCE FAVORS DEFENDANTS. The factual proposition is admitted. Defendants further note that Ms. Johnston's halt-of-sales decision is direct evidence of good-faith conduct: when she learned of the new patent, she immediately ceased commercial activity pending research. This is the "design-around" behavior the Federal Circuit has described as "the stuff of which competition is made and . . . supposed to benefit the consumer." *State Indus.*, 751 F.2d at 1235-36. This fact undercuts, rather than supports, any inference of willful or culpable conduct.

8

¶ 41 (Pl. MPSJ) — Asserted: "Ms. Johnston . . . testified she is the sole employee, owner, and officer of Her Tactical."

Response: DISPUTED IN PART AS TO CHARACTERIZATION. Ms. Johnston is the sole member of E & R LLC, of which "Her Tactical" is a d/b/a. (Johnston Dep. 91:17-92:22.) E & R LLC, not "Her Tactical," is the legal entity. The characterization of Her Tactical as having a separate "owner" or "officer" structure mischaracterizes the corporate form: Her Tactical is a trade name, not a separate entity. To the extent Plaintiffs imply Ms. Johnston operated in a personal rather than agency capacity, that implication is disputed and is contradicted by Ms. Johnston's own testimony: "Not in any personal capacity. I'm employed by E&R." (*Id.* 14:9-10.)

¶ 42 (Pl. MPSJ) — Asserted: "Ms. Johnston is the 'sole provider' — the human 'person that is a representative of the company.'"

Response: UNDISPUTED AS TO QUOTED TESTIMONY / DISPUTED AS TO LEGAL SIGNIFICANCE. Ms. Johnston's role as the sole human "representative" of a single-member LLC describes a corporate-agent capacity, not personal action. The "representative" language confirms agency, not direct personal conduct.

¶ 43 (Pl. MPSJ) — Asserted: "Ms. Johnston personally designed the accused product on E&R's behalf and personally engages in every act of designing, funding, and selling: 'It's the same for all of them.'"

Response: DISPUTED. Plaintiffs quote Ms. Johnston's testimony out of context. The full exchange establishes she expressly disclaimed personal-capacity acts:

- . . . what you're saying is you did it, but you did it on behalf of E&R, not in any personal capacity; is that what you are saying?

- Not in any personal capacity. I'm employed by E&R.

- Okay.

- It's the same for all of them.

(Johnston Dep. 14:5-12.) The phrase "It's the same for all of them" refers to her consistent denial of personal capacity across questions 2-11 — not to an admission of personal performance. The plain reading of the testimony is the opposite of what Plaintiffs assert. The factual question of whether Ms. Johnston's acts were "personal" or "corporate-agent" is genuinely disputed and inappropriate for summary judgment.

¶ 44 (Pl. MPSJ) — Asserted: "Ms. Johnston operates the accused business from her home address."

Response: UNDISPUTED AS TO FACT / IMMATERIAL TO PERSONAL LIABILITY. Operation from a residential address is consistent with — not dispositive of — corporate-form LLC operations. Many single-member LLCs operate from residential addresses; the location of operations is not a *Lubby* or *Wordtech* factor for determining personal-acts liability.

¶ 45 (Pl. MPSJ) — Asserted: "Ms. Johnston personally accepted at least two accused-product payments through her personal Venmo account."

Response: UNDISPUTED AS TO TWO PAYMENTS / DISPUTED AS TO CHARACTERIZATION. The two Bartels payments were "a one-off . . . an exception" (Johnston Dep. 159:11-22; 160:1-2) because the customer was "an unusual" walk-in at a workshop event without other means of payment. Ms. Johnston testified that "Her Tactical does not have a Venmo account" (Pl. MPSJ ¶ 46), and that her general practice routes all payments through E&R's checking account. (*Id.* 99:5-6 ("Everything goes through the business.").) The two exception

10

payments were transferred into E&R's business checking account upon receipt. (Pl. MPSJ ¶ 45.) The funds did not remain in any personal account.

¶ 46 (Pl. MPSJ) — Asserted: "Ms. Johnston also personally paid Defendant Grant Cavalli . . . through her personal Venmo account."

Response: UNDISPUTED AS TO PAYMENT METHOD / DISPUTED AS TO LEGAL SIGNIFICANCE. The same Venmo-to-business-account flow described above applies. Mr. Cavalli was dismissed from this case by Court order on December 20, 2023 (Dkt. 101); his role is not a basis for liability against Ms. Johnston. The payment method does not establish that the underlying transactions constitute personal acts of patent infringement.

¶ 47 (Pl. MPSJ) — Asserted: "For at least one accused-product transaction, Ms. Johnston used her personal phone . . . and directed the customer to retrieve the accused holster from her personal residence."

Response: UNDISPUTED AS TO USE OF HOME / PHONE / DISPUTED AS TO LEGAL SIGNIFICANCE. Ms. Johnston testified that her phone — though used for both personal and business purposes — is "the only phone I have." (Johnston Dep. 159:7.) The single-phone use does not convert business communications into personal acts. The pickup-from-home was at a residential address from which E & R LLC has operated since 2017, and storage at that address was admitted in E&R LLC's responses to Plaintiffs' RFAs as an LLC activity. (Pl. App. Ex. 5, E&R Resp. to RFA 11.)

¶ 54 (Pl. MPSJ) — Asserted: "During a customer interaction captured on video . . ., Mr. Cheal — at the request and direction of Ms. Johnston — produced accused holsters from a vehicle and discussed the products' features."

