Brandon James Leavitt, Tx Bar No. 24078841 (pro hac vice)
LEAVITT & ELDREDGE LAW FIRM
4204 S.W. Green Oaks Blvd., Suite 140
Arlington, TX 76017
(214) 727-2055 | brandon@uslawpros.com

Jason K. Smith (Utah Bar No. 14323)
MK SMITH, APC
9891 Irvine Center Dr., Ste. 200, Irvine, CA 92618
(801) 916-8723 | jsmith@mks-law.com

**ATTORNEYS FOR PLAINTIFFS**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS,<br><br>    Plaintiffs,<br><br>*v.*<br><br>HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual,<br><br>    Defendants. | **PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKTS. 152, 153, AND 155)**<br>Case No. 1:22-cv-00121-AMA-DBP<br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Dustin B. Pead |

I.    **INTRODUCTION**

1.      Defendants—all represented by the same counsel—filed three summary-judgment motions on the same day (Dkts. 152, 153, 155), supported by one Joint Appendix (Dkt. 157) and corrected by one Joint Errata (Dkt. 158). The motions are, in substance, a single summary-judgment package: the Johnston and Cheal motions incorporate the Her Tactical motion in full and rest on the same premise. Plaintiffs respond to all three together. Summary judgment should be denied because the motions depend on a clean-separation narrative the record does not support. Ms. Johnston personally performed the accused acts and said so under oath—"[i]t's the same for all of them." Pls' App., ECF 151, Ex. 1 (Johnston Dep.) 13:25–14:11. Mr. Cheal's "no role" story

**Plaintiffs' Consolidated Opposition to Defendants' MSJs**                    **Page 1 of 16**

is contradicted by his own sworn discovery, by video of him producing the accused product from the truck, describing its features to a customer, and routing payment to Ms. Johnston's personal Venmo, and by his declaration's admission that he financed the business on a personal credit card. And the Trust theory now advanced contradicts Mr. Cheal's sworn statement that the Trust "no longer functions in any respect" and that he—not the Trust—owns the vehicle. These are jury questions. Plaintiffs narrow the issues: they do not oppose summary judgment on literal infringement of the '530 Patent, or on the product-configuration trade-dress theory; but the remaining issues—the '530 Patent under the doctrine of equivalents, the '109 Patent, the four design patents, Ms. Johnston's and Mr. Cheal's personal participation, the Trust, and Plaintiffs' separate false-advertising/unfair-competition allegations—turn on genuine disputes of material fact.

## II.    PRELIMINARY OBJECTION TO DEFENDANTS' THREE-MOTION STRUCTURE

2.    Plaintiffs respond to Dkts. 152, 153, and 155 in a single consolidated memorandum because Defendants briefed them as one cross-incorporated package on a single joint evidentiary record. Dkt. 152 at 2; Dkt. 153 at 2 n.1; Dkt. 155 at 2 n.1; Dkt. 157; Dkt. 158. To the extent Defendants contend a separate response to each motion was required, Plaintiffs object: requiring three responses to the same incorporated merits showing would multiply briefing without purpose, and DUCivR 56-1(b) contemplates that simultaneous summary-judgment motions may be addressed as one. This objection is argument made within Plaintiffs' response and is not a separately filed motion. See DUCivR 7-1(a)(3).

**Plaintiffs' Consolidated Opposition to Defendants' MSJs**                    **Page 2 of 16**

### III.   BACKGROUND AND NARROWING OF ISSUES

3.      This is a patent and unfair-competition case about an inside-the-waistband (IWB) magnetic-retention gun holster marketed to women. Plaintiff JM4 Tactical, LLC owns two utility patents (U.S. Patent Nos. 9,784,530 ("the '530 Patent") and 11,747,109 ("the '109 Patent")) and four design patents (D788,451; D811,731; D836,329; D841,979) on the holster Plaintiff James Chadwick Myers invented. Defendants sell a competing magnetic holster under the brand "Her Tactical." Defendant Vicky Arlene Johnston is the sole member of the two defendant LLCs (E & R LLC and Her Tactical, LLC); Defendant Blake Cheal is her husband, sued individually and as settlor/trustee of the Blake and Tanya Cheal Family Living Trust.

4.      The accused product is a holster with a folded flap that carries one magnet at each end; when folded, the two magnets engage to retain the holster on an undergarment strap. The '530 Patent claims require three magnets; the accused product has two—so Plaintiffs do not contest literal '530 infringement. Plaintiffs do, however, oppose summary judgment on the '530 under the doctrine of equivalents; Defendants' contrary position rests on the legal scope and effect of the prosecution history, which Plaintiffs dispute. See § III.A. The '109 claims two magnets but in a particular two-component structure, raising a separate claim-application/equivalence question. The Court adopted the plain and ordinary meaning of the disputed terms on December 18, 2025 (Dkt. 144); it did not decide infringement, literal or by equivalents.

5.      Defendants seek summary judgment on every patent and trade-dress theory and on the individual liability of Ms. Johnston, Mr. Cheal, and the Trust. To focus the Court, Plaintiffs narrow the issues. Plaintiffs do not oppose summary judgment on literal infringement of the '530 Patent or on the product-configuration trade-dress theory, for trial-efficiency purposes only. What remains are genuine disputes of material fact on: (i) the '530 Patent under the doctrine of equivalents; (ii) infringement of the '109 Patent; (iii) infringement of the four design patents;

**Plaintiffs' Consolidated Opposition to Defendants' MSJs**                    **Page 3 of 16**

(iv) Ms. Johnston's personal performance of the accused acts; (v) Mr. Cheal's participation and the Trust's separateness; and (vi) Plaintiffs' separate false-advertising and unfair-competition allegations, which Defendants' motion does not address. Defendants seek to resolve several of these disputes through declarations executed after the close of fact discovery, contradicting their own prior sworn responses.

## IV.    RESPONSE TO DEFENDANTS' STATEMENTS OF UNDISPUTED MATERIAL FACTS

6.    Per DUCivR 56-1(c)(3), Plaintiffs restate and respond only to those facts they contend are genuinely disputed or immaterial. Facts not listed below are either undisputed, addressed in Plaintiffs' Statement of Additional Material Facts, or immaterial to the issues on which the motions turn. Citations are to Plaintiffs' Appendix (ECF 151), Defendants' Joint Appendix (ECF 157), and Plaintiffs' Supplemental Appendix (filed herewith).

### A.    Her Tactical / E & R Motion (Dkt. 152)

| Defendants' Asserted Fact | Plaintiffs' Response | Record |
|---|---|---|
| ¶ 4. Plaintiffs' Final Infringement Contentions identify the same flap component as both the "fastener protrusion" and the "fastener housing" of '109 claim 1. | **Disputed / immaterial.** The contentions map the accused structure to each limitation and, alternatively, establish equivalence because any distinction is "not substantial." This characterization presents a claim-application/equivalence question for the jury. | Defs' App., ECF 157, Tab 3 (Pls' Final Infringement Contentions) at 8–11. |
| ¶ 5. Each accused product's magnets are both embedded in the flap, and the body "has no separately-extending housing on its back side." | **Disputed.** Whether the accused product satisfies the "fastener housing extending from the body" limitation—literally or by equivalents—is the contested issue at the heart of the '109 dispute, not an undisputed fact. | Defs' App., ECF 157, Tab 3 at 8–11. |
| ¶ 13. Three asserted design patents issued with the '451 cited as prior art. | **Immaterial.** That the PTO distinguished Plaintiffs' own designs from one another does not establish that the accused design is not substantially | Egyptian Goddess, 543 F.3d at 677–78. |

| Defendants' Asserted Fact | Plaintiffs' Response | Record |
|---|---|---|
| | the same as any asserted design to an ordinary observer, which is the infringement question. | |
| ¶¶ 2, 6, 14. The '530 claims recite three magnets; the accused product has two; the PTO twice refused trade-dress registration as functional. | **Literal '530 and product-configuration trade dress not contested.** Plaintiffs do not contest literal '530 infringement and do not oppose summary judgment on the product-configuration trade-dress theory (issue-narrowing only). Plaintiffs DO oppose summary judgment on the '530 under the doctrine of equivalents (see Argument § III.A); do not concede the trade-dress theory was frivolous; and preserve their separate false-advertising/unfair-competition allegations (Compl. ¶¶ 85–91), which the motion does not address. | Dkt. 74 ¶¶ 84–92. |

### B.    Johnston Motion (Dkt. 153)

| Defendants' Asserted Fact | Plaintiffs' Response | Record |
|---|---|---|
| ¶ 2. Ms. Johnston is employed by Her Tactical and "does not engage in the holster business in her individual capacity." | **Disputed.** She testified she personally performs every operational act—design, marketing, sales, manufacturing communications, accounting, web development—and that the only distinction is she did them "for E & R": "[i]t's the same for all of them." | Pls' App., ECF 151, Ex. 1, 13:25–14:11; 94:14–18; 10:12–15. |
| ¶¶ 5–6. Ms. Johnston does not commingle funds; the personal-Venmo payment was a single, isolated occurrence. | **Disputed.** Her Tactical has no business Venmo account; she accepted at least two accused-product payments through her personal Venmo and paid the company's instructor (Cavalli) through that same personal account; all of her | Pls' App., ECF 151, Ex. 1, 100:6–13, 103:21–104:8; Ex. 2 (Cavalli Dep.) 15:14–19. |

| Defendants' Asserted Fact | Plaintiffs' Response | Record |
|---|---|---|
| | ventures run through one account. The motion itself concedes PayPal handles only "most" online payments (¶ 4). | |
| ¶ 8. "Family-owned business" marketing reflected only family support, not ownership. | **Disputed.** The website stated "We are a family owned business … My husband and I (Vicky) started Her Tactical," which Defendants revised after suit was filed. | Pls' Supp. App., Tab 23 (HT_SITE_REVISIONS_0038); Pls' App., ECF 151, Ex. 1, 145:4–12. |
| ¶ 9. The vehicle is "owned by The Blake and Tanya Cheal Family Living Trust" and its use was incidental. | **Disputed.** Mr. Cheal swore in discovery that the Trust "no longer functions in any respect" and that "the vehicle is in fact owned by Mr. Cheal." | Pls' App., ECF 151, Ex. 8 (Cheal Resp. to Interrog. 20; RFA 55). |
| ¶ 14. The contentions identify no sale by Ms. Johnston "in her individual capacity." | **Disputed / immaterial.** A corporate officer is personally liable for her own acts of infringement regardless of capacity; the "individual capacity" framing does not negate her admitted personal acts. See Argument § I. | Wordtech, 609 F.3d at 1316. |

### C.    Cheal Motion (Dkt. 155)

| Defendants' Asserted Fact | Plaintiffs' Response | Record |
|---|---|---|
| ¶¶ 6–7. Mr. Cheal never made, used, sold, or offered any Her Tactical product and never communicated about any holster. | **Disputed.** Investigator video shows Mr. Cheal producing the accused product from the truck, describing its colors, sizes, magnets, and comfort to a customer, and routing payment to Ms. Johnston's personal Venmo. | Pls' App., ECF 151, Ex. 1, 163:22–167:3 & Dep. Ex. 24; Pls' Supp. App., Tab 19 (JM4HT-0862 native video, filed by Notice of Nonelectronic Filing; representative stills and transcript excerpts). |
| ¶¶ 4, 10. Mr. Cheal received no financial benefit and no payment from any Her | **Disputed.** His declaration admits he financed Her Tactical's startup on a personal credit card in his name | Defs' App., ECF 157, Tab 18 (Cheal Decl.) ¶ 8; Pls' App., ECF |

| Defendants' Asserted Fact | Plaintiffs' Response | Record |
|---|---|---|
| Tactical sale, by any channel. | (purportedly reimbursed "by approximately early 2023"), contradicting his prior denial that he "funded, aided, or allowed [his] assets to fund" the business. | 151, Ex. 8 (Cheal Resp. to RFA 2). |
| ¶¶ 12–13. A functioning Trust owns the vehicle, which had only incidental contact with the business. | **Disputed.** Contradicted by Mr. Cheal's Interrogatory 20 and RFA 55 (Trust "no longer functions in any respect"; "Mr. Cheal in fact owns the truck"), and by surveillance showing the truck used to transport Her Tactical materials. | Pls' App., ECF 151, Ex. 8; Pls' Supp. App., Tabs 20–22 (JM4HT-0944–0946; 1152–1156; 1184). |
| ¶ 14. The contentions identify no sale by Mr. Cheal in his individual capacity. | **Disputed / immaterial.** His own sworn discovery admits he "utilized his truck to assist [Ms. Johnston] in transporting certain holsters owned by Her Tactical" and "does support his wife in her business endeavors." | Pls' App., ECF 151, Ex. 8 (Cheal Resp. to Interrog. 22). |

## V.    PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

7.    Ms. Johnston is the sole employee, owner, and officer of Her Tactical and personally designs, markets, sells, and distributes the accused product. Pls' App., ECF 151, Ex. 1, 10:12–15; 13:22–14:11; 94:14–18.

8.    Her Tactical has no business Venmo account; Ms. Johnston accepted at least two accused-product payments through her personal Venmo and paid the company's instructor (Grant Cavalli) through that personal account. Pls' App., ECF 151, Ex. 1, 100:6–13; Ex. 2, 15:14–19.

9.    All of Ms. Johnston's business ventures are run through a single E & R account. Pls' App., ECF 151, Ex. 1, 103:21–104:8.

10.    In sworn discovery, Mr. Cheal stated the Trust "no longer functions in any respect" and that he "in fact owns the truck" and "the home." Pls' App., ECF 151, Ex. 8 (Cheal Resp. to Interrog. 20; RFA 54–55).

11.     An investigator purchased an accused holster from Mr. Cheal out of the truck while he described the product and routed payment to Ms. Johnston's personal Venmo. Pls' App., ECF 151, Ex. 1, 163:22–167:3 & Dep. Ex. 24; Pls' Supp. App., Tab 19. The investigator separately documented a December 21, 2022 purchase from the residence, via Ms. Johnston's personal Venmo with home pickup. Pls' Supp. App., Tab 18 (JM4HT-0834).

12.     Mr. Cheal financed Her Tactical's startup on a personal credit card in his name. Defs' App., ECF 157, Tab 18 (Cheal Decl.) ¶ 8.

13.     After suit was filed, Defendants' public-facing materials changed in ways that tend to minimize Mr. Cheal's previously visible role: the "About Us" text "My husband and I (Vicky) started Her Tactical" was revised (10/30/22) and the couple photograph "BlakeVicky.jpg" was removed (12/10/22). Pls' Supp. App., Tabs 23–24 (HT_SITE_REVISIONS_0038, 0608); Pls' App., ECF 151, Ex. 1, 145:4–12, 148:12–149:5.

14.     The inventor testified the accused product "looks like" and is "substantially similar" to the '451 design, and that materials and configuration do not "functionally alter" the holster; he also confirmed the accused product uses magnetic retention. Pls' App., ECF 151, Ex. 3 (Myers Dep.) 163:12–18; 161:7–20; 166:4–167:13.

15.     Defendant Blake Cheal was never deposed in this action; the new matters asserted in his declaration were therefore never tested in discovery.

## VI.    EVIDENTIARY OBJECTIONS TO THE LATE-FILED DECLARATIONS

16.     Plaintiffs object, under DUCivR 7-1(b)(2), to the new factual matter in the Johnston and Cheal declarations (Dkt. 154; Dkt. 157, Tabs 17 & 18)—executed May 6–7, 2026—to the extent it was first disclosed after the August 22, 2025 close of fact discovery and was responsive to earlier discovery. Dkt. 129. The only reopening was for "Defendants' updated sales records."

Dkt. 148 ¶ 2.1; Dkt. 149. Such matter—including the Trust's purported functioning status and ownership of the vehicle and the personal-credit-card financing—is untimely and should be disregarded under Fed. R. Civ. P. 26(e) and 37(c)(1). It also contradicts Defendants' prior sworn discovery. The Court should disregard the new, undisclosed, conclusory, and contradictory portions of the declarations; to the extent it considers them, they create genuine disputes rather than eliminate them. Consistent with DUCivR 7-1(b)(1), Plaintiffs raise these as objections, not as a motion to strike, and refer the Court to Plaintiffs' separately filed Rule 56(d) motion.

## VII. ARGUMENT

### A. Defendant Johnston Is Not Entitled to Summary Judgment (Dkt. 153)

#### i. *Personal participation—not veil-piercing—is the issue, and the record shows she did the acts*

17.    A corporate actor may be personally liable for her own infringing acts, even when she performs them for the company; veil-piercing is required only for derivative liability based solely on the company's acts. *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1361 (Fed. Cir. 2021); see also *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313–16 (Fed. Cir. 2010). Ms. Johnston admitted she personally designed, marketed, sold, and distributed the accused product, Pls' App., ECF 151, Ex. 1, 13:25–14:11, and her declaration concedes she performs the company's commercial activity, Defs' App., ECF 157, Tab 17 (Johnston Decl.) ¶ 7. Her "for E & R" label does not erase those acts; whether they give rise to liability is for trial.

#### ii. *The alter-ego facts are, at minimum, genuinely disputed.*

18.    Defendants' "clean separation" is contradicted by the no-business-Venmo testimony, the two personal-Venmo purchases, the personal-Venmo payments to Cavalli, the single account used for all ventures, and operation of the business from the marital residence without a lease or rent. Pls' App., ECF 151, Ex. 1, 100:6–13, 103:21–104:8, 157:21–158:9; Ex. 2,

15:14–19. Under Utah law, alter ego is evaluated on the entire relationship among the actors and entities, and summary judgment is improper where record disputes bear on both the unity-of-interest and the fraud-or-inequity prongs. *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶¶ 15, 24–25, 284 P.3d 630.

> **B.      Defendant Cheal and Trust Are Not Entitled to Summary Judgment (Dkt. 155)**
>
> ### iii.      *The Trust theory contradicts Mr. Cheal's own sworn discovery*

19.      The motion's premise—that a functioning Trust owns the vehicle and had only incidental contact with the business—cannot be "undisputed" when Mr. Cheal swore the opposite: the Trust "no longer functions in any respect" and "the vehicle is in fact owned by Mr. Cheal." Pls' App., ECF 151, Ex. 8 (Cheal Resp. to Interrog. 20; RFA 55). Defendants cannot establish an undisputed fact by swearing, after the close of discovery, to the opposite of their own prior discovery responses.

> ### iv.      *Cheal's no "role/no communication/never" sold assertions are disputed*

20.      Investigator video shows Mr. Cheal producing the accused product from the truck and describing its features to a customer, then routing payment to Ms. Johnston's personal Venmo. Pls' App., ECF 151, Ex. 1, 163:22–167:3 & Dep. Ex. 24; Pls' Supp. App., Tab 19. His sworn discovery admits he "utilized his truck to assist [Ms. Johnston] in transporting certain holsters owned by Her Tactical," Pls' App., ECF 151, Ex. 8 (Interrog. 22), and surveillance shows the truck loaded with Her Tactical materials, Pls' Supp. App., Tabs 20–22. His declaration admits he financed the startup on a personal credit card. Defs' App., ECF 157, Tab 18 ¶ 8. For the patent claims, the same personal-participation principle applies: one who personally makes, uses, sells, or offers to sell an accused product—or actively assists those acts—is liable for his own conduct even when it also benefits a company. *Lubby*, 11 F.4th at 1361; *Wordtech*, 609 F.3d at 1313–16.

For the Lanham Act claims, courts ask whether the individual directed, controlled, ratified, participated in, or was the moving force behind the challenged conduct. *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994). On this record, whether Mr. Cheal's conduct meets these standards is for the factfinder. After suit, Defendants also revised the website to minimize his previously visible role; a factfinder could view those changes as inconsistent with the current no-role narrative. Pls' Supp. App., Tabs 23–24.

> **v.    At a minimum, Rule 56(d) bars deciding these issues on the late declarations.**

21.    Because Mr. Cheal was never deposed and the declarations inject new, untested matter, the Court should defer or deny summary judgment, or permit limited discovery, as set forth in Plaintiffs' separately filed Rule 56(d) motion.

**C.    The Her Tactical / E & R Motion Should Be Denied as to the '530 Patent (Doctrine of Equivalents), the '109 Patent, the Design Patents, and the False-Advertising/Unfair-Competition Theory (Dkt. 152).**

> **vi.    '530 Patent: literal infringement not opposed; the doctrine-of-equivalents issue cannot be resolved against Plaintiffs on this record.**

22.    Plaintiffs do not contest that the accused products contain two magnets rather than three, and therefore do not oppose summary judgment of *no literal infringement* of the '530 Patent. Plaintiffs **do** oppose summary judgment under the doctrine of equivalents, for two reasons.

23.    First, equivalence is a fact question that the December 18, 2025 ruling did not decide. That ruling adopted the plain and ordinary meaning of the disputed terms—resolving the '530's *literal* scope—but it did not hold that a two-magnet retention structure cannot be the substantial equivalent of the claimed arrangement. The point is not that two magnets literally are three. It is that, evaluated element-by-element, the accused two-magnet structure performs substantially the same retention function in substantially the same way—magnet-to-magnet engagement—to achieve substantially the same result. *Warner-Jenkinson Co. v. Hilton Davis*

*Chem. Co.*, 520 U.S. 17, 39–40 (1997). The inventor so testified, explaining that engaged magnets function together as a single magnet of combined strength. Pls' App., ECF 151, Ex. 3 (Myers Dep.) 166:4–167:13; Ex. 1 (Johnston Dep.) 177:20–182:14.

24.    Second, and dispositive of Defendants' estoppel argument, the three-magnet limitation was not the basis on which the '530 claims were allowed. The applicant added that limitation in a June 1, 2017 amendment responding to a § 103 rejection over Esposito in view of McStay. But the Examiner's Statement of Reasons for Allowance shows that *McStay itself disclosed the three-magnet arrangement*—"two magnets … disposed within the thickness of the fastener protrusion," a magnet "disposed within the thickness of the housing," and that "the two magnets are configured to engage with the third magnet." Defs' App., ECF 157, Tab 9 (Notice of Allowance, Reasons for Allowance) at App-127. The Examiner allowed the claims over McStay *not* on the number of magnets, but on features McStay lacked: an elongated strap "integrally secured to the back side of the body" that "folds backwards," a fastener housing "extending from the outer surface of the body" (McStay's housing extends from the inner surface), the limitation that engaging the magnets "does not obstruct the upper opening" or hinder removal, and the "combined magnetic retention strength." Id. at App-124–127.

25.    Festo supplies the framework: a narrowing amendment made for a reason related to patentability raises a presumption of surrender, which the patentee may rebut by showing that the equivalent was unforeseeable, that the rationale for the amendment was no more than tangentially related to the equivalent, or that some other reason prevented the patentee from describing the substitute. *Festo*, 535 U.S. at 740–41. The reasons-for-allowance rebut any presumption as applied to the magnet count: the rationale for distinguishing the closest art (McStay) was the strap, housing, non-obstruction, and retention-strength features—not the number

of magnets—so the amendment bears no more than a tangential relation to the two-magnet equivalent Plaintiffs assert. At a minimum, Defendants have not shown that the specific accused equivalent—two engaged magnets operating as the same magnetic-retention structure—was the subject matter surrendered: the amendment added a three-magnet structure, but Defendants have not shown that the reason for that amendment was to surrender every two-magnet arrangement that achieves the same retention in the same way. That scope-of-surrender issue precludes summary judgment, and Defendants' contrary argument (Dkt. 152 § II; ECF 157, Tab 19) omits the Examiner's express finding that McStay already disclosed the three-magnet arrangement.

### vii.   '109 Patent (genuine dispute; see Plaintiffs' Final Infringement Contentions)

26.     The '109 Patent claims two magnets, but in a two-component structure: a strap-side fastener protrusion holding one magnet and a body-side fastener housing holding the other. Plaintiffs' Final Infringement Contentions set out the element-by-element mapping of the accused product to claim 1. Defs' App., ECF 157, Tab 3 at 8–11. Defendants contend the accused product lacks a body-side "fastener housing" containing the second magnet; Plaintiffs' contentions map that limitation to the accused structure and, in the alternative, establish it under the doctrine of equivalents because any distinction between the flap/strap arrangement and the claimed protrusion-and-housing is "not substantial" under a function-way-result analysis. Defs' App., ECF 157, Tab 3 at 9. Whether the accused structure meets or equals that limitation is a classic claim-application and equivalence question for the jury. Defendants' "vitiation" argument (Dkt. 152 § III.D) asks the Court to decide that function-way-result question as a matter of law, which it may not do on this record—and Defendants' '109 theory rests on structural absence and vitiation, not on prosecution-history estoppel. The record also rebuts Defendants' premise that the accused

**Plaintiffs' Consolidated Opposition to Defendants' MSJs**          **Page 13 of 16**

product does not use magnetic retention: the inventor confirmed the accused holsters "did have magnetic retention." Pls' App., ECF 151, Ex. 3 (Myers Dep.) 166:4–167:13.

### *viii.    Design patents (genuine ordinary-observer dispute).*

27.    Design-patent infringement turns on whether an ordinary observer familiar with the prior art would find the accused design substantially the same as the claimed designs. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677–78 (Fed. Cir. 2008) (en banc). Although design non-infringement can be decided on summary judgment in a proper case, it cannot be on this record and these visual similarities: Defendants isolate minor add-ons (an ID tag, stitching, a snap), while the ordinary observer weighs the overall visual impression. The inventor testified the accused product "looks like" and is "substantially similar" to the '451 design, Pls' App., ECF 151, Ex. 3, 163:12–18, and Plaintiffs' reviewer observed the product "at first glance … looks like the JM4 Tactical magnetic retention holster," Pls' App., ECF 151, Ex. 1, 191:12–15. Plaintiffs' infringement contentions and the cited testimony create, at minimum, a triable dispute regarding the overall visual impression, which the factfinder must resolve.

### *ix.    D.  Product-configuration trade dress*
### *(not opposed, for issue-narrowing purposes only)*

28.    Plaintiffs do not oppose summary judgment on the product-configuration trade-dress theory—i.e., the "overall visual impression" trade dress alleged at Compl. ¶ 84—for purposes of narrowing the issues for trial. Plaintiffs do not concede that theory was frivolous, unreasonable, or asserted in bad faith, and this non-opposition is limited to the product-configuration trade-dress theory only.

### *x.    Plaintiffs' false-advertising and unfair-competition allegations are not subject to summary judgment*

29.    Count II is not limited to product-configuration trade dress. It separately alleges false advertising and unfair competition under 15 U.S.C. § 1125(a) and the common law—that

Defendants made false or misleading representations that the Her Tactical holsters are "brand new," "revolutionary," and "patent pending"; that the trigger cannot be pulled inside the holster; that the holsters are "safe"; and that the company's instructor holds false credentials. Dkt. 74 ¶¶ 85–92. Defendants' motion addresses only functionality and secondary meaning of the alleged product-configuration trade dress (Dkt. 152 § VI); it offers no argument or evidence on the elements of Plaintiffs' false-advertising or false-association allegations. Defendants thus did not carry their initial burden as to those theories, and summary judgment on them is unwarranted regardless of the trade-dress ruling. These allegations remain for trial.

## VIII.  CONCLUSION

30.    The Court should deny summary judgment to Defendant Johnston (Dkt. 153) and to Defendant Cheal and the Trust (Dkt. 155), and deny the Her Tactical / E & R motion (Dkt. 152) as to the '530 Patent under the doctrine of equivalents, the '109 Patent, the four design patents, and Plaintiffs' false-advertising/unfair-competition allegations. For trial-efficiency purposes only, Plaintiffs do not oppose summary judgment on literal infringement of the '530 Patent or on the product-configuration trade-dress theory. In all events, the new matter in the late declarations should be disregarded or, under Rule 56(d), the motions deferred or denied pending limited discovery.

Dated this May 22, 2026

Respectfully submitted,

/Brandon J. Leavitt/
**Brandon James Leavitt**
Texas Bar No. 24078841 (pro hac vice)
LEAVITT & ELDREDGE LAW FIRM
4204 S.W. Green Oaks Blvd., Suite 140
Arlington, TX 76017
(214) 727-2055
brandon@uslawpros.com

Jason K. Smith (Utah Bar No. 14323)
MK SMITH, APC
Local Counsel for Plaintiffs

**Attorneys for Plaintiffs**

### CERTIFICATE OF SERVICE

I hereby certify that on the date set forth above, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF electronic filing system, which will send notification of such filing to all counsel of record.


/Brandon J. Leavitt/
Brandon James Leavitt