Chad S. Pehrson (Utah Bar No. 12622) cpehrson@knh.law
Nathan Gardner (Utah Bar No. 19537) ngardner@knh.law
**KNH LLP**
50 W. Broadway, 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS,<br><br>Plaintiffs,<br><br>v.<br><br>HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual;<br><br>Defendants. | **DEFENDANT VICKY ARLENE JOHNSTON'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:22-cv-00121-AMA-DBP<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Dustin B. Pead |

### INTRODUCTION

Plaintiffs respond to Ms. Johnston's motion in two paragraphs. (Pl. Opp. ¶¶ 17–18.) The first rests on a single deposition excerpt that, when read in full, expressly disclaims personal capacity rather than admitting personal acts. The second offers a one-paragraph alter-ego "genuine dispute" theory built on operational features—one business account, home operation, occasional Venmo use—that are routine hallmarks of single-member LLCs rather than unity-of-interest evidence, and that does not address the second Jones & Trevor prong at all. Neither showing carries

Plaintiffs' burden to defeat summary judgment. The Court should enter judgment in Ms. Johnston's favor on every claim asserted against her in her individual capacity.

## I.  Plaintiffs' "Personal Participation" Theory Rests on a Single Deposition Excerpt That, Read in Full, Disclaims Personal Capacity Rather Than Admitting Personal Acts.

Plaintiffs' first response begins with the correct doctrinal premise—that a "corporate actor may be personally liable for her own infringing acts"—but then asserts, in a single sentence and on a single deposition cite, that Ms. Johnston "admitted she personally designed, marketed, sold, and distributed the accused product." (Pl. Opp. ¶ 17, citing Johnston Dep. 13:25–14:11.) The cited testimony does not say that. It says the opposite.

## A.  The Complete Exchange at Dep. 13:25–14:11 Is a Consistent Denial of Personal Capacity, Reinforced by Ms. Johnston's Same-Day Reaffirmation at Dep. 16:11–17.

Plaintiffs quote a single fragment—"It's the same for all of them"—extracted from a longer exchange. The full exchange, in context, reads:

> Q. So when I see a similar pattern here, questions 2, 3, 4, 5, 6, where you deny it and E&R admits it, what you're saying is you did it, but you did it on behalf of E&R, not in any personal capacity; is that what you are saying?
>
> A. Not in any personal capacity. I'm employed by E&R.
>
> Q. Okay.
>
> A. It's the same for all of them.

(Johnston Dep. (Pl. App. Ex. 1) 13:25–14:11 (emphasis added).) The antecedent of "it's the same for all of them" is Ms. Johnston's denial of personal capacity across each of the relevant interrogatory questions—not, as Plaintiffs assert, an admission of personal performance of every accused act. Two pages later, Plaintiffs' counsel asked the same question in different form and received the same answer:

Q. So back to where we were, Ms. Johnston, questions 4, 5, and 6, your personal denials, you did in fact—

A. As an employee, yes.

Q. —as an employee for both 4, 5, and 6, correct?

A. Yeah.

(Johnston Dep. (Pl. App. Ex. 1) 16:11–17.) The testimony is internally consistent. Across every interrogatory question Plaintiffs put to her, Ms. Johnston denied personal capacity and affirmed her status as an employee of E & R LLC.

Plaintiffs' selective quotation reverses that meaning. At summary judgment, that selective reading cannot become an undisputed fact. The question whether Ms. Johnston's acts were personal or corporate-agent acts is the central factual question on personal liability, and at minimum a credibility-and-characterization question on which "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Ms. Johnston's own sworn testimony, fairly read, creates at minimum a genuine dispute as to characterization. It does not establish personal acts as a matter of law.

**B.      The Johnston Declaration Provision Plaintiffs Cite Confirms Corporate-Agency Operation, Not Personal Action.**

Plaintiffs' second citation—Johnston Declaration ¶ 7—fares no better. Plaintiffs assert that ¶ 7 "concedes she performs the company's commercial activity." (Pl. Opp. ¶ 17.) The provision states that Ms. Johnston, in her capacity as E & R's sole member and employee, performs Her Tactical's day-to-day operations on behalf of the LLC. (App. Tab 17 (Johnston Decl.) ¶ 7.)[1] That

---

[1]Citations to the Joint Appendix (Dkt. 157) use the corrected tab numbers per Defendants' Joint Notice of Errata (Dkt. 158).

is the definition of corporate agency, not the definition of personal acts. For *direct* infringement specifically, the Federal Circuit has long distinguished between officers acting on behalf of the corporation—conduct that does not give rise to personal liability absent veil-piercing—and officers personally performing infringing acts attributable to them individually. *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) ("[T]he 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'"). Ms. Johnston's declaration testimony, like her deposition testimony, places her squarely in the first category.

**C.      *Lubby* Is Distinguishable on Procedural Posture and Record; It Does Not Compel a Personal-Acts Finding at Summary Judgment.**

Plaintiffs rely centrally on *Lubby Holdings LLC v. Chung*, 11 F.4th 1355 (Fed. Cir. 2021). (Pl. Opp. ¶ 17.) *Lubby* does not carry the freight Plaintiffs place on it, for two independent reasons.

*First*, the procedural posture differs. The personal-liability issue reached the Federal Circuit only on a Rule 59(a) motion because the defendant had failed to properly raise it in his Rule 50(a) motion. *Lubby,* 11 F.4th at 1358. That procedural posture triggered "the substantially constrained abuse-of-discretion standard of review applicable to Rule 59(a) motions," which the panel described as requiring "an absolute absence of evidence" to overturn the jury's verdict. *Id.* That deferential post-verdict standard is what allowed an otherwise thin record to support personal liability against the officer there. The standard here is the opposite—de novo Rule 56(a) review, with all justifiable inferences drawn in favor of the non-movant. *Anderson,* 477 U.S. at 255. What

4

survived in *Lubby* under deferential post-verdict review cannot be entered as a matter of law at summary judgment.

*Second*, the record differs. The officer in *Lubby* personally admitted designing the accused products and personally deciding to sell them through his company. *Lubby*, 11 F.4th at 1358. Ms. Johnston has expressly testified the opposite: "Not in any personal capacity. I'm employed by E&R." (Johnston Dep. (Pl. App. Ex. 1) 14:9–10.) The Federal Circuit's qualifier in *Lubby*—that *Wordtech* "reinforc[es] the rule that a corporate officer—or perhaps only a corporate owner— cannot be found derivatively liable for the corporation's infringement without piercing the corporate veil"—acknowledges doctrinal uncertainty at the precise margin presented here, where a single-member-LLC officer's "personal" acts shade into corporate acts. *Id.* (quoting *Global Traffic Techs. LLC v. Morgan*, 620 F. App'x 895, 908 n.6 (Fed. Cir. 2015)). The *Lubby* panel did not hold that comparable facts compel a personal-acts finding as a matter of law; it held only that such facts tolerated one on Rule 59(a) deference. The rule *Lubby* states—that "[c]orporate officers can be personally liable for their own acts of infringement, even if those acts were committed in their corporate capacity," *id.*—leaves the antecedent question (whether the officer's acts were "his own" or the corporation's) to the fact-finder on a contested record. On the present record, that question is contested.

**D.    The Capacity Question Is Not Resolved as a Matter of Law on This Record, However Framed.**

Whether characterized as factual or legal, the question whether Ms. Johnston's admitted conduct qualifies as her "own acts" under *Lubby* — rather than acts of E & R LLC performed through its sole employee — cannot be resolved against her on this record. *Lubby*

5

itself acknowledges the doctrinal question is unsettled at this margin. 11 F.4th at 1358 (recognizing the doctrine extends to "a corporate officer — or perhaps only a corporate owner") (quoting *Global Traffic Techs. LLC v. Morgan*, 620 F. App'x 895, 908 n.6 (Fed. Cir. 2015)). And the answer on the present record favors Ms. Johnston: an officer who is sworn to having acted only as the LLC's employee, whose conduct is admitted by the LLC as the LLC's own (Pl. App. Ex. 5, RFAs 1, 2, 4, 5–11, 14–25), who routes revenue through the LLC's account (Johnston Dep. (Pl. App. Ex. 1) 99:5–6), and whose communications and transactions occur in the LLC's name, has not personally performed acts of direct infringement under *Lubby*.

The record contains no transaction, communication, design document, or corporate filing attributable to Ms. Johnston individually rather than to E & R LLC. The "for E & R" framing Plaintiffs dismiss as a mere "label" (Pl. Opp. ¶ 17) is in fact the substantive content of the *Lubby* test: an officer's "own acts" must be acts attributable to her individually, not to the corporation. *Lubby*, 11 F.4th at 1358. Where the record attributes every accused commercial act to the LLC, the *Lubby* test is not satisfied. Summary judgment is warranted on that ground alone, independent of the deposition-fragment problem addressed in Section I.A above.

## II.      Plaintiffs' "Alter-Ego Genuine Dispute" Theory Fails the Two-Prong *Jones & Trevor* Test as a Matter of Utah Law.

Plaintiffs' second response (Pl. Opp. ¶ 18) takes a different doctrinal route. It abandons the personal-acts framework and asserts that Defendants' "clean separation" is contradicted by five operational facts: (1) no business Venmo account; (2) two personal-Venmo purchases by a walk-in customer; (3) personal-Venmo payments to Cavalli; (4) a single E & R account for all of E & R's business ventures; and (5) operation of the business from the marital residence without a lease

6

or rent. None of these facts—singly or in combination—satisfies either of the two prongs Utah law requires to pierce E & R's corporate veil.

As a threshold matter, Plaintiffs bear the trial burden on alter-ego liability. *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 31, 284 P.3d 630. Under Utah's summary-judgment standard—now expressly aligned with the federal *Celotex* standard—where the nonmovant bears the trial burden, the movant may carry its summary-judgment burden by showing the nonmovant lacks evidence on essential elements, without producing affirmative evidence of its own. *Salo v. Tyler*, 2018 UT 7, ¶ 2, 417 P.3d 581. That is the posture here.

**A.    The Operational Facts Plaintiffs Cite Are Routine Hallmarks of Single-Member LLC Operation, Not Indicia of Unity of Interest Under *Jones & Trevor*.**

Under Utah law, alter-ego liability requires "such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist[.]" *Jones & Trevor*, 2012 UT 39, ¶ 14; *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987). The unity-of-interest analysis is fact-intensive but qualitative: courts ask whether corporate formalities are observed, whether assets are commingled, whether the company is adequately capitalized for its purpose, and whether the company functions as a legitimate business or merely a shell for the individual's personal affairs. *Jones & Trevor*, 2012 UT 39, ¶¶ 15–16. The Utah Supreme Court has emphasized that courts "will only reluctantly and cautiously pierce the corporate veil." *Id.* ¶ 15.

Each of the operational features Plaintiffs cite is consistent with—not contrary to—corporate-form single-member LLC operation. *Single business account.* E & R LLC's single business checking account, into which all LLC revenue flows and from which all LLC obligations

are paid, is the opposite of commingling. (Johnston Dep. (Pl. App. Ex. 1) 99:5–6 ("Everything goes through the business.").) That E & R operates multiple business lines—real estate, casting, and Her Tactical—through one LLC account reflects that E & R is the legal entity and "Her Tactical" is one of its d/b/a trade names. (Id. 91:17–92:22.) *Home operation.* Single-member LLCs commonly operate from residential addresses; the location of operations is not a *Jones & Trevor* factor and is not, on this record, evidence that the corporate form has dissolved. *Absence of business Venmo.* The absence of a particular payment platform—when an LLC routes all revenue through its checking account—is an indicium of corporate-form discipline, not unity-of-interest evidence. None of these features, separately or together, supports the conclusion that "the separate personalities" of E & R LLC and Ms. Johnston "no longer exist." *Id.* ¶ 14.

**B.      Plaintiffs' Own Cited Authority Forecloses the Alter-Ego Inference They Draw from the Walk-In Venmo Episode; and the Cavalli-Payment Argument Lacks Legal Significance Because Cavalli Has Been Dismissed.**

Plaintiffs' own cited authority disposes of the alter-ego inference they ask the Court to draw from the two Venmo payments Plaintiffs attribute to Eleace Bartels (Pl. MPSJ ¶ 45). In *Jones & Trevor* itself, the Utah Supreme Court affirmed summary judgment for the defendants on a materially analogous record: corporate shareholders had drawn funds from corporate accounts for personal use; the plaintiff argued that fact alone created a triable alter-ego dispute; the court rejected that argument. *Jones & Trevor*, 2012 UT 39, ¶ 27. The court held:

> A mere showing that corporate shareholders took money from a company is insufficient to preclude summary judgment on an alter ego theory. There are many legitimate reasons why shareholders might draw funds from corporate accounts. . . . [M]erely demonstrating that shareholders withdrew funds from corporate accounts is an insufficient basis on which to pierce the corporate veil absent additional evidence that the withdrawals were not legitimate or that the company failed to properly account for the withdrawals.

*Id.*

Those transactions are *further* from alter-ego evidence than the *Jones & Trevor* withdrawals: the Venmo funds flowed *into* E & R's business account, not out of it. Plaintiffs have produced no evidence of improper accounting—and the unrebutted record shows the opposite.

Ms. Johnston's own testimony, which Plaintiffs cite, explains that those transactions were a self-described "one-off" exception because the customer was a walk-in at a workshop event without other means of payment:

> I don't use personal Venmo for work. She just happened to be a one-off. . . . I felt this is very unusual. So I don't operate that way.

(Johnston Dep. (Pl. App. Ex. 1) 159:11–22.) Ms. Johnston added: "I made an exception for her." (Id. 160:1–2.) The two payments were transferred into E & R's business account upon receipt—a fact Plaintiffs do not dispute. (Pl. MPSJ ¶ 45.) An admitted one-off exception, with proceeds routed into the LLC account, is the opposite of the commingling pattern alter-ego doctrine targets. It is affirmative evidence that the corporate form was, in the ordinary course, observed.

Plaintiffs' Cavalli-payment argument fails for a separate reason: Mr. Cavalli was dismissed from this case by Court order on December 20, 2023. (Dkt. 101.) Whatever the Venmo flow from Ms. Johnston to Mr. Cavalli reflects, it is not a basis for personal liability against Ms. Johnston for any patent or trade-dress claim remaining in the case. The payment-method choice is not a Jones & Trevor factor; commingling is. And no commingling has been shown.

**C.    Plaintiffs Do Not Address—Much Less Satisfy—the Second *Jones & Trevor* Prong, Which Is Independently Dispositive; the "Fact-Bound" Label Does Not Substitute for Record Evidence.**

Even if Plaintiffs had created a genuine dispute on unity of interest—which they have not—Utah law requires more. Alter-ego liability requires *both* unity of interest *and* a showing that observance of the corporate form would "sanction a fraud, promote injustice, or result in an inequity." *Colman*, 743 P.2d at 786; *see also Jones & Trevor*, 2012 UT 39, ¶ 14 (adopting two-prong test from *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)). Both elements are required to pierce the veil. *Id.*

Plaintiffs' one-paragraph alter-ego argument (Pl. Opp. ¶ 18) is silent on the second prong. They identify no fraud, no injustice, and no inequity. Plaintiffs' theory is also structurally caught between two doctrines and satisfies neither. To the extent it is a direct-liability theory under *Lubby* and *Wordtech*, it requires record evidence that Ms. Johnston personally performed acts attributable to her individually rather than to E & R LLC — and the record establishes the opposite, as set forth in Section I above.

To the extent it is a *derivative*-liability theory imputing the LLC's acts to Ms. Johnston, it is governed by Utah veil-piercing law and the two-prong *Jones & Trevor* test, which Plaintiffs cannot satisfy for the reasons set out in Sections II.A–B. Plaintiffs cannot rely on alter-ego-flavored operational facts to supply the direct-acts showing *Lubby* requires, and they cannot recast a direct-acts theory to escape the showing *Jones & Trevor* demands. The doctrinal route Plaintiffs have actually briefed — capacity-label denial combined with alter-ego-flavored operational facts — corresponds to neither recognized theory and supports neither.

They do not contend—nor could they on this record—that E & R was undercapitalized to render Plaintiffs unable to recover, that the corporate form was created or used to evade any obligation, or that observance of E & R's separate existence would otherwise produce inequity. As Ms. Johnston's motion explained (Dkt. 153 § III), E & R was formed in 2017, five years before the accused product launched, for the purpose of running real estate. (Johnston Dep. (Pl. App. Ex. 1) 91:17–20.) It has operated openly, with separate accounts, separate books, and separate decision-making, since 2021. (App. Tab 17 (Johnston Decl.) ¶¶ 1–7.) Plaintiffs do not engage that record.

Plaintiffs' fallback—that alter ego is at minimum "a genuine, disputed issue precluding summary judgment" (Pl. Opp. ¶ 18)—invokes the fact-intensive character of the inquiry as if that alone were enough to defeat summary judgment. It is not. The Utah Supreme Court has expressly clarified that "the notion that a particular question may often be 'fact bound' . . . is no categorical barrier to its resolution on summary judgment. The relevant question is not whether a particular question generally or typically is susceptible to summary disposition; it is whether there is a genuine dispute of fact in an individual case as presented on the record before the court." *Salo, 2018 UT 7, ¶ 39*. On the present record—where the corporate form has been respected for nearly a decade, where Plaintiffs cannot articulate the inequity that piercing would cure, and where Plaintiffs' own cited authority forecloses the alter-ego inference they advance—the Utah Supreme

Court's instruction that courts pierce only "reluctantly and cautiously" controls. *Jones & Trevor, 2012 UT 39, ¶ 15*.

**III.     Plaintiffs' Rule 26(e) Objection to Defendants' Declarations Does Not Reach the Johnston Declaration; It Is Addressed Separately.**

Plaintiffs' general objection (Pl. Opp. § VI ¶ 16) to Defendants' post-discovery declarations is principally directed at Mr. Cheal's declaration — Trust functioning status, vehicle ownership, and personal credit-card financing — and at the Leavitt Declaration accompanying Plaintiffs' separately filed Rule 56(d) motion (Dkt. 162). Defendants address that motion in their separate opposition, filed concurrently herewith. Two points warrant specific notice as to Ms. Johnston's motion.

*First*, Ms. Johnston's motion does not depend on her declaration. The grounds for summary judgment are established by her November 2, 2023 deposition testimony (Johnston Dep. (Pl. App. Ex. 1) 13:25–14:11, 16:11–17, 91:17–92:22, 99:5–6, 159:11–160:2); by E & R LLC's discovery responses (Pl. App. Ex. 5, RFAs 1, 2, 4, 5–11, 14–25); and by Plaintiffs' own pleading and discovery framing. The Johnston Declaration corroborates but does not supply the predicate for the *Jones & Trevor* analysis. Plaintiffs' Rule 26(e) objection, even if accepted, would not defer or deny this motion.

*Second,* the Johnston Declaration introduces no new material fact contradicting Ms. Johnston's prior sworn discovery. Paragraph 19 — which states that every sale of a Her Tactical product has been a sale by E & R LLC, with the limited exception of the Venmo transaction

described in paragraph 12 — tracks Ms. Johnston's deposition testimony at 159:11–160:2 and the record fact (undisputed at Pl. MPSJ ¶ 45) that the those payments were transferred into E & R's business checking account upon receipt. The parenthetical exception in paragraph 19 preserves the factual particulars of a single accommodation-payment episode. It does not transform that episode into a sale by Ms. Johnston personally rather than a sale by E & R for which Ms. Johnston, as the LLC's sole employee, briefly accepted payment through a personal account before routing the funds into the LLC. Plaintiffs' Rule 26(e) objection has no traction as to Ms. Johnston.

## CONCLUSION

Plaintiffs' two-paragraph opposition does not defeat Ms. Johnston's motion. The deposition excerpt on which their personal-participation theory rests, read in full, disclaims personal capacity. Their alter-ego theory ignores the second prong of the *Jones & Trevor* test, rests on operational features that are hallmarks of corporate-form single-member LLC operation, and is affirmatively foreclosed by *Jones & Trevor* itself on the central walk-in-payment point. The Court should grant summary judgment in Ms. Johnston's favor on every claim asserted against her in her individual capacity.

DATED this 29th day of May 2026.

KNH LLP

/s/ *Chad S. Pehrson*
Chad S. Pehrson
Nathan Gardner
Attorneys for Defendants

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of May 2026, I caused the foregoing DEFENDANT VICKY ARLENE JOHNSTON'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT to be filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Chad S. Pehrson*