Chad S. Pehrson (Utah Bar No. 12622) cpehrson@knh.law
Nathan Gardner (Utah Bar No. 19537) ngardner@knh.law
**KNH LLP**
50 W. Broadway, 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS,<br><br>        Plaintiffs,<br><br>v.<br><br>HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual;<br><br>        Defendants. | **DEFENDANT BLAKE CHEAL'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:22-cv-00121-AMA-DBP<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Dustin B. Pead |

## INTRODUCTION

Plaintiffs do not dispute the facts that decide this motion. They do not dispute that Mr. Cheal is not an officer, member, manager, employee, or agent of Her Tactical; that he owns no equity in it; that he has never received any compensation from it; that he never personally made, used, sold, or offered any Her Tactical product; that he authored no advertisement or public

1

statement about any holster or any patent; or that he had no knowledge of any asserted patent before suit. (Dkt. 155, SUMF ¶¶ 2–10; App. Tab 18 (Cheal Decl.) ¶¶ 2–10.)[1]

Unable to contest those facts, Plaintiffs' opposition to Mr. Cheal (Pl. Opp. § VII.B ¶¶ 19–21; § IV.C; § VI) rests on three moves, none of which raises a genuine dispute of *material* fact. *First*, Plaintiffs press a supposed "contradiction" over whether the family Trust "functions" and whether the Trust or Mr. Cheal owns a family vehicle (Pl. Opp. ¶ 19) — a point immaterial to every theory of liability, as shown below. *Second*, they recharacterize Mr. Cheal's volunteer help at in-person events and a reimbursed, pre-suit personal-credit-card loan as "participation" (Pl. Opp. ¶ 20) — conduct that is neither an act of patent infringement nor a Lanham Act "moving force." *Third*, they object under Rule 26(e) to the Cheal Declaration (Pl. Opp. § VI ¶ 16) — an objection addressed in Defendants' separate opposition to Plaintiffs' Rule 56(d) motion, and one that, in all events, reaches nothing material here. Even crediting Plaintiffs' own prior-discovery version of the disputed facts, judgment for Mr. Cheal — individually and as trustee — follows as a matter of law.

## I.    The Underlying-Infringement Questions Are Addressed in Her Tactical's Reply; Mr. Cheal's Entitlement to Judgment Is Independent of Them.

Mr. Cheal's motion established two independent points: that there is no underlying infringement or trade-dress violation (incorporated from Her Tactical's motion under DUCivR 7-1(a)(8)), and that, in any event, neither Mr. Cheal personally nor the Trust bears any personal or derivative liability. (Dkt. 155 at 2–3, §§ I–IV.) Plaintiffs' merits arguments on the '530 Patent under the doctrine of equivalents, the '109 Patent, the four design patents, and the § 1125(a)(1)(B)

---

[1] Citations to the Joint Appendix (Dkt. 157) use the corrected tab numbers per Defendants' Joint Notice of Errata (Dkt. 158).

false-advertising allegations are answered in Her Tactical's contemporaneously filed Reply (Dkt. 152), and Defendants do not repeat that showing here. Whatever the Court concludes on the underlying merits, the personal- and trustee-liability defenses in Sections II–III below are independently dispositive as to Mr. Cheal. *See Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1272 (Fed. Cir. 2004)*.

## II.     Mr. Cheal Performed No Accused Act, and Plaintiffs' Contrary Evidence Shows Only Volunteer, Corporate-Agent Conduct.

Plaintiffs respond to Mr. Cheal's no-personal-participation showing (Dkt. 155 §§ II–III) with three items: an investigator video, his Interrogatory 22 answer, and his declaration's disclosure that he once financed startup purchases on a personal card. (Pl. Opp. ¶ 20; § IV.C.) None creates a triable issue on personal liability.

### A.     The Event-and-Vehicle Conduct Is Volunteer Assistance, Not a Personal § 271(a) Act.

Direct infringement under 35 U.S.C. § 271(a) requires that the defendant personally "make[], use[], offer[] to sell, or sell[]" the patented invention. The video and Interrogatory 22 show, at most, that Mr. Cheal helped his wife transport Her Tactical holsters and assisted at an in-person event — conduct his declaration already disclosed. (App. Tab 18 (Cheal Decl.) ¶ 6 (volunteering "to help my wife at trade shows and in-person events," with proceeds going to Her Tactical and no portion retained); Pl. App. Ex. 8 (Cheal Resp. to Interrog. 22) (he "utilized his truck to assist [Ms. Johnston] in transporting certain holsters owned by Her Tactical").) Even crediting the video in full, the payment was routed to Her Tactical's receiving account and Mr. Cheal retained nothing. (App. Tab 18 ¶ 6.) Routing a customer's payment to the company's account is not a sale by Mr. Cheal for his own account. Section 271(a) liability for "sells" attaches

3

to the party in whose name and for whose account the transaction occurs; a non-employee who facilitates a corporation's sale by transferring payment to the corporation's receiving account has not himself "sold" the patented invention within the meaning of the statute. *See Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed. Cir. 2021) (personal liability requires "own acts of infringement"); *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (officers shielded absent personal acts or alter-ego status).The Federal Circuit authority Plaintiffs invoke confirms the point. *Wordtech* holds that "the 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'" *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010). Mr. Cheal is not even an officer of Her Tactical (Dkt. 155, SUMF ¶ 2), so the protection *Wordtech* affords officers applies *a fortiori* to him. And *Lubby* establishes only that an individual may be liable for "their own acts of infringement" — the enumerated § 271(a) acts. *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed. Cir. 2021).[2] Helping move inventory and staffing a booth are not those acts. Plaintiffs' Final Infringement Contentions identify no sale by Mr. Cheal in any capacity. (Dkt. 155, SUMF ¶ 14; App. Tab 3.)

**B.      The Reimbursed, Pre-Suit Personal-Card Financing Is Not an Act of Infringement.**

Mr. Cheal's declaration discloses that, before this suit, he allowed Ms. Johnston to use a personal credit card in his name for startup purchases, and that she reimbursed him in full by approximately early 2023. (App. Tab 18 (Cheal Decl.) ¶ 8.) Providing reimbursed startup financing

---

[2]Plaintiffs cite *Lubby* at page 1361 (Pl. Opp. ¶¶ 17, 20); the personal-acts holding appears at 1358.

is not "mak[ing], us[ing], offer[ing] to sell, or sell[ing]" anything under § 271(a). It cannot support induced infringement, which requires pre-suit knowledge of the patent and specific intent to encourage infringement — both absent here. (Dkt. 155, SUMF ¶¶ 8–9; App. Tab 18 ¶¶ 9–11; Pl. App. Ex. 7 (Cheal Supp. Resp. to Interrog. 10).) Nor can it support contributory infringement, which requires the same knowledge. Plaintiffs' opposition does not engage the knowledge element at all, and thus does not contest the independent grounds for judgment on the indirect-infringement theories. That a financing fact Defendants themselves volunteered is now seized upon does not transform it into personal infringement liability.[3]

**C.      The Lanham Act Theories Fail as to Mr. Cheal for Want of Personal Participation.**

Personal liability for a corporation's Lanham Act violation requires that the individual "directs, controls, ratifies, participates in, or is the moving force behind the infringing activity." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994). That is the very standard Plaintiffs invoke (Pl. Opp. ¶ 20) — and it defeats them on this record. In *Babbit*, the individuals held personally liable were the corporation's chairman and president, who the court found personally "offered the [products] for sale, and directed such sales," "controlled, directed and participated in" the activity, and "personally orchestrated" the infringing sales, even after notice. *Id.* at 1183–84. Mr. Cheal is the opposite case on every axis: he is not an officer at all (Dkt. 155, SUMF ¶ 2), he directed and controlled nothing (SUMF ¶ 5), and he authored no

---

[3]Plaintiffs cite "Ex. 8 (Cheal Resp. to RFA 2)" for a prior denial that Mr. Cheal "funded, aided, or allowed [his] assets to fund" the business (Pl. Opp. at 7), but the cited exhibit contains no response to Request for Admission No. 2.

advertisement, marketing statement, or public communication about any product (SUMF ¶ 7; App. Tab 18 (Cheal Decl.) ¶ 7). Same rule, opposite record.

Because the *Babbit* standard turns on the individual's own direction of or participation in the challenged conduct, it disposes of every § 1125(a) theory against Mr. Cheal personally — product-configuration trade dress, false association, and the false-advertising allegations alike. Even assuming the § 1125(a)(1)(B) false-advertising allegations remain for trial against Her Tactical (*see* Her Tactical's contemporaneously filed Reply § VI.C), Mr. Cheal made and directed none of the challenged representations. (SUMF ¶ 7; App. Tab 18 ¶ 7.) He therefore cannot be the "moving force" behind any of them, and summary judgment in his favor on the entire Lanham Act / unfair-competition count is appropriate. *Babbit*, 38 F.3d at 1184.

### III.     Neither the Trust Nor Mr. Cheal Is an Alter Ego of Her Tactical, and the "Contradiction" Plaintiffs Identify Is Immaterial to That Question.

Plaintiffs' sole argument against the Trust (Pl. Opp. ¶ 19) is that the motion's premise — a functioning Trust that owns the vehicle — "cannot be 'undisputed'" because Mr. Cheal swore the opposite in 2023 discovery: that the Trust "no longer functions in any respect" and that "the vehicle is in fact owned by Mr. Cheal." (Pl. App. Ex. 8 (Cheal Resp. to Interrog. 20; RFA 55).) The Court need not resolve that asserted conflict, because **the alter-ego analysis comes out the same on either version of the facts.** For purposes of this motion, Defendants will take Plaintiffs' prior-discovery version as true.

Utah law requires *both* (1) "such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," *and* (2) that observance of the corporate form "would sanction a fraud, promote injustice, or result in an inequity." *Colman v.*

*Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987); *see Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 14, 284 P.3d 630 (adopting two-prong test from *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)). Plaintiffs satisfy neither prong as to the Trust or as to Mr. Cheal personally.

*Unity of interest is absent on any version of the facts.* Whether the vehicle belonged to the Trust or to Mr. Cheal, and whether or not the Trust "functions," the undisputed record is that the Trust holds no equity in Her Tactical, has no role in managing or operating it, and has received no compensation or financial benefit from it; the single point of contact is the occasional, incidental use of a family vehicle to move inventory to events. (Dkt. 155, SUMF ¶¶ 12–13; App. Tab 18 (Cheal Decl.) ¶¶ 13–16.) If anything, Plaintiffs' version — a defunct Trust that does not even own the vehicle — shows the Trust did *less*, not more. Occasional use of a family vehicle is not the commingling that alter-ego doctrine targets. *Colman*, 743 P.2d at 786. And as to Mr. Cheal personally, the predicate for unity of interest is missing entirely: he owns no equity, drew no compensation, and ran nothing. (SUMF ¶¶ 2–5.)

*The fraud-or-inequity prong is independently unmet — and unaddressed.* Plaintiffs identify no fraud, injustice, or inequity that would follow from respecting the separate existence of a family living trust or of a non-owner spouse. They do not contend — nor could they on this record — that Her Tactical is undercapitalized to render them unable to recover, that the Trust or Mr. Cheal personally was used to evade any obligation, or that piercing would cure any specific harm. The doctrine is invoked only "reluctantly and cautiously," *Jones & Trevor*, 2012 UT 39, ¶ 15, and Plaintiffs bear the trial burden on it, *id.* ¶ 31.

Plaintiffs' fallback that alter ego is "a fact-intensive question for the jury" (Pl. Opp. ¶ 19) does not change the analysis. The Utah Supreme Court has expressly clarified that the "fact bound" character of a question "is no categorical barrier to its resolution on summary judgment. The relevant question is not whether a particular question generally or typically is susceptible to summary disposition; it is whether there is a genuine dispute of fact in an individual case as presented on the record before the court." *Salo v. Tyler*, 2018 UT 7, ¶ 39, 417 P.3d 581. On the present record — no equity interest, no compensation, no managerial role, no identified inequity, and an alter-ego theory that fails on Plaintiffs' own version of the disputed Trust facts — the inquiry is suitable for resolution as a matter of law.It follows that the declaration statements Plaintiffs attack — the Trust's functioning and the vehicle's ownership — are immaterial. The Court may disregard them entirely and Mr. Cheal and the Trust still prevail as a matter of law.

**IV.     Plaintiffs' Rule 26(e) Objection to the Cheal Declaration Provides No Basis to Deny the Motion.**

Plaintiffs object under Rule 26(e) and 37(c)(1) to three items in the Cheal Declaration: the Trust's functioning status, the vehicle's ownership, and the personal-card financing. (Pl. Opp. § VI ¶ 16.) The objection does not defeat the motion, because none of the three items are material to the grounds for judgment. Taking each in turn:

***Trust functioning status.*** Whatever the Trust's current functioning status, the alter-ego analysis comes out the same — as Section III demonstrates on Plaintiffs' own prior-discovery version of the fact. If the Court disregards paragraphs of the Cheal Declaration addressing the Trust's status, and credits instead Mr. Cheal's prior testimony that the Trust "no longer functions

in any respect" (Pl. App. Ex. 8 (Cheal Resp. to Interrog. 20)), the result does not change: a defunct Trust does less, not more, of what alter-ego doctrine targets.

*Vehicle ownership.* The same is true of vehicle ownership. Whether the Trust or Mr. Cheal owns the family vehicle (compare App. Tab 18 ¶ 16 with Pl. App. Ex. 8 (Cheal Resp. to RFA 55)), the occasional use of a family vehicle to transport inventory is not commingling under *Colman* or *Jones & Trevor*. Section III above resolves that question without reliance on either version of the ownership fact.

*Personal-card financing.* The financing fact stands on different ground. It is not "contradictory" matter — Mr. Cheal's prior discovery contained no representation about pre-suit personal-card financing — and it was disclosed by Defendants themselves in the declaration as a defensive fact establishing pre-suit timing and full reimbursement by early 2023. (App. Tab 18 ¶ 8.) A movant's own forthright disclosure of a defensive fact is not the kind of post-discovery surprise Rule 26(e) and 37(c)(1) address. And even taking the fact as established, Section II.B shows it cannot support any § 271 theory: providing reimbursed startup financing is not "mak[ing], us[ing], offer[ing] to sell, or sell[ing]" anything under § 271(a), and the pre-suit knowledge element of induced and contributory infringement is independently absent. (Dkt. 155, SUMF ¶¶ 8–9; App. Tab 18 ¶¶ 9–11; Pl. App. Ex. 7 (Cheal Supp. Resp. to Interrog. 10).) An evidentiary objection that changes nothing if sustained provides no basis to deny summary judgment. The timeliness mechanics under Rule 26(e) and 37(c)(1), together with Plaintiffs' related Rule 56(d) request (Dkt. 162), are the subject of Defendants' separately filed opposition to that motion, addressed on its

own track under DUCivR 7-1(a)(3). Defendants do not litigate them here and respectfully refer the Court to that opposition.

## CONCLUSION

Plaintiffs' opposition raises no genuine dispute of material fact as to Mr. Cheal. He is not within Her Tactical's corporate structure, performed no accused act, authored no actionable statement, had no pre-suit knowledge of any patent, and neither he nor the Trust is an alter ego of Her Tactical on any version of the facts. Plaintiffs bore the burden of establishing personal liability and alter-ego status, and they have failed to carry it. The Court should grant summary judgment in favor of Blake Cheal, individually and as settlor and trustee of The Blake and Tanya Cheal Family Living Trust, and dismiss all claims against him with prejudice.

DATED this 29th day of May 2026.

**KNH LLP**

/s/ *Chad S. Pehrson*
Chad S. Pehrson
Nathan Gardner
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of May 2026, I caused the foregoing DEFENDANT BLAKE CHEAL'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT to be filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Chad S. Pehrson*