Chad S. Pehrson (Utah Bar No. 12622) cpehrson@knh.law
Nathan Gardner (Utah Bar No. 19537) ngardner@knh.law
**KNH LLP**
50 W. Broadway, 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

<table>
<tr><td colspan="2" align="center">UNITED STATES DISTRICT COURT<br><br>FOR THE DISTRICT OF UTAH</td></tr>
<tr>
<td>JM4 TACTICAL, LLC; and JAMES CHADWICK MYERS,<br><br>   Plaintiffs,<br><br>v.<br><br>HER TACTICAL, LLC; E & R LLC, d/b/a HER TACTICAL; VICKY ARLENE JOHNSTON, an individual; and BLAKE CHEAL, an individual;<br><br>   Defendants.</td>
<td><b>DEFENDANTS HER TACTICAL, LLC AND E & R LLC D/B/A HER TACTICAL'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</b><br><br>Case No. 1:22-cv-00121-AMA-DBP<br><br>Judge Ann Marie McIff Allen<br><br>Magistrate Judge Dustin B. Pead</td>
</tr>
</table>

## I.  INTRODUCTION

Plaintiffs' Opposition substantially narrows what remains to be decided. Plaintiffs do not contest literal non-infringement of the '530 Patent. (Pl. Opp. ¶ 22.) Plaintiffs do not oppose summary judgment on the product-configuration trade-dress theory. (Pl. Opp. ¶ 28.) Partial summary judgment should enter on each.

What Plaintiffs do contest collapses on the existing record. On the '530 doctrine of equivalents, Plaintiffs ask this Court to recapture through equivalence the very two-magnet scope the applicant expressly surrendered to obtain allowance — relief barred by both prosecution-history estoppel and the all-elements rule, and which Plaintiffs' Opposition does not meaningfully

engage. On the '109 Patent, Plaintiffs concede the structural mismatch between claim 1 and the accused product and seek to bridge it under a doctrine of equivalents that would eliminate two distinct claim limitations. On the design patents, Plaintiffs cite *Egyptian Goddess* but decline to perform the side-by-side, prior-art-informed comparison that case requires, relying instead on conclusory "looks like" testimony. And on the Lanham Act count, Plaintiffs' theories are pleaded as derivative of trade dress and copying: the § 1125(a)(1)(A) false-association theory falls with the conceded trade-dress claim, and the misrepresentation allegations, as pleaded, lose the confusion-and-copying predicate on which Count II depends.

A separate matter — Plaintiffs' Rule 56(d) Motion filed May 23, 2026 (Dkt. 162) — will be addressed in Defendants' opposition to that motion, filed on its own track per DUCivR 7-1(a)(3). It does not bar entry of the relief sought here.

## II.  ISSUE NARROWING: PARTIAL SUMMARY JUDGMENT ENTERS ON CONCEDED GROUNDS

Two issues Defendants moved on are uncontested in the Opposition, and partial summary judgment should enter on each.

**A.  Literal non-infringement of the '530 Patent.**  Plaintiffs "do not contest that the accused products contain two magnets rather than three, and therefore do not oppose summary judgment of no literal infringement of the '530 Patent." (Pl. Opp. ¶ 22.) Partial summary judgment of no literal infringement of the '530 Patent should enter accordingly.

**B.  Product-configuration trade dress under 15 U.S.C. § 1125(a).**  Plaintiffs "do not oppose summary judgment on the product-configuration trade-dress theory — i.e., the 'overall visual impression' trade dress alleged at Compl. ¶ 84." (Pl. Opp. ¶ 28.) Partial summary judgment on the product-configuration trade-dress theory should enter accordingly.

Plaintiffs' qualifying language — that the non-opposition is "for trial-efficiency purposes only," (*id.*), and that they "do not concede that theory was frivolous, unreasonable, or asserted in bad faith," (*id.*) — does not affect entry of partial summary judgment. The relief Defendants requested is judgment on those theories. Whether the underlying assertions were reasonable when made is a separate question not before the Court on this motion, and Plaintiffs' reservation does not preserve those theories for trial.

## III.  THE DOCTRINE OF EQUIVALENTS CANNOT SAVE PLAINTIFFS' '530 PATENT THEORY

Plaintiffs concede that the accused products contain two magnets in a single flap rather than two magnets in a protrusion engaged with a third magnet in a separate housing. (Pl. Opp. ¶ 22.) They seek to bridge that structural gap under the doctrine of equivalents. (*Id.* ¶¶ 23–25.) That theory fails on the existing record for four independent reasons: amendment-based estoppel, argument-based estoppel, vitiation, and Plaintiffs' failure to come forward with element-by-element evidence sufficient to create a triable dispute.

### A.  The *Festo* "Tangential Relation" Exception Fails on the Record Plaintiffs Made.

Plaintiffs' principal argument is that the June 1, 2017 amendment bears only "a tangential relation" to the two-magnet equivalent they assert, and that Defendants "have not shown" the amendment was made to surrender "every two-magnet arrangement that achieves the same retention in the same way." (Pl. Opp. ¶ 25.) That argument inverts the burden. Under *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740–41 (2002), Plaintiffs — as the patentee — bear the burden of establishing the "tangential relation" exception. The Opposition cites no portion of the prosecution record, no extrinsic evidence, and no authority applying the tangential-relation exception to amendments of this kind.

The record forecloses the argument in any event. The June 1, 2017 Amendment added — for the first time — both the requirement that "two magnets [be] disposed within a thickness of the fastener protrusion" and the requirement that "a third magnet [be] disposed within a thickness of the housing." (App. Tab 6.) The applicant told the Examiner that those features were the reason the cited prior art "fail[s] to disclose or teach" the claimed invention. (*Id.*) That is precisely the circumstance in which estoppel attaches: the patentee narrowed the claim to a three-magnet, two-component structure to obtain allowance over two-magnet prior art. The "specific accused equivalent" Plaintiffs assert — "two engaged magnets operating as the same magnetic-retention structure" (Pl. Opp. ¶ 25) — is the scope the applicant surrendered to overcome that prior art. That is not "tangential" to the amendment; it *is* the amendment.

**B. Plaintiffs' *McStay* Argument Misreads the Prosecution Record and Is Irrelevant to Estoppel.**

Plaintiffs assert that Defendants' argument "omits the Examiner's express finding that *McStay* already disclosed the three-magnet arrangement." (Pl. Opp. ¶ 25.) That is wrong on the record and irrelevant to estoppel either way.

The April 19, 2017 § 103 rejection was over *Esposito* in view of *McStay* — and was directed to the *original* claim language, which recited "a first magnet disposed within a thickness of the fastener protrusion; and a second magnet disposed within a thickness of the housing." (App. Tab 6 (reciting and traversing the April 19, 2017 § 103 rejection); *see also* Pl. App. Ex. 14.) The Examiner cited *McStay* for the two-magnet configuration the original claim required. (Pl. App. Ex. 14.) The applicant did not respond by arguing that *McStay* was distinguishable on a three-magnet basis. The applicant responded by amending the claim to add a third magnet and a two-component housing structure, and by representing that the newly added features were the basis for

patentability. (App. Tab 6.) [1]  Whatever Plaintiffs read into the Examiner's later remarks does not unwind the surrender effected by the applicant's own amendment and argument. Plaintiffs' reading of the prosecution record is self-defeating. Plaintiffs contend that the Examiner found McStay already disclosed the three-magnet arrangement they now seek to recapture through the doctrine of equivalents. If that reading were correct, however, the claims of the '530 Patent — which require precisely that three-magnet structure — would be anticipated by McStay and therefore invalid. Plaintiffs cannot have it both ways. They may not rely on that interpretation of McStay to avoid prosecution-history estoppel while simultaneously asserting the validity of their own patent.

### C.  Argument-Based Estoppel Independently Applies.

Even setting amendment-based estoppel aside, the applicant's express patentability argument independently creates estoppel. *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1380 (Fed. Cir. 2019) (estoppel arises "either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')"). The June 1, 2017 remarks expressly tied patentability to the newly added three-magnet, two-component features. (App. Tab 6.) The Supplemental Amendment of July 31, 2017 reiterated and refined those representations. (App. Tab 7.) And the Examiner Interview Summary confirms that the applicant's counsel "discussed the amended claims" — the three-magnet limitation — and that the Examiner described that amendment as "a step in the right direction." (App. Tab 8.) On that record, Plaintiffs cannot now recapture the fsurrendered two-magnet scope through equivalence.

---

[1]Citations to the Joint Appendix (Dkt. 157) use the corrected tab numbers per Defendants' Joint Notice of Errata (Dkt. 158).

### D.  Vitiation Is a Question of Law and Forecloses Plaintiffs' Theory.

Plaintiffs argue that equivalence is a "fact question for the jury." (Pl. Opp. ¶ 23.) That is not the rule when the doctrine would vitiate a claim limitation. "[I]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997); *see also Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016) (affirming summary judgment of no infringement under the doctrine of equivalents based on vitiation).

Plaintiffs' theory triggers *Akzo Nobel* directly. Claim 1 of the '530 Patent recites both "a fastener housing extending from an outer surface of the back side of the body" and "a third magnet disposed within a thickness of the housing." (App. Tab 1.) The accused product has two magnets in a single flap and no separate body-side housing. Plaintiffs' DOE theory treats the absence of the third magnet as immaterial and treats the absence of the body-side housing as immaterial. Two distinct claim limitations are read out of the claim entirely. That is precisely the "broad play" the Supreme Court forbade in *Warner-Jenkinson*, 520 U.S. at 29 ("It is important to ensure that the application of the doctrine . . . is not allowed such broad play as to effectively eliminate that element in its entirety.").

### E.  Plaintiffs Offer No Element-by-Element Function/Way/Result Evidence.

Independent of estoppel and vitiation, Plaintiffs would still have to come forward at this stage with element-by-element function-way-result evidence sufficient to create a triable dispute. They have not. "The party asserting infringement must present 'evidence and argument concerning the doctrine and each of its elements.' The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." *Lear Siegler, Inc. v. Sealy*

*Mattress Co.*, 873 F.2d 1422, 1425–26 (Fed. Cir. 1989). The Opposition recites the function-way-result formulation in conclusory form (Pl. Opp. ¶ 23) and refers generally to the accused product's "magnet-to-magnet engagement," but never identifies what function the eliminated third magnet performs in the claimed invention, what corresponding way the accused product performs that function, or what result the accused product achieves that is substantially the same. Conclusory recitation does not carry Plaintiffs' burden under *Lear Siegler* or survive summary judgment.

Summary judgment of no infringement of the '530 Patent under the doctrine of equivalents should enter on each of these grounds independently.

## IV. THE '109 PATENT THEORY FAILS BECAUSE TWO STRUCTURAL LIMITATIONS ARE READ OUT OF THE CLAIM

Plaintiffs' Opposition concedes the structural mismatch at the heart of the '109 non-infringement issue. The "two-component structure" claim 1 requires — "a strap-side fastener protrusion holding one magnet and a body-side fastener housing holding the other" (Pl. Opp. ¶ 26) — does not exist in the accused products, which have a single flap holding two magnets that engage one another when folded. (App. Tab 1, claim 1; App. Tab 3 at 9.) Plaintiffs' Final Infringement Contentions admit that they must rely on the doctrine of equivalents because "any perceived distinction between the fastener housing and protrusions of the respective flap/strap assemblies is not substantial." (App. Tab 3 at 9.) Concession of this distinction is concession of the equivalence issue.

### A. Plaintiffs' Theory Reads Two Distinct Claim Limitations Out of Claim 1.

Claim 1 of the '109 Patent recites both "a fastener protrusion extending from a back surface of the elongated strap" and "a fastener housing extending from an outer surface of the back side of the body, the fastener housing being configured to engage with the fastener protrusion." (App. Tab 2, claim 1.) These are two limitations in two locations: one on the strap, one on the body.

Plaintiffs' theory treats the same single flap on the accused product as both the strap-side "fastener protrusion" *and* the body-side "fastener housing" — and treats the absence of any separate body-side structure as immaterial. That is not equivalence. That is deletion. The Supreme Court foreclosed exactly that approach in *Warner-Jenkinson*, 520 U.S. at 29, and where a theory of equivalence would entirely vitiate a claim limitation, the court may enter judgment as a matter of law because no reasonable jury could find equivalence, *Akzo Nobel*, 811 F.3d at 1342.

### B.  Plaintiffs' "Magnetic Retention" Point and "Question for the Jury" Framing Are Non-Responsive.

Plaintiffs assert that the inventor "confirmed the accused holsters 'did have magnetic retention.'" (Pl. Opp. ¶ 26 (citing Myers Dep. 166:4–167:13).) Defendants have never argued otherwise. The '109 issue is not whether the accused products use magnets to retain a holstered firearm. The real issue is whether the claimed two-component structural arrangement — a fastener protrusion on the strap engaging a fastener housing on the body — is present in the accused product or substantially the same. It is not, and Plaintiffs do not argue otherwise.

Plaintiffs' "classic claim-application and equivalence question for the jury" framing (Pl. Opp. ¶ 26) likewise misses the rule. Where the proposed equivalent would eliminate a claim limitation in its entirety, the Court resolves the question as a matter of law. *Akzo Nobel*, 811 F.3d at 1342. Plaintiffs' theory does so as to two distinct limitations — the body-side fastener housing and the claim's required protrusion-housing engagement (App. Tab 2, claim 1) — and partial judgment is therefore appropriate without resort to a jury.

### C. Plaintiffs Offer No Element-by-Element Equivalence Evidence.

Plaintiffs do not identify in their Opposition what function the eliminated body-side "fastener housing" performs in the claimed invention, what corresponding way the accused single-

flap structure performs that function, or what result the accused product achieves that is substantially the same. Their only response is the conclusory assertion that the structural difference is "not substantial." (App. Tab 3 at 9.) That bare recitation cannot satisfy Plaintiffs' burden under *Lear Siegler*, 873 F.2d at 1425–26. Summary judgment of no infringement of the '109 Patent should therefore enter.

## V. THE DESIGN PATENTS — PLAINTIFFS CITE EGYPTIAN GODDESS WITHOUT APPLYING IT

Plaintiffs do not dispute that design-patent infringement turns on whether "an ordinary observer familiar with the prior art would find the accused design substantially the same as the claimed designs." (Pl. Opp. ¶ 27 (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677–78 (Fed. Cir. 2008) (en banc)).) Plaintiffs do not dispute that *Egyptian Goddess* requires the comparison to be performed in light of the prior art. And Plaintiffs do not dispute that design-patent non-infringement can be decided on summary judgment in an appropriate case. (Pl. Opp. ¶ 27.) Plaintiffs simply decline to perform the comparison the rule requires, asserting instead that Defendants "isolate minor add-ons" while the ordinary observer weighs "the overall visual impression." (*Id.*) That is not a response; it is a refusal to engage.

### A. Plaintiffs Substitute Conclusory "Looks Like" Testimony for the *Egyptian Goddess* Comparison.

Plaintiffs' Opposition rests entirely on two evidentiary references: (1) Mr. Myers's testimony that the accused product "looks like" and is "substantially similar" to the '451 design (Pl. Opp. ¶ 27 (citing Myers Dep. 163:12–18)), and (2) Ms. Johnston's deposition testimony that a reviewer observed the product "at first glance . . . looks like the JM4 Tactical magnetic retention holster." (*Id.* (citing Johnston Dep. 191:12–15).) Neither performs the *Egyptian Goddess* analysis.

The *Egyptian Goddess* ordinary-observer test is not a "looks like" inquiry. It is a structured comparison that examines (i) the claimed design as shown in the patent drawings, (ii) the accused design, and (iii) the relevant prior art, with attention drawn to "those aspects of the claimed design that differ from the prior art." 543 F.3d at 676–78; *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342–43 (Fed. Cir. 2020). The inventor's isolated say-so does not satisfy that test — and a third-party reviewer's "first glance" reaction satisfies it even less. Plaintiffs offer no claim-by-claim, prior-art-informed comparison for any of the four asserted Design Patents.

Plaintiffs' failure to perform the required analysis is not for lack of materials. Their own Final Infringement Contentions contain prior-art-informed side-by-side tables comparing each asserted design to the accused product. (App. Tab 3 at 22–27.) They simply chose not to present those comparisons to the Court. That choice is telling: the comparisons Plaintiffs themselves prepared do not support a finding of substantial similarity.

**B. The Side-by-Side Comparison in Defendants' Motion Is Unrebutted.**

Defendants' moving brief set out a side-by-side comparison of each asserted Design Patent against the accused Her Tactical product. (Dkt. 152 at 37–39.) The comparison identified specific, visible distinctions that materially affect the overall visual impression: an externally attached magnetic flap (versus an integrated or formed-as-part-of-the-body fold-down strap in the patented designs); a snap retention strap at the top of the holster (absent from the patented designs); a visible ID tag; visible profile stitching; and a different overall holster silhouette and opening/strap geometry. (Dkt. 152 at 38; App. Tab 19.) Plaintiffs' Opposition does not address any of those distinctions. It does not argue they are illusory or insubstantial under *Egyptian Goddess*. It simply dismisses them as "minor add-ons." (Pl. Opp. ¶ 27.) That is argument by adjective, not by ordinary-observer analysis.

**C. The Prior-Art Context Magnifies — It Does Not Diminish — the Differences.**

The ordinary-observer comparison must account for the narrow field these design patents occupy. *Egyptian Goddess*, 543 F.3d at 676 ("When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art."). Three of the four asserted Design Patents — D811,731, D836,329, and D841,979 — each list D788,451 as prior art, and none claims priority to any other Myers design. The PTO accordingly treated relatively modest visual differences among Plaintiffs' own holster designs as patentably distinct. The differences between the accused Her Tactical products and each asserted design are *more* pronounced than the differences Plaintiffs' own patents drew among themselves. An ordinary observer familiar with that prior-art landscape cannot find the accused product substantially the same as any one of the four asserted designs without simultaneously finding the four asserted designs substantially the same as each other — a conclusion foreclosed by the PTO's grant of separate patents.

**D. Design-Patent Summary Judgment Is Properly Granted on This Documentary Record.**

The Federal Circuit has repeatedly affirmed summary judgment in design-patent cases on documentary records consisting of patent drawings, prior-art images, and accused-product photographs. *See Lanard Toys*, 958 F.3d at 1339, 1342–43 (affirming summary judgment of non-infringement); *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1331–32 (Fed. Cir. 2014) (a "trial court judge may determine almost instinctively whether the two designs create basically the same visual impression" without expert testimony). No expert testimony is required, and Plaintiffs have offered none.

11

The record before the Court is the type *Lanard Toys* held sufficient: the four asserted design patents are documentary; the cited prior art is documentary; the accused product is depicted in photographs and Plaintiffs' own infringement materials. (App. Tab 19; Pl. App. Ex. 11.) Summary judgment of non-infringement on each of the four asserted Design Patents (D788,451, D811,731, D836,329, and D841,979) should enter.

## VI. THE LANHAM ACT / UNFAIR COMPETITION COUNT FAILS

As to Count II of the Second Amended Complaint and its § 1125(a) theories, as pleaded, each rests on the same trade-dress-and-confusion predicate, and each falls when that predicate is resolved. Defendants address each in turn.

**A. Product-Configuration Trade Dress Under § 1125(a)(1)(A) — Conceded by Plaintiffs.**

Plaintiffs do not oppose summary judgment on the product-configuration trade-dress theory pled at Dkt. 74 ¶ 84. (Pl. Opp. ¶ 28.) Partial summary judgment on that theory should enter. *See* Section II.B above.

**B. The Likelihood-of-Confusion Premise in ¶ 89 Falls With the Conceded Trade Dress.**

Defendants address the false-association language in Dkt. 74 ¶ 89 to the extent its likelihood-of-confusion premise depends on the same trade-dress predicate the Court is being asked to dispose of.  Paragraph 89 of the Second Amended Complaint reads in full:

> Because the Her Tactical holsters are confusingly similar to the Plaintiffs' own holsters, and because Plaintiffs invented, patented, and developed a trade dress around that holster design, the Defendants['] misleading public assertions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Parties' respective goods, or as to the origin, sponsorship, or approval of the Parties' respective goods.
> (Dkt. 74 ¶ 89.)

That paragraph's "because . . . and because" structure ties its confusion premise to the product-configuration trade dress Plaintiffs no longer defend. Summary judgment on the trade-dress theory therefore carries with it ¶ 89's confusion premise, which depends entirely on trade-dress similarity.

That conclusion is reinforced by the unitary likelihood-of-confusion test the Tenth Circuit applies across the Lanham Act and Utah common-law unfair competition. 1-800 Contacts, Inc. v. Lens.com, Inc., 755 F. Supp. 2d 1151, 1171, 1190 (D. Utah 2010) (the likelihood-of-confusion element focuses on whether consumers viewing the mark will make an improper mental association or be confused about origin or sponsorship; applying the same reasoning to Utah common-law unfair competition claims); Novell, Inc. v. Network Trade Ctr., Inc., 25 F. Supp. 2d 1218, 1227 (D. Utah 1997) ("a claim of unfair competition may be asserted if . . . the defendants' actions cause a likelihood of confusion among consumers in the marketplace"). Plaintiffs have offered no separate, non-trade-dress-derivative basis for the confusion premise in ¶ 89. Summary judgment is therefore appropriate on the § 1125(a)(1)(A) false-association theory pled at ¶ 89 and on the common-law unfair-competition theory pled at ¶ 92 to the extent it incorporates the same confusion premise.

**C. Resolving This Motion Removes the Predicates on Which Plaintiffs Built Count II, Leaving No Viable § 1125(a)(1)(B) Theory.**

As pleaded, Count II is not a freestanding false-advertising claim, which is why Defendants did not move on it separately. The misrepresentation allegations are the instrument of a single asserted harm — consumer confusion as to the "affiliation, connection, or association" of the parties' goods — premised expressly on the holsters being "confusingly similar" and on Plaintiffs having "invented, patented, and developed a trade dress around that holster design." (Dkt. 74 ¶

89.) Paragraph 92 ties the entire count to that same confusion-and-copying premise. The alleged misstatements were pleaded as the means by which Defendants supposedly traded on Plaintiffs' patented, confusingly similar design — not as standalone deception about product quality.

Judgment of no patent infringement and no protectable trade dress removes the two predicates that give that theory content. A "confusingly similar" premise cannot survive a ruling that the accused product does not infringe and that Plaintiffs hold no protectable trade dress; nothing remains for consumers to be "confused" about as to source, sponsorship, or association. The residual statements — "brand new," "revolutionary," "patent pending," "safe," and the Cavalli credentials — were pleaded in service of that theory, and once its predicates fall, they no longer support any § 1125(a)(1)(B) theory Plaintiffs actually advanced.

Independently, those statements fail on their own terms: "revolutionary" and "brand new" are non-actionable puffery as a matter of law; "patent pending" was accurate when made; and Plaintiffs have identified no evidence of materiality, actual deception, or injury traceable to any of them. Plaintiffs thus have neither a pleaded theory that survives this motion nor evidence carrying the distinct elements of § 1125(a)(1)(B).

## VII.  PLAINTIFFS' RULE 56(d) MOTION DOES NOT BAR ENTRY OF THE RELIEF REQUESTED

Plaintiffs filed a separate Rule 56(d) Motion on May 23, 2026 (Dkt. 162), asking the Court to defer or deny Defendants' motions, or to permit limited discovery, to the extent the motions rely on the declarations of Ms. Johnston and Mr. Cheal. (Dkt. 154; Dkt. 157, Tab 17; Dkt. 157, Tab 18.) That motion is properly addressed under DUCivR 7-1(a)(3) in Defendants' opposition to it, filed separately, and Defendants do not litigate its merits here. Two points warrant brief notice.

14

First, the Johnston and Cheal declarations are proper Rule 26(e) supplementation, not "new matter" that reopens discovery. The declarations attest to the operational and ownership facts already framed by the existing record — including E & R LLC's own discovery responses, Ms. Johnston's November 2, 2023 deposition, and Defendants' written disclosures — and they do not introduce factual subject matter outside the scope of discovery that has already closed. More importantly, the grounds on which Defendants seek summary judgment in Dkt. 152 do not rely on the Johnston or Cheal declarations at all. Prosecution-history estoppel and vitiation on the '530 Patent rest on the prosecution record (App. Tabs 6–8) and the Court's claim-construction ruling (Dkt. 144). Non-infringement of the '109 Patent rests on the claim language (App. Tab 2) and Plaintiffs' own Final Infringement Contentions (App. Tab 3 at 9). The *Egyptian Goddess* comparison on the four asserted Design Patents rests on the patent drawings, the cited prior art, and product photographs (App. Tab 19; Pl. App. Ex. 11). And the trade-dress theory is conceded (Pl. Opp. ¶ 28). Plaintiffs' Rule 56(d) motion identifies no factual matter in either declaration that is material to any of these grounds; it cannot, on its own terms, defer or deny the relief Defendants request in this motion.

Second, even taking Plaintiffs' Rule 56(d) framing at face value, the legal grounds for summary judgment set out in Sections III through VI above — prosecution-history estoppel and vitiation on the '530 Patent; structural absence and the all-elements rule on the '109 Patent; the unrebutted *Egyptian Goddess* comparison on the design patents; and the derivative pleading of Plaintiffs' § 1125(a) theories — both the (a)(1)(A) false-association theory and the (a)(1)(B) misrepresentation allegations, which rise or fall on the pleadings and the absence of any deception, materiality, or injury evidence — do not depend on any contested factual matter in the Johnston or Cheal declarations.

## VIII.  CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' opening Memorandum (Dkt. 152), Defendants Her Tactical, LLC and E & R LLC d/b/a Her Tactical respectfully request that the Court grant summary judgment as follows:

1. **No literal infringement of the '530 Patent** (uncontested, Pl. Opp. ¶ 22);

2. **No infringement of the '530 Patent under the doctrine of equivalents** (prosecution-history estoppel, vitiation, and absence of element-by-element equivalence evidence, Section III);

3. **No infringement of the '109 Patent** (structural absence of the claimed two-component fastener arrangement, and vitiation, Section IV);

4. **No infringement of U.S. Design Patent Nos. D788,451, D811,731, D836,329, and D841,979** (ordinary observer familiar with the prior art, Section V); and

5. **No liability on the product-configuration trade-dress theory under 15 U.S.C. § 1125(a)** (uncontested, Pl. Opp. ¶ 28) **with the understanding that the confusion premise in Dkt. 74 ¶ 89 falls with that ruling to the extent it depends on trade-dress similarity** (Section VI.B).

6. **No liability on the § 1125(a)(1)(B) misrepresentation allegations pleaded at Dkt. 74 ¶¶ 85–88, 90–91, which as pleaded depend on the same confusion-and-copying predicate resolved above and, independently, fail for lack of any evidence of materiality, deception, or injury** (Section VI.C).

DATED this 29th day of May, 2026.

Respectfully submitted,

**KNH LLP**

/s/ *Nathan Gardner*
Chad S. Pehrson
Nathan Gardner
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of May 2026, I caused the foregoing DEFENDANTS HER TACTICAL, LLC AND E & R LLC D/B/A HER TACTICAL'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT to be filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Nathan Gardner*

19