Response: UNDISPUTED AS TO WORKSHOP INTERACTION / DISPUTED AS TO CHEAL'S ROLE. Mr. Cheal is not an officer, manager, or employee of E & R LLC or Her Tactical. (Johnston Dep. 93:19-23 ("He's just a cheerleader for me . . . . There's no way he could operate my business.").) Plaintiffs themselves claim to reserve Mr. Cheal's individual liability for trial. (Pl. MPSJ ¶ 90.) Mr. Cheal's husband-supporter role at a single workshop event does not establish that Ms. Johnston personally performed acts of direct patent infringement.

¶¶ 57-60 (Pl. MPSJ) — Asserted: Lists of persons in Defendants' initial disclosures, none designated as Rule 26(a)(2) experts.

Response: UNDISPUTED AS TO ABSENCE OF RULE 26(a)(2) EXPERT DESIGNATION / DISPUTED AS TO LEGAL EFFECT. The absence of a Rule 26(a)(2) expert designation does not entitle Plaintiffs to summary judgment on every invalidity defense. Defendants do not offer the Schramm Analyses as retained expert testimony and do not ask the Court to accept Mr. Schramm's ultimate conclusions as expert opinions. The analyses are record documents relevant to notice, good faith, subjective intent, and the specific claim limitations and visual comparisons identified therein. The underlying materials — the asserted patents, prosecution histories, accused-product drawings and photographs, prior-art references, and Plaintiffs' own disclosures — are independently before the Court. Plaintiffs themselves cite the August 22, 2022 Schramm Analysis as record evidence. (Pl. MPSJ ¶¶ 16–18; Pl. App. Ex. 15.)

¶ 64 (Pl. MPSJ) — Asserted: "As of November 2, 2023, Defendants' total gross revenue from the accused product since first sale was, at minimum, $48,000."

Response: UNDISPUTED AS TO GROSS / DISPUTED AS TO MATERIAL SIGNIFICANCE. The cited figure is gross revenue, not net profit. Ms. Johnston has testified that

"expenses are overexcessive of any profit or income." (Johnston Dep. 14:20-22.) Gross revenue absent a corresponding cost basis is not material to any issue before the Court on this motion. The figure is reserved for the damages phase of trial, which Plaintiffs do not move on here.

Defendants do not separately respond to remaining SUMF paragraphs because they are immaterial to the limited partial-summary-judgment findings Plaintiffs request, are evidentiary fragments, or are addressed by Defendants' responses and additional facts above. Defendants do not concede any legal characterization, inference, or Rule 56(g) use of those paragraphs for trial.

### IV. STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to DUCivR 56-1(c)(4), Defendants identify the following additional material facts that are relevant to demonstrate genuine disputes of material fact precluding summary judgment.

#### A. E & R LLC's Pre-Existing Corporate Form

A-1. E & R LLC was formed in 2017 — five years before the accused product entered the market. (Johnston Dep. 91:17-20.)

A-2. "Her Tactical" is a d/b/a (doing-business-as) name under which E & R LLC operates a separate line of business. (Johnston Dep. 91:21-92:22.)

A-3. E & R LLC operates a single business checking account that receives all payments and distributes funds to vendors, employees, and other obligations. (Johnston Dep. 92:12-17.)

A-4. Ms. Johnston does not use a personal checking account for business activity. (Johnston Dep. 99:5-6 ("I don't even use my personal checking account. Everything goes through the business.").)

A-5. Ms. Johnston maintains careful budgeting and financial separation between her personal and business affairs. (Johnston Dep. 99:13-17.)

**B. Ms. Johnston's Agency Role and Express Disclaimer of Personal Capacity**

B-1. Ms. Johnston has expressly testified that her conduct relating to the accused product has been "[n]ot in any personal capacity. I'm employed by E&R." (Johnston Dep. 14:9-10.)

B-2. Ms. Johnston has consistently characterized herself as an "employee" of E & R: when asked whether business money "goes in your pocket; you're paying yourself," she answered: "As an employee." (Johnston Dep. 90:11-15.)

B-3. Ms. Johnston's testimony immediately after the "It's the same for all of them" exchange that Plaintiffs quote (Pl. MPSJ ¶ 43; Johnston Dep. 14:9-12) confirmed the "as an employee" framing across multiple categories of conduct: "Q. So back to where we were, Ms. Johnston, questions 4, 5, and 6, your personal denials, you did in fact – A. As an employee, yes." (Johnston Dep. 16:11-17.)

**C. The August 22, 2022 Schramm Freedom-to-Operate Analysis as Documentary Evidence of Non-Infringement of the '530 Patent**

C-1. The August 22, 2022 Schramm Analysis was authored by Michael R. Schramm, a registered patent agent (USPTO Reg. No. 56,441), of Schramm Patent Services, LLC.

C-2. The Schramm Analysis concludes that "non-infringement of [the '530 Patent] by the Product is so obvious" because the accused product "has less than three magnets" — the central claim limitation. (Pl. App. Ex. 15, p. 1-2.)

14

C-3. The August 22, 2022 Schramm Analysis identifies the '530 Patent's three-magnet limitation and concludes that the accused product does not literally practice that limitation because it has fewer than three magnets. (Pl. App. Ex. 15, pp. 1–2.)

**D. The October 3, 2022 Schramm Design-Patent Freedom-to-Operate Analysis**

D-1. A separate October 3, 2022 Schramm Analysis addresses Plaintiffs' four asserted design patents (D788,451, D811,731, D836,329, D841,979). (D. Opp. App. Tab 1.)

D-2. The October 3, 2022 Schramm design-patent analysis includes visual, design-by-design comparisons between the accused Her Tactical product and each of the four asserted design patents (D788,451, D811,731, D836,329, D841,979) and identifies specific ornamental differences, including differences in profile shape, profile stitching, snap-retention strap, magnetic-strap geometry and attachment location, gun-opening shape, muzzle opening, ID tag, and cross-stitching. (D. Opp. App. Tab 1.)

**E. The '109 Patent Did Not Exist Until September 5, 2023**

E-1. The '109 Patent issued September 5, 2023. (Pl. MPSJ ¶ 25.)

E-2. Plaintiffs' original Complaint, filed September 19, 2022 (Dkt. 2), asserted the '530 Patent and the four design patents but did not and could not assert the '109 Patent because it had not yet issued. (D. Opp. App. Tab 4.)

E-3. When Ms. Johnston learned of the '109 Patent's issuance, she proactively halted accused-product sales pending research into the new patent. (Johnston Dep. 97:11-98:1.) The halt of sales remains in effect.

15

### F. Plaintiffs' Concessions Regarding the Limited Scope of the Present Motion

F-1. Plaintiffs do not seek summary judgment on direct infringement of any patent. (Pl. MPSJ ¶ 2.)

F-2. Plaintiffs do not seek summary judgment on doctrine-of-equivalents infringement or prosecution-history estoppel. (Pl. MPSJ ¶ 90.)

F-3. Plaintiffs do not seek summary judgment on patent-by-patent inducement intent, including any defense based on the Schramm FTOs. (Pl. MPSJ ¶ 90; id. ¶ 96.)

F-4. Plaintiffs do not seek summary judgment on Defendant Cheal's individual liability. (Pl. MPSJ ¶ 90.)

F-5. Plaintiffs do not seek summary judgment on Halo enhancement, trade dress infringement, false advertising, damages, or inventorship-based unenforceability. (Pl. MPSJ ¶ 2.)

F-6. Plaintiffs concede that the August 22, 2022 Schramm Analysis "may be relevant to Defendants' subjective intent at trial as to the '530 Patent." (Pl. MPSJ ¶ 96.)

### V. ARGUMENT

The Court should deny Plaintiffs' motion in its entirety. Section V.A addresses the invalidity defenses; Section V.B addresses the knowledge findings; Section V.C addresses the personal-acts findings; Section V.D addresses Plaintiffs' alternative Rule 56(g) relief.

### A. The Invalidity Defenses Survive Summary Judgment

Plaintiffs' invalidity argument rests on a single proposition: that "[w]ithout admissible expert testimony tying prior art to the asserted claims on an element-by-element basis . . . Defendants cannot meet § 282's clear-and-convincing-evidence burden." (Pl. MPSJ ¶ 3.) That argument fails for six independent reasons. First, Plaintiffs invert the summary-judgment burden

16

— the clear-and-convincing standard governs the trial finder of fact, not summary-judgment burden allocation. Second, the Federal Circuit has repeatedly affirmed summary judgment of design-patent invalidity and non-infringement on documentary records without any expert testimony. Third, the August 22, 2022 and October 3, 2022 Schramm Freedom-to-Operate Analyses are record documents relevant to notice, good faith, subjective intent, and the specific limitations and visual comparisons they address, and Plaintiffs themselves cite the Schramm Analyses as authoritative. Fourth, the *Centricut* exception applies squarely to the simple, easily understandable "three magnet" limitation Plaintiffs themselves treat as dispositive. Fifth, Plaintiffs' own cited authority (*Berkheimer*) confirms that § 101 patent-eligibility includes underlying factual questions that preclude summary judgment. Sixth, the '109 Patent abandonment/revival defense rests on the prosecution record itself — a documentary question requiring no expert.

### i. Plaintiffs Bear the Initial Summary-Judgment Burden while the Clear-and-Convincing Standard Goes to the Trial Finder of Fact

Plaintiffs misstate the operative legal standard. "Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment "will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary-judgment stage, the question is whether the record permits a reasonable jury to find

for the non-movant under the applicable substantive standard — not whether the non-movant has already proven its case to the applicable standard.

The Supreme Court has been explicit on this point in the patent context. In *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91 (2011), the Court reaffirmed that "a defendant seeking to overcome [the presumption of validity] must persuade the factfinder of its invalidity defense by clear and convincing evidence." *Id.* at 97. The factfinder, in this case, is the jury — not the Court at summary judgment. The summary-judgment inquiry is whether the record evidence, viewed in the light most favorable to Defendants, would permit a reasonable jury to find clear and convincing evidence of invalidity. *Anderson*, 477 U.S. at 254-55 (Court "must view the evidence presented through the prism of the substantive evidentiary burden," but the question remains whether a reasonable jury could find for the non-movant).

Plaintiffs' brief collapses these standards. They argue that Defendants cannot prove statutory invalidity as a matter of law because no expert was disclosed. (Pl. MPSJ ¶¶ 3, 68.) But the issue at summary judgment is not whether Defendants have already proved invalidity — it is whether the record contains evidence from which a reasonable jury could so find. The presence of substantial documentary evidence in the record — including Plaintiffs' own admissions about the accused product's configuration (¶¶ 34-36) and the Schramm Analyses (¶¶ 16-19) — is sufficient to defeat summary judgment regardless of whether Defendants have formally retained a Rule 26(a)(2) expert.

## ii. The Federal Circuit Routinely Grants Design-Patent Summary Judgment on Documentary Records Without Expert Testimony

Plaintiffs' "no expert = no defense" theory is squarely foreclosed by Federal Circuit precedent on design-patent invalidity and non-infringement. The Federal Circuit has affirmed summary judgment in design-patent cases on documentary records — typically consisting of patent drawings, prior-art images, and accused-product photographs — without any expert testimony at all.

The seminal authority is *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc), cert. denied, 556 U.S. 1167 (2009). The en banc Federal Circuit held that the "'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." *Id.* at 678. That test — derived from *Gorham Manufacturing Co. v. White*, 81 U.S. 511, 528 (1871) — is grounded in the perspective of an ordinary observer, not a person of ordinary skill in the art (POSITA). *Egyptian Goddess*, 543 F.3d at 672; *id.* at 676 (the comparison is "viewed in light of the prior art" through the eyes of "the hypothetical ordinary observer"). Because the relevant perspective is that of a lay consumer, the design-patent inquiry is by its nature accessible to factfinders without expert testimony.

In *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326 (Fed. Cir. 2014), the Federal Circuit affirmed summary judgment of design-patent obviousness based on a documentary record without expert testimony. The court held that "[s]ummary judgment of obviousness is appropriate if 'the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors.'" *Id.* at 1331. Critical here, the Federal Circuit specifically endorsed the trial court's ability

19

to perform the design-patent comparison without expert assistance: a "trial court judge may determine almost instinctively whether the two designs create basically the same visual impression." *Id.* at 1331-32 (citation omitted). *MRC Innovations* was decided on a documentary record consisting of patent drawings and product photographs — no expert testimony was required, and certainly none was treated as indispensable.

The Federal Circuit reaffirmed the same approach in *Lanard Toys Ltd. v. Dolgencorp LLC,* 958 F.3d 1337 (Fed. Cir. 2020), affirming summary judgment of design-patent non-infringement on the documentary record. The court explained that "the attention of the ordinary observer 'will be drawn to those aspects of the claimed design that differ from the prior art'" and confirmed that design patents "typically are claimed as shown in drawings." *Id.* at 1342–1343. Where a design contains both functional and non-functional elements, claim scope must be construed to identify the non-functional aspects. *Sport Dimension, Inc. v. Coleman Co.,* 820 F.3d 1316, 1320 (Fed. Cir. 2016). No expert testimony was required.

These cases compel denial of Plaintiffs' motion as to design-patent invalidity. The asserted design patents (D788,451, D811,731, D836,329, D841,979) all claim ornamental features visible from patent drawings; the prior-art references Defendants have identified (including U.S. Design Patents D543,353, D543,354, D718,523, D356,677, and D770,172) are themselves documentary references; and the accused product is depicted in photographs in the record. (Pl. MPSJ ¶ 55; Pl. App. Ex. 11; Dkt. 157, Tab 19.) On this documentary record, a reasonable jury — applying *Egyptian Goddess*'s ordinary-observer framework as filtered through functionality (*Sport Dimension*; *Lanard Toys,* 958 F.3d at 1342) and the prior-art context (*Egyptian Goddess,* 543 F.3d at 676; *MRC Innovations,* 747 F.3d at 1331) — could find clear-and-convincing evidence that the

20

asserted design patents are invalid as obvious or anticipated, or are limited to non-infringing scope by the prior art. Summary judgment must be denied.

### iii. The Schramm FTOs Are Record Documents Relevant to Notice, Subjective Intent, and Good Faith

Plaintiffs cite *Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304 (Fed. Cir. 2002), for the proposition that invalidity proof "typically" requires expert testimony on an element-by-element basis. (Pl. MPSJ ¶ 72, quoting *Schumer*, 308 F.3d at 1315.) The qualifier "typically" does real in that sentence, and *Schumer* itself was a summary-judgment case in which the Federal Circuit vacated an invalidity grant because a supporting declaration "lack[ed] the requisite clarity" — not because expert testimony is categorically required to oppose summary judgment. *Id.* at 1315–1316.

Defendants do not present the Schramm Analyses as substitute expert testimony. The Analyses are record documents that go to notice, good faith, subjective intent, and the specific claim limitations and ornamental features compared therein. The August 22, 2022 Schramm Analysis identifies the '530 Patent's three-magnet limitation and concludes the accused product does not literally practice that limitation. (Pl. App. Ex. 15, pp. 1–2.) The October 3, 2022 Schramm Analysis (D. Opp. App. Tab 1) provides visual, design-by-design comparisons of the accused product to each asserted design patent and identifies specific ornamental differences. The underlying materials — the asserted patents, prosecution histories, accused-product photographs, prior-art references, and Plaintiffs' own LPR disclosures — are independently before the Court under Rule 56(c)(1).

21

Plaintiffs themselves repeatedly cite the August 22 Schramm Analysis as record evidence (Pl. MPSJ ¶¶ 16–18, 84, 96; Pl. App. Ex. 15) and concede that it "may be relevant to Defendants' subjective intent at trial as to the '530 Patent." (Pl. MPSJ ¶ 96.) That is the use Defendants make of it. Plaintiffs cannot rely on the FTOs when they advance Plaintiffs' narrative and disqualify them when they support Defendants' defense.

### iv. *Centricut*'s Exception Applies Squarely to the "Three Magnet" Limitation Plaintiffs Themselves Treat as Dispositive

Plaintiffs concede that the Federal Circuit "has acknowledged that expert testimony is sometimes unnecessary where the technology is 'easily understandable' without expertise." (Pl. MPSJ ¶ 74, quoting *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369-70 (Fed. Cir. 2004).) Plaintiffs argue this exception does not apply because the technology involves "magnetic-retention engineering" — a complex field they characterize as requiring expert testimony. (Pl. MPSJ ¶ 75.) But the central limitation Plaintiffs themselves emphasize is far simpler than that framing suggests: it is the requirement that the accused product contain three or more magnets.

Plaintiffs' own SUMF defines the accused product as having "[a] single magnet . . . integrated into each end of the flap such that when the flap is folded, the magnets engage each other." (Pl. MPSJ ¶ 34.) Plaintiffs' own SUMF further admits that "[t]he accused Her Tactical Products do not include three magnets." (Pl. MPSJ ¶ 36.) Counting the number of magnets in a product —a key issue here for both non-infringement and invalidity—requires no expert testimony. A lay observer can perform that comparison. The dispositive limitation is therefore "easily understandable" within *Centricut*'s exception. Plaintiffs cannot simultaneously treat the

22

magnet-count question as obvious enough to support their SUMF (¶¶ 34-36) and complex enough to require expert testimony (¶ 75).

For design-patent invalidity, the *Centricut* exception applies a fortiori. The Federal Circuit has held that the "ordinary observer" who performs the design-patent comparison is by definition not a person of ordinary skill in the art. *Egyptian Goddess*, 543 F.3d at 676-78. The comparison is performed from the perspective of an "ordinary observer, giving such attention as a purchaser usually gives." *Id.* (quoting *Gorham, 81 U.S. at 528*). Expert testimony is not categorically required — and is often not used at all — in design-patent comparisons. See *MRC Innovations, 747 F.3d at 1331-32* (trial court may "determine almost instinctively whether the two designs create basically the same visual impression").

*Centricut* itself confirms the contrast. The Federal Circuit there declined to apply the easily-understandable exception only because the technology at issue — measuring "work function" in plasma arc cutting torches — was so opaque that the district court labeled the field a "black art." 390 F.3d at 1369. Counting magnets and comparing ornamental design features through the eyes of an ordinary observer are not black arts. In short, a lay trier of fact is fully capable of reviewing the asserted claims of the asserted patents and comparing them to prior art references.

### v. § 101 Patent-Eligibility Includes Underlying Factual Questions that Preclude Summary Judgment Under *Berkheimer*

Plaintiffs cite *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), for the proposition that § 101 patent-eligibility can involve underlying questions of fact. (Pl. MPSJ ¶ 77.) That citation is dispositive of the categorical relief Plaintiffs seek. *Berkheimer* vacated summary judgment of §

101 ineligibility because there was "a genuine issue of material fact" about whether the claims described well-understood, routine, and conventional activities. 881 F.3d at 1369–1370. Plaintiffs do not ask the Court to adjudicate the § 101 defense on its merits; they ask the Court to eliminate it categorically because Defendants did not serve a Rule 26(a)(2) expert report. At minimum, the record identifies pre-existing magnetic-holster technology and percipient witnesses with knowledge of that technology (Pl. App. Ex. 10, at 4-5), which prevents a no-expert categorical disposition on the present record.

### vi. The '109 Patent Abandonment/Revival Defense Rests on the Prosecution Record

The '109 abandonment/revival defense turns on PTO prosecution records, not technical expert opinion. Plaintiffs' "no expert" shortcut does not independently dispose of a defense that rests on documentary prosecution history properly before the Court under Rule 56(c). Plaintiffs' motion does not address that prosecution record on the merits.

For the foregoing reasons, the Court should deny Plaintiffs' motion as to invalidity. The invalidity defenses survive summary judgment.

### B. The Knowledge Findings Plaintiffs Request Cannot Be Entered as a Matter of Law

Plaintiffs request two abstract knowledge findings: that Ms. Johnston knew of the '530 Patent by August 22, 2022, and of the '109 Patent by September 2023. (Pl. MPSJ ¶ 88.) Plaintiffs frame these findings as antecedent to a future inducement determination at trial, while disclaiming any present finding on inducement intent. (*Id.* ¶ 90.) But the knowledge findings as framed are not as innocuous as Plaintiffs suggest. Each fails on the present record.

**i. Awareness of the '530 Patent's Existence Is Not Knowledge of Infringement, Inducement Intent, or Willfulness**

Defendants do not dispute that the August 2022 correspondence identified the '530 Patent. (D. Opp. App. Tab 2.) That establishes, at most, awareness of the patent's existence. It does not support the broader finding Plaintiffs seek.

The Supreme Court has been explicit on this point. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015), holds that "liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement." *Id.* at 639 (cleaned up). A defendant may know of a patent and reasonably believe its conduct does not infringe — and inducement then fails on the second prong. *Id.* at 641–642.

The same record Plaintiffs invoke also shows that, within days of the August 19, 2022 cease-and-desist email, Ms. Johnston obtained and produced a registered patent agent's non-infringement analysis (Pl. App. Ex. 15) and communicated a good-faith non-infringement position. (D. Opp. App. Tab 3 (Counterclaim ¶ 5).) The Court should deny Plaintiffs' requested finding as framed, or limit any finding to the narrow fact that the August 2022 correspondence identified the '530 Patent.

**ii. The August 22, 2022 FTO Establishes Good-Faith Non-Infringement Belief, Not Bare Knowledge of Infringement**

The very document Plaintiffs cite to date Ms. Johnston's knowledge — the August 22, 2022 Schramm Freedom-to-Operate Analysis — contradicts the unstated inference Plaintiffs ask the Court to draw. The Schramm Analysis is the documentary expression of a registered patent agent's professional opinion that the accused product does not infringe the '530 Patent.

25

Mr. Schramm concluded that "non-infringement of [the '530 Patent] by the Product is so obvious" because the accused product "has less than three magnets" — the central claim limitation. (Pl. App. Ex. 15, p. 1-2.) Plaintiffs themselves repeat the Schramm Analysis's terms verbatim in their SUMF. (Pl. MPSJ ¶¶ 17-18.) Plaintiffs also concede that the Schramm Analysis "may be relevant to Defendants' subjective intent at trial as to the '530 Patent." (Pl. MPSJ ¶ 96.)

The Federal Circuit has recognized that good-faith reliance on patent counsel's non-infringement opinion is a critical fact in determining personal-officer liability. In *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544 (Fed. Cir. 1990), the Federal Circuit reversed a district court's finding of officer liability for inducement, holding that the infringing activity "continued because of [defendant's] good faith belief, based on the advice of counsel, that it was not infringing." *Id.* at 553. The Court was explicit that "it must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement." *Id.* at 553. On that record — including the advice-of-counsel evidence — the Federal Circuit reversed officer liability because there were "neither compelling evidence nor any findings that the officers had specific intent [to cause another to infringe]." *Id.* at 554.

The same logic applies here. Even if the Court were inclined to enter a bare "knowledge" finding tied to August 22, 2022, that finding cannot be construed to support an inference of culpable knowledge or specific intent for inducement purposes, because the very document establishing the date is itself documentary evidence of the opposite mental state. Plaintiffs' attempt to extract a bare "knowledge" finding from this record — divorced from the Schramm Analysis's

content — would invite the precise prejudgment of inducement intent that Plaintiffs purport to reserve for trial. (Pl. MPSJ ¶¶ 90, 110.) The Court should decline the invitation.

### iii. The '109 Patent Did Not Exist Pre-September 5, 2023; *State Industries* Bars Pre-Issuance Knowledge Findings

Plaintiffs request a finding that Ms. Johnston "knew of the '109 Patent by September 2023." (Pl. MPSJ ¶ 95.) That finding fails on a more fundamental ground: the '109 Patent did not issue until September 5, 2023, and Plaintiffs filed the original Complaint on September 19, 2022 — nearly a full year before the '109 even existed. (Pl. MPSJ ¶¶ 23, 25.)

The Federal Circuit's controlling decision on pre-issuance knowledge is *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226 (Fed. Cir. 1985). There, the plaintiff's '879 patent issued April 28, 1981; suit was filed twenty-two days later. *Id.* at 1235. The Federal Circuit reversed a finding of willful infringement based on the defendant's pre-issuance design of a competing product.

The Federal Circuit held that "[t]o willfully infringe a patent, the patent must exist and one must have knowledge of it." *State Indus.*, 751 F.2d at 1236. The court explained the doctrinal core: "Until State got the '879 patent, 22 days before suit, Smith had a perfect right to make and sell its LIME TAMER, without question, because State had no 'patent rights' which covered it. . . . A patent has no retroactive effect. 35 USC § 271(a)." *Id.* at 1237. The court reinforced that pre-issuance "patent pending" notices give no knowledge, and that pre-issuance design-around is "the stuff of which competition is made." *Id.* at 1235–1237.

The statutory framework confirms the same result. Section 271(a) defines liability for conduct "during the term of the patent." 35 U.S.C. § 271(a). The patent term begins on the date

the patent is granted. 35 U.S.C. § 154(a)(2). And the Supreme Court has made clear that inducement under § 271(b) requires not merely knowledge of a patent's existence but knowledge that "the induced acts constitute patent infringement." *Commil*, 575 U.S. at 639. Where no patent exists, no acts can "constitute patent infringement" of it.

The "knowledge by September 2023" finding Plaintiffs request risks reading these doctrinal limits out of the case. The finding could be misread as implying knowledge of the '109 Patent during the pre-issuance period — and used at trial to support inducement intent for conduct that occurred before the patent existed. Plaintiffs' own original Complaint, filed September 19, 2022 (D. Opp. App. Tab 4; Dkt. 2), asserted the '530 Patent and the four design patents but did not and could not assert the '109 Patent because it had not yet issued. Plaintiffs' own reservation language is unclear on this point: they request a finding that Ms. Johnston "knew of the '109 Patent by September 2023" without specifying whether the awareness arose contemporaneously with issuance (September 5, 2023) or at some point thereafter. (Pl. MPSJ ¶¶ 94-95.) Defendants do not dispute that Ms. Johnston became aware of the '109 Patent in September 2023, after it issued. Any finding should be limited to that narrow temporal fact and should not imply pre-issuance knowledge, knowledge of infringement, inducement intent, willfulness, or culpability. A broader finding would be an error of law under *State Industries*.

Plaintiffs also acknowledge that "the duration and quantum of post-issuance conduct as to the '109 Patent is reserved for trial." (Pl. MPSJ ¶ 95.) That concession reinforces that no SJ-level finding on '109 knowledge is appropriate; the entire conduct-side analysis for the '109 begins September 5, 2023 at the earliest, and the very record evidence Plaintiffs cite establishes that Ms. Johnston halted accused-product sales "in September" 2023 because she was "researching"

28

the new patent. (Pl. MPSJ ¶ 27; Johnston Dep. 97:11-98:1.) That conduct is the opposite of culpable infringement; it is the "design-around" behavior *State Industries* described as "the stuff of which competition is made." 751 F.2d at 1235-36.

### C. Material Factual Disputes Preclude Any Personal-Acts Finding Against Ms. Johnston

Plaintiffs may argue at trial that Ms. Johnston's conduct supports personal participation. The present motion, however, asks for something broader: a conclusive pretrial finding that collapses direct infringement, personal capacity, corporate agency, inducement intent, and willfulness into a single "personal acts" determination. The record does not require that finding as a matter of law. Plaintiffs' own SUMF describes the same conduct alternatively as E & R's conduct and as Ms. Johnston's conduct — confirming that the issue is one of characterization, not an undisputed fact suitable for Rule 56(g) treatment.

Plaintiffs ask the Court to enter a finding that Ms. Johnston "personally performed, directed, and assisted E&R LLC's accused . . . acts, and may not avoid personal responsibility for those acts merely because she acted 'for E&R' or 'in [her] capacity as an employee of E&R.'" (Pl. MPSJ ¶ 111(b).) This finding fails for five reasons: Plaintiffs conflate two distinct theories of officer liability; the documentary record shows E & R LLC, not Ms. Johnston personally, performed the accused acts; Ms. Johnston's deposition contains her express disclaimer of personal capacity; the case Plaintiffs principally rely on (*Lubby*) is distinguishable on procedural posture and record; and to the extent Plaintiffs proceed on a derivative theory, they have not attempted the veil-piercing analysis *Wordtech* requires.

29

### i. Plaintiffs Conflate Direct and Derivative Liability

Federal Circuit law recognizes two distinct theories of officer liability for patent infringement, each with a different doctrinal framework. The first is direct personal liability for the officer's own acts of infringement — i.e., acts the officer personally performs that, in themselves, constitute infringement under § 271. The second is derivative liability — i.e., holding the officer responsible for the corporation's infringing acts based on the officer's relationship to the corporation. Each theory has different elements and a different controlling test.

The Federal Circuit clarified this dichotomy in *Lubby Holdings LLC v. Chung*, 11 F.4th 1355 (Fed. Cir. 2021). There, the court explained that "corporate officers can be personally liable for their own acts of infringement, even if those acts were committed in their corporate capacity." (*Id*. at 1358.) That is, direct liability. The court continued: "Instead, we interpret *Wordtech* as reinforcing the rule that a corporate officer — or perhaps only a corporate owner — cannot be found derivatively liable for the corporation's infringement without piercing the corporate veil." *Id.* The court drew this distinction from *Astornet Techs., Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015), which explained that "veil-piercing standards do not govern the separate issue of direct liability for one's own wrongful acts, as the governing law defines those wrongs."

Plaintiffs' brief blurs this distinction throughout. They cite both *Wordtech* and *Lubby* (Pl. MPSJ ¶¶ 106-07) but do not distinguish between direct and derivative theories. Without that distinction, no coherent summary judgment finding is possible. If Plaintiffs proceed on a direct-liability theory, they must show Ms. Johnston personally performed acts that themselves constitute § 271 infringement — not merely that she "directed" or "supervised" E&R's conduct in a corporate

capacity. If Plaintiffs proceed on a derivative theory, they must satisfy the Utah veil-piercing standard. They have done neither at this stage.

### ii. The Record Shows E & R LLC, Not Ms. Johnston Personally, Performed the Accused Acts

Plaintiffs' own SUMF establishes that E & R LLC — not Ms. Johnston personally — performed the accused acts. Section ii of Plaintiffs' SUMF is titled "E&R LLC's Acts of Designing, Funding, Selling, and Operating Online Channels for the Accused Product." (Pl. MPSJ heading at ¶¶ 28-40.) Within that section, every admission of accused conduct identifies E & R LLC as the actor:

• "E&R LLC designed, caused to be designed, or assisted in the design of one or more of the Accused Instrumentalities." (Pl. MPSJ ¶ 28.)

• "E&R LLC funded, aided, or allowed its assets to fund or aid in the design, production, marketing, or sales . . . ." (Pl. MPSJ ¶ 29.)

• "E&R LLC sold, caused to be sold, or allowed to be sold one or more of the Accused Instrumentalities." (Pl. MPSJ ¶ 30.)

• "E&R LLC stored Accused Instrumentalities at the residential address . . . ." (Pl. MPSJ ¶ 32.)

• "E&R LLC owned, operated, created, or managed the content of [the online sales channels]." (Pl. MPSJ ¶ 33.)

These admissions — drawn from E & R LLC's own RFA responses (Pl. App. Ex. 5) — establish that the accused acts of designing, funding, selling, storing, and operating sales channels were performed by E & R LLC, not by Ms. Johnston in any personal capacity. Plaintiffs

31

themselves frame the conduct that way. They cannot now reframe the same conduct as Ms. Johnston's personal acts on the strength of the same record.

The corporate-form evidence reinforces this conclusion. E & R LLC was formed in 2017 — five years before the accused product launched — for the purpose of "[r]unning real estate." (Johnston Dep. 91:17-20.) "Her Tactical" is a d/b/a name under which E & R LLC operates one of its lines of business. (*Id.* 91:21-92:22.) E & R LLC maintains a single business checking account that receives all payments and distributes funds to vendors, employees, and other obligations. (*Id.* 92:12-17.) Ms. Johnston has testified that she does not "use [her] personal checking account" for business activity. (*Id.* 99:5-6.) These facts are consistent with corporate-form operation, not personal-actor activity.

### iii. Ms. Johnston's Express Disclaimer of Personal Capacity Creates a Genuine Factual Dispute

Plaintiffs quote Ms. Johnston's deposition at 13:25-14:11 for the proposition that she "personally designed the accused product on E&R's behalf and personally engages in every act . . . : 'It's the same for all of them.'" (Pl. MPSJ ¶ 43, quoting Johnston Dep. 13:25-14:11.) But Plaintiffs quote selectively. The full exchange contains Ms. Johnston's express denial of personal capacity:

- So when I see a similar pattern here, questions 2, 3, 4, 5, 6, where you deny it and E&R admits it, what you're saying is you did it, but you did it on behalf of E&R, not in any personal capacity; is that what you are saying?

- Not in any personal capacity. I'm employed by E&R.

- Okay.

32

- It's the same for all of them.

(Johnston Dep. 14:4-12.) The phrase "It's the same for all of them" refers to Ms. Johnston's consistent denial of personal capacity across multiple interrogatory questions — not, as Plaintiffs assert, to an admission that she "personally engages in every act." Two pages later, Plaintiffs' counsel asked the same question in different form and received the same answer:

- So back to where we were, Ms. Johnston, questions 4, 5, and 6, your personal denials, you did in fact –

- As an employee, yes.

- – as an employee for both 4, 5, and 6, correct?

- Yeah.

(Johnston Dep. 16:11-17.) Ms. Johnston's testimony, fairly read, is a consistent disclaimer of personal capacity. Plaintiffs' selective quotation reverses the testimony's meaning. The factual question of whether Ms. Johnston's acts were "personal" or "corporate-agent" is genuinely disputed by Ms. Johnston's own sworn testimony. At minimum, under *Anderson v. Liberty Lobby, 477 U.S. 242 (1986)*, this is the kind of credibility and characterization question that must go to the jury. *See id.* at 255.

### iv. *Lubby* Is Distinguishable on Procedural Posture and Record

Plaintiffs rely heavily on *Lubby Holdings LLC v. Chung*, 11 F.4th 1355 (Fed. Cir. 2021). (Pl. MPSJ ¶ 107.) *Lubby* is distinguishable on two independent grounds: procedural posture and factual record.

First, *Lubby* applied Rule 59(a) "substantially constrained" abuse-of-discretion review of a jury verdict — a deferential standard the Federal Circuit characterized as requiring "an absolute

33

absence of evidence" to overturn the verdict. *Lubby*, 11 F.4th at 1358. The Federal Circuit affirmed personal liability against Chung not because the record compelled it, but because the deferential Rule 59(a) standard tolerated the jury's findings on a thin record. The standard here is fundamentally different: Rule 56(a) de novo review with all reasonable inferences drawn in favor of the non-movant. *Anderson*, 477 U.S. at 255. What survived in *Lubby* under deferential post-verdict review cannot be entered as a matter of law at summary judgment.

Second, the *Lubby* record is fundamentally different from this one. Chung testified personally to designing the accused products, personally deciding to sell them through his company, and personally engaging in design-side conduct. *Lubby*, 11 F.4th at 1358. Ms. Johnston, by contrast, has expressly testified that her conduct was "[n]ot in any personal capacity. I'm employed by E&R." (Johnston Dep. 14:9-10.) The *Lubby* record contained an officer admitting personal performance; the record here contains an officer denying it. The Federal Circuit's own qualifier in *Lubby* — "or perhaps only a corporate owner" — acknowledges doctrinal uncertainty at the margin where a single-member-LLC officer's "personal" acts shade into "corporate" acts. *Lubby*, 11 F.4th at 1358. This is precisely such a marginal case. *Lubby* supplies the framework, not Plaintiffs' requested result. Its rule is that an officer may be liable for her own infringing acts; derivative liability for corporate infringement requires veil-piercing. *Lubby* did not hold that comparable facts compel a personal-acts finding as a matter of law at summary judgment.

**v. To the Extent Plaintiffs' Theory Is Derivative, *Wordtech* Requires Veil-Piercing — Which Plaintiffs Have Not Attempted**

If, despite the foregoing, Plaintiffs' theory is that Ms. Johnston should be held liable for E & R LLC's accused acts (rather than for her own personally-performed acts), that theory is

derivative, and *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010), requires veil-piercing. *Id.* at 1313 ("[T]he 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'"); *Lubby*, 11 F.4th at 1358 (interpreting *Wordtech* as the controlling derivative-liability framework).

Plaintiffs have not argued alter ego. They have not addressed the Utah veil-piercing factors. They have not introduced evidence that E & R LLC fails to observe corporate formalities, commingles assets, was undercapitalized, or otherwise satisfies the alter-ego standard. On this record, a veil-piercing argument would fail. Plaintiffs cannot achieve through a "personal acts" label what they cannot achieve through veil-piercing analysis.

The Court should deny Plaintiffs' motion as to the personal-acts finding. Material factual disputes preclude summary judgment, and Plaintiffs' doctrinal framework does not support the relief they request.

### D. Rule 56(g) Alternative Findings Are Inappropriate

Plaintiffs request, as fallback relief, that the Court enter Rule 56(g) findings treating each of 62 SUMF paragraphs as established for trial. (Pl. MPSJ ¶ 111(c).) Rule 56(g) is discretionary; it provides that a court "may" treat as established only "material fact[s]" that are "not genuinely in dispute." Fed. R. Civ. P. 56(g). Plaintiffs satisfy neither condition.

Many of the proposed findings are genuinely disputed, as Section III demonstrates — including the personal-vs.-corporate-capacity characterization, the meaning of the deemed admission, and the legal effect of the FTOs. To the extent any isolated fact is undisputed, Plaintiffs still have not shown that the fact is material in the form requested. The proposed findings are

characterizations or evidentiary fragments whose only purpose is to influence issues Plaintiffs themselves reserve for trial — direct infringement, inducement intent, willfulness, damages, and Cheal individual liability. Rule 56(g) is not a vehicle for litigating-by-installment what cannot be won on the present motion, or for converting contested factual narratives into trial findings divorced from any issue being adjudicated.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Consolidated Motion for Partial Summary Judgment in its entirety.

DATED this 22nd day of May, 2026.

Respectfully submitted,

**KNH LLP**

*/s/ Chad Pehrson*
Chad Pehrson (Utah Bar No. 12622)
Nathan Gardner (Utah Bar No. 19537)
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of May, 2026, I caused a true and correct copy of the foregoing DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CONSOLIDATED MOTION FOR PARTIAL SUMMARY JUDGMENT to be served upon all counsel of record via the Court's CM/ECF system:

Brandon James Leavitt
LEAVITT ELDREDGE LAW FIRM
4204 SW Green Oaks Blvd., Suite 140
Arlington, TX 76107
brandon@uslawpros.com

Jason K. Smith
MK SMITH, APC
9891 Irvine Center Dr., Ste. 200
Irvine, CA 92618
jsmith@mks-law.com

*/s/ Chad S. Pehrson